IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK) | ) ) ) | |
| | ) | CIVIL ACTION NO. 1:22-CV-01043 |
| PLAINTIFF, | ) ) | |
| v. | ) ) | |
| UNION STATION INVESTCO, LLC, et al. | ) ) | |
| DEFENDANTS. | ) ) | |

**NATIONAL RAILROAD PASSENGER CORPORATION'S MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR INTERIM TERM OF POSSESSION**

Amtrak files this emergency motion to forestall significant risk to public safety, maintain orderly operations, and ensure the smooth transfer of possession at Washington Union Station ("WUS" or "Station"), ownership of which is vested in Amtrak. Actions taken by some of the Defendants, including to remove the existing property manager and install one unfamiliar with the Station, necessitate that Amtrak obtain the requested relief **before May 28, 2022** (i.e., the date that the new property manager is supposed to take over operations).

The motion stems from the action Amtrak filed on April 14, 2022 to acquire by eminent domain, pursuant to 49 U.S.C. § 24311, a leasehold interest in property located at 40-50 Massachusetts Ave. NE, Washington, D.C., 20002, known as Washington Union Station ("WUS" or "Station"). Until the filing of this action, the leasehold interest was held by Defendant Union Station Investco, LLC ("USI" or "Condemnee"). USI obtained this leasehold interest (the "Subject Property Interest") from Union Station Venture II, LLC by an Assignment and Assumption of Leasehold Interest made as of January 25, 2007. *See* Complaint, Ex. 1, ECF No. 1 (Apr. 14, 2022). USI's lender is Kookmin Bank Co., Ltd. ("Bank").

Pursuant to 49 U.S.C. § 24311(b)(2), "title to the [condemned] property vests in Amtrak in fee simple absolute or in the lesser interest shown in the declaration" upon: (1) Amtrak's filing of a complaint in condemnation; and (2) Amtrak's depositing of the money it estimates is just compensation into the Court's registry. Because Amtrak has fulfilled these requirements, Amtrak now holds title to, and has the right to possess, the Subject Property Interest.

Pursuant to that same statute, "[w]hen the declaration is filed, the court may decide the time by which, and the terms under which, possession of the property is given to Amtrak." *Id.* § 24311(b)(2)(A). Amtrak had hoped to negotiate a smooth transition with the Condemnee and/or Bank. But the Bank has made this impossible: Amtrak learned this week that the Bank issued a termination notice to the Station's current property manager purporting to install a new property manager as of May 28, 2022. This will not only interfere with the transfer of possession, but also wreak havoc on a property that Amtrak now owns. The rushed transition, if one can call it a transition, risks confusion and serious harm to the Station, its customers, and the public.

Accordingly, Amtrak moves the Court for an order pursuant to § 24311(b)(2)(A) setting an interim term under which possession of the Subject Property Interest is to be given to Amtrak. Specifically, Amtrak requests an order preventing any Defendant or their agents from removing the Station's current property manager, so that possession can be transferred to Amtrak with the current property manager in place. Although Amtrak confines its motion to this very specific relief so as to preserve the status quo during the transition to Amtrak's possession, Amtrak reserves the right to request, and anticipates requesting, additional terms for the transfer of possession over the coming weeks, should the parties be unable to negotiate those terms. Accordingly, Amtrak also requests that the Court set a schedule for a full determination of all terms under which possession of the Subject Property Interest should be given to Amtrak under 49 U.S.C. § 24311(b)(2)(A), on

a timeline that would allow for final transfer of possession by August 14, 2022—at which time Amtrak will have held title to the Subject Property for four months.

## FACTUAL BACKGROUND

The motion is necessary because of actions by the Bank that threaten the Station. Specifically, on May 18, 2022, Amtrak learned that the Bank is seeking to remove the Station's current property manager, Jones Lang LaSalle ("JLL"), effective on May 28, and replace it with a new property manager. *See* Declaration of Dr. David Handera ¶ 5 ("Handera Decl."). JLL has managed the Station for many years. *Id.* ¶ 4. In its place, Amtrak understands that the Bank seeks to install Cushman & Wakefield, a property manager with no experience at the Station.

Worse yet, the Bank has sought to effectuate this critical and important property management transition with virtually no notice and in an extremely compressed timeframe, by Saturday May 28. Indeed, the Bank did not tell Amtrak of its intention to make this change of the property manager prior to the Bank taking the action discussed above. *Id*. ¶ 8. Nor did the Bank provide notice of this change to the Court in its answer, where it recited in detail its purported ability to make numerous changes to station operations but made no mention of its previous decision to change property managers. *See* Answer of Kookmin Bank, ECF No. 35 (May 17, 2022). Instead, Amtrak did not understand that the Bank intended to terminate JLL until Amtrak learned it on May 18 from JLL itself. Handera Decl. ¶ 5.

When Amtrak, through counsel, raised this with the Bank's counsel, Bank counsel stated only that "[a]s it relates to JLL, our client has previously exercised its right regarding JLL and any actions taken by Amtrak to interfere with our client's rights will have to be adjudicated." *See*

Lambert Decl. Exh. 1 (email correspondence between parties). Thus, the Bank has refused to maintain the status quo absent judicial intervention.[1]

The Bank's actions create an urgent need for the Court to set as a term of possession the preservation of the status quo as to the property manager until Amtrak takes possession. If the status quo is not maintained, this rushed transition in property manager will likely cause safety and operational issues. Handera Decl. ¶¶ 10–11. As set out in the Declaration of Dr. David Handera:

- Amtrak has seen no transition plan that indicates the personnel, if any, to be retained or engaged, or the criteria for emergency situations, safety, or other operational issues set forth in the Complaint, such as maintenance, operation of WUS, inside and outside repairs (including all equipment including engines, dynamos, boilers, elevators, machinery, pipes, escalators, plumbing, wiring, gas, HVAC, sidewalks, vaults and all other machinery fixtures or equipment), trash control, and essential activities.

- Amtrak has seen no transition plan for the proposed new property manager's monitoring and maintaining of security at WUS.

- Amtrak has seen no information indicating that the new property manager will know of and be able to comply with life safety agreements and requirements at the Station.

---

[1] The Bank presently does not have a possessory interest in the Subject Property Interest but has nevertheless attempted to assert control over one or more of the USI defendants. The Bank contends that it has rights to exert such control due to contractual rights it putatively has under various loan-related documents. *See* Answer of Kookmin Bank ¶ 19 & pp. 29–32, ECF No. 35 (May 17, 2022). As discussed herein, Counsel for the owners of the USI, by their answer, have indicated that USI will be contesting the exercise of various rights of the Bank. In light of the controversy involved and the Court's discretion to set the terms and conditions of possession under 49 USC 24311(b)(2)(A), Amtrak seeks relief specified in the instant motion. Amtrak also notes that when its counsel asked the Bank to provide the contract documents upon which it relies in the assertion of rights to change property managers, that request was refused. Lambert Decl. Exh. A.

- Amtrak has seen no information indicating that the new property manager knows of and will have the ability to monitor and maintain all systems that provide operations, safety, and security for the station.

- Amtrak has seen no information indicating that the new property manager has experience in managing or operating a passenger rail station and intermodal transportation hub.

- Amtrak has seen no information as to the proposed new manager's staffing plan and points of contact.

- Amtrak has seen no indication as to who it should deal with and what authority people have, which in addition to frustrating the smooth management of the Station creates risks in any emergency situation that the new property manager will be unable to make critical decisions that concern safety and security at the Station.

*Id.* ¶ 9–10.[2] The Handera Declaration articulates some of the real situations that have occurred in the past at the Station that could pose serious harms if they were to recur following a hasty transition to an inexperienced manager. These include problems with circuit breakers for electrical and HVAC systems, life safety systems, and other critical building systems; roof leaks and emergencies that create safety risks for employees, customers, and the pubic; and sewer backups that risk serious harms to operations at the Station. *Id.* ¶ 11. These issues raise a serious concern that possession cannot be transferred to Amtrak with the Station being operated in a safe and effective manner as of May 28, the date of the proposed property management transition. *Id.* ¶ 11. And yet no one has provided any coherent explanation to Amtrak as to why the property manager

---

[2] These issues are significant even apart from the fact that it is unclear who the new property manager will be paid by and what the terms of payment will be. To the extent that the property manager is to be paid out of rental payments from tenants, those payments rightfully belong to Amtrak as it is the titled property owner at this time.

5

must be changed at this time, when the issue of possession is pending before this Court. Amtrak Complaint ¶ 76 & p. 34, ECF No. 1 (April 14, 2022).

Moreover, the harms threatened by the Bank's actions are magnified by a significant dispute as to who controls USI at this time. On May 13, 2022, the Bank notified various parties that it was installing a new manager within USI five days hence. Answer of Kookmin Bank ¶¶ 8–11 and pp. 31–32, ECF No. 35 (May 17, 2022). Now, two different sets of attorneys purport to represent USI in this litigation, filing two different answers. *Compare* Answer of Union Station Investco, LLC (the "USI-Bank Answer"), ECF No. 36 (May 19, 2022),[3] *with* Answer of Union Station Investco, LLC, Union Station Sole Member LLC (the "USI-nonBank Answer"), ECF No. 38 (May 19, 2022); *see also* USI-nonbank Answer at 1 n.1. The two Answers are significantly different and inconsistent. One urges that the status quo be *maintained* and that JLL be allowed to continue to provide property management services at the Station. *See* USI-nonBank Answer ¶ 35. Meanwhile, the Bank has taken action to remove JLL as property manager. Amtrak takes no position at this time as to who is entitled to control USI or represent it in this litigation, but USI's internal disarray is compounding the challenges with effecting a smooth transition of possession to Amtrak and makes judicial action to preserve the status quo imperative.

For these reasons, Amtrak respectfully asks the Court to exercise its authority under § 24311(b)(2)(A) to set terms of possession for the present and ensure that Amtrak can in the future take full possession under terms that will protect public safety and ensure seamless service at and operation of the Station.

---

[3] The USI-Bank Answer was filed by a law firm which had originally entered its appearance for the Bank, but subsequently withdrew that appearance only to file an answer purporting to be for USI. *See* Notice of Withdrawal of Appearance as to Kookmin Bank Co., LTD, ECF No. 34 (May 17, 2022); Answer of Union Station Investco, LLC, ECF No. 36 (May 19, 2022).

**ARGUMENT**

By the Rail Passenger Service Act of 1970 ("RPSA"), 45 U.S.C. § 501 *et seq.*, Congress established Amtrak's mission "to provide modern and efficient intercity and commuter rail passenger service." *Nat'l R.R. Passenger Corp. v. Boston and Maine Corp.*, 503 U.S. 407, 410 (1992); *see also Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 397 (1995).

To enable Amtrak to achieve its mission, Congress has through various pieces of legislation endowed Amtrak with several powers, including the power to acquire property by eminent domain. 49 U.S.C. § 24311(a)(l). This condemnation right includes an unequivocal right to both title *and* possession. Upon compliance with the requirements of 49 U.S.C. § 24311, the ownership and possessory rights to a condemned property vest in Amtrak, even prior to final judgment in a condemnation proceeding. *Cf. Kirby Forest Indus., Inc. v. United States,* 467 U.S. 1, 5 (1984) (holding that pursuant to materially identical terms in the Declaration of Taking Act, upon the deposit of funds equal to the estimated value of land, "[t]itle and *right to possession* thereupon vest *immediately* in the [the condemning authority]") (emphasis added); *United States v. Miller*, 317 U.S. 369, 381 (1943) (noting that one of the primary purposes of the Declaration of Taking Act was to provide a procedure "to give the [condemning authority] *immediate possession* of the property") (emphasis added).[4]

Consistent with its statutory scheme, Congress granted courts the discretion to set the terms under which possession is transferred. To be clear, the Court does not possess authority to

---

[4] The statute conferring Amtrak's eminent domain authority mirrors the "quick take" condemnation procedure granted to the United States Government in 40 U.S.C. § 3114 *et seq.*, the Declaration of Taking Act. 40 U.S.C. § 3114(d) reads: "On the filing of a declaration of taking, the court – (1) may fix the time within which, and the terms on which, the parties in possession shall be required to surrender possession to the petitioner[.]" This mirrors the language in 49 U.S.C. § 24311(b)(2)(A), which reads: "When the declaration is filed, the court may decide the time by which, and the terms under which, possession of the property is given to Amtrak[.]"

determine *whether* Amtrak will be granted possession of a condemned property: that is settled by the statute itself. But Congress did confer in § 24311(b)(2) the authority for the Court to determine the timing and terms under which possession is transferred. That authority enables the Court to address situations like this one, in which Amtrak requires judicial intervention to protect property after it has filed the declaration and made the deposit, but before it has taken possession. During this period, where a defendant is resisting the condemnation, Amtrak is reliant on the Court to set terms under which possession will transferred. And courts have recognized as much, exercising their authority over timing and terms to order a transfer of possession for Amtrak even where the condemnee contests the amount of compensation due under the statute. *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Penn Cent. Corp.*, 1989 WL 51406 at *3 (N.D. Ill. May 10, 1989) (granting Amtrak's motion for possession of condemned property so that a phased construction project could begin); *Nat'l R.R. Passenger Corp. v. 4,945 Square Feet of Land More or Less Situated in County of Bristol Com. of Mass.*, 1 F. Supp. 2d 79, 83 (D. Mass. 1998) (granting Amtrak's motion for summary judgment and sua sponte granting Amtrak immediate possession on the grounds that it properly followed the procedures set forth in 49 U.S.C. § 24311).

Requiring maintenance of the status quo, including in terms of who or what entity manages a property, is a critical "term[] under which possession of the property is given to Amtrak." Transitioning property management from Jones Lang Lasalle to Cushman & Wakefield would fundamentally alter the terms under which Amtrak receives possession of the property. That is particularly true because Amtrak *already* holds title to the Subject Property Interest.[5] Preserving

---

[5] The Bank has acknowledged that Amtrak now holds title to the Subject Property Interest. *See* Handera Decl. ¶ 5.

8

conditions at the Station while the parties and this Court work through an orderly transition is crucial to avoid the harms and potential harms outlined above.

Even apart from the express grant of discretion to set terms in § 24311(b)(2), requiring maintenance of the status quo is appropriate under the Court's inherent power to protect its authority to manage this condemnation action. In "pending proceedings, a court may enjoin almost any conduct 'which, left unchecked, would have…the practical effect of diminishing the court's power to bring the litigation to a natural conclusion'" and "may also compel acts 'necessary to promote the resolution of issues in a case properly before it…[or] facilitat[e] the court's effort to manage the case to judgment.'" *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (2004) (citation omitted); *see also Gomez v. Biden*, 2021 WL 1037866, at *2 (D.D.C. Feb. 19, 2021) (explaining that the All Writs Act "authorizes a federal court to take 'appropriate action to preserve its 'potential jurisdiction,'' which includes the 'inherent equitable power to maintain the status quo'" (citing *Garcia v. Texas*, 564 U.S. 940, 947 (2011), and *Wagner v. Taylor*, 836 F.2d 566, 571 (D.C. Cir. 1987)). The Bank's attempt to make fundamental changes to management and operation of the Station, now owned by Amtrak, would thwart this Court's jurisdiction to determine the terms under which possession of the property is given to Amtrak. Likewise, transitioning property management from Jones Lang Lasalle to Cushman & Wakefield would fundamentally alter the terms under which Amtrak receives possession of the property. That is true not only because Amtrak opposes the effort to transition property management responsibility at this time, but also because the contemplated transition is set to occur on a needlessly rushed and condensed timeline. That rushed transition threatens to compound all of the risks and harms outlined above.

To be clear, Amtrak still hopes that it and Condemnee and/or Bank can negotiate the timing and terms for the transfer of possession. However, to facilitate those negotiations and in aid of the

Court's jurisdiction, Amtrak respectfully requests that the Court protect the status quo at the Station in the interim.

## CONCLUSION

For the foregoing reasons, Amtrak requests that Defendants and their agents be ordered not to remove the current property manager until such time as possession finally transfers to Amtrak or until the Court orders otherwise. In light of the imminent removal of that property manager, Amtrak is willing to participate on a status conference at the Court's earliest convenience and proposes the following expedited briefing and hearing schedule.[6]

- Condemnees' Responses:[7]  May 24, 2022
- Amtrak Reply:  May 25, 2022
- Hearing:  May 25 or 26, 2022 (if available on the Court's calendar).

Separately, Amtrak respectfully requests that the Court set a schedule for a full determination of all terms under which possession of the Subject Property Interest should be given to Amtrak under 49 U.S.C. § 24311(b)(2)(A), such that a final transfer of possession can take place by August 14, 2022.

Respectfully submitted,

**COUNSEL FOR PLAINTIFF NATIONAL RAILROAD PASSENGER CORPORATION**

/s/ Patricia McHugh Lambert
Patricia McHugh Lambert, US DC Bar ID MD0008
Kambon R. Williams, US DC Bar ID MD29872
PESSIN KATZ LAW, P.A.
901 Dulaney Valley Road, Suite 500
Towson, MD 21204

---

[6] If Condemnee will agree not to remove JLL as manager until the Court resolves this motion, Amtrak would of course be willing to follow a less expedited schedule.

[7] These briefs would only address the issues of whether the Court should maintain the current property manager—not whether Amtrak should be awarded full and immediate possession at this time.

        Telephone: 410-938-8800
        Fax: 410-832-5650
        plambert@pklaw.com
        kwilliams@pklaw.com

        <u>/s/ Lindsay Harrison</u>
        Lindsay Harrison, DC Bar #977407
        Jessica Ring Amunson, DC Bar #497223
        JENNER & BLOCK, LLP
        1099 New York Avenue, NW, Suite 900
        Washington, D.C. 20001-4412
        Telephone: 202-639-6000
        Fax: 202-639-6066
        lharrison@jenner.com
        jamunson@jenner.com