IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NRPC (AMTRAK),                        )
                                      )
          Plaintiff,                  )
                                      )      CV No. 22-01043
      vs.                             )      Washington, D.C.
                                      )      May 26, 2022
SUBLEASE, ET AL.,                     )      2:30 p.m.
                                      )
          Defendants.                 )
_____)


     TRANSCRIPT OF STATUS CONFERENCE VIA ZOOM PROCEEDINGS
         BEFORE THE HONORABLE AMIT P. MEHTA
             UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          Patricia M. Lambert
                            PESSIN KATZ LAW, P.A.
                            901 Dulaney Valley Road
                            Suite 500
                            Towson, MD 21204
                            (410) 339-6759
                            Email: plambert@pklaw.com


For Defendant Union:        David Ross
                            KASOWITZ BENSON TORRES LLP
                            1633 Broadway
                            New York, NY 10019
                            (212) 506-1700
                            Email: dross@kasowtiz.com

                            Thomas Moss Wood, IV
                            Brian M. Boyle
                            NEUBERGER, QUINN, GIELEN,
                            RUBIN & GIBBER, P.A.
                            One South Street
                            27th Floor
                            Baltimore, MD 21202
                            (410) 332-8523
                            Email: tmw@nqgrg.com
                            Email: bmb@nqgrg.com

APPEARANCES CONTINUED

For Defendant
Kookmin Bank:                          Y. David Scharf
                                       MORRISON COHEN, LLP
                                       909 Third Avenue
                                       New York, NY 10022
                                       (212) 735-8604
                                       Email:
                                       dscharf@morrisoncohen.com


Court Reporter:                        William P. Zaremba
                                       Registered Merit Reporter
                                       Certified Realtime Reporter
                                       Official Court Reporter
                                       E. Barrett Prettyman CH
                                       333 Constitution Avenue, NW
                                       Washington, D.C. 20001
                                       (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

```
1                    P R O C E E D I N G S
2          COURTROOM DEPUTY:  Good afternoon, Your Honor.
3    This is Civil Action 22-1043, National Railroad
4    Passenger Corporation, doing business as Amtrak versus
5    Sublease Interest Obtained Pursuant to an Assignment and
6    Assumption of Leasehold Interest made as of January 25,
7    2007, with Said Property Interest Pertaining to Described
8    Leasehold Interests at Washington Union Station, et al.
9              Patricia Lambert for the plaintiff.
10             David Ross for Defendants Union Station Investco,
11   Inc., and Union Station Sole Member, LLC.
12             Thomas Wood and Brian Boyle also on behalf of
13   Defendant Union Station Investco LLC.
14             And David Scharf on behalf of Kookmin Bank.
15             THE COURT:  Okay.  Good afternoon, everyone.
16   I think we've got to figure out a way to shorten the case
17   caption as we move forward.
18             Thank you for being available this afternoon.
19   I know we had originally had this down for a hearing on the
20   motion which has now been deemed moot, but I thought
21   it would be a good opportunity just to get everybody
22   together to get a sense and get my arms around this matter
23   before we move too far along.
24             You know, I'll be perfectly candid.  I've not
25   previously had to deal with a case of this kind, and
```

1  certainly not one of this magnitude, and, frankly, I don't

2  think very many of my colleagues have in this district.

3          And so I wanted to just get everybody together and

4  get a sense from you all of what you expect in terms of the

5  case going forward.  I know the last -- the papers that were

6  filed -- the notice that was filed the other day suggested

7  that we would be moving to a briefing schedule in short

8  order.  It wasn't clear to me whether you all were going to

9  ask for some period of discovery or whether that discovery

10 would be necessary.  So in any event, I just wanted to get

11 everybody together to give me a sense of how you all see

12 this case unfolding so that I can sort of make decisions

13 accordingly.

14         So why don't we start with the plaintiffs and then

15 we'll turn to the defendants.

16         MS. LAMBERT:  Thank you, Your Honor.

17         On behalf of Amtrak, the plaintiff in this case,

18 there's really three parts of a case dealing with

19 condemnation of this sort:  One is possession; one is any

20 issues with respect to taking authority; and then the third

21 is valuation.

22         Under what we have requested in our moving papers

23 is that the Court hold in the near future -- we'd like it to

24 be fairly immediately but certainly within the next couple

25 of months -- a hearing on briefing papers on Amtrak's motion

1    for possession.

2            It's a quick-take type of procedure that Amtrak

3    would move for a quick-take.  And if the opposing parties

4    wanted to show some type of immediate hardship that that

5    possession would give, then they could do that, but

6    it would be a quick-take under the statute.

7            The second -- and I'm using these in very

8    colloquial words, Your Honor, not in any technical sense.

9    We think that that -- like I said, we'd like to do it fairly

10   tomorrow.  But to give everybody enough time to have it

11   reasonable and stuff, we had proposed that ultimately that

12   we'd file it within a month or so, a reply brief, and then a

13   response brief and a reply brief sometime in mid-August and

14   then the Court could have a hearing.

15           On the issue of the authority to take, there's

16   probably going to be some disputes in the discovery stage as

17   to that.  Looking at the answers, that we have a different

18   viewpoint as to what the scope of discovery is going to be

19   allowed; however, Amtrak is interested in getting that

20   resolved early as well.  And so we're willing to move on

21   discovery, perhaps after the motion for possession, but move

22   rather quickly.

23           The valuation oftentimes then comes after that,

24   Your Honor.  And that allows for exchange of information,

25   the appraisers to update discovery on that stage as well.

```
 1    So there's, from our perspective, three separate viewpoints

 2    or three stages in this case.

 3              With respect to possession, we don't -- because

 4    it's a quick-take issue and an issue of hardship that the

 5    defendants would have to show, there's very limited need for

 6    discovery in our view on that stage.

 7              THE COURT:  Ms. Lambert -- Mr. Ross.

 8              MR. ROSS:  Yes, Your Honor.

 9              Because we're at a preliminary stage, I just

10    wanted to also explain the context, because there are --

11    there's an unusual issue with respect to the defendants when

12    you're ready to hear it.

13              THE COURT:  Yeah, let me just -- if I could --

14    I just want to follow up a couple questions with

15    Ms. Lambert.

16              So let me understand your thoughts with respect to

17    the possession or quick-take issue.  I guess two things; one

18    is, how is it different than the question of taking

19    authority and -- just based on the -- question one.

20    And question two is, to what extent is either question

21    factual; and if it is factual in any sense, are you

22    anticipating the need for some discovery and/or an

23    evidentiary hearing?

24              MS. LAMBERT:  In terms of the first issue, which

25    I'm going to really translate into, can the Court have
```

1   authority to hear it before the actual taking issue is

2   heard.  And there's cases, including an affirmance from

3   Supreme Court, that says you can have the possession issues

4   on a quick-take statute heard prior to that.  And there's a

5   number of cases that just say, have you filed the

6   declaration, have you deposited the money, and is there

7   hardship.

8        I'll give you an example, Your Honor.  It's like

9   one time the TVA tried to take property of farmers when

10  there were crops in the field.  And the farmers said, can't

11  you wait until after we get the crops so we can sell those.

12  And the Court heard that and didn't give immediate

13  possession, they ordered later possession, but the idea is

14  that you move pretty effectively and immediately to --

15  because of public projects and stuff.  So that's what -- it

16  is not tied to authority, it's different than authority.

17       The issue of authority is whether or not the

18  interest that is on a fuller record, it's going to be that

19  there will be the need for some discovery on that.  On the

20  issue of possession, it's more on the issue if the other

21  side presents any issues of hardship from our perspective.

22  There might be a deposition or two, but not much from our

23  perspective.

24       On the necessity issue, I think that we're going

25  to -- that my suggestion, perhaps, Your Honor, is to have

1    the party -- that there's going to be some real issues as to

2    scope; for example, that there's -- how much they can go

3    behind business decisions of Amtrak, particularly in light

4    of Judge Cooper's decision, as to the limited issues in a

5    taking situation like that.  So there will be some issues of

6    scope and proportionality.  But for the first issue, very

7    limited discovery.

8         The second issue, we say not so much discovery,

9    but the other side has already told me that it's going to be

10   wide ranging, long, and difficult discovery.  So we will

11   have issues with respect to that.

12        THE COURT:  Can I ask, on the first step, the

13   possession step, if you were to be granted -- if Amtrak were

14   to prevail and be granted possession, and it's not clear to

15   be me what that involves, but I'm sure you'll educate me,

16   but what would then that allow Amtrak to do?  Would Amtrak

17   then have unrestricted possession or would it be qualified

18   in some way?

19        MS. LAMBERT:  What we would request from

20   Your Honor is to set the terms and conditions so that we

21   could go ahead and do the projects, move equipment, do the

22   life and safety issues that we need.  So the give is broad

23   and is full possession as the Court would allow subject to

24   any hardship argument that they would make.

25        The issue is, as we see it, the Court has some

1    discretion as to setting the terms and conditions.  But we

2    need -- we've been waiting for years to do some of these

3    projects and we really need some immediacy.  And I can

4    explain why, but some of it's dealing with life safety, some

5    of it's dealing with funding, some of it's dealing with

6    other types of issues of moving forward.

7            And so the question is, why do you allow Amtrak to

8    go forward when the authority issue is not set forth.  And

9    that's -- there's a lot of law in this area, Your Honor,

10   that says, because we want these types of things for the

11   public good that Congress has mandated or what have you, we

12   don't want to hold it up for the one year, two years,

13   whatever it might take, to get through the authority issues,

14   any appeals on those issues, and that type of thing.

15           THE COURT:  Okay.

16           All right.  Well, that's helpful.  Thank you.

17   That's a useful way of setting the table here.

18           All right.  Well, why don't I turn to defense

19   counsel and who would like to start?

20           MR. ROSS:  Mr. Ross, please, Your Honor.

21           THE COURT:  Sure.

22           MR. ROSS:  Good afternoon, Your Honor.  I'm with

23   David Mark and Daniel Koevary of my firm.

24           We also have the Arent Fox Schiff, our local

25   counsel firm, with James Hulme and Laurel LaMontagne.

1        Your Honor, I'd like to put aside for a moment

2   responding to some of the things that Ms. Lambert said and

3   discussed with Your Honor just to address what I think is

4   something that we might call a gating issue.

5        My client was the owner for the past 15 years of

6   the rights with respect to Union Station.  The entity is

7   called U.S. -- Union Station InvestCo, LLC.  And it's an LLC

8   and its sole member happens to be called Union Station Sole

9   Member.

10        At the moment of the condemnation, my client was

11   the sole owner of the rights that are the subject of the

12   condemnation.

13        Our client had a senior lender on a senior

14   mortgage and a mezzanine lender.  And at the time of the

15   condemnation, the mezzanine lender had acquired the interest

16   of the senior lender.  So Rexmark acts for Kookmin Bank.

17   And Rexmark has filed its own answer.  It was identified as

18   a defendant and it filed its own answer in this case.

19        My clients, through my firm and Mr. Hulme's firm,

20   have filed their answer on behalf of the entities Investco

21   and Sole Member.

22        The mezzanine lender has sought to act instead and

23   have the sole voice for the very same entity, Union Station

24   Investco.  The mezzanine lender is represented by the

25   Neuberger firm.

```
1            THE COURT:  This is why I received two answers.

2   That was the other issue I wanted to resolve and understand,

3   why I got two answers --

4            MR. ROSS:  Yeah.

5            THE COURT:  -- from -- on behalf of the same

6   defendants, and was told in the second answer that the first

7   answer wasn't authorized.  That's a first.

8            MR. ROSS:  Yes.  It's the first in my experience

9   as well, Your Honor, where two sets of counsel but really

10  two separate interests seek to speak on behalf of a single

11  or two people, two parties.  We actually speak for both the

12  sole member and the entity itself, and the Neuberger firm

13  only purports to speak for the entity itself.

14           But let me just say that because this arises out

15  of a dispute as to who has the rights to control the

16  participation in the condemnation itself.  And we plan to

17  brief the issue through a motion to strike the answer that

18  the Neuberger firm filed.

19           And two hours before our call after I spoke to

20  Mr. Scharf, I sent an email around proposing a briefing

21  schedule for that, I have not heard back yet from fellow

22  counsel about that, but I would hope that we'd be able to

23  work out a briefing schedule so that Your Honor will have

24  clarity as to -- and make a decision as to who has the

25  authority to speak for the respective parties.
```

1          It's clear that the bank itself has put in its own

2     set of papers, so they have a voice in their capacity as

3     such, as the Kookmin Bank and their agent Rexmark.

4          But there is a live dispute going on between the

5     parties as to who has the authority under the documents and

6     under condemnation law, under federal law, and even under

7     state law, perhaps.  And so we purport -- we plan to brief

8     that and file a motion with Your Honor.  We had proposed to

9     do so a week from tomorrow.

10          THE COURT:  Can I interrupt you, Mr. Ross, real

11     quick, just so I have an understanding.

12          So if -- well, let me play this out.  If you're

13     wrong -- and I don't have a -- I'm not at all telegraphing

14     one way or another, I'm just trying to figure out what's

15     going on.  Say you're wrong and that the lender is the one

16     that has the authority to represent your clients, does that

17     mean I've only got one counsel on behalf of both Kookmin

18     Bank and the other named defendants?

19          MR. ROSS:  I don't think so, Your Honor.

20          I think even if I'm wrong, as you put it

21     hypothetically, I still think that Union Station's sole

22     member has a separate right and authority to participate in

23     the case, to oppose the -- to oppose the condemnation, and

24     to seek the overage beyond -- assuming the condemnation was

25     lawful in terms of authority, even with respect to the

1    valuation, my client believes that there's at least

2    $200 million of excess value that should be awarded in this

3    case above the debt.  And so we have at least a $200 million

4    interest, apart from what may be owed to the lenders, under

5    the outstanding agreements.

6              So it's our position, Your Honor, that we would

7    participate in any event wearing that hat or representing

8    that party.  But we don't think that the lender has any

9    right whatsoever to participate as Investco and to speak for

10   it with respect to the propriety of the condemnation or the

11   course of the case.

12             THE COURT:  And, Mr. Ross, in terms of sequencing,

13   are you then envisioning that we would get this issue of

14   authority and representation resolved before the question of

15   possession?  Because I hear Amtrak wanting to fast-track

16   that; no pun intended.

17             MR. ROSS:  Yes, Your Honor.

18             We would intend to complete the briefing in a

19   matter of, I don't know, three weeks or something like that.

20             And you'll take whatever time you take to decide

21   it, but that's faster than the briefing that I believe

22   Ms. Lambert was contemplating on the possession motion.

23   Though she does speak of expedition, but I think she was

24   talking about a motion that would be briefed in August.

25             And I do have views on behalf of my client as to

1    what she's proposed and would be glad to tell you our views

2    on that as well on their Tri-Partite issues and others that

3    she raised.

4            But I do think that, yes, to answer your question

5    directly, you would be able to have a fully briefed motion,

6    assuming counsel cooperate and get a chance to obviously

7    speak on behalf of their client and their views, and you'd

8    have a chance to have a fully briefed motion that you could

9    evaluate and perhaps decide before the possession issue is

10   briefed or decided.

11           If you wanted to do them overlapping, then you'd

12   get an extra set of papers by somebody who you might excuse

13   from appearing later.

14           THE COURT:  Okay.

15           MS. LAMBERT:  Your Honor, may I address that

16   particular issue?

17           THE COURT:  Yeah.  Just hang on.  I'm going to --

18   I appreciate you all raising your virtual hands, but, trust

19   me, everybody will get an opportunity to be heard.

20           MS. LAMBERT:  Thank you.

21           THE COURT:  Let me just -- Ms. Lambert, why don't

22   you go ahead and then I'll turn to Mr. Scharf, who I suspect

23   is chomping at the bit to be heard.

24           Ms. Lambert, if you want to be brief.

25           MS. LAMBERT:  Oh, yes.

1          So my view on -- the dispute of these two entities

2    has been long standing, and it's going to be complicated.

3    I don't want this proceeding, condemnation proceeding, which

4    is really about whether -- Amtrak's possession of property,

5    to be highjacked by such a proceeding between those two

6    parties.

7          I question whether the Court even has

8    jurisdiction, in a condemnation case, to decide that issue,

9    but it certainly can be and should be bifurcated.

10         THE COURT:  But, I mean, you're not suggesting

11   that I -- don't I have to resolve it?  I've got two lawyers

12   claiming to represent the same client.  I can't live in that

13   world.

14         MS. LAMBERT:  You can for a time, Your Honor.

15         THE COURT:  I'm not sure why I don't have

16   jurisdiction or authority to resolve who the proper party in

17   interest is.  I suppose that's the question.

18         MS. LAMBERT:  Because I think, Your Honor, there's

19   three steps again; that there is -- ultimately in the

20   valuation side, who gets the money and who gets what money,

21   the Court may have to decide that.  That's the third stage

22   of a condemnation case.

23         THE COURT:  Right.

24         MS. LAMBERT:  In terms of the first two, that

25   every -- I'm allowed -- suggesting that all the defendants,

1   if they want to, can file a pleading that attacks Amtrak's

2   authority.

3          THE COURT:  Well, that's fine.

4          I mean, that's certainly going to happen.  But the

5   question ultimately is which counsel is going to be speaking

6   for which defendants.  And that's the issue Mr. Ross and

7   Mr. Scharf seem to be tangling with, which is, we've got

8   three named defendants.  There's no question as to who's

9   representing the bank.  The question is who's representing

10  the other two defendants.  I've got two answers, which

11  presents its own issues.

12         MS. LAMBERT:  It certainly does, Your Honor.

13         But we would request that those proceedings be

14  bifurcated from what we're talking about on this, because,

15  as discovery -- there may be a need for specific discovery

16  vis-à-vis their rights and other issues.  I'd be shocked if

17  that issue could be briefed in a week or something, but

18  that's my concern that lays everything out.

19         THE COURT:  Let me get to Mr. Scharf here who's

20  been waiting patiently.  So let me turn to you, sir.

21         MR. SCHARF:  Thank you, Your Honor.

22         So allow me to first address the issue of the

23  dispute between the lender and the borrower.

24         And I agree with Ms. Lambert halfway on this one.

25  I think it's a sideshow.  While Your Honor may have

1   jurisdiction over it, the loan documents provide for venue

2   for these types of disputes, at the option of the lender, to

3   be in New York.  We are clearly opting to have that be the

4   case, and I put that on the record here today.

5           The main reason why that dispute doesn't need to

6   hold up the rest of the case -- and I'm not suggesting for

7   one second, Your Honor, that the issue doesn't need to be

8   decided, but it does [sic] need to be decided by you, we can

9   get it decided where it belongs in the dispute between the

10  lender and the borrower.

11          And what Mr. Ross should do is, if he believes

12  that the lender has improperly exercised its clear powers

13  that were granted, contractual powers that were granted in

14  the pledge agreement, that were granted in the loan document

15  for -- at the time there is a default, for the lender to

16  replace the manager of the borrower, to exercise control

17  with respect to decisions and management and voting rights,

18  which was done by the manager -- was done by the lender

19  pursuant to the rights that were granted by the borrower, it

20  should go and bring an action in New York State Court, where

21  I think this matter would have to be venued.  And if they're

22  able to get an injunction, then -- and get a determination

23  on that issue, then Your Honor will know who we're dealing

24  with.

25          THE COURT:  Mr. Scharf, can I interrupt you?

 1              Just to be clear, your reference to venue in

 2    New York, do you mean to say that any dispute between you

 3    and the borrower is venued in New York, or this entire

 4    action should be venued in New York?

 5              MR. SCHARF:  Only the dispute between the borrower

 6    and the lender, Your Honor.

 7              THE COURT:  Okay.  All right.  Understood.

 8    I didn't appreciate that.

 9              MR. SCHARF:  And where I agree with Ms. Lambert is

10    that while it is an issue that needs to be decided, we need

11    not infect Your Honor's courtroom with that dispute.

12              And I would just point out one important issue

13    here; that Mr. Wood and Mr. Boyle have not been appointed by

14    the lender.

15              The lender appointed an independent manager,

16    Mr. William Henric.  And those rights and the appointment

17    rights were, as I said, Your Honor, pursuant to the pledge

18    and the collateral assignment agreement.

19              And it is Mr. Henric that chose Mr. Wood and

20    Mr. Boyle to represent the interests of the entity that is

21    subject to that collateral pledge and assignment.

22              And as a consequence of that, this isn't just a

23    dispute where there is unity of interest between the

24    lender's counsel, namely our firm and Mr. Kiernan and

25    Mr. Wood and Mr. Boyle, there was an independent fiduciary

```
 1   that is making decisions as it relates to the mez borrower,

 2   and that's really where we are.

 3          So I think everyone gets a seat at the table until

 4   Mr. Ross goes to a court in New York and gets an order to

 5   say somehow that Mr. Wood and Mr. Boyle and Mr. Henric, who

 6   is the independent manager, are not acting in a court with

 7   the contractual loan documents signed by his client.

 8          THE COURT:  Mr. Scharf, can I interrupt you for a

 9   moment.

10          And I'm sure the answer is more complicated than

11   I'm anticipating, but I thought I heard you say that

12   whatever authority that you've just described by the lender

13   essentially to step into the shoes of the borrower is

14   triggered upon default.  And has that occurred?  Has there

15   been a default of the loan?

16          MR. SCHARF:  Yes, Your Honor.

17          THE COURT:  And that default has been noticed in

18   whatever way that the loan documents call for?

19          MR. SCHARF:  The loan has been in default since

20   2020.

21          THE COURT:  Okay.

22          MR. SCHARF:  The loan has been accelerated.

23          There was a mez foreclosure that had been

24   scheduled to go forward in January of this past year.  It

25   was postponed and temporarily canceled as a consequence of
```

1   the mez borrower acquiring the senior note as well.  So

2   that's why our client stands in the position of both senior

3   lender and mez lender.  And the exercise of the rights in

4   the defaulted situation are as I described them and as

5   detailed in our pleading, Your Honor.

6           THE COURT:  Okay.

7           And one last question on this topic.  We haven't

8   even gotten to what Ms. Lambert spent most of her

9   introduction on -- we're barely getting out of the gates

10  here.

11          What's your sense of what -- say I do think I've

12  got jurisdiction to deal with that issue, because I am

13  presented with the question of two defendants -- or two

14  defendants who claim to have -- two defendants, and I've got

15  two sets of counsel claiming to be representatives of those

16  defendants.  What's your sense of what it will take to

17  resolve that?  You know, Ms. Lambert has suggested it could

18  be long and drawn out and difficult, but Mr. Ross has said

19  otherwise.  What's your sense of that?

20          MR. SCHARF:  So if I may answer Your Honor's

21  question and then add on one additional practical point of

22  view.

23          So to answer Your Honor's question, I believe that

24  if Mr. Ross wanted to do something and this Court were to be

25  the place to entertain that, it shouldn't be brought by

 1   virtue of a motion to strike a pleading.  They should make a

 2   motion for some type of injunctive relief to bar the

 3   independent manager and Mr. Wood's firm from going forward.

 4   And I would think Your Honor would quickly determine that no

 5   injunction is necessary, because there is no likelihood of

 6   success on the merits.

 7         The practical point that I'd like to make to

 8   Your Honor is, in reviewing the pleading of the one that was

 9   put in by Mr. Wood and Mr. Boyle as well as by Mr. Ross,

10   there's good news in there, and that is there is not a

11   disunity in the positions that are being taken by those two

12   counsel.

13         Each counsel is contesting possession, the taking

14   authority, and the valuation.  But I think we would all

15   disagree with Ms. Lambert.  And if I may dovetail into the

16   point that was the second point I wanted to make.  I think

17   Ms. Lambert's concept that there are three parts, and trying

18   to disassociate possession from taking authority, is not

19   well-founded in the law.

20         There are significant issues that are both

21   legal -- mixed legal and factual issues -- as it relates to

22   whether or not the taking authority under which

23   Ms. Lambert's clients exercised its rights and filed its

24   declaration of taking was proper.  And due process and Black

25   letter law tells us that authority has to proceed or be

1   coterminous with the issue of possession.

2          And I would just point out that, as has been

3   pointed out in the pleadings, the issue of the need for the

4   public safety, the need for these projects that are being

5   used as a justification, both for the taking and the

6   immediacy on the need for possession, it is truly, as we've

7   said, pretextual.

8          The reason why I say that, Your Honor, is because

9   these projects, as Ms. Lambert pointed out, have been teed

10  up for a long time.  There has been nobody, whether it's

11  Mr. Henric or whether it's been Mr. Ross's clients, that

12  have acted to impede in any way, shape, or form those

13  projects from going forward.

14         In fact, one of the questions that we're going to

15  have to address in whether the taking was appropriate is

16  whether or not this affects in any way, shape, or form the

17  statutory predicate for there being a necessity for

18  inter-rail passenger transportation.  And if that's --

19         THE COURT:  Well, Mr. Scharf, if I could just

20  interrupt you, because we're now jumping many steps ahead --

21         MR. SCHARF:  Yes.

22         THE COURT:  -- in a sense from where I want to be

23  right now, because I'm just trying to figure out how to get

24  this off the ground.

25         Mr. Ross, you wanted to respond to Mr. Scharf on

1    the representation issue.

2             MR. ROSS:  Yeah, just very briefly, Your Honor.

3             Number one, you have the authority, and we'll

4    demonstrate that you have the authority, to decide this.

5             There is precedent for the issue of who speaks for

6    which party being decided in a condemnation of this kind.

7    So I don't think there's going to be any dispute, but

8    counsel will bring whatever authority they've got.

9             So it is properly before you.  It's a gating

10   issue.  I disagree with Mr. Scharf that the answers are

11   virtually identical or that they are so much identical that

12   there's no difference between them.  There are material

13   differences between them.

14            But more importantly, the documents -- Your Honor

15   is clearly capable of reading clear and unambiguous

16   provisions in documents and making a determination on that

17   basis.

18            The idea that we have been in default since 2020

19   has no bearing on the fact of this condemnation, because no

20   remedies had been exercised at the moment the property was

21   taken.  As a result, the rights of the parties regarding

22   what happens in a condemnation is set forth in the

23   respective credit agreements.  It gives my client the right

24   to control the process, it gives the lender the opportunity

25   to be consulted, and the right to approve any ultimate

```
 1   resolution.  It does not give them the right to contest the

 2   taking in their capacity as lender.

 3           So there are fundamental issues, you can decide

 4   them, we don't need to go to a New York court, I

 5   respectfully disagree with Mr. Scharf.  He and his clients

 6   are acting through -- Mr. Wood and Mr. Boyle can take

 7   whatever position they like.  But it won't hold up the case,

 8   it's on the documents themselves, it does not require or

 9   should not require discovery.  We are not looking for any

10   delay.  It can proceed in parallel with whatever Ms. Lambert

11   is trying to do.

12           Though I do agree with Mr. Scharf that the --

13           THE COURT:  Let me ask you this, Mr. Ross, and I

14   guess I'll pose the same question, I think, to Mr. Wood and

15   Mr. Boyle:  If we were to proceed in parallel, with both

16   trying to resolve the issue of representation and teeing up

17   the issues in whatever form and structure they need to be

18   teed up in preliminarily, whether it's two steps or three

19   steps, whatever the case may be, it sounds like, at least at

20   the outset, the parties are agreed that there is something

21   that can be filed and that needs to be filed as -- and

22   decided as a legal matter without the need for discovery.

23   I think I'm hearing everybody agree to that on the merits.

24   Maybe I'm overly optimistic about that, but that's what I'm

25   hearing.
```

1          That, look, I'm not at all interested in getting

2    another set of briefs; I'd like to get one set of briefs

3    from one counsel.  And whether there would be any prospect

4    of Mr. Ross's firm working with Mr. Wood and Mr. Boyle's

5    firm at least until this representation issue gets resolved,

6    than working on the other track.

7          MR. ROSS:  Your Honor, the problem with that,

8    though I understand it and we're not looking to add to your

9    burden, the problem with it is --

10          THE COURT:  I've got lots of burdens, Mr. Ross.

11          MR. ROSS:  -- it is, maybe to pick on a word

12    Mr. Scharf used, but I'm not accusing anybody of wrongdoing.

13          But I might, from my client's position, they were

14    flying the 747 called Union Station with all of its

15    complexity, all of the aspects of it, between the train part

16    of it, transportation hub, the office space, the commercial

17    space, the entirety, and they've been doing it for 15 years.

18    The lender has come in like a hijacker and thrown them out

19    of the pilot seat and said, we now drive this 747, you have

20    nothing, get out, we're throwing you out with a parachute or

21    not.

22          So it's more than just filing papers

23    cooperatively, it has to do with who has the right to speak

24    for the entity that is the owner whose rights at the moment

25    of condemnation were in dispute --

1           THE COURT:  No, no.

2           MR. ROSS:  -- with the pilot.

3           THE COURT:  I get all that, Mr. Ross.  I'm just

4    trying to see whether it's really feasible to move on

5    parallel tracks.

6           MR. ROSS:  I think it is, Your Honor.  It's only a

7    matter of an extra set of papers.  That's what I think.

8           THE COURT:  All right.  We'll see.

9           All right.  Ms. Lambert and then Mr. Scharf and

10   then we'll figure out what we're going to do next.

11          MS. LAMBERT:  Your Honor, I just think that I want

12   to address Mr. Scharf, who so adamantly said that there are

13   due-process concerns and all these other issues.

14          I've looked at the law, I can brief the law today.

15   I believe Mr. Scharf is wrong.

16          But, frankly, that's what briefing papers are for.

17   So that if we file a motion for possession, which we intend

18   to do, Your Honor, then it's a question of what opposition

19   the parties want to put in.

20          I don't see that it's for you to decide today

21   whether possession and authority are ripe, Your Honor.

22          THE COURT:  No, no, I'm not trying to decide any

23   of that today.  I want to come out of this hearing with a

24   concrete sense of where we're going to go and what it's

25   going to entail.

1          MS. LAMBERT:  As do we, Your Honor.

2          So what we're suggesting is something rather

3    simple.  We're not going to get involved -- and I don't

4    think we're going to get involved in the fight between the

5    other parties.

6          But in terms of the possession that what we are

7    saying is we are intending to file on, we'd like to file one

8    soon and we'd like to set up a briefing schedule.  And that

9    whatever oppositions, procedural or substantive, anybody

10   has, that we have one and move forward.  And we suggested

11   just kind of -- that we suggested 30 days, 30 days, 15

12   days -- or 20 days, something like that.  That would at

13   least move the case forward.

14         I think I'm right --

15         THE COURT:  Okay.

16         MS. LAMBERT:  -- Mr. Scharf thinks he's right.

17   Your Honor will decide who's right.

18         THE COURT:  Well, maybe it will be me, maybe it

19   will be somebody else at a higher court, but we'll see about

20   that.

21         Mr. Scharf, let me just hear from you and then

22   we'll figure out what we're going to do next.

23         MR. SCHARF:  Thank you, Your Honor.  I have two

24   brief points.

25         First I'll address Ms. Lambert since it was the

 1   most recent one.  And that is, I think Your Honor should
 2   first decide whether or not possession, taking authority, as
 3   a legal matter, are inextricably intertwined and need to be
 4   decided together so that we are not briefing all of the
 5   entirety of taking authority as part of the possession
 6   issue.  Just a suggestion.
 7           And I think we need to -- if Ms. Lambert believes,
 8   as I do, that it has to be the first issue in the case, then
 9   we should decide, does it need to be the first issue in the
10   case without having to do full-blown briefing without
11   discovery and for me to have to say, Judge, but I need
12   discovery on taking authority and here's the discovery that
13   I need or here are the mixed issues of fact and law, here
14   are my fact issues, and here are the legal issues.  So that
15   is just a practical suggestion that I'd like to make.
16           I can't help but have to address this concept of
17   highjacking.  It's not the right analogy.  This is a
18   situation where the more apt analogy was, the airline was
19   taken over by contract, merger, consolidation.  New
20   management came in with rights and powers that were granted.
21   And the pilots union came in and said, new pilots are flying
22   the plane.  It is -- you know, them's fighting words, as
23   they say, and what Mr. Ross said, and I don't see a need for
24   us to fight about it before Your Honor right now, but I
25   would be remiss if I didn't address that comment.

1          MS. LAMBERT:  Your Honor, I think I have a

2     proposal that might get us a little bit farther down the

3     road.  May I make it, Your Honor?

4          THE COURT:  I'm happy to hear about anything

5     that'll move us forward, yes.

6          MS. LAMBERT:  Yeah.

7          There's a procedure -- this would not be a summary

8     judgment procedure, this would be a motion for possession.

9     But as you know, Your Honor, I know you're familiar with

10    summary judgment procedure.

11         There is a procedure in summary judgment where

12    there can be an affidavit of counsel that says, we can't

13    respond to this motion for summary judgment because we need

14    additional discovery and here's what we need it on.

15         I think that in the response to the motion for

16    possession that we file, if they think that there are --

17    that there's an issue with respect to that, they could

18    follow that type of procedure, the Court could set that up.

19    And if there was a particular -- if they -- they might read

20    our papers and go, it's really a legal point and we're going

21    to attack the legal point, or they say it's a legal point

22    and we need some discovery.

23         But then we would be dealing with it in a concrete

24    way and not the abstract.  And so I think that would deal

25    with Mr. Scharf's concerns and would deal with our concerns

1    about moving it forward.  So that if we file it, they

2    respond.  If there's a particular need for discovery, that

3    they file something akin to the summary judgment affidavit

4    and that that would be -- and then we'd have a reply and

5    that we proceed in that manner.

6              THE COURT:  Okay.

7              Let me just hear from Mr. Wood or Mr. Boyle,

8    I think they've got their hand up or a hand up.  Now

9    everybody has got their hand up.

10             MR. BOYLE:  I'll be very brief, Your Honor.

11             The way we see this dispute, it's a contractual

12   dispute between the lender and the borrower that is

13   determined, as Mr. Ross says, based on contracts.  Those

14   contracts contain venue provisions that say, as a matter of

15   contract, these types of issues must be decided in the state

16   or federal courts in New York.  The new provisions are

17   regularly enforced.  And this was negotiated and this -- it

18   should be in New York.

19             But regardless of where it is, the key here is,

20   did they have the right to remove, did the lender have the

21   right to remove, and did they do it properly.

22             Our authority and I'm talking about our, I mean,

23   Neuberger and Quinn's authority, is based on those notices

24   and the documents.

25             We've reviewed the notices and the documents.

1    We are satisfied that we have authority.  That issue is a

2    contract dispute that, quite frankly, we are not a part of,

3    between the lender and the borrower, that, we agree with

4    Your Honor, needs to be resolved to decide who's in control.

5              We don't even see the argument that Mr. Ross was

6    making.  He sent us a notice that just conclusory said, I'm

7    right, you're wrong, you don't have authority.  Not helpful.

8    We don't know what their legal argument is.  We don't see

9    it.  The documents say they have a right to do it.  They did

10   it.  And our client, Mr. Hendric, is now the manager, and he

11   has retained us to represent USI.  That's where we are,

12   Your Honor.  Thank you.

13             THE COURT:  All right.

14             Look, here's what I think we're going to do; that

15   I'm going to, in some sense, turn this back over to you all.

16             But I actually think what Ms. Lambert has proposed

17   at least is a sensible first step on the merits; that is,

18   you know, Amtrak will move for possession in whatever form

19   they think that is, a quick-take, whatever one might

20   envision that to be from Amtrak's perspective.

21             The defendants will then have an opportunity to

22   respond and say, look, she's wrong about this, it's not as

23   simple as she'd like it to be -- make it seem.  Not only is

24   she wrong on the law, these are the additional facts that

25   we're going to need to resolve this issue.  And if it's tied

1    up in the larger question of authority, you know, you can

2    make that argument, too.

3              I would prefer, I would very much prefer that

4    briefing to be on a track that's a little bit longer than

5    the need to resolve this issue with respect to counsel.

6    I mean, I have just got to get to the bottom of who is

7    representing Union Station and Union Station Investco.

8    I cannot go forward without making that decision.

9              Now, if the answer is, Judge, you don't have the

10   authority, this has got to be taken care of in New York

11   State Court, I'd rather resolve that sooner rather than

12   later.  I've got two defendants in front of me and two

13   different lawyers are claiming to speak on behalf of those

14   defendants and I have to resolve it.  And, again, if the

15   resolution is go to New York, you know, I'll make that

16   argument.  But I've got to resolve that issue and it needs

17   to be resolved quickly and expeditiously.

18             So, you know, I think -- what I'm going to suggest

19   is as follows; that that issue you all get back to me -- I'd

20   like it all to be briefed within the next three weeks so

21   that I can resolve that in short order, as quickly as that

22   is feasible.

23             And then I'm going to ask Ms. Lambert and the rest

24   of you to come up with a schedule on the merits that's a

25   little bit longer in time, but one that will allow me to

1  make a decision on representations so that the opposition is

2  filed by one set of counsel that's speaking on behalf of the

3  two defendants, Union Station Investco, and Union Station

4  Sole Member, okay?

5          MS. LAMBERT:  Your Honor, I agree with that, but

6  how about we do 45 days for a motion, 45 days for a reply

7  and then -- I mean, and something --

8          THE COURT:  Ms. Lambert, I'm going to leave the

9  details to you all in the first instance.  If you can't come

10  up with a schedule, because I don't know what your

11  individual schedules are, and my schedule is a mess, you

12  know, let's have you all at least meet and confer in the

13  first instance and see if you can come up with something

14  that's consistent with the parameters that we've just talked

15  about, okay?

16          MS. LAMBERT:  Can I ask you one question,

17  Your Honor?

18          THE COURT:  Of course.

19          MS. LAMBERT:  In terms of -- I'm trying to be

20  cognizant of fitting in your schedule, and that's why I was

21  jumping the gun a little bit, and I apologize.

22          THE COURT:  No.  That's okay.

23          MS. LAMBERT:  In terms of if that other dispute is

24  briefed within three weeks like you're asking, are you

25  thinking about three weeks or a month that you would then

 1  take to resolve it?  So I'm just trying to figure in your

 2  schedule.  I know that it's hard to say, but you did kind of

 3  want to deal with it seriatim a little bit.

 4          THE COURT:  Look, it's always dangerous to make

 5  commitments about when I'm going to be able to resolve

 6  things.

 7          MS. LAMBERT:  Understood.

 8          THE COURT:  But I will do the best I can, being

 9  mindful of the other track, with an eye toward ensuring that

10  the opposition is -- well, that the issue of counsel is

11  resolved before the opposition date comes to pass.

12          And like I said, if you all think you've got to go

13  to New York State Court to resolve this, maybe one of you

14  all ought to go do that now.  But the bottom line is -- or

15  ask a New York state judge whether he or she has primary

16  jurisdiction over this question.

17          But bottom line for me is, I've got to resolve

18  this question of representation, it needs to be done soon

19  and quickly.  And then it ought to then get resolved in a

20  way that makes sure that the opposition date for your

21  motion, for Ms. Lambert, is filed by the counsel I conclude

22  is the right counsel to be involved in the case.

23          MS. LAMBERT:  Thank you, Your Honor.

24          May I ask that you have an order that we get back

25  to you within two weeks?  I think that if we don't have a

1    deadline --

2           THE COURT:  I'm going to set that deadline in a

3    moment.

4           MS. LAMBERT:  Thank you.

5           Mr. Ross.

6           MR. ROSS:  Your Honor, what you propose is

7    acceptable and, I think, wise.  Thank you.

8           THE COURT:  Okay.  Well, that's always nice to

9    hear.

10          Mr. Scharf, any last comments from you?

11          MR. SCHARF:  No, Your Honor.

12          I would just ask my co-counsel, Mr. Kiernan, if he

13   had anything that he wanted to add that I may have missed.

14          MR. KIERNAN:  No, thank you.

15          THE COURT:  Okay.

16          All right.  Look, I'm going to ask you all to get

17   back to me by the 31st of May.  Meet and confer over the

18   next couple of days and then propose a schedule by the 31st.

19   If you cannot agree on one, that is, on either track, lay

20   out what your respective proposals are, and I will make a

21   decision if you can't reach agreement, okay?

22          I will say the following, just be mindful of the

23   following in terms of what you all are thinking in terms of

24   timing with my schedule.  Once the end of July rolls around,

25   I am in back-to-back trials, I think -- no, I've got one

 1   trial at the end of July.  So there's a week of the 11th

 2   where I can actually have a little bit of wiggle room, but

 3   the following week I'll be in trial.  The last week in July,

 4   I've got some wiggle room.  And then, you know, August

 5   really is a wash by and large.

 6          And then just to be mindful of the following,

 7   which is, I am essentially in trial the entire month of

 8   September, assuming all those cases go, with the exception

 9   of the week of the 12th, and I'm on duty at the Foreign

10   Intelligence Court that week.  And the trial that's supposed

11   to start at the end of the month is set to last through the

12   end of October.  So, you know, you all unfortunately have

13   drawn a judge who's got a fair amount going on in the second

14   half of the year.  So just be mindful of that in terms of

15   setting your schedules and your expectations, okay?

16          MS. LAMBERT:  Thank you, Your Honor.

17          MR. SCHARF:  Thank you, Your Honor.

18          THE COURT:  Thank you, all.  We'll look forward to

19   hearing from you on Tuesday.  Thanks, everybody.

20          (Proceedings concluded at 3:25 p.m.)

21

22

23

24

25

C E R T I F I C A T E

        I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

        Please note:  This hearing occurred during the COVID-19 pandemic and is therefore subject to the technological limitations of court reporting remotely.

Date:__June 1, 2022_____   

        William P. Zaremba, RMR, CRR

COURTROOM
DEPUTY: [1] 3/2
MR. BOYLE: [1] 30/10
MR. KIERNAN: [1]
35/14
MR. ROSS: [13] 6/8
9/20 9/22 11/4 11/8
12/19 13/17 23/2 25/7
25/11 26/2 26/6 35/6
MR. SCHARF: [11]
16/21 18/5 18/9 19/16
19/19 19/22 20/20
22/21 27/23 35/11
36/17
MS. LAMBERT: [23]
4/16 6/24 8/19 14/15
14/20 14/25 15/14
15/18 15/24 16/12
26/11 27/1 27/16 29/1
29/6 33/5 33/16 33/19
33/23 34/7 34/23 35/4
36/16
THE COURT: [46]

$
$200 [2] 13/2 13/3
$200 million [1] 13/2

0
01043 [1] 1/4

1
10019 [1] 1/17
10022 [1] 2/4
1043 [1] 3/3
11th [1] 36/1
12th [1] 36/9
15 [3] 10/5 25/17 27/11
1633 [1] 1/17
1700 [1] 1/18
19 [1] 37/6

2
20 [1] 27/12
20001 [1] 2/9
2007 [1] 3/7
202 [1] 2/10
2020 [2] 19/20 23/18
2022 [1] 1/5 37/10
212 [2] 1/18 2/4
21202 [1] 1/22
21204 [1] 1/14
22-01043 [1] 1/4
22-1043 [1] 3/3
25 [1] 3/6
26 [1] 1/5
27th [1] 1/22
2:30 [1] 1/6

3
30 days [2] 27/11
27/11
31st [2] 35/17 35/18
3249 [1] 2/10
332-8523 [1] 1/23
333 [1] 2/9
339-6759 [1] 1/14

3:25 [1] 36/20

4
410 [2] 1/14 1/23
45 [2] 33/6 33/6

5
500 [1] 1/13
506-1700 [1] 1/18

6
6759 [1] 1/14

7
735-8604 [1] 2/4
747 [2] 25/14 25/19

8
8523 [1] 1/23
8604 [1] 2/4

9
901 [1] 1/13
909 [1] 2/3

A
able [4] 11/22 14/5
17/22 34/5
about [15] 11/22 13/24
15/4 16/14 24/24 27/19
28/24 29/4 30/1 30/22
31/22 33/6 33/15 33/25
34/5
above [2] 13/3 37/4
above-titled [1] 37/4
abstract [1] 29/24
accelerated [1] 19/22
acceptable [1] 35/7
accordingly [1] 4/13
accusing [1] 25/12
acquired [1] 10/15
acquiring [1] 20/1
act [1] 10/22
acted [1] 22/12
acting [1] 19/6 24/6
action [3] 3/3 17/20
18/4
acts [1] 10/16
actual [1] 7/1
actually [3] 11/11
31/16 36/2
adamantly [1] 26/12
add [3] 20/21 25/8
35/13
additional [3] 20/21
29/14 31/24
address [8] 10/3 14/15
16/22 22/15 26/12
27/25 28/16 28/25
affects [1] 22/16
affidavit [2] 29/12 30/3
affirmance [1] 7/2
after [4] 5/21 5/23 7/11
11/19
afternoon [4] 3/2 3/15
3/18 9/22
again [2] 15/19 32/14
agent [1] 12/3

agree [7] 4/6 4/6 20/10
24/12 24/23 31/3 33/5
35/19
agreed [1] 24/20
agreement [3] 17/14
18/18 35/21
agreements [2] 13/5
23/23
ahead [3] 8/21 14/22
22/20
aided [1] 2/11
airline [1] 28/18
akin [1] 30/3
al [2] 1/6 3/8
all [32] 4/4 4/8 4/11
9/16 9/18 12/13 14/18
15/25 18/7 21/14 25/1
25/14 25/15 26/3 26/8
26/9 26/13 28/4 31/13
31/15 32/19 32/20 33/9
33/12 34/12 34/14
35/16 35/16 35/23 36/8
36/12 36/18
All right [1] 26/9
allow [5] 8/16 8/23 9/7
16/22 32/25
allowed [2] 5/19 15/25
allows [1] 5/24
along [1] 3/23
already [1] 8/9
also [3] 3/12 6/10 9/24
always [2] 34/4 35/8
am [3] 20/12 35/25
36/7
AMIT [1] 1/9
amount [1] 36/13
AMTRAK [12] 1/3 3/4
4/17 5/2 5/19 8/3 8/13
8/16 8/16 9/7 13/15
31/18
Amtrak's [4] 4/25 15/4
16/1 31/20
analogy [2] 28/17
28/18
another [1] 12/14 25/2
answer [11] 10/17
10/18 10/20 11/6 11/7
11/17 14/4 19/10 20/20
20/23 32/9
answers [5] 5/17 11/1
11/3 16/10 23/10
anticipating [2] 6/22
19/11
any [18] 4/10 4/19 5/8
6/21 7/21 8/24 9/14
13/7 13/8 18/2 22/12
22/16 23/7 23/25 24/9
25/3 26/22 35/10
anybody [2] 25/12 27/9
anything [2] 24/9
35/13
apart [1] 13/4
apologize [1] 33/21
appeals [1] 9/14
APPEARANCES [2]
1/11 2/1
appearing [1] 14/13
appointed [1] 18/13

appointment [1] 18/16
appraisers [1] 5/25
appreciate [2] 14/18
18/8
appropriate [1] 22/15
approve [1] 23/25
apt [1] 28/18
are [42]
area [1] 9/9
Arent [1] 9/24
argument [5] 8/24 31/5
31/8 32/2 32/16
arises [1] 11/14
arms [1] 3/22
around [3] 3/22 11/20
35/24
as [57]
aside [1] 10/1
ask [9] 4/9 8/12 24/13
32/23 33/16 34/15
34/24 35/12 35/16
asking [1] 33/24
aspects [1] 25/15
assignment [3] 3/5
18/18 18/21
assuming [3] 12/24
14/6 36/8
Assumption [1] 3/6
attack [1] 29/21
attacks [1] 16/1
August [5] 5/13 13/24
36/4
authority [35] 4/20
5/15 6/19 7/1 7/16 7/16
7/17 9/8 9/13 11/25
12/5 12/16 12/22 12/25
13/14 15/16 16/2 19/12
21/14 21/18 21/22
21/25 23/3 23/4 23/8
26/21 28/2 28/5 28/12
30/22 30/23 31/1 31/7
32/1 32/10
authorized [1] 11/7
available [1] 3/18
Avenue [2] 2/3 2/9
awarded [1] 13/2

B
back [7] 11/21 31/15
32/19 34/24 35/17
35/25 35/25
Baltimore [1] 1/22
bank [7] 2/2 3/14 10/16
12/1 12/3 12/18 16/9
bar [1] 21/2
barely [1] 20/9
Barrett [1] 2/8
based [3] 6/19 30/13
30/23
basis [1] 23/17
be [88]
bearing [1] 23/19
because [17] 6/3 6/9
6/10 7/15 9/10 11/14
13/15 15/18 16/14
20/12 21/5 22/8 22/20
22/23 23/19 29/13

been [17] 3/20 9/2 15/2
16/20 18/13 19/15
19/17 19/19 19/22
19/23 22/2 22/9 22/10
22/11 23/18 23/20
25/17
before [9] 1/9 3/23 7/1
11/19 13/14 14/9 23/9
28/24 34/11
behalf [11] 3/12 3/14
4/17 10/20 11/5 11/10
12/17 13/25 14/7 32/13
33/2
behind [1] 8/3
being [8] 3/18 21/11
22/4 22/17 23/6 34/8
believe [3] 13/21 20/23
26/15
believes [3] 13/1 17/11
28/7
belongs [1] 17/9
BENSON [1] 1/16
best [1] 34/8
between [13] 12/4 15/5
16/23 17/9 18/2 18/5
18/23 23/12 23/13
25/15 27/4 30/12 31/3
beyond [1] 12/24
bifurcated [2] 15/9
16/14
bit [7] 14/23 29/2 32/4
32/25 33/21 34/3 36/2
Black [1] 21/24
blown [1] 28/10
bmb [1] 1/24
borrower [14] 16/23
17/10 17/16 17/19 18/3
18/5 19/1 19/13 20/1
30/12 31/3
both [6] 11/11 12/17
20/2 21/20 22/5 24/15
bottom [3] 32/6 34/14
34/17
Boyle [10] 1/20 3/12
18/13 18/20 18/25 19/5
21/9 24/6 24/15 30/7
Boyle's [1] 25/4
Brian [2] 1/20 3/12
brief [9] 5/12 5/13 5/13
11/17 12/7 14/24 26/14
27/24 30/10
briefed [7] 13/24 14/5
14/8 14/10 16/17 32/20
33/24
briefing [11] 4/7 4/25
11/20 11/23 13/18
13/21 26/16 27/8 28/4
28/10 32/4
briefly [1] 23/2
briefs [1] 25/2 25/2
bring [2] 17/20 23/8
broad [1] 8/22
Broadway [1] 1/17
brought [1] 20/25
burden [1] 25/9
burdens [1] 25/10
business [2] 3/4 8/3

**C**

call [3]  10/4 11/19
19/18
called [3]  10/7 10/8
25/14
came [2]  28/20 28/21
can [26]  4/12 6/25 7/3
7/11 8/2 8/12 9/3 12/10
15/9 15/14 16/1 17/8
17/25 19/8 24/3 24/6
24/10 24/21 26/14
29/12 32/1 32/21 33/13
33/16 34/8 36/2
can't [6]  7/10 15/12
28/16 29/12 33/9 35/21
canceled [1]  19/25
candid [1]  3/24
cannot [2]  32/8 35/19
capable [1]  23/15
capacity [2]  12/2 24/2
caption [1]  3/17
care [1]  32/10
case [21]  3/16 3/25 4/5
4/12 4/17 4/18 6/2
10/18 12/23 13/3 13/11
15/8 15/22 17/4 17/6
24/7 24/19 27/13 28/8
28/10 34/22
cases [3]  7/2 7/5 36/8
certainly [5]  4/1 4/24
15/9 16/4 16/12
Certified [1]  2/7
certify [1]  37/2
CH [1]  2/8
chance [2]  14/6 14/8
chomping [1]  14/23
chose [1]  18/19
Civil [1]  3/3
claim [1]  20/14
claiming [3]  15/12
20/15 32/13
clarity [1]  11/24
clear [6]  4/8 8/14 12/1
17/12 18/1 23/15
clearly [2]  17/3 23/15
client [11]  10/5 10/10
10/13 13/1 13/25 14/7
15/12 19/7 20/2 23/23
31/10
client's [1]  25/13
clients [5]  10/19 12/16
21/23 22/11 24/5
co [1]  35/12
co-counsel [1]  35/12
cognizant [1]  33/20
COHEN [1]  2/3
collateral [2]  18/18
18/21
colleagues [1]  4/2
colloquial [1]  5/8
COLUMBIA [1]  1/1
come [5]  25/18 26/23
32/24 33/9 33/13
comes [2]  5/23 34/11
comment [1]  28/25
comments [1]  35/10
commercial [1]  25/16
commitments [1]  34/5
complete [1]  18/13
complexity [1]  25/15
complicated [2]  15/2
19/10
computer [1]  2/11
computer-aided [1]
2/11
concept [2]  21/17
28/16
concern [1]  16/18
concerns [3]  26/13
29/25 29/25
conclude [1]  34/21
concluded [1]  36/20
conclusory [1]  31/6
concrete [2]  26/24
29/23
condemnation [16]
4/19 10/10 10/12 10/15
11/16 12/6 12/23 12/24
13/10 15/3 15/8 15/22
23/6 23/19 23/22 25/25
conditions [2]  8/20 9/1
confer [2]  33/12 35/17
CONFERENCE [1]  1/9
Congress [1]  9/11
consequence [2]
18/22 19/25
consistent [1]  33/14
consolidation [1]
28/19
Constitution [1]  2/9
consulted [1]  23/25
contain [1]  30/14
contemplating [1]
13/22
contest [1]  24/1
contesting [1]  21/13
context [1]  6/10
CONTINUED [1]  2/1
contract [2]  28/19
30/15 31/2
contracts [2]  30/13
30/14
contractual [3]  17/13
19/7 30/11
control [4]  11/15 17/16
23/24 31/4
Cooper's [1]  8/4
cooperate [1]  14/6
cooperatively [1]
25/23
Corporation [1]  3/4
correct [1]  37/3
coterminous [1]  22/1
could [10]  5/5 5/14
6/13 8/21 14/8 16/17
20/17 22/19 29/17
29/18
counsel [20]  9/19 9/25
11/9 11/22 12/17 14/6
16/5 18/24 20/15 21/12
21/13 23/8 25/3 29/12
32/5 33/2 34/10 34/21
34/22 35/12
couple [3]  4/24 6/14
35/18
course [2]  13/11 33/18
court [25]  1/1 1/12 1/14
4/23 5/14 6/25 7/3 7/12
8/23 8/25 15/7 15/21
17/20 19/4 19/6 20/24
24/4 27/19 29/18 32/11
34/13 36/10 37/7
courtroom [1]  18/11
courts [1]  30/16
COVID [1]  37/6
COVID-19 [1]  37/6
credit [1]  23/23
crops [2]  7/10 7/11
CRR [2]  37/2 37/11
CV [1]  1/4

**D**

D.C [2]  1/5 2/9
dangerous [1]  34/4
Daniel [1]  9/23
date [3]  34/11 34/20
37/10
David [5]  1/16 2/2 3/10
3/14 9/23
day [1]  4/6
days [7]  27/11 27/11
27/12 27/12 33/6 33/6
35/18
deadline [2]  35/1 35/2
deal [5]  3/25 20/12
29/24 29/25 34/3
dealing [6]  4/18 9/4 9/5
9/5 17/23 29/23
debt [1]  13/3
decide [12]  13/20 14/9
15/8 15/21 23/4 24/3
26/20 26/22 27/17 28/2
28/9 31/4
decided [9]  14/10 17/8
17/8 17/9 18/10 23/6
24/22 28/4 30/15
decision [5]  8/4 11/24
32/8 33/1 35/21
decisions [4]  4/12 8/3
17/17 19/1
declaration [2]  7/6
21/24
deemed [1]  3/20
default [6]  17/15 19/14
19/15 19/17 19/19
23/18
defaulted [1]  20/4
defendant [4]  1/16 2/2
3/13 10/18
defendants [19]  1/7
3/10 4/15 6/5 6/11 11/6
12/18 15/25 16/6 16/8
16/10 20/13 20/14
20/14 20/16 31/21
32/12 32/14 33/3
defense [1]  9/18
delay [1]  24/10
demonstrate [1]  23/4
deposited [1]  7/6
deposition [1]  7/22
described [3]  3/7
19/12 20/4
detailed [1]  20/5
details [1]  33/9
determine [1]  21/4
determined [1]  30/13
did [5]  30/20 30/20
30/21 31/9 34/2
didn't [3]  7/12 18/8
28/25
difference [1]  23/12
differences [1]  23/13
different [4]  5/17 6/18
7/16 32/13
difficult [2]  8/10 20/18
directly [1]  14/5
disagree [3]  21/15
23/10 24/5
disassociate [1]  21/18
discovery [8]  4/9 4/9
5/16 5/18 5/21 5/25 6/6
6/22 7/19 8/7 8/8 8/10
16/15 16/15 24/9 24/22
28/11 28/12 28/12
29/14 29/22 30/2
discretion [1]  9/1
discussed [1]  10/3
dispute [16]  11/15 12/4
15/1 16/23 17/5 17/9
18/2 18/5 18/11 18/23
23/7 25/25 30/11 30/12
31/2 33/23
disputes [2]  5/16 17/2
district [4]  1/1 1/1 1/10
4/2
disunity [1]  21/11
do [30]  5/5 5/9 8/16
8/21 8/21 9/2 9/7 12/9
13/25 14/4 14/11 17/11
18/2 20/11 20/24 24/11
24/12 25/23 26/10
26/18 27/1 27/22 28/8
28/10 30/21 31/9 31/14
33/6 34/8 34/14
do you [1]  9/7
document [1]  17/11
documents [10]  12/5
17/1 19/7 19/18 23/14
23/16 24/8 30/24 30/25
31/9
does [7]  12/16 13/23
16/12 17/8 24/1 24/8
28/9
doesn't [2]  17/5 17/7
doing [2]  3/4 25/17
don't [25]  4/1 4/14 6/3
9/12 9/18 12/13 12/19
13/8 13/19 14/21 15/3
15/11 15/15 23/7 24/4
26/20 27/3 28/23 31/5
31/7 31/8 31/8 32/9
33/10 34/25
done [3]  17/18 17/18
34/18
dovetail [1]  21/15
down [2]  31/9 29/2
drawn [2]  20/18 36/13
drive [1]  25/19
dross [1]  1/18
dscharf [1]  2/5
due [2]  21/24 26/13
due-process [1]  26/13
Dulaney [1]  1/13
during [1]  37/5
duty [1]  36/9

**E**

Each [1]  21/13
early [1]  5/20
educate [1]  8/15
effectively [1]  7/14
either [2]  6/20 35/19
else [1]  32/10
email [6]  1/15 1/18
1/23 1/24 2/5 11/20
end [4]  35/24 36/1
36/11 36/12
enforced [1]  30/17
enough [1]  5/10
ensuring [1]  34/9
entail [1]  26/25
entertain [1]  20/25
entire [2]  18/3 36/7
entirety [2]  25/17 28/5
entities [2]  10/20 15/1
entity [6]  10/6 10/23
11/12 11/13 18/20
25/24
envision [1]  31/20
envisioning [1]  13/13
equipment [1]  8/21
essentially [2]  19/13
36/7
et [2]  1/6 3/8
evaluate [1]  14/9
even [6]  12/6 12/20
12/25 15/7 20/8 31/5
event [2]  4/10 13/7
every [1]  15/25
everybody [8]  3/21 4/3
4/11 5/10 14/9 14/19 24/23
30/9 36/19
everyone [2]  3/15 19/3
everything [1]  16/18
evidentiary [1]  6/23
example [2]  7/8 8/2
exception [1]  36/8
excess [1]  13/2
exchange [1]  5/24
excuse [1]  14/12
exercise [2]  17/16 20/3
exercised [3]  17/12
21/23 23/20
expect [1]  4/4
expectations [1]  36/15
expedition [1]  13/23
expeditiously [1]
32/17
experience [1]  11/8
explain [2]  6/10 9/4
extent [1]  5/12
extra [2]  14/12 26/7
eye [1]  34/9

**F**

fact [4]  22/14 23/19
28/13 28/14
facts [1]  31/24

**F**

factual [3]  6/21 6/21 21/21
fair [1]  36/13
fairly [2]  4/24 5/9
familiar [1]  29/9
far [1]  3/23
farmers [2]  7/9 7/10
farther [2]  9/2
fast [1]  13/15
fast-track [1]  13/15
faster [1]  13/21
feasible [2]  26/4 32/22
federal [2]  12/6 30/16
fellow [1]  11/21
fiduciary [1]  18/25
field [1]  7/10
fight [2]  27/4 28/24
fighting [1]  28/22
figure [6]  3/16 12/14 22/23 26/10 27/22 34/1
file [9]  5/12 12/8 16/1 26/17 27/7 27/7 29/16 30/1 30/3
filed [12]  4/6 4/6 7/5 10/17 10/18 10/20 11/18 21/23 24/21 24/21 33/2 34/21
filing [1]  25/22
fine [1]  16/3
firm [11]  9/23 9/25 10/19 10/19 10/25 11/12 11/18 18/24 21/3 25/4 25/5
first [15]  6/24 8/6 8/12 11/6 11/7 11/8 15/24 16/22 27/25 28/2 28/8 28/9 31/17 33/9 33/13
fitting [1]  33/20
Floor [1]  1/22
flying [2]  25/14 28/21
follow [2]  6/14 29/18
following [4]  35/22 35/23 36/3 36/6
follows [1]  32/19
foreclosure [1]  19/23
foregoing [1]  37/3
Foreign [1]  36/9
form [4]  22/12 22/16 24/17 31/18
forth [2]  9/8 23/22
forward [13]  3/17 4/5 9/6 9/8 19/24 21/3 30/1 32/8 36/18
founded [1]  21/19
Fox [1]  9/24
frankly [3]  4/1 26/16 31/2
front [1]  32/12
full [2]  8/23 28/10
full-blown [1]  28/10
fuller [1]  7/18
fully [2]  14/5 14/8
fundamental [1]  24/3
funding [1]  9/5
future [1]  4/23

**G**

gates [1]  20/9
gating [2]  10/4 23/9
get [28]  3/21 3/22 3/22 4/3 4/4 4/10 7/11 9/13 13/13 14/6 14/12 14/19 16/19 17/9 17/12 17/22 22/23 25/2 25/20 26/3 27/3 27/4 29/2 32/6 32/19 34/19 34/24 35/16
gets [5]  15/20 15/20 19/3 19/4 25/5
getting [3]  5/19 20/9 25/1
GIBBER [1]  1/21
GIELEN [1]  1/20
give [7]  4/11 5/5 5/10 7/8 7/12 8/22 24/1
gives [2]  23/23 23/24
glad [1]  14/1
go [14]  8/2 8/21 9/8 14/22 17/20 19/24 24/4 26/24 29/20 32/8 32/15 34/12 34/14 36/8
go ahead [1]  8/21
goes [1]  19/4
going [36]  4/5 4/8 5/16 5/18 6/25 7/18 7/24 8/1 8/9 12/4 12/15 14/17 15/2 16/4 16/5 21/3 22/13 22/14 23/7 26/10 26/24 26/25 27/3 27/4 27/22 29/20 31/14 31/15 31/25 32/18 32/23 33/8 34/5 35/2 35/16 36/13
good [6]  3/2 3/15 3/21 9/11 9/22 21/10
got [21]  3/16 11/3 12/17 15/11 16/7 16/10 20/12 20/14 23/8 25/10 30/8 30/9 32/6 32/10 32/12 32/16 34/12 34/17 35/25 36/4 36/13
gotten [1]  20/8
granted [7]  8/13 8/14 17/13 17/13 17/14 17/19 28/20
ground [1]  22/24
guess [2]  6/17 24/14
gun [1]  33/21

**H**

had [10]  3/19 3/19 3/25 5/11 10/13 10/15 12/8 19/23 23/20 35/13
half [1]  36/14
halfway [1]  16/24
hand [3]  30/8 30/8 30/9
hands [1]  14/18
hang [1]  14/17
happen [1]  16/4
happens [2]  10/8 23/22
happy [1]  29/4
hard [1]  34/2
hardship [5]  5/4 6/4 7/7 7/21 8/24

9/11 10/17 10/22 11/15 11/24 12/1 12/5 12/16 12/22 13/8 15/2 15/7 17/12 19/14 19/14 19/17 19/19 19/22 20/17 20/18 21/25 22/2 22/10 23/19 25/18 25/23 25/23 27/10 28/8 30/9 31/11 31/16 32/10 34/15
hat [1]  13/7
have [63]
haven't [1]  20/7
having [1]  28/10
he [7]  17/11 24/5 31/6 31/10 34/15 35/12 35/13
he's [1]  27/16
hear [7]  6/12 7/1 13/15 27/21 29/4 30/7 35/9
heard [7]  7/2 7/4 7/12 11/21 14/19 14/23 19/11
hearing [9]  3/19 4/25 5/14 6/23 24/23 24/25 26/23 36/19 37/5
help [1]  28/16
helpful [2]  9/16 31/7
Hendric [1]  31/10
Henric [4]  18/16 18/19 19/5 22/11
her [1]  20/8
here [9]  9/17 16/19 17/4 18/13 20/10 28/13 28/13 28/14 30/19
here's [3]  28/12 29/14 31/14
higher [1]  27/19
highjacked [1]  15/5
highjacking [1]  28/17
hijacker [1]  25/18
his [2]  19/7 24/5
hold [4]  4/23 9/12 17/6 24/7
Honor [59]
Honor's [3]  18/11 20/20 20/23
HONORABLE [1]  1/9
hope [1]  11/22
hours [1]  11/13
how [5]  4/11 6/18 8/2 22/23 33/6
however [1]  5/19
hub [1]  25/16
Hulme [1]  9/25
Hulme's [1]  10/19
hypothetically [1]  12/21

**I**

I address [1]  14/15
I am [3]  20/12 35/25 36/7
I believe [3]  13/21 20/23 26/15
I can [4]  4/12 9/3 26/14 32/21

I cannot [1]  32/8
I didn't [1]  18/8
I don't [4]  4/1 15/3 23/7 27/3
I don't have [2]  12/13 15/15
I guess [1]  6/17
I have [7]  11/21 12/11 15/11 27/23 29/1 32/6 32/14
I just [3]  4/10 6/14 26/11
I know [4]  3/19 4/5 29/9 34/2
I mean [3]  16/4 32/6 33/7
I say [1]  22/8
I think [25]  3/16 7/24 10/3 12/20 13/23 15/18 16/25 17/21 21/14 21/16 24/14 24/23 26/6 26/7 27/14 28/1 28/7 29/1 29/15 30/8 31/14 32/18 34/25 35/7 35/25
I thought [2]  3/20 19/11
I understand [1]  25/8
I want [2]  26/11 26/23
I was [1]  33/20
I will [3]  34/8 35/20 35/22
I would [2]  11/22 21/4
I'd [7]  10/1 16/16 21/7 25/2 28/15 32/11 32/19
I'll [8]  3/24 7/8 14/22 24/14 27/25 30/10 32/15 36/3
I'm [35]  5/7 6/25 8/15 9/22 12/13 12/14 12/20 14/17 15/15 15/25 17/6 19/10 19/11 22/23 24/23 24/24 24/24 25/1 25/12 26/3 26/22 27/14 29/4 30/22 31/6 31/15 34/1 34/5 35/2 35/16 36/9
I'm going [7]  14/17 32/18 32/23 33/8 34/5 35/2 35/16
I'm just [3]  22/23 26/3 34/1
I'm not [5]  12/13 17/6 25/1 25/12 26/22
I'm not sure [1]  15/15
I'm sure [2]  8/15 19/10
I've [13]  3/24 12/17 15/11 16/10 20/11 20/14 25/10 26/14 32/12 32/16 34/17 35/25 36/4
idea [2]  7/13 23/18
identical [3]  23/11 23/11
identified [1]  10/17
immediacy [2]  9/3 22/6
immediate [2]  5/4 7/12

immediately [2]  4/24 7/14
impede [1]  22/12
important [1]  18/12
importantly [1]  23/14
improperly [1]  17/12
Inc [1]  3/11
including [1]  7/2
independent [4]  18/15 18/25 19/6 21/3
individual [1]  33/11
inextricably [1]  28/3
infect [1]  18/11
information [1]  5/24
injunction [2]  17/22 21/5
injunctive [1]  21/2
instance [2]  33/9 33/13
instead [1]  10/22
Intelligence [1]  36/10
intend [2]  13/18 26/17
intended [1]  13/16
intending [1]  27/7
inter [1]  22/18
inter-rail [1]  22/18
interest [8]  3/5 3/6 3/7 7/18 10/15 13/4 15/17 18/23
interested [2]  5/19 25/1
interests [3]  3/8 11/10 18/20
interrupt [4]  12/10 17/25 19/8 22/20
intertwined [1]  28/3
introduction [1]  20/9
Investco [8]  3/10 3/13 10/7 10/20 10/24 13/9 32/7 33/3
involved [1]  27/3 27/4 34/22
involves [1]  8/15
is [112]
is there [1]  7/6
isn't [1]  18/22
issue [87]
issues [23]  4/20 7/3 7/21 8/1 8/4 8/5 8/11 8/22 9/6 9/13 9/14 14/2 16/11 16/16 21/20 21/21 24/3 24/17 26/13 28/13 28/14 28/14 30/15
it [81]
it would be [2]  3/21 5/6
it's [36]  5/2 6/4 7/8 7/16 7/18 7/20 8/9 8/14 9/4 9/5 9/5 10/7 11/8 12/1 13/6 15/2 16/25 22/10 22/11 23/9 24/8 24/18 25/22 26/4 26/6 26/18 26/20 26/24 28/17 29/20 29/21 30/11 31/22 31/25 34/2 34/4
its [9]  10/8 10/17 10/18 12/1 16/11 17/12 21/23

**I**

its... [2] 21/23 25/14
itself [4] 11/12 11/13
11/16 12/1
IV [1] 1/19

**J**

James [1] 9/25
January [2] 3/6 19/24
judge [6] 1/10 8/4
28/11 32/9 34/15 36/13
Judge Cooper's [1]
8/4
judgment [5] 29/8
29/10 29/11 29/13 30/3
July [3] 35/24 36/1
36/3
jumping [2] 22/20
33/21
June [1] 37/10
jurisdiction [5] 15/8
15/16 17/1 20/12 34/16
just [38]
justification [1] 22/5

**K**

KASOWITZ [1] 1/16
kasowtiz.com [1] 1/18
KATZ [1] 1/12
key [1] 30/19
Kiernan [2] 18/24
35/12
kind [4] 3/25 23/6
27/11 34/2
know [19] 3/19 3/24
4/5 13/19 17/23 20/17
28/22 29/9 29/9 31/8
31/18 32/1 32/15 32/18
33/10 33/12 34/2 36/4
36/12
Koevary [1] 9/23
Kookmin [5] 2/2 3/14
10/16 12/3 12/17

**L**

Lambert [22] 1/12 3/9
6/7 6/15 10/2 13/22
14/21 14/24 16/24 18/9
20/8 20/17 21/15 22/9
24/10 26/9 27/25 28/7
31/16 32/23 33/8 34/21
Lambert's [2] 21/17
21/23
LaMontagne [1] 9/25
large [1] 36/5
larger [1] 32/1
last [5] 4/5 20/7 35/10
36/3 36/11
later [3] 7/13 14/13
32/12
Laurel [1] 9/25
law [11] 1/12 9/9 12/6
12/6 12/7 21/19 21/25
26/14 26/14 28/13
31/24
lawful [1] 12/25
lawyers [2] 15/11
32/13

lays [1] 16/18
Leasehold [2] 3/6 3/8
least [7] 13/1 13/3
24/19 25/5 27/13 31/17
33/12
leave [1] 33/8
legal [9] 21/21 21/21
24/22 28/3 28/14 29/20
29/21 29/21 31/8
lender [26] 10/13 10/14
10/15 10/16 10/24
10/24 12/15 13/8 16/23
17/2 17/10 17/12 17/15
17/18 18/6 18/14 18/15
19/12 20/3 20/3 23/24
24/2 25/18 30/12 30/20
31/3
lender's [1] 18/24
lenders [1] 13/4
let [10] 6/13 6/16 11/14
12/12 14/1 16/19
16/20 24/13 27/21 30/7
let's [1] 33/12
letter [1] 21/25
life [2] 8/22 9/4
light [1] 8/3
like [21] 4/23 5/9 5/9
7/8 8/5 9/19 10/1 13/19
21/7 24/7 24/19 25/2
25/18 27/7 27/8 27/12
28/15 31/23 32/20
33/24 34/12
likelihood [1] 21/5
limitations [1] 37/7
limited [3] 6/5 8/4 8/7
line [2] 34/14 34/17
little [6] 29/2 32/4
32/25 33/21 34/3 36/2
live [2] 12/4 15/12
LLC [4] 3/11 3/13 10/7
10/7
LLP [2] 1/16 2/3
loan [7] 17/1 17/14
19/7 19/15 19/18 19/19
19/22
local [1] 9/24
long [4] 8/10 15/2
20/18 22/10
longer [2] 32/4 32/25
look [6] 25/1 31/14
31/22 34/4 35/16 36/18
looked [1] 26/14
looking [3] 5/17 24/9
25/8
lot [1] 9/9
lots [1] 25/10

**M**

made [1] 3/6
magnitude [1] 4/1
main [1] 17/5
make [14] 4/12 8/24
11/24 21/1 21/7 21/16
28/15 29/3 31/23 32/2
32/15 33/1 34/4 35/20
makes [1] 34/20
making [1] 19/1 23/16

management [2] 17/17
28/20
manager [6] 17/16
17/18 18/15 19/6 21/3
31/10
mandated [1] 9/11
manner [1] 30/5
many [2] 4/2 22/20
Mark [1] 9/23
material [1] 23/12
matter [8] 3/22 13/19
17/21 24/22 26/7 28/3
30/14 37/4
may [13] 1/5 13/4
14/15 15/21 16/15
16/25 20/20 21/15
24/19 29/3 34/24 35/13
35/17
maybe [5] 24/24 25/11
27/18 27/18 34/13
MD [2] 1/14 1/22
me [24] 4/8 4/11 6/13
6/16 8/9 8/15 8/15
11/14 12/12 14/19
14/21 16/19 16/20
16/22 24/13 27/18
27/21 28/11 30/7 32/12
32/19 32/25 34/17
35/17
mean [7] 12/17 15/10
16/4 18/2 30/22 32/6
33/7
mechanical [1] 2/11
meet [2] 33/12 35/17
MEHTA [1] 1/9
member [7] 3/11 10/8
10/9 10/21 11/12 12/22
33/4
merger [1] 28/19
Merit [1] 2/7
merits [4] 21/6 24/23
31/17 32/24
mess [1] 33/11
mez [4] 19/1 19/23
20/1 20/3
mezzanine [4] 10/14
10/15 10/22 10/24
mid [1] 5/13
mid-August [1] 5/13
might [8] 7/22 9/13
10/4 14/12 25/13 29/2
29/19 31/19
million [2] 13/2 13/3
mindful [4] 34/9 35/22
36/6 36/14
missed [1] 35/13
mixed [2] 21/21 28/13
moment [6] 10/1 10/10
10/9 23/20 25/24 35/3
money [3] 7/6 15/20
15/20
month [4] 5/12 33/25
36/7 36/11
months [1] 4/25
moot [1] 3/20
more [5] 7/20 19/10
23/14 25/22 28/18

morrisoncohen.com
[1] 2/5
mortgage [1] 10/14
Moss [1] 1/19
most [2] 20/8 28/1
motion [17] 3/20 4/25
5/21 11/17 12/8 13/22
13/24 14/5 14/8 21/1
21/2 26/17 29/8 29/13
29/15 33/6 34/21
move [12] 3/17 3/23
5/3 5/20 5/21 7/14 8/21
26/4 27/10 27/13 29/5
31/18
moving [4] 4/7 4/22 9/6
30/1
Mr [1] 31/10
Mr. [65]
Mr. Boyle [8] 18/13
18/20 18/25 19/5 21/9
24/6 24/15 30/7
Mr. Boyle's [1] 25/4
Mr. Henric [3] 18/19
19/5 22/11
Mr. Hulme's [1] 10/19
Mr. Kiernan [2] 18/24
35/12
Mr. Ross [18] 6/7 9/20
12/10 13/12 16/6 17/11
19/4 20/18 20/24 21/9
22/25 24/13 25/10 26/3
28/23 30/13 31/5 35/5
Mr. Ross's [2] 22/11
25/4
Mr. Scharf [18] 11/20
14/22 16/7 16/19 17/25
19/8 22/19 22/25 23/10
24/5 24/12 25/12 26/9
26/12 26/15 27/16
27/21 35/10
Mr. Scharf's [1] 29/25
Mr. William [1] 18/16
Mr. Wood [9] 18/13
18/19 18/25 19/5 21/9
24/6 24/14 25/4 30/7
Mr. Wood's [1] 21/3
Ms. [22] 6/7 6/15 10/2
13/22 14/21 14/24
16/24 18/9 20/8 20/17
21/15 21/17 21/23 22/9
24/10 26/9 27/25 28/7
31/16 32/23 33/8 34/21
Ms. Lambert [20] 6/7
6/15 10/2 13/22 14/21
14/24 16/24 18/9 20/8
20/17 21/15 22/9 24/10
26/9 27/25 28/7 31/16
32/23 33/8 34/21
Ms. Lambert's [2]
21/17 21/23
much [5] 7/22 8/2 8/8
23/11 32/3
must [1] 30/15
my [19] 3/22 4/2 7/25
9/23 10/5 10/10 10/19
10/19 11/8 13/1 13/25
23/14 25/22 28/18

**N**

named [2] 12/18 16/8
namely [1] 18/24
National [1] 3/3
near [1] 4/23
necessary [2] 4/10
21/5
necessity [2] 7/24
22/17
need [29] 6/5 6/22 7/19
8/22 9/2 9/3 16/15 17/5
17/7 17/8 18/10 22/3
22/4 22/6 24/4 24/17
24/22 28/3 28/7 28/9
28/11 28/13 28/23
29/13 29/14 29/22 30/2
31/25 32/5
needs [5] 18/10 24/21
31/4 32/16 34/18
negotiated [1] 30/17
NEUBERGER [5] 1/20
10/25 11/12 11/18
20/25 32/2
new [18] 1/17 2/4 17/3
17/20 18/2 18/3 18/4
19/4 24/4 28/19 28/21
30/16 30/16 30/18
32/10 32/15 34/13
34/15
New York [13] 17/3
17/20 18/2 18/3 18/4
19/4 24/4 30/16 30/18
32/10 32/15 34/13
34/15
news [1] 21/10
next [5] 4/24 26/10
27/22 32/20 35/18
nice [1] 35/8
no [16] 1/4 13/16 16/8
21/4 21/5 23/12 23/19
23/19 26/1 26/1 26/22
26/22 33/22 35/11
35/14 35/25
nobody [1] 22/10
not [40]
note [2] 20/1 37/5
nothing [1] 25/20
notice [2] 4/6 31/6
noticed [1] 19/17
notices [2] 30/23 30/25
now [9] 3/20 22/20
22/23 25/19 28/24 30/8
32/9 33/9 34/14
nqgrg.com [1] 1/23
1/24
NRPC [1] 1/3
number [2] 7/5 23/3
NW [1] 2/9
NY [2] 1/17 2/4

**O**

Obtained [1] 3/5
obviously [1] 14/6
occurred [2] 19/14
37/5

**O**

October [1]  36/12
off [1]  22/24
office [1]  25/16
Official [1]  2/8
oftentimes [1]  5/23
Oh [1]  14/25
okay [15]  3/15 9/15
14/14 18/7 19/21 20/6
27/15 30/6 33/4 33/15
33/22 35/8 35/15 35/21
36/15
Once [1]  35/24
one [31]  1/21 4/1 4/19
4/19 6/17 6/19 7/9 9/12
12/14 12/15 12/17
16/24 17/7 18/12 20/7
20/21 21/8 22/14 23/3
25/2 25/3 27/7 27/10
28/1 31/19 32/25 33/2
33/16 34/13 35/19
35/25
only [5]  11/13 12/17
18/5 26/6 31/23
opportunity [4]  3/21
14/19 23/24 31/21
oppose [2]  12/23 12/23
opposing [1]  5/3
opposition [5]  26/18
33/1 34/10 34/11 34/20
oppositions [1]  27/9
optimistic [1]  24/24
opting [1]  17/3
option [1]  17/2
order [4]  4/8 19/4
32/21 34/24
ordered [1]  7/13
originally [1]  3/19
other [13]  4/6 7/20 8/9
9/6 11/2 12/18 16/10
16/16 25/6 26/13 27/5
33/23 34/9
others [1]  14/2
otherwise [1]  20/19
ought [2]  34/14 34/19
our [18]  4/22 6/1 6/6
7/21 7/22 9/24 10/13
11/19 13/6 14/1 18/24
20/2 20/5 29/20 29/25
30/22 30/22 31/10
out [20]  3/16 11/14
11/23 12/12 12/14
16/18 18/12 20/9 20/18
22/2 22/3 22/9 22/23
25/18 25/20 25/25
26/10 26/23 27/22
35/20
outset [1]  24/20
outstanding [1]  13/5
over [5]  17/1 28/19
31/15 34/16 35/17
overage [1]  12/24
overlapping [1]  14/11
overly [1]  24/24
owed [1]  13/4
own [4]  10/17 10/18
12/1 16/11
owner [3]  10/5 10/11

**P**

P.A [2]  1/12 1/21
p.m [2]  1/6 36/20
pandemic [1]  37/6
papers [9]  4/5 4/22
4/25 12/2 14/12 25/22
26/7 26/16 29/20
parachute [1]  25/20
parallel [3]  24/10 24/15
26/5
parameters [1]  33/14
part [3]  25/15 28/5 31/2
participate [3]  12/22
13/7 13/9
participation [1]  11/16
particular [3]  14/16
29/19 30/2
particularly [1]  8/3
parties [9]  5/3 11/11
11/25 12/5 15/6 23/21
24/20 26/19 27/5
Partite [1]  14/2
parts [2]  4/18 21/17
party [4]  8/1 13/8 15/16
23/6
pass [1]  34/11
passenger [2]  3/4
22/18
Passenger
 Corporation [1]  3/4
past [2]  10/5 19/24
patiently [1]  16/20
Patricia [1]  1/12 3/9
people [1]  11/11
perfectly [1]  3/24
perhaps [4]  5/21 7/25
12/7 14/9
period [1]  4/9
perspective [4]  6/1
7/21 7/23 31/20
Pertaining [1]  3/7
PESSIN [1]  1/12
pick [1]  25/11
pilot [2]  25/19 26/2
pilots [2]  28/21 28/21
pklaw.com [1]  1/15
place [1]  20/25
plaintiff [4]  1/4 1/12
3/9 4/17
plaintiffs [1]  4/14
plambert [1]  1/15
plan [2]  11/16 12/7
plane [1]  28/22
play [1]  12/12
pleading [4]  16/1 20/5
21/1 21/8
pleadings [1]  22/3
please [2]  9/20 37/5
pledge [3]  17/14 18/17
18/21
point [9]  18/12 20/21
21/7 21/16 21/16 22/2
29/20 29/21 29/21
pointed [2]  22/3 22/9
points [1]  27/24
pose [1]  24/14

positions [1]  21/11
possession [30]  4/19
5/1 5/5 5/21 6/3 6/17
7/3 7/13 7/13 7/20 8/13
8/14 8/17 8/23 13/15
13/22 14/9 15/4 21/13
21/18 22/1 22/6 26/17
26/21 27/6 28/2 28/5
29/8 29/16 31/18
postponed [1]  19/25
powers [2]  17/12 17/13
28/20
practical [3]  20/21 21/7
28/15
precedent [1]  23/5
predicate [1]  22/17
prefer [2]  32/3 32/3
preliminarily [1]  24/18
preliminary [1]  6/9
presented [1]  20/13
presents [2]  7/21
16/11
pretextual [1]  22/7
pretty [1]  7/14
Prettyman [1]  2/8
prevail [1]  8/14
previously [1]  3/25
primary [1]  34/15
prior [1]  7/4
probably [1]  5/16
problem [2]  25/7 25/9
procedural [1]  27/8
procedure [6]  5/2 29/7
29/8 29/10 29/11 29/18
proceed [4]  21/25
24/10 24/15 30/5
proceeding [3]  15/3
15/3 15/5
proceedings [5]  1/9
2/11 16/13 36/20 37/4
process [1]  21/24
23/24 26/13
produced [1]  2/11
projects [6]  7/15 8/21
9/3 22/4 22/9 22/13
proper [2]  15/16 21/24
properly [2]  23/9 30/21
property [3]  3/7 7/9
15/4 23/20
proportionality [1]  8/6
proposal [1]  29/2
proposals [1]  35/20
propose [2]  35/6 35/18
proposed [4]  5/11 12/8
14/1 31/16
proposing [1]  11/20
propriety [1]  13/10
prospect [1]  25/3
provide [1]  17/1
provisions [3]  23/16
30/14 30/16
public [3]  7/15 9/11
22/4
pun [1]  13/16
purport [1]  12/7
purports [1]  11/13

put [6]  10/1 12/1 12/20
17/4 21/9 26/19

**Q**

qualified [1]  8/17
question [22]  6/18
6/19 6/20 6/20 9/7
13/14 14/4 15/7 15/17
16/5 16/8 16/9 20/7
20/13 20/21 20/23
24/14 26/18 32/1 33/16
34/16 34/18
questions [2]  6/14
22/14
quick [8]  5/2 5/3 5/6
6/4 6/17 7/4 12/11
31/19
quick-take [7]  5/2 5/3
5/6 6/4 6/17 7/4 31/19
quickly [5]  5/22 21/4
32/17 32/21 34/19
QUINN [1]  1/20
Quinn's [1]  30/23
quite [1]  31/2

**R**

rail [1]  22/18
Railroad [1]  3/3
raised [1]  14/3
raising [1]  14/18
ranging [1]  8/10
rather [4]  5/22 27/2
32/11 32/11
reach [1]  35/21
read [1]  29/19
reading [1]  23/15
ready [1]  6/12
real [2]  8/1 12/10
really [9]  4/18 6/25 9/3
11/9 15/4 19/2 26/4
29/20 36/5
Realtime [1]  2/7
reason [2]  17/5 22/8
reasonable [1]  5/11
received [1]  11/1
recent [1]  28/1
record [3]  7/18 17/4
37/3
recorded [1]  2/11
reference [1]  18/1
regarding [1]  23/21
regardless [1]  30/19
Registered [1]  2/7
regularly [1]  30/17
relates [2]  19/1 21/21
relief [1]  21/2
remedies [1]  23/20
remiss [1]  28/25
remotely [1]  37/7
remove [2]  30/20 30/21
replace [1]  17/16
reply [4]  5/12 5/13 30/4
33/6
Reporter [2]  2/6 2/7
2/7 2/8
reporting [1]  37/7

represent [4]  12/16
15/12 18/20 31/11
representation [5]
13/14 23/1 24/16 25/5
34/18
representations [1]
33/1
representatives [1]
20/15
represented [1]  10/24
representing [4]  13/7
16/9 16/9 32/7
request [2]  8/19 16/13
requested [1]  4/22
require [2]  24/8 24/9
resolution [2]  24/1
32/15
resolve [15]  11/2 15/11
15/16 20/17 24/16
31/25 32/5 32/11 32/14
32/16 32/21 34/1 34/5
34/13 34/17
resolved [7]  5/20 13/14
25/5 31/4 32/17 34/11
34/19
respect [11]  4/20 6/3
6/11 6/16 8/11 10/6
12/25 13/10 17/17
29/17 32/5
respectfully [1]  24/5
respective [3]  11/25
23/23 35/20
respond [4]  22/25
29/13 30/2 31/22
responding [1]  10/2
response [2]  5/13
29/15
rest [2]  17/6 32/23
result [1]  23/21
retained [1]  31/11
reviewed [1]  30/25
reviewing [1]  21/8
Rexmark [3]  10/16
10/17 12/3
right [25]  9/16 9/18
12/22 13/9 15/23 18/7
22/23 23/23 23/25 24/1
25/23 26/8 26/9 27/14
27/16 27/17 28/17
28/24 30/20 30/21 31/7
31/9 31/13 34/22 35/16
rights [13]  10/6 10/11
11/15 16/16 17/17
17/19 18/16 18/17 20/3
21/23 23/21 25/24
28/20
ripe [1]  26/21
RMR [2]  37/2 37/11
road [2]  1/13 29/3
rolls [1]  35/24
room [2]  36/2 36/4
Ross [20]  1/16 3/10 6/7
9/20 12/10 13/12 16/6
17/11 19/4 20/18 20/24
21/9 22/25 24/13 25/10
26/3 28/23 30/13 31/5
35/5
Ross's [2]  22/11 25/4

**R**

RUBIN [1] 1/21

**S**

safety [3] 8/22 9/4 22/4
said [13] 3/7 5/9 7/10
10/2 18/17 20/18 22/7
25/19 26/12 28/21
28/23 31/6 34/12
same [4] 10/23 11/5
15/12 24/14
satisfied [1] 31/1
say [17] 7/5 8/8 11/14
12/15 18/2 19/5 19/11
20/11 22/8 28/11 28/23
29/21 30/14 31/9 31/22
34/2 35/22
saying [1] 27/7
says [4] 7/3 9/10 29/12
30/13
Scharf [20] 2/2 3/14
11/20 14/22 16/7 16/19
17/25 19/8 22/19 22/25
23/10 24/5 24/12 25/12
26/9 26/12 26/15 27/16
27/21 35/10
Scharf's [1] 29/25
schedule [11] 4/7
11/21 11/23 27/8 32/24
33/10 33/11 33/20 34/2
35/18 35/24
scheduled [1] 19/24
schedules [2] 33/11
36/15
Schiff [1] 9/24
scope [3] 5/18 8/2 8/6
seat [2] 19/3 25/19
second [6] 5/7 8/8 11/6
17/7 21/16 36/13
see [11] 4/11 8/25 26/4
26/8 26/20 27/19 28/23
30/11 31/5 31/8 33/13
seek [2] 11/10 12/24
seem [2] 16/7 31/23
sell [1] 7/11
senior [5] 10/13 10/13
10/16 20/1 20/2
sense [11] 3/22 4/4
4/11 5/8 6/21 20/11
20/16 20/19 22/22
26/24 31/15
sensible [1] 31/17
sent [2] 11/20 31/6
separate [3] 6/1 11/10
12/22
September [1] 36/8
sequencing [1] 13/12
seriatim [1] 34/3
set [13] 8/20 9/8 12/2
14/12 23/22 25/2 25/2
26/7 27/8 29/18 33/2
35/2 36/11
sets [2] 11/9 20/15
setting [3] 9/1 9/17
36/15
shape [2] 22/12 22/16
she [5] 13/23 13/23
14/3 31/24 34/15

she'll [2] 14/1 31/22
shocked [1] 16/16
shoes [1] 19/13
short [2] 4/7 32/21
shorten [1] 3/16
should [10] 13/2 15/9
17/11 17/20 18/4 21/1
24/9 28/1 28/9 30/18
shouldn't [1] 20/25
show [2] 5/4 6/5
sic [1] 17/8
side [3] 7/21 8/9 15/20
sideshow [1] 16/25
signed [1] 19/7
significant [1] 21/20
simple [2] 27/3 31/23
since [3] 19/19 23/18
27/25
single [1] 11/10
sir [1] 16/20
situation [3] 8/5 20/4
28/18
so [52]
so I think [2] 19/3
29/24
So it's [2] 13/6 25/22
sole [9] 3/11 10/8 10/8
10/11 10/21 10/23
11/12 12/21 33/4
some [19] 4/9 5/4 5/16
6/22 7/19 8/1 8/5 8/18
8/25 9/2 9/3 9/4 9/4 9/5
10/2 21/2 29/22 31/15
36/4
somebody [2] 14/12
27/19
somehow [1] 19/5
something [10] 10/4
13/19 16/17 20/24
24/20 27/2 27/12 30/3
33/7 33/13
sometime [1] 5/13
soon [2] 27/8 34/18
sooner [1] 32/11
sort [2] 4/12 4/19
sought [1] 10/22
sounds [1] 24/19
South [1] 1/21
space [2] 25/16 25/17
speak [9] 11/10 11/11
11/13 11/25 13/9 13/23
14/7 25/23 32/13
speaking [2] 16/5 33/2
speaks [1] 23/5
specific [1] 16/15
spent [1] 20/8
spoke [1] 11/19
stage [5] 5/16 5/25 6/6
6/9 15/21
stages [1] 6/2
standing [1] 15/2
stands [1] 20/2
start [3] 4/14 9/19
36/11
state [6] 12/7 17/20
30/15 32/11 34/13
34/15

staters [2] 13/10
Station [13] 3/8 3/10
3/11 3/13 10/6 10/7
10/8 10/23 25/14 32/7
32/7 33/3 33/3
Station's [1] 12/21
STATUS [1] 1/9
statute [2] 5/6 7/4
statutory [1] 22/17
stenography [1] 2/11
step [4] 8/12 8/13
19/13 31/17
steps [4] 15/19 22/20
24/18 24/19
still [1] 12/21
Street [1] 1/21
strike [2] 11/17 21/1
structure [1] 24/17
stuff [2] 5/11 7/15
subject [4] 8/23 10/11
18/21 37/6
SUBLEASE [2] 1/6 3/5
substantive [1] 27/9
success [1] 21/6
such [2] 12/3 15/5
suggest [1] 32/18
suggested [4] 4/6
20/17 27/10 27/11
suggesting [4] 15/10
15/25 17/6 27/2
suggestion [7] 7/25
28/6 28/15
Suite [1] 1/13
summary [5] 29/7
29/10 29/11 29/13 30/3
suppose [1] 15/17
supposed [1] 36/10
Supreme [1] 7/3
Supreme Court [1] 7/3
sure [5] 8/15 9/21
15/15 19/10 34/20
suspect [1] 14/22

**T**

table [2] 9/17 19/3
take [15] 5/2 5/3 5/6
5/15 6/4 6/17 7/4 7/9
9/13 13/20 13/20 20/16
24/6 31/19 34/1
taken [4] 21/11 23/21
28/19 32/10
taking [14] 4/20 6/18
7/1 8/5 21/13 21/18
21/22 21/24 22/5 22/15
24/2 28/2 28/5 28/12
talked [1] 33/14
talking [3] 13/24 16/14
30/22
tangling [1] 16/7
technical [1] 5/8
technological [1] 37/7
teed [2] 22/9 24/18
teeing [1] 24/16
telegraphing [1] 12/13
tell [1] 14/1
tells [1] 21/25
temporarily [1] 19/25
terms [13] 4/4 6/24

than [8] 6/18 7/16
13/21 19/10 25/6 25/22
32/4 32/11
thank [14] 3/18 4/16
9/16 14/20 16/21 27/23
31/12 34/23 35/4 35/7
35/14 36/16 36/17
36/18
Thank you [11] 3/18
4/16 14/20 16/21 27/23
31/12 34/23 35/7 36/16
36/17 36/18
Thanks [1] 36/19
that [234]
that'll [1] 29/5
that's [27] 7/15 9/9
9/16 9/17 11/7 13/21
15/17 15/21 16/3 16/4
16/6 16/18 19/2 20/2
22/18 24/24 26/7 26/16
31/11 32/4 32/24 33/2
33/14 33/20 33/22 35/8
36/10
their [11] 10/20 12/2
12/3 14/2 14/7 14/7
16/16 24/2 30/8 30/9
31/8
them [7] 14/11 20/4
23/12 23/13 24/1 24/4
25/18
them's [1] 28/22
themselves [1] 24/8
then [30] 4/14 4/20 5/5
5/12 5/14 5/23 8/16
8/17 13/13 14/11 14/22
17/22 17/23 20/21 26/9
26/10 26/18 27/21 28/8
29/23 30/4 31/21 32/23
33/7 33/25 34/19 34/19
35/18 36/4 36/6
there [31] 6/10 7/6 7/10
7/19 7/22 8/5 12/4
15/19 16/15 17/15
18/23 18/25 19/14
19/23 21/5 21/10 21/10
21/17 21/20 22/10
22/17 23/5 23/12 24/3
24/20 25/3 26/12 29/11
29/12 29/16 29/19
there's [20] 4/18 5/15
6/1 6/5 6/11 7/2 7/4 8/1
8/2 9/9 13/1 15/18 16/8
21/10 23/7 23/12 29/7
29/17 30/2 36/1
therefore [1] 37/6
these [10] 5/7 9/2 9/10
15/1 17/2 22/4 22/9
26/13 30/15 31/24
they [24] 5/5 7/13 8/2
8/24 12/2 16/1 21/1
23/11 24/7 24/17 25/13
28/23 29/16 29/17
29/19 29/19 29/21 30/1
30/3 30/20 30/21 31/9
31/9 31/19

they're [1] 17/21
they've [3] 23/8 25/17
30/8
thing [1] 9/14
things [4] 6/17 9/10
10/2 34/6
think [42]
thinking [2] 33/25
35/23
thinks [1] 27/16
third [3] 2/3 4/20 15/21
this [53]
Thomas [2] 1/19 3/12
those [12] 7/11 9/14
15/5 16/13 18/16 20/15
21/11 22/12 30/13
30/23 32/13 36/8
though [3] 13/23 24/12
25/8
thought [2] 3/20 19/11
thoughts [1] 6/16
three [11] 4/18 6/1 6/2
13/19 15/19 16/8 21/17
24/18 32/20 33/24
33/25
through [5] 9/13 10/19
11/17 24/6 36/11
throwing [1] 15/20
thrown [1] 25/18
tied [2] 7/16 31/25
time [8] 5/10 7/9 10/14
13/20 15/14 17/15
22/10 32/25
timing [1] 35/24
titled [1] 37/4
tmw [1] 1/23
today [1] 17/4 26/14
26/20 26/23
together [4] 3/22 4/3
4/11 28/4
told [2] 8/9 11/6
tomorrow [2] 5/10 12/9
too [2] 3/23 32/2
topic [1] 20/7
TORRES [1] 1/16
toward [1] 34/9
Towson [1] 1/14
track [5] 13/15 25/6
32/4 34/9 35/19
tracks [1] 26/5
train [1] 25/15
transcript [1] 1/9 2/11
37/3
transcription [1] 2/11
translate [1] 6/25
transportation [2]
22/18 25/16
Tri [1] 14/2
Tri-Partite [1] 14/2
trial [6] 36/1 36/3 36/7
36/10
trials [1] 35/25
tried [1] 7/9
triggered [1] 19/14
truly [1] 22/6
trust [1] 14/18
trying [9] 12/14 21/17
22/23 24/11 24/16 26/4

**T**

trying... [3]  26/22
33/19 34/1
Tuesday [1]  36/19
turn [5]  4/15 9/18
14/22 16/20 31/15
TVA [1]  7/9
two [28]  6/17 6/20 7/22
9/12 11/1 11/3 11/9
11/10 11/11 11/11
11/19 15/1 15/5 15/11
15/24 16/10 16/10
20/13 20/13 20/14
20/15 21/11 24/18
27/23 32/12 32/12 33/3
34/25
type [5]  5/2 5/4 9/14
21/2 29/18
types [4]  9/6 9/10 17/2
30/15

**U**

U.S [1]  10/7
ultimate [1]  23/25
ultimately [3]  5/11
15/19 16/5
unambiguous [1]
23/15
under [8]  4/22 5/6 12/5
12/6 12/6 12/6 13/4
21/22
understand [3]  6/16
11/2 25/8
understanding [1]
12/11
Understood [2]  18/7
34/7
unfolding [1]  4/12
unfortunately [1]
36/12
union [16]  1/16 3/8
3/10 3/11 3/13 10/6
10/7 10/8 10/23 12/21
25/14 28/21 32/7 32/7
33/3 33/3
UNITED [2]  1/1 1/10
unity [1]  18/23
unrestricted [1]  8/17
until [3]  7/11 19/3 25/5
unusual [1]  6/11
up [16]  6/14 9/12 17/6
22/10 24/7 24/16 24/18
27/8 29/18 30/8 30/8
30/9 32/1 32/24 33/10
33/13
update [1]  5/25
upon [1]  19/14
us [6]  21/25 28/24 29/2
29/5 31/6 31/11
used [2]  22/5 25/12
useful [1]  9/17
USI [1]  31/11
using [1]  5/7

**V**

Valley [1]  1/13
valuation [5]  4/21 5/23
13/1 15/20 21/14

venue [3]  17/1 18/1
30/14
venued [3]  17/21 18/3
18/4
versus [1]  3/4
very [8]  4/2 5/7 6/5 8/6
10/23 23/2 30/10 32/3
VIA [1]  1/9
view [3]  6/6 15/1 20/22
viewpoint [1]  5/18
viewpoints [1]  6/1
views [3]  13/25 14/1
14/7
virtual [1]  14/18
virtually [1]  23/11
virtue [1]  21/1
vis [2]  16/16 16/16
vis-à-vis [1]  16/16
voice [2]  10/23 12/2
voting [1]  17/17
vs [1]  1/5

**W**

wait [1]  7/11
waiting [2]  9/2 16/20
want [11]  6/14 9/10
9/12 14/24 15/3 16/1
22/22 26/11 26/19
26/23 34/3
wanted [10]  4/3 4/10
5/4 6/10 11/2 14/11
20/24 21/16 22/25
35/13
wanting [1]  13/15
was [26]  4/6 10/5
10/10 10/17 11/2 11/6
12/24 13/22 13/23
17/18 17/18 18/25
19/23 19/25 21/8 21/16
21/24 22/15 23/20
27/25 28/18 28/18
29/19 30/17 31/5 33/20
wash [1]  36/5
Washington [3]  1/5 2/9
3/8
wasn't [2]  4/8 11/7
way [10]  3/16 8/18
9/17 12/14 19/18 22/12
22/16 29/24 30/11
34/20
we [77]
We are [1]  31/1
we will [1]  8/10
we'd [7]  4/23 5/9 5/12
11/22 27/7 27/8 30/4
we'll [7]  4/15 23/3 26/8
26/10 27/19 27/22
36/18
we're [19]  5/20 6/9
7/24 16/14 17/23 20/9
22/14 22/20 25/8 25/20
26/10 26/24 27/2 27/3
27/4 27/22 29/20 31/14
31/25
we've [6]  3/16 9/2 16/7
22/6 30/25 33/14
wearing [1]  13/7

36/1 36/3 36/3 36/9
36/10
weeks [5]  13/19 32/20
33/24 33/25 34/25
well [15]  5/20 5/25
9/16 9/18 11/9 12/12
14/2 16/3 20/1 21/9
21/19 22/19 27/18
34/10 35/8
well-founded [1]  21/19
were [15]  4/5 4/8 7/10
8/13 8/13 17/13 17/13
17/14 17/19 18/17
20/24 24/15 25/13
25/25 28/20
what [38]
what's [4]  12/14 20/11
20/16 20/19
whatever [12]  9/13
13/20 19/12 19/18 23/8
24/7 24/10 24/17 24/19
27/9 31/18 31/19
whatsoever [1]  13/9
when [4]  6/11 7/9 9/8
34/5
where [13]  11/9 17/9
17/20 18/9 18/23 19/2
22/22 26/24 28/18
29/11 30/19 31/11 36/2
whether [16]  4/8 4/9
7/17 15/4 15/7 21/22
22/10 22/11 22/15
22/16 24/18 25/3 26/4
26/21 28/2 34/15
which [12]  3/20 6/24
15/3 16/5 16/6 16/7
16/10 17/18 21/22 23/6
26/17 36/7
while [2]  16/25 18/10
who [16]  9/19 11/15
11/24 12/5 14/12 14/22
15/16 15/20 15/20
17/20 19/5 20/14 23/5
25/23 26/12 32/6
who's [6]  16/8 16/9
16/19 27/17 31/4 36/13
whose [1]  25/24
why [12]  4/14 9/4 9/7
9/18 11/1 11/3 14/21
15/15 17/5 20/2 22/8
33/20
wide [1]  8/10
wiggle [2]  36/2 36/4
will [17]  7/19 8/5 8/10
11/23 14/19 17/23
20/16 23/8 27/17 27/18
27/19 31/18 31/21
32/25 34/8 35/20 35/22
William [4]  2/6 18/16
37/2 37/11
willing [1]  5/20
wise [1]  35/7
within [5]  4/24 5/12
32/20 33/24 34/25
without [4]  24/22
28/10 28/10 32/8
won't [1]  24/7

18/13 18/19 18/25 19/5
21/9 24/6 24/14 25/4
30/7
Wood's [1]  21/3
word [1]  25/11
words [2]  5/8 28/22
work [1]  11/23
working [2]  25/4 25/6
world [1]  15/13
would [41]
wrong [7]  12/13 12/15
12/20 26/15 31/7 31/22
31/24
wrongdoing [1]  25/12

**Y**

Yeah [5]  6/13 11/4
14/17 23/2 29/6
year [3]  9/12 19/24
36/14
years [4]  9/2 9/12 10/5
25/17
yes [8]  6/8 11/8 13/17
14/4 14/25 19/16 22/21
29/5
yet [2]  11/21
York [15]  1/17 2/4 17/3
17/20 18/12 18/3 18/4
19/4 24/4 30/16 30/18
32/10 32/15 34/13
34/15
you [96]
you'd [2]  14/7 14/11
you'll [2]  8/15 13/20
you're [7]  6/12 12/12
12/15 15/10 29/9 31/7
33/24
you've [2]  19/12 34/12
your [78]
Your Honor [59]
Your Honor's [3]  18/11
20/20 20/23

**Z**

Zaremba [3]  2/6 37/2
37/11
ZOOM [1]  1/9