# EXHIBIT 3

## PLEDGE AND SECURITY AGREEMENT

This **PLEDGE AND SECURITY AGREEMENT** (this "**Agreement**"), dated as of May 8, 2018, is made by **UNION STATION SOLE MEMBER LLC**, a Delaware limited liability company ("**Pledgor**" or "**Borrower**"), in favor of **KOOKMIN BANK CO., LTD., AS TRUSTEE OF KTB CRE DEBT FUND NO. 8**, as Lender (together with its successors and assigns, the "**Lender**").

### RECITALS

**A.**    Citi Real Estate Funding Inc., having an address at 388-390 Greenwich Street, New York, New York 10013, and Natixis Real Estate Capital LLC, having an address at 1251 Avenue of the Americas, New York, New York 10020, (together with their respective successors and assigns, collectively, "**Mortgage Lender**"), is making a loan in the original principal amount of $330,000,000.00 (the "**Mortgage Loan**") to Union Station Investco LLC, a Delaware limited liability company ("**Mortgage Borrower**") pursuant to a Loan Agreement dated the date hereof (the "**Mortgage Loan Agreement**"), which Mortgage Loan is evidenced by certain promissory notes dated the date hereof made by Mortgage Borrower to Mortgage Lender and secured by, among other things, a certain Leasehold Deed of Trust, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing, dated the date hereof (as amended, supplemented or otherwise modified from time to time, the "**Security Instrument**") by Mortgage Borrower in favor of Mortgage Lender pursuant to which Mortgage Borrower has granted Mortgage Lender a first priority mortgage on, among other things, certain real property and all structures, buildings and improvements now or hereafter located thereon, all as more fully described in the Security Instrument.

**B.**    Pledgor is the legal and beneficial owner of 100% of the issued and outstanding limited liability company interests in Mortgage Borrower.

**C.**    Borrower has requested Lender to make a loan to it in the original principal amount of $100,000,000.00 (the "**Loan**") pursuant to that certain Mezzanine Loan Agreement, dated the date hereof, by and between Lender and Borrower (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time the "**Loan Agreement**"), which Loan is evidenced by the Note (as defined in the Loan Agreement).

**D.**    It is a condition precedent to the obligation of Lender to make the Loan to Borrower, as borrower under the Loan Agreement, that Pledgor shall have executed and delivered this Agreement to Lender.

**NOW, THEREFORE**, in consideration of the premises and to induce Lender to make its loan under the Loan Agreement, Pledgor hereby agrees with Lender as follows:

**1.**    **Defined Terms.**  As used in this Agreement, the following terms have the meanings set forth in or incorporated by reference below:

"**Agreement**" has the meaning ascribed to such term in the introductory paragraph.

"**Article 8 Matter**" means any action, decision, determination or election by Mortgage Borrower or its member(s) that its membership interests or other equity interests, or any of them, be, or cease to be, a "security" as defined in and governed by <u>Article 8</u> of the Code, and all other matters related to any such action, decision, determination or election.

"**Borrower**" has the meaning ascribed to such term in the introductory paragraph.

"**Business Day**" has the meaning ascribed to such term in the Loan Agreement.

"**Code**" means the Uniform Commercial Code from time to time in effect in the State of New York.

"**Collateral**" has the meaning ascribed to such term in <u>Section 2</u> hereof.

"**Debt**" has the meaning ascribed to such term in the Loan Agreement.

"**Default Rate**" has the meaning ascribed to such term in the Loan Agreement.

"**Event of Default**" has the meaning ascribed to such term in the Loan Agreement.

"**Issuer**" has the meaning ascribed to such term in <u>Section 6</u> hereof.

"**Lender**" has the meaning ascribed to such term in the introductory paragraph.

"**Lien**" has the meaning ascribed to such term in the Loan Agreement.

"**Loan**" has the meaning ascribed to such term in the Recitals.

"**Loan Agreement**" has the meaning ascribed to such term in the Recitals.

"**Loan Documents**" means the Note, the Loan Agreement, this Agreement, the UCC-1 Financing Statements, the Environmental Indemnity, the Subordination of Management Agreement, the Recourse Guaranty (each as defined in the Loan Agreement) and all other certificates, documents, agreements or instruments now or hereafter executed and/or delivered in connection with the Loan (as each may be amended, modified, extended, consolidated or supplemented from time to time).

"**Mortgage Borrower**" has the meaning ascribed to such term in the Recitals.

"**Mortgage Borrower Company Agreement**" means the Second Amended and Restated Limited Liability Company Agreement of Mortgage Borrower, as the same may be amended, modified, extended, consolidated or supplemented from time to time.

"**Mortgage Lender**" has the meaning ascribed to such term in the Recitals.

"**Mortgage Loan**" has the meaning ascribed to such term in the Recitals.

- 2 -

"**Mortgage Loan Agreement**" has the meaning ascribed to such term in the Recitals.

"**Note**" has the meaning ascribed to such term in the Recitals.

"**Person**" has the meaning ascribed to such term in the Loan Agreement.

"**Pledged Company Interests**" means the limited liability company interests of Pledgor in Mortgage Borrower listed on <u>Schedule 1</u> hereto, together with all limited liability company interest certificates evidencing ownership of such interests and all options or rights of any nature whatsoever which may be issued or granted by Mortgage Borrower to Pledgor while this Agreement is in effect.

"**Pledgor**" has the meaning ascribed to such term in the introductory paragraph.

"**Proceeds**" means (i) Borrower's share, right, title and interest in and to all distributions, monies, fees, payments, compensations and proceeds now or hereafter becoming due and payable to Borrower by Mortgage Borrower with respect to the Pledged Company Interests whether payable as profits, distributions, asset distributions, repayment of loans or capital or otherwise and including all "proceeds" as such term is defined in Section 9-102(a)(64) of the Code; (ii) all contract rights, general intangibles, claims, powers, privileges, benefits and remedies of Borrower relating to the foregoing; and (iii) all cash or non-cash proceeds of any of the foregoing.

"**Special Damages**" has the meaning ascribed to such term in <u>Section 18(k)</u> hereof.

Terms used herein but not otherwise defined herein shall have the respective meanings ascribed to them in the Loan Agreement.  All references to sections and schedules are to sections and schedules in or to this Agreement unless otherwise specified.  All uses of the word "including" shall mean "including, without limitation" unless the context shall indicate otherwise.  Unless otherwise specified, the words "hereof," "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement.  Unless otherwise specified, all meanings attributed to defined terms herein shall be equally applicable to both the singular and plural forms of the terms so defined.

2.      **Pledge; Grant of Security Interest.**  Pledgor hereby pledges and grants to Lender, as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of the Debt, a first priority security interest in all of Pledgor's right, title and interest in and to the following (collectively, the "**Collateral**"):

(i)      all Pledged Company Interests, including, without limitation, the status as a member of Mortgage Borrower and all economic, voting and managerial rights and powers of Pledgor in Mortgage Borrower;

(ii)     all securities, moneys or property representing dividends or interest on any of the Pledged Company Interests, or representing a distribution in respect of the Pledged Company Interests, or resulting from a split-up, revision, reclassification or other like change of the Pledged Company Interests or otherwise received in exchange therefor, and any subscription warrants, rights or options issued to the holders of, or otherwise in respect of, the Pledged Company Interests;

(iii)     all right, title and interest of Pledgor in, to and under any policy of insurance payable by reason of loss or damage to the Pledged Company Interests and any other Collateral;

(iv)     all "accounts", "general intangibles", "instruments" and "investment property" (in each case as defined in the Code) constituting or relating to the foregoing; and

(v)     all Proceeds of any of the foregoing property of Borrower (including, without limitation, any proceeds of insurance thereon, all "accounts", "general intangibles", "instruments" and "investment property", in each case as defined in the Code, constituting or relating to the foregoing).

**3.     Certificates.**  On or prior to the date hereof, Pledgor shall have delivered to Lender each original certificate evidencing the Pledged Company Interests (which certificates shall constitute "security certificates" (as defined in the Code)), together with an undated limited liability company interest power covering each such certificate, duly executed in blank.

**4.     Representations and Warranties.**  Pledgor represents and warrants as of the date hereof that:

(a)     no authorization, consent of or notice to any other Person (including, without limitation, any member, partner or creditor of Pledgor or Mortgage Borrower) that has not been obtained, is required in connection with the execution, delivery, performance, validity or enforceability of this Agreement including, without limitation, the assignment and transfer by the Borrower of any of the Collateral to Lender or the subsequent transfer thereof by Lender pursuant to the terms hereof;

(b)     all of the Pledged Company Interests have been duly and validly issued and are fully paid and nonassessable;

(c)     the Pledged Company Interests constitute all the issued and outstanding limited liability company interests in Mortgage Borrower (other than the non-economic "springing-member" interest);

(d)     Pledgor is the record and beneficial owner of, and has good title to, the Pledged Company Interests, free of any and all Liens in favor of, or claims of, any other Person, except the Lien created by this Agreement and the Pledged Company Interests have not previously been assigned, sold, transferred, pledged or encumbered (except pursuant to this Agreement);

- 4 -

(e)      upon delivery to Lender of the original certificates evidencing the Pledged Company Interests, the Lien granted pursuant to this Agreement will constitute a valid, perfected first priority Lien on the Pledged Company Interests and related Proceeds, enforceable as such against all creditors of Borrower and any Persons purporting to purchase any Pledged Company Interests and related Proceeds from Borrower, free from any adverse claim;

(f)      upon the filing of the UCC-1 financing statements referred to in <u>Section 12</u> with the Delaware Secretary of State, the Lien granted pursuant to this Agreement will constitute a valid, perfected first priority Lien on the Collateral not constituting Pledged Company Interests and related Proceeds in such jurisdictions, enforceable as such against all creditors of Borrower and any Persons purporting to purchase any Pledged Company Interests and related Proceeds from Borrower;

(g)      the principal place of business and chief executive office of Borrower is, and for the immediately preceding four (4) months (or any shorter period of its existence), has been, located at c/o Ashkenazy Acquisition Corp., 150 East 58th Street, Penthouse, New York, New York 10155;

(h)      the exact name of Pledgor is Union Station Sole Member LLC;

(i)      Pledgor is organized under the laws of the State of Delaware;

(j)      there currently exist no certificates, instruments or writings representing the Pledged Company Interests other than those delivered to Lender.  However, to the extent that in the future there exist any such certificates, instruments or writings, Borrower shall deliver all such certificates, instruments or writings to Lender together with the undated limited liability company interest powers duly executed in blank with, if Lender so requests, signature guaranteed;

(k)      the Mortgage Borrower Company Agreement and the certificates evidencing the Pledged Company Interests each state that the Pledged Company Interests are "securities" governed by and within the meaning of the Uniform Commercial Code, as from time to time amended and in effect, in the jurisdiction in which Mortgage Borrower is organized; and

(l)      the Pledged Company Interests (i) are "securities" within the meaning of Sections 8-102(a)(15) and 8-103 of the Code, (ii) are "financial assets" (within the meaning of Section 8-102(a)(9) of the Code), (iii) are not credited to a "securities account" (within the meaning of Section 8-501(a) of the Code), (iv) are not dealt in or traded on a securities exchange or in a securities market, and (v) are not "investment company securities" (within the meaning of Section 8-103 of the Code).

     **5.**     **Covenants.**  Pledgor covenants and agrees with Lender that, from and after the date of this Agreement until the Debt (exclusive of any indemnification or other obligations which are expressly stated in any of the Loan Documents to survive satisfaction of the Note) is paid in full:

(a)      **Acknowledgements of Parties.**  If Pledgor shall, as a result of its ownership of the Pledged Company Interests, become entitled to receive or shall receive any

limited liability company certificate (including, without limitation, any certificate representing a dividend or a distribution in connection with any reclassification, increase or reduction of capital or any certificate issued in connection with any reorganization), option or rights, whether in addition to, in substitution of, as a conversion of, or in exchange for any shares of the Pledged Company Interests, or otherwise in respect thereof, Pledgor shall accept the same as Lender's agent, hold the same in trust for Lender and deliver the same forthwith to Lender in the exact form received, duly endorsed by Pledgor to Lender, if required, together with an undated limited liability company interest power covering such certificate duly executed in blank and with, if Lender so requests, signature guaranteed, to be held by Lender in accordance with the provisions of this Agreement as additional security for the Debt. Any sums paid upon or in respect of the Pledged Company Interests upon the liquidation or dissolution of Mortgage Borrower shall be paid over to Lender to be held by it hereunder as additional security for the Debt, and in case any distribution of capital shall be made on or in respect of the Pledged Company Interests or any property shall be distributed upon or with respect to the Pledged Company Interests pursuant to the recapitalization or reclassification of the capital of Mortgage Borrower or pursuant to the reorganization thereof, the property so distributed shall be delivered to Lender to be held by it, subject to the terms hereof, as additional security for the Debt. If any sums of money or property so paid or distributed in respect of the Pledged Company Interests shall be received by Pledgor, Pledgor shall deliver the same to Lender and, until such money or property is paid or delivered to Lender, hold such money or property in trust for Lender, segregated from other funds of Pledgor, as additional security for the Debt.

(b)     Without the prior written consent of Lender, Pledgor shall not, directly or indirectly (i) vote to enable, or take any other action to permit, Mortgage Borrower to issue any limited liability company interests or to issue any other securities convertible into or granting the right to purchase or exchange for any membership interests in Mortgage Borrower, or (ii) except as permitted by the Loan Agreement, sell, assign, transfer, exchange or otherwise dispose of, or grant any option with respect to, the Collateral, or (iii) create, incur, authorize or permit to exist any Lien or option in favor of, or any claim of any Person with respect to, any of the Collateral, or any interest therein, except for the Lien provided for by this Agreement. Pledgor shall defend the right, title and interest of Lender in, to and under the Collateral against the claims and demands of all Persons whomsoever.

(c)     At any time and from time to time, upon the written request of Lender, and at the sole expense of Pledgor, Pledgor shall promptly and duly give, execute, deliver, file and/or record such further instruments and documents and take such further actions as Lender may reasonably request for the purposes of obtaining, creating, perfecting, validating or preserving the full benefits of this Agreement and of the rights and powers herein granted including without limitation filing UCC financing or continuation statements, provided that the amount of the Debt shall not be increased thereby. Pledgor hereby authorizes Lender to file any such financing statement or continuation statement without the signature of Pledgor to the extent permitted by law. If any amount payable under or in connection with any of the Collateral shall be or become evidenced by any promissory note, other instrument or chattel paper, such note, instrument or chattel paper shall be promptly delivered to Lender, duly endorsed in a manner satisfactory to Lender, to be held as Collateral pursuant to this Agreement.

- 6 -

(d)    **Limitation on Liens.**  Pledgor will not create, incur or permit to exist, will warrant and defend title to and ownership of the Collateral against, and will take all such other action, at Pledgor's sole cost and expense, as is necessary to remove, any Lien or claim on or to the Pledged Company Interests, other than the Liens created hereby, and will defend the right, title and interest of Lender in, to and under the Pledged Company Interests against the claims and demands of all Persons whomsoever.

(e)    **Further Identification of Pledged Company Interests.**  Pledgor will furnish to Lender from time to time statements and schedules further identifying and describing the Pledged Company Interests and other Collateral and such other reports in connection with the Pledged Company Interests and other Collateral as Lender may reasonably request, all in reasonable detail.

(f)    **Changes in Location, Name, etc.**  Pledgor will not, unless (i) it shall have given thirty (30) days' prior written notice to such effect to Lender and (ii) all action necessary or advisable, in Lender's opinion, to protect and perfect the Liens and security interests intended to be created hereunder with respect to the Pledged Company Interests shall have been taken, (A) change the location of its chief executive office or principal place of business from that specified in Section 4(g), or (B) change its name, identity or structure, or (C) reorganize or reincorporate under the laws of another jurisdiction.

(g)    **Taxes**.  Pledgor shall pay, and save Lender harmless from, any and all liabilities with respect to, or resulting from any delay in paying, any and all stamp, excise, sales or other taxes which may be payable or determined to be payable with respect to any of the Collateral or in connection with any of the transactions contemplated by this Agreement.

(h)    **UCC Article 8**.  The Pledged Company Interests (i) will continue to be "securities" within the meaning of Sections 8-102(a)(15) and 8-103 of the Code, (ii) will continue to be "financial assets" (within the meaning of Section 8-102(a)(9) of the Code), (iii) will not be credited to a "securities account" (within the meaning of Section 8-501(a) of the Code), (iv) will not be dealt in or traded on a securities exchange or in a securities market, and (v) will not be "investment company securities" (within the meaning of Section 8-103 of the Code).  The Mortgage Borrower Company Agreement and the certificates evidencing the Pledged Company Interests each shall at all times state that the Pledged Company Interests are "securities" as such term is defined in Article 8 of the Uniform Commercial Code, as from time to time amended and in effect, in the jurisdiction in which Mortgage Borrower is organized.

6.    **Certain Understandings of Parties; Certificated Securities.**  The parties acknowledge and agree that all of the Pledged Company Interests have been "certificated", are "securities" governed by Article 8 of the Code and, during the terms of this Agreement the Pledged Company Interests are and will be deemed securities under Article 8 and Article 9 of the Code, including without limitation, Section 8-103(c) of the Code.  Notwithstanding the foregoing, to better assure the perfection of the security interest of Lender in the Pledged Company Interests, concurrently with the execution and delivery of this Agreement, and subsequently from time to time upon Lender's written request following Lender's transfer of all or any portion of the Loan, Pledgor shall send written instructions in the form of Exhibit B hereto to the issuer thereof (the "**Issuer**"), and shall cause the Issuer to, and the Issuer shall, deliver to

- 7 -

Lender the Confirmation Statement and Instruction Agreement in the form of <u>Exhibit C</u> hereto (a "**Confirmation Statement**") pursuant to which the Issuer will confirm that it has registered the pledge effected by this Agreement on its books and agrees to comply with the instructions of Lender in respect of the Pledged Company Interests without further consent of Pledgor or any other Person until the Debt has been repaid in full and the pledge provided by this Agreement is otherwise released.

7.      **Cash Dividends; Voting Rights.**  Subject to (i) the provisions of <u>Section 14</u> (relating to the application of distributions of Mortgage Borrower to pay the Loan) and (ii) the cash management provisions of the Loan Agreement, unless an Event of Default shall have occurred and be continuing, Pledgor shall be permitted to receive all limited liability company interest distributions or cash dividends paid in accordance with the Loan Agreement and to exercise all voting and limited liability company interests or other rights with respect to the Pledged Company Interests, provided that no vote shall be cast or right exercised or other action taken which, in Lender's judgment, would impair the Collateral or which would be inconsistent with or result in any violation of any provision of the Loan Agreement, the Note, this Agreement or any other Loan Documents.

8.      <u>**Rights of Lender.**</u>

(a)      If an Event of Default (as defined in the Loan Agreement) shall occur and be continuing, Lender shall have the right to receive any and all income, cash dividends, distributions, proceeds or other property received or paid in respect of the Pledged Company Interests and make application thereof to the Debt, in such order as Lender, in its sole discretion, may elect, in accordance with the Loan Documents.  If an Event of Default shall occur and be continuing, then all such Pledged Company Interests at Lender's option and in accordance with an exercise of remedies pursuant to the terms of this Agreement, shall be registered in the name of Lender or its nominee (if not already so registered), and Lender or its nominee may thereafter exercise (i) all voting, managerial, limited liability company and other rights pertaining to the Pledged Company Interests and the business and affairs of Mortgage Borrower and (ii) any and all rights of conversion, exchange, and subscription and any other rights, privileges or options pertaining to such Pledged Company Interests as if it were the absolute owner thereof (including, without limitation, the right to exchange at its discretion any and all of the Pledged Company Interests upon the merger, consolidation, reorganization, recapitalization or other fundamental change in the organizational structure of Mortgage Borrower or upon the exercise by Pledgor or Lender of any right, privilege or option pertaining to such Pledged Company Interests, and in connection therewith, the right to deposit and deliver any and all of the Pledged Company Interests with any committee, depositary, transfer agent, registrar or other designated agency upon such terms and conditions as it may determine), all without liability except to account for property actually received by it, but Lender shall have no duty to exercise any such right, privilege or option and shall not be responsible for any failure to do so or delay in so doing.

(b)      The rights of Lender under this Agreement shall not be conditioned or contingent upon the pursuit by Lender of any right or remedy against Pledgor or against any other Person which may be or become liable in respect of all or any part of the Debt or against

- 8 -

any other security therefor, guarantee thereof or right of offset with respect thereto.  Lender shall not be liable for any failure to demand, collect or realize upon all or any part of the Collateral or for any delay in doing so, nor shall it be under any obligation to sell or otherwise dispose of any Collateral upon the request of Pledgor or any other Person or to take any other action whatsoever with regard to the Collateral or any part thereof.

(c)     Upon satisfaction in full of the Debt and payment of all amounts owed on the Note, Lender's rights under this Agreement shall terminate, the Collateral shall be released and Lender shall return the certificates representing or evidencing the Pledged Company Interests to Pledgor and shall, at Borrower's sole cost and expense, execute and deliver to Pledgor, or authorize Pledgor to file, UCC-3 termination statements or similar documents and agreements to terminate all of Lender's rights under this Agreement and all other Loan Documents.

(d)     Pledgor also authorizes Lender, at any time and from time to time, to execute, in connection with the sale provided for in <u>Sections 9</u> or <u>10</u> hereof, any endorsements, assignments or other instruments of conveyance or transfer with respect to the Collateral.

(e)     The powers conferred on Lender hereunder are solely to protect Lender's interest in the Collateral and shall not impose any duty upon Lender to exercise any such powers.  Lender shall be accountable only for amounts that it actually receives as a result of the exercise of such powers, and neither it nor any of its officers, directors, employees or lenders shall be responsible to Pledgor for any act or failure to act hereunder, except for its or their gross negligence or willful misconduct.

(f)     If Pledgor fails to perform or comply with any of its agreements contained herein and Lender, as provided for by the terms of this Agreement, shall itself perform or comply, or otherwise cause performance or compliance, with such agreement, the expenses of Lender incurred in connection with such performance or compliance, together with interest at the Default Rate if such expenses are not paid on demand, shall be payable by Pledgor to Lender on demand and shall constitute obligations secured hereby.

## 9.     <u>Remedies.</u>

(a)     If an Event of Default shall occur and be continuing, Lender may, in addition to all other rights and remedies granted in this Agreement and in any other instrument or agreement securing, evidencing or relating to the Debt:

(i)     exercise all rights and remedies of a secured party under the Code (whether or not said Code is in effect in the jurisdiction where the rights and remedies are asserted) and such additional rights and remedies to which a secured party is entitled under the laws in effect in any jurisdiction where any rights and remedies hereunder may be asserted, including, without limitation, the right, to the maximum extent permitted by law, to exercise all voting, managerial, consensual and other powers of ownership pertaining to the Collateral under Mortgage Borrower's Operating Agreement as if Lender were the sole and absolute owner

thereof (and Borrower agrees to take all such action as may be appropriate to give effect to such right);

(ii)    make any reasonable compromise or settlement deemed desirable with respect to any of the Collateral and may extend the time of payment, arrange for payment in installments, or otherwise modify the terms of, any of the Collateral; and

(iii)    in its name or in the name of Borrower or otherwise, demand, sue for, collect, direct payment of or receive any money or property at any time payable or receivable on account of or in exchange for any of the Collateral, but shall be under no obligation to do so.

(b)    Without limiting the generality of the foregoing, if an Event of Default shall occur and be continuing, Lender, without demand of performance or other demand, presentment, protest, advertisement or notice of any kind (except any notice required by law referred to below or otherwise required hereby) to or upon Pledgor, Mortgage Borrower, or any other Person (all and each of which demands, presentments, protests, advertisements and notices, or other defenses, are hereby waived to the extent permitted under applicable law), may in such circumstances forthwith and in accordance with an exercise of remedies pursuant to the terms of this Agreement collect, receive, appropriate and realize upon the Collateral, or any part thereof, and/or may forthwith sell, assign, give option or options to purchase or otherwise dispose of and deliver the Collateral or any part thereof (or contract to do any of the foregoing), in one or more parcels at public or private sale or sales, in the over-the-counter market, at any exchange, broker's board or office of Lender or elsewhere upon such terms and conditions as it may deem advisable and at such prices as it may deem best in its sole discretion, for cash or on credit or for future delivery without assumption of any credit risk. Lender shall have the right, without notice or publication, to adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for such sale, and any such sale may be made at any time or place to which the same may be adjourned without further notice. Lender shall have the right upon any such public sale or sales, and, to the extent permitted by law, upon any such private sale or sales, to purchase the whole or any part of the Collateral so sold, free of any right or equity of redemption of Pledgor, which right or equity of redemption is hereby waived or released. Lender shall apply any Proceeds from time to time held by it and the net proceeds of any such collection, recovery, receipt, appropriation, realization or sale, after deducting all reasonable costs and expenses of every kind incurred therein or incidental to the care or safekeeping of any of the Collateral or in any way relating to the Collateral or the rights of Lender hereunder, including, without limitation, reasonable attorneys' fees and disbursements, to the payment in whole or in part of the Debt, in such order as Lender may elect, and only after such application and after the payment by Lender of any other amount required by any provision of law, including, without limitation, Sections 9-610 and 9-615 of the Code, need Lender account for the surplus, if any, to Pledgor. To the extent permitted by applicable law, Pledgor waives all claims, damages and demands it may acquire against Lender arising out of the exercise by Lender of any of its rights hereunder, except for any claims, damages and demands it may have against Lender arising from the willful misconduct or gross negligence of Lender or any of its affiliates, agents and/or employees. If any notice of a proposed sale or other disposition of Collateral shall be required by law, such notice shall be deemed reasonable and proper if given at least ten (10) Business Days before such sale or other disposition.

- 10 -

(c)       The rights, powers, privileges and remedies of Lender under this Agreement are cumulative and shall be in addition to all rights, powers, privileges and remedies available to Lender at law or in equity.  All such rights, powers and remedies shall be cumulative and may be exercised successively or concurrently without impairing the rights of Lender hereunder.

10.       **Private Sales.**  Pledgor recognizes that Lender may be unable to effect a public sale of any or all of the Pledged Company Interests, by reason of certain prohibitions contained in the Securities Act of 1933, as amended, and applicable state securities laws or otherwise, and may be compelled to resort to one or more private sales thereof to a restricted group of purchasers which will be obliged to agree, among other things, to acquire such securities for their own account for investment and not with a view to the distribution or resale thereof.  Pledgor acknowledges and agrees that any such private sale may result in prices and other terms less favorable to Lender than if such sale were a public sale, and, notwithstanding such circumstances, agrees that any such private sale shall not be deemed to have been made in a commercially unreasonable manner solely by virtue of being a private sale.  Lender shall be under no obligation to delay a sale of any of the Pledged Company Interests for the period of time necessary to permit Mortgage Borrower or Pledgor to register such securities for public sale under the Securities Act of 1933, as amended, or under applicable state securities laws, even if Mortgage Borrower or Pledgor would agree to do so.

(a)       Pledgor further shall use its best efforts to do or cause to be done all such other acts as may be reasonably necessary to make any sale or sales of all or any portion of the Pledged Company Interests pursuant to this <u>Section 10</u> valid and binding and in compliance with any and all other requirements of applicable law.  Pledgor further agrees that a breach of any of the covenants contained in this <u>Section 10</u> will cause irreparable injury to Lender, that Lender has no adequate remedy at law in respect of such breach and, as a consequence, that each and every covenant contained in this <u>Section 10</u> shall be specifically enforceable against Pledgor, and Pledgor hereby waives and agrees not to assert any defenses against an action for specific performance of such covenants except for a defense that no Event of Default has occurred and is continuing under the Loan Agreement.

(b)       Lender shall not incur any liability as a result of the sale of any Collateral, or any part thereof, at any private sale conducted in a commercially reasonable manner, it being agreed that some or all of the Collateral is or may be of one or more types that threaten to decline speedily in value and that are not customarily sold in a recognized market.  The Borrower hereby waives any claims against Lender arising by reason of the fact that the price at which any of the Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale or was less than the aggregate amount of the Debt, even if Lender accepts the first offer received and does not offer any Collateral to more than one offeree, provided that Lender has acted in a commercially reasonable manner in conducting such private sale.

(c)       The Code states that the Lender is able to purchase the Pledged Company Interests only if they are sold at a public sale.  Lender has advised Pledgor that SEC staff personnel have issued various no-action letters describing procedures which, in the view of the SEC staff, permit a foreclosure sale of securities to occur in a manner that is public for

- 11 -

purposes of Article 9 of the Code, yet not public for purposes of Section 4(2) of the Securities Act of 1933.  The Code permits Pledgor to agree on the standards for determining whether Lender has complied with its obligations under Article 9.  Pursuant to the Code, Pledgor specifically agrees (x) that it shall not raise any objection to Lender's purchase of the Pledged Company Interests (through bidding on the obligations or otherwise) and (y) that a foreclosure sale conducted in conformity with the principles set forth in the no-action letters (i) shall be considered to be a "public" sale for purposes of the Code; (ii) will be considered commercially reasonable notwithstanding that the Lender, has not registered or sought to register the Pledged Company Interests under the securities laws, even if Pledgor or Mortgage Borrower agrees to pay all costs of the registration process; and (iii) shall be considered to be commercially reasonable notwithstanding that Lender purchases the Pledged Company Interests at such a sale.

(d)    Pledgor agrees that Lender shall not have any general duty or obligation to make any effort to obtain or pay any particular price for any Pledged Company Interests sold by Lender pursuant to this Agreement.  Lender, may, in its sole discretion, among other things, accept the first offer received, or decide to approach or not to approach any potential purchasers.  Without in any way limiting Lender's right to conduct a foreclosure sale in any manner which is considered commercially reasonable, Pledgor hereby agrees that any foreclosure sale conducted in accordance with the following provisions shall be considered a commercially reasonable sale and hereby irrevocably waives any right to contest any such sale:

(i)    Lender conducts the foreclosure sale in the State of New York,

(ii)    The foreclosure sale is conducted in accordance with the laws of the State of New York,

(iii)    Not more than fifteen (15) Business Days before, and not less than five (5) Business Days in advance of the foreclosure sale, Lender notifies Pledgor at the address set forth herein of the time and place of such foreclosure sale,

(iv)    The foreclosure sale is conducted by an auctioneer licensed in the State of New York and is conducted in front of the New York Supreme Court located in New York City or such other New York State Court having jurisdiction over the Collateral on any Business Day between the hours of 9 a.m. and 5 p.m.,

(v)    The notice of the date, time and location of the foreclosure sale is published in the New York Times or The Wall Street Journal (or, if the New York Times and The Wall Street Journal are no longer widely circulated in print format, such other newspaper widely circulated in print format in New York, New York) for seven (7) consecutive days prior to the date of the foreclosure sale, and

(vi)    Lender sends notification of the foreclosure sale to all Persons from which Lender has received written notice of a claim or interest in any Collateral and all secured parties identified as a result of a search of the UCC financing statements in the filing offices located in the State of Delaware conducted not later than twenty (20) days and not earlier than thirty (30) days before such notification date

- 12 -

(e)     Lender shall not incur any liability as a result of the sale of any Collateral, or any part thereof, at any private sale conducted in a commercially reasonable manner, it being agreed that some or all of the Collateral is or may be of one or more types that threaten to decline speedily in value and that are not customarily sold in a recognized market. Borrower hereby waives any claims against Lender arising by reason of the fact that the price at which any of the Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale or was less than the aggregate amount of the Debt, even if Lender accepts the first offer received and does not offer any Collateral to more than one offeree, provided that Lender has acted in a commercially reasonable manner in conducting such private sale.

11.     **Limitation on Duties Regarding Collateral.**  Lender's sole duty with respect to the custody, safekeeping and physical preservation of the Collateral in its possession, under Section 9-207 of the Code or otherwise, shall be to deal with it in the same manner as Lender deals with similar securities and property for its own account.  Neither Lender nor any of its directors, officers, employees or agents shall be liable for failure to demand, collect or realize upon any of the Collateral or for any delay in doing so or shall be under any obligation to sell or otherwise dispose of any Collateral upon the request of Pledgor or otherwise.

12.     **Financing Statements; Other Documents.**  Pledgor hereby authorizes Lender to file UCC-1 financing statements with respect to the Pledged Company Interests. Borrower authorizes Lender to use the collateral description "all personal property" or "all assets" in any such financing statements.  Pledgor agrees to deliver any other document or instrument which Lender may reasonably request with respect to the Collateral for the purposes of obtaining or preserving the full benefits of this Agreement and of the rights and powers herein granted.  Without limiting the generality of the foregoing, Pledgor hereby authorizes the filing of UCC-1 financing statements (and amendments of such financing statements and continuation statements) that name Pledgor as debtor and Lender as secured party and that cover all personal property or all assets of Pledgor.

13.     **Attorney-in-Fact.**  Without limiting any rights or powers granted by this Agreement to Lender, Lender is hereby appointed, which appointment as attorney-in-fact is irrevocable (until the Debt is indefeasibly repaid in full) and coupled with an interest (provided, however, that Lender shall not exercise its rights pursuant to such appointment without first giving Borrower five (5) days prior notice of its intention to do so), the attorney-in-fact of Pledgor for the purpose of carrying out the provisions of this Agreement and taking any action and executing any instruments which Lender may deem necessary or advisable to accomplish the purposes hereof including, without limitation:

(a)     to ask, demand, collect, sue for, recover, compromise, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Collateral;

(b)     to receive, endorse and collect any drafts or other instruments, documents and chattel paper in connection with clause (a) above;

- 13 -

        (c)     to file any claims or take any action or institute any proceedings that the Lender may deem necessary or desirable for the collection of any of the Collateral or otherwise to enforce the rights of Lender, with respect to any of the Collateral;

        (d)     to register all Pledged Company Interests in the name of Lender or its nominee (if not already so registered) in connection with the election of Lender to do so as provided for in <u>Section 8;</u> and

        (e)     to execute, in connection with the sale provided for in <u>Section 9</u> or <u>10</u>, any endorsement, assignments, or other instruments of conveyance or transfer with respect to the Collateral, including without limitation, to transfer or cause the transfer of the Collateral, or any part thereof, on the books of Mortgage Borrower or other entity issuing such Collateral, to Lender or any nominee.

        If so requested by Lender, Pledgor shall ratify and confirm any such sale or transfer by executing and delivering to Lender at Pledgor's expense all proper deeds, bills of sale, instruments of assignment, conveyance of transfer and releases as may be designated in any such request.

        **14.**    <u>**Additional Covenants of Pledgor Relating to Covenants of Mortgage Borrower.**</u>  Pledgor covenants and agrees with Lender that, from and after the date of this Agreement until the Debt (exclusive of any indemnification or other obligations which are expressly stated in any of the Loan Documents to survive satisfaction of the Note) is paid in full, (A) Pledgor shall take and/or cause Mortgage Borrower to take (i) any and all actions either necessary or reasonably requested by Lender to ensure complete compliance with <u>Article 4</u> of the Loan Agreement and (ii) such actions as are required by or to comply with the terms of the Mortgage Loan Documents, in each case, applicable to it, and in each case within all applicable notice and cure or grace periods and (B) Pledgor shall not and shall not permit Mortgage Borrower to (i) take any actions that violate any of the Mortgage Loan Documents and (ii) apply amounts disbursed to Mortgage Borrower pursuant to the requirements of the Mortgage Loan in a manner contrary to the requirements of the Mortgage Loan Documents.

        **15.**    <u>**Reserved.**</u>

        **16.**    <u>**Non-Recourse.**</u>  The provisions of Section 13.1 of the Loan Agreement are hereby incorporated by reference into this Agreement as to the liability of Borrower hereunder to the same extent and with the same force as if fully set forth herein.

        **17.**    <u>**Indemnity.**</u>  Pledgor agrees that the terms and provisions of Section 12 of the Loan Agreement are hereby incorporated by reference into this Agreement to the same extent and with the same force as if fully set forth herein.

        **18.**    <u>**Miscellaneous.**</u>

        (a)    <u>**Severability.**</u>  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions

- 14 -

hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

(b)      **Headings.**    The headings used in this Agreement are for convenience of reference only and are not to affect the construction hereof or be taken into consideration in the interpretation hereof.    The Recitals to this Agreement are hereby incorporated by reference as if originally set forth in full herein.

(c)      **No Waiver; Cumulative Remedies.**  Lender shall not by any act (except by a written instrument pursuant to Section 18(d)), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any default or in any breach of any of the terms and conditions hereof.  No failure to exercise, nor any delay in exercising, on the part of Lender, any right, power or privilege hereunder shall operate as a waiver thereof.  No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  A waiver by Lender of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which Lender would otherwise have on any future occasion.  The rights, remedies, powers and privileges herein provided are cumulative, may be exercised singly or concurrently and are not exclusive of any rights, remedies, powers or privileges provided by law.

(d)      **Waivers and Amendments; Successors and Assigns.**    None of the terms or provisions of this Agreement may be waived, amended, or otherwise modified except by a written instrument executed by the party against which enforcement of such waiver, amendment, or modification is sought.  This Agreement shall be binding upon and shall inure to the benefit of Pledgor and the respective successors and assigns of Pledgor and shall inure to the benefit of Lender and its successors and assigns; provided Pledgor shall not have any right to assign its rights hereunder.  The rights of Lender under this Agreement shall automatically be transferred to any permitted transferee to which Lender transfers the Note and Loan Agreement.

(e)      **Notices.**  Notices by Lender to Pledgor or Mortgage Borrower to be effective shall be in writing (including by facsimile transmission), addressed or transmitted to Pledgor or Mortgage Borrower at the address or facsimile number of Pledgor set forth in the Loan Agreement, and shall be deemed to have been duly given or made in accordance with the terms and provisions of Section 14.1 of the Loan Agreement.

(f)      **Governing Law.**

(i)      **THIS AGREEMENT WAS NEGOTIATED IN THE STATE OF NEW YORK, AND MADE BY PLEDGOR AND ACCEPTED BY LENDER IN THE STATE OF NEW YORK, AND THE PROCEEDS OF THE NOTE SECURED HEREBY WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS AGREEMENT AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE**

- 15 -

GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA.   TO THE FULLEST EXTENT PERMITTED BY LAW, PLEDGOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT AND THE NOTE, AND THIS AGREEMENT AND THE NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

(ii)   ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR PLEDGOR ARISING OUT OF OR RELATING TO THIS AGREEMENT MAY AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, PURSUANT TO SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, AND PLEDGOR WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND PLEDGOR HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.   PLEDGOR DOES HEREBY CONSENT TO THE SERVICE OF PROCESS PROVIDED FOR IN SECTION 11.3 OF THE LOAN AGREEMENT.

(g)   **Agents.**   Lender may employ agents and attorneys-in-fact in connection herewith and shall not be responsible for their actions except for the gross negligence or willful misconduct of any such agents or attorneys-in-fact selected by it in good faith.

(h)   **Irrevocable Authorization and Instruction to Mortgage Borrower.**   Pledgor hereby authorizes and instructs Mortgage Borrower and any servicer of the Loan to comply with any instruction received by it from Lender in writing that (i) states that an Event of Default has occurred and is continuing and (ii) is otherwise in accordance with the terms of this Agreement, without any other or further instructions from Pledgor, and Pledgor agrees that Mortgage Borrower and any servicer shall be fully protected in so complying.

(i)   **Counterparts.**   This Agreement may be executed in any number of counterparts and all the counterparts taken together shall be deemed to constitute one and the same instrument.

(j)   **WAIVER OF JURY TRIAL, DAMAGES, JURISDICTION.** PLEDGOR AND LENDER EACH HEREBY AGREES TO WAIVE ITS RIGHTS TO A JURY TRIAL ON ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, OR ANY DEALINGS BETWEEN PLEDGOR AND LENDER.   THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE

- 16 -

TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS.  PLEDGOR AND LENDER EACH ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP WITH THE OTHER PARTY.  PLEDGOR REPRESENTS AND WARRANTS THAT IT HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT SUCH WAIVER IS KNOWINGLY AND VOLUNTARILY GIVEN FOLLOWING CONSULTATION WITH LEGAL COUNSEL.  THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED, EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, REPLACEMENTS, REAFFIRMATIONS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, OR ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT.  IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

WITH RESPECT TO ANY ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT, PLEDGOR SHALL AND HEREBY DOES SUBMIT TO THE NON EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA LOCATED IN THE STATE OF NEW YORK (AND ANY APPELLATE COURTS TAKING APPEALS THEREFROM).  PLEDGOR HEREBY WAIVES AND AGREES NOT TO ASSERT, AS A DEFENSE IN ANY ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, (A) THAT IT IS NOT SUBJECT TO SUCH JURISDICTION OR THAT SUCH ACTION, SUIT OR PROCEEDING MAY NOT BE BROUGHT OR IS NOT MAINTAINABLE IN THOSE COURTS OR THAT THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS MAY NOT BE ENFORCED IN OR BY THOSE COURTS OR THAT IT IS EXEMPT OR IMMUNE FROM EXECUTION, (B) THAT THE ACTION, SUIT OR PROCEEDING IS BROUGHT IN AN INCONVENIENT FORUM OR (C) THAT THE VENUE OF THE ACTION, SUIT OR PROCEEDING IS IMPROPER.  IN THE EVENT ANY SUCH ACTION, SUIT, PROCEEDING OR LITIGATION IS COMMENCED, PLEDGOR AGREES THAT SERVICE OF PROCESS MAY BE MADE, AND PERSONAL JURISDICTION OVER PLEDGOR OBTAINED, BY SERVICE OF A COPY OF THE SUMMONS, COMPLAINT AND OTHER PLEADINGS REQUIRED TO COMMENCE SUCH LITIGATION UPON PLEDGOR AT THE ADDRESS OF PLEDGOR AND TO THE ATTENTION OF SUCH PERSON AS SET FORTH IN THIS <u>SECTION 18</u>.

(k)     **No Special Damages**.  To the extent not prohibited by applicable laws, no claim may be made by Pledgor against Lender, its affiliates and its respective directors, officers, employees, or attorneys for any special, indirect or consequential damages ("**Special Damages**") in respect of any breach or wrongful conduct (whether the claim therefor is based on contract, tort or duty imposed by law) in connection with, arising out of, or in any way related to the transactions contemplated or relationship established by this Agreement, or any act, omission or event occurring in connection herewith or therewith; and to the fullest extent permitted by law

- 17 -

Pledgor hereby waives, releases and agrees not to sue upon any such claim for Special Damages, whether or not accrued and whether or not known or suspected to exist in its favor.

(l) **Acknowledgement and Consent**.  Pledgor shall cause Mortgage Borrower to execute and deliver to Lender an Acknowledgement and Consent with respect to this Agreement in the form of Exhibit A attached hereto in connection with the execution and delivery of this Agreement.

(m) **Irrevocable Proxy**.  Solely with respect to Article 8 Matters, Pledgor hereby irrevocably grants and appoints Lender, from the date of this Agreement until the termination of this Agreement in accordance with its terms, as Pledgor's true and lawful proxy, for and in Pledgor's name, place and stead to vote the Pledged Company Interests, whether directly or indirectly, beneficially or of record, now owned or hereafter acquired, with respect to such Article 8 Matters.  The proxy granted and appointed in this Section 18(m) shall include the right to sign Pledgor's name (as owner of Mortgage Borrower) to any consent, certificate or other document relating to an Article 8 Matter and the Pledged Company Interests that applicable law may permit or require, to cause the Pledged Company Interests to be voted in accordance with the preceding sentence.  Pledgor hereby represents and warrants that there are no other proxies and powers of attorney with respect to any Article 8 Matter that such Pledgor may have granted or appointed.  Pledgor shall not give a subsequent proxy or power of attorney or enter into any other voting agreement with respect to the Pledged Company Interests with respect to any Article 8 Matter and any attempt to do so with respect to any Article 8 Matter will be void and of no effect.  The proxies and powers granted by Pledgor pursuant to this Agreement are coupled with an interest and are given to secure the performance of Pledgor's obligations.

(n) **Joint and Several Liability.**  If Pledgor consists of more than one person or party, the obligations and liabilities of each such person or party hereunder shall be joint and several.

## [SIGNATURES COMMENCE ON THE FOLLOWING PAGE]

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed by their duly authorized officers as of the date set forth above.

PLEDGOR:

**UNION STATION SOLE MEMBER LLC**, a Delaware limited liability company

By: _____

Name:  Ben Ashkenazy
Title:  Authorized Signatory

[Signature Page to Pledge and Security Agreement]

**LENDER**:

**KOOKMIN BANK CO., LTD**, in its capacity as the trustee of KTB CRE Debt Fund No. 8, a Korean investment Trust

By: _____
       Name: Jean Moon
       Title:  Manager of Custody Business Dept.

[Signature Page to Pledge and Security Agreement]

**SCHEDULE 1**
**To Pledge And Security Agreement**

**DESCRIPTION OF PLEDGED COMPANY**
**INTERESTS**

| Issuer | Owner | Class of Interest | Percentage of Interests |
|---|---|---|---|
| Union Station Investco LLC | Union Station Sole Member LLC | Limited Liability Company | 100% |

SCH. 1-1

**EXHIBIT A**

**FORM OF ACKNOWLEDGMENT AND CONSENT**

Issuer hereby acknowledges receipt of a copy of that certain Pledge and Security Agreement, dated as of the date hereof, by and between Pledgor and Lender (the "Pledge Agreement") and acknowledges that Pledgor is bound thereby.  Issuer agrees to notify Lender promptly in writing of the occurrence of any of the events described in Section 5(a) of the Pledge Agreement.  Terms used herein but not otherwise defined herein shall have the respective meanings ascribed to them in the Pledge Agreement.

Dated:  May [__], 2018

[SIGNATURES BEGIN ON NEXT PAGE]

24461953.6.BUSINESS

**ISSUER**:

**UNION STATION INVESTCO LLC**, a Delaware
limited liability company

By: _____
     Name: Ben Ashkenazy
     Title: Authorized Signatory

**EXHIBIT B**

**FORM OF INSTRUCTION TO REGISTER PLEDGE**
**FOR ISSUER**

May [___], 2018

To:

AAC South Station Property LLC
c/o Ashkenazy Acquisition Corp.
150 East 58th Street
Penthouse
New York, New York 10155
Attention:  Ben Ashkenazy

In accordance with the requirements of that certain Pledge and Security Agreement, dated as of the date hereof (as amended, supplemented or otherwise modified from time to time, the "**Pledge Agreement**"), between **KOOKMIN BANK CO., LTD., AS TRUSTEE OF KTB CRE DEBT FUND NO. 8** (together with its successors and assigns, "**Lender**") and **UNION STATION SOLE MEMBER LLC**, a Delaware limited liability company ("**Pledgor**") (defined terms used herein as therein defined), you are hereby instructed, notwithstanding your and our understanding that the limited liability company interests, partnership interests, and shares of stock described below are a "security" under the Uniform Commercial Code, as a precaution in the event that such interest was nevertheless held not to be a security and to better assure the perfection of the security interest of Lender in such interests, to register the pledge of the following interests in the name of Lender as follows:

The 100% limited liability company interests of the undersigned in the Issuer (the "**Issuer**") as listed on Schedule 1 to the Pledge Agreement including without limitation all of the following property now owned or at any time hereafter acquired by Pledgor or in which Pledgor now has or at any time in the future may acquire any right, title or interest:

(a)     all additional limited liability company or partnership interests or shares of stock of, or other equity interests in, the Issuer and options, warrants, and other rights hereafter acquired by Pledgor in respect of such limited liability company interests, partnership interests, shares of stock or other equity interests, as applicable (whether in connection with any capital increase, recapitalization, reclassification, or reorganization of the Issuer or otherwise) (all such limited liability company interests, partnership interests, shares of stock and other equity interests, including those described on Schedule 1 to the Pledge Agreement, and all such options, warrants and other rights being hereinafter collectively referred to as the "**Pledged Company Interests**");

(b)     all certificates, instruments, or other writings representing or evidencing the Pledged Company Interests, and all accounts and general intangibles arising out of, or in connection with, the Pledged Company Interests;

(c)     any and all moneys or property due and to become due to Pledgor now or in the future in respect of the Pledged Company Interests, or to which Pledgor may now or in the future be entitled to in its capacity as a member the Issuer, whether by way of a dividend, distribution, return of capital, or otherwise;

(d)     all other claims which Pledgor now has or may in the future acquire in its capacity as a member of the Issuer against the Issuer and its property;

(e)     all rights of Pledgor under the operating agreement of the Issuer (and all other agreements, if any, to which Pledgor is a party from time to time which relate to its ownership of the Pledged Company Interests), including, without limitation, all voting, managerial and consent rights of Pledgor arising thereunder or otherwise in connection with Pledgor's ownership of the Pledged Company Interests; and

(f)     to the extent not otherwise included, all Proceeds of any or all of the foregoing.

You are hereby further authorized and instructed to execute and deliver to Lender a Confirmation Statement and, to the extent provided more fully therein, to comply with the instructions of Lender in respect of the Collateral without further consent of, or notice to, the undersigned.  Notwithstanding anything in this paragraph, this instruction shall not be construed as expanding the rights of Lender to give instructions with respect to the Collateral beyond such rights set forth in the Pledge Agreement.

**[SIGNATURES COMMENCE ON THE FOLLOWING PAGE]**

Very truly yours,

**UNION STATION SOLE MEMBER LLC**, a
Delaware limited liability company


By: _____
    Name: Ben Ashkenazy
    Title: Authorized Signatory

**LENDER:**

**KOOKMIN BANK CO., LTD, in its capacity as the trustee of KTB CRE Debt Fund No. 8, a Korean investment Trust**

By: _____
Name: Jean Moon
Title: Manager of Custody Business Dept.

**EXHIBIT C**

**FORM OF CONFIRMATION STATEMENT AND INSTRUCTION
AGREEMENT FOR ISSUER**

May [____], 2018

To:    Kookmin Bank Co., Ltd., as trustee of
KTB CRE Debt Fund No. 8
13FL, KTB Bldg, 66 Yeouidaero
Yeongdeungpo-gu, Seoul 07325, Korea

        Pursuant to the requirements of that certain Pledge and Security Agreement, dated as the date hereof (as amended, supplemented or otherwise modified from time to time, the "**Pledge Agreement**"), between **KOOKMIN BANK CO., LTD., AS TRUSTEE OF KTB CRE DEBT FUND NO. 8** (together with its successors and assigns, "**Lender**") and **UNION STATION SOLE MEMBER LLC**, a Delaware limited liability company ("**Pledgor**") (defined terms used herein as therein defined), this Confirmation Statement and Instruction Agreement relates to those limited liability company interests (the "**Pledged Company Interests**"), as further described on Schedule 1 to the Pledge Agreement, issued by that certain limited liability company listed as issuer on Schedule 1 to the Pledge Agreement (the "**Issuer**").

        The Pledged Company Interests are not (i) "investment company securities" (within the meaning of Section 8-103 of the Code) or (ii) dealt in or traded on securities exchanges or in securities markets.

        The Pledged Company Interests are "securities" (within the meaning of Sections 8-102(a)(15) and 8-103 of the Code), and therefore, for purposes of perfecting the security interest of Lender therein, the Issuer agrees as follows:

        On the date hereof: the registered owner of 100% of the limited liability company interests of Union Station Investco LLC is Union Station Sole Member LLC.

        The registered pledgee of the Pledged Company Interests is:

**KOOKMIN BANK CO., LTD., AS TRUSTEE OF KTB
CRE DEBT FUND NO. 8**

        There are no liens of the undersigned on the Pledged Company Interests or any adverse claims thereto for which the Issuer has a duty under Section 8-403 of the Code other than the liens of Lender.  The Issuer has by book-entry registered the Pledged Company Interests in the name of the registered pledgee on or before May 8, 2018.  No other pledge is currently registered on the books and records of the Issuer with respect to the Pledged Company Interests.

        Until the Debt is paid in full, the Issuer agrees to:  (i) comply with the instructions of Lender sent in accordance with Section 18(h) of the Pledge Agreement, without any further consent from Pledgor or any other Person, in respect of the Pledged Company Interests; and (ii) disregard any request made by Pledgor or any other Person

which contravenes such instructions of Lender with respect to the Pledged Company Interests.  Notwithstanding anything in this paragraph, this Confirmation Statement and Instruction Agreement shall not be construed as expanding the rights of Lender to give instructions with respect to the Pledged Company Interests beyond such rights set forth in the Pledge Agreement.

Dated:  May [____], 2018

### *[SIGNATURES COMMENCE ON THE FOLLOWING PAGE]*

Very truly yours,

**UNION STATION INVESTCO LLC**, a Delaware
limited liability company


By: _____
    Name: Ben Ashkenazy
    Title: Authorized Signatory




*[Signatures continue on next Page]*

**ACKNOWLEDGED AND AGREED:**

**KOOKMIN BANK CO., LTD, in its capacity as the trustee of
KTB CRE Debt Fund No. 8, a Korean investment Trust**


By: _____
Name: Jean Moon
Title: Manager of Custody Business Dept.

**ACKNOWLEDGED AND AGREED**:

**UNION STATION SOLE MEMBER LLC**,
 a Delaware limited liability company

By: _____
     Name: Ben Ashkenazy
     Title: Authorized Signatory