**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---------------------------------------------------------------- X

NATIONAL RAILROAD PASSENGER
CORPORATION (AMTRAK),

        Plaintiff,                          No. 1:22-cv-01043(APM)

        v.

SUBLEASE INTEREST PERTAINING TO
DESCRIBED LEASEHOLD INTERESTS
AT WASHINGTON UNION STATION, et al.

        Defendants.

---------------------------------------------------------------- X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS
UNION STATION INVESTCO LLC'S AND UNION STATION SOLE MEMBER LLC'S
MOTION TO STRIKE**

MORRISON COHEN LLP

Y. David Scharf
Brett Dockwell
Kristin T. Roy
Latisha V. Thompson
Amber R. Will
Mahnoor Misbah
*Admitted pro hac vice*
909 Third Avenue
New York, New York 10022
(212) 735-8600

HOLLAND & KNIGHT LLP

Paul J. Kiernan
Louis J. Rouleau
800 17th Street N.W.
Suite 1100
Washington, D.C. 20006
Phone: (202) 663-7276
Paul.Kiernan@hklaw.com

*Attorneys for Defendant Kookmin
Bank Co., Ltd.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 5

    A.  The Mortgage and Mezz Loans ................................................................................... 5

    B.  The Defaults on the Mortgage Loan and Mezz Loan ...................................................... 8

    C.  Lender's Exercise of its Rights Under the Pledge Agreement ......................................... 9

    D.  Ashkenazy and USSM Obstruct Lender's Proper  Exercise of Rights and Remedies ....... 9

ARGUMENT ................................................................................................................... 10

I.  Condemnation Law Does Not Limit or Supersede Lender's Contractual Rights Under the
    Loan Documents ............................................................................................................... 13

    A.  Condemnation is an *In Rem* Proceeding ..................................................................... 13

    B.  Courts Enforce, Rather Than Disregard, Parties' Contractual Agreements ..................... 14

    C.  The Anti-Assignment Act Does Not Apply .................................................................. 16

II.  The Parties' Contracts Provide Lender With the Authority To Exercise Control Over USI .. 17

    A.  Lender Validly Exercised Its Rights Under Section 9(a) of the Pledge Agreement ......... 17

    B.  Lender Validly Exercised Its Rights Under Section 8(a) of the Pledge Agreement ......... 19

    C.  Lender Validly Exercised Its Rights Under Section 13 of the Pledge Agreement ........... 20

III.  Nothing in the Loan Documents Prohibits Lender's Exercise of Its Rights Under the Pledge
    Agreement in the Event of Default ..................................................................................... 22

    A.  Section 5.2.2 of the Loan Agreements Does Not Limit Lender's Authority Under the
        Pledge ..................................................................................................................... 22

    B.  Lender's Rights Under the Loan Documents are Cumulative .......................................... 25

IV.  Post-Foreclosure, USSM Has No Interest in USI or Union Station ....................................... 25

V.  Movants' Remaining Arguments Are without Merit ............................................................. 28

CONCLUSION ................................................................................................................. 29

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 286 Rider Ave Acquisition, LLC*,
No. 21-11298 (LGB) (S.D.N.Y. Oct. 28, 2021) .......................................................18, 22, 29

*In re 2927 Eighth Ave. Corp.*,
No. 01 Civ. 8947(BSJ), 2004 WL 1403362 (S.D.N.Y. June 23, 2004)...................................18

*893 4th Ave. Lofts LLC v. 5AIF Nutmeg, LLC*,
2021 N.Y. Misc. LEXIS 908 (N.Y. Sup. Ct. Kings Cnty. 2021)...........................................22

*Beninati v. FDIC*,
55 F. Supp. 2d 141 (E.D.N.Y. 1999) ....................................................................................18

*Constitution Pipeline Co, LLC v. Permanent Easement for 1.80 Acres*,
2021 WL 4624486 (N.D.N.Y. October 7, 2021) ...................................................................14

*Gramercy Warehouse Funding I LLC v. Colfin JIH Funding LLC*,
2012 WL 75431 (S.D.N.Y. Jan. 6, 2012) ..............................................................................26

*Harasek v. Nat'l R.R. Pass. Corp.*,
334 F. Supp. 3d 309 (D.D.C. 2018)......................................................................................16

*Harris v. Stony Clove Lake Acres Inc.*,
202 A.D.2d 745 (3d Dep't 1994)..........................................................................................26

*Hatamian v. Advanced Micro Devices, Inc.*,
2015 WL 511175 (N.D. Cal. Feb. 6, 2015) ..........................................................................10

*JPMCC 2006-CIBIC14 Eads Parkway, LLC v. DBL Axel, LLC*,
977 N.E.2d 354 (Ind. Ct. App. 2012)...................................................................................21

*Lebron v. National R.R. Pass. Corp.*,
513 U.S. 374 (1995)..............................................................................................................16

*Logan v. Jones Lang Lasalle Americas, Inc.*,
2019 WL 1960208 (D.D.C. May 2, 2019).............................................................................10

*OI European Group B.V. v. Bolivarian Republic of Venezuela*,
2019 WL 2185040 (D.D.C. May 21, 2019)..................................................................11, 12, 13

\* - cases chiefly relied on

*Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*,
    830 F.3d 152 (2d Cir. 2016)............................................................23

*Pennsylvania Ave. Dev. Corp v. One Parcel in Land*,
    670 F.2d 289 (D.C. Cir. 1981) ......................................................15

*Pennsylvania Avenue Dev. Corp. v. One Parcel of Land*,
    494 F. Supp. 45 (D.D.C. 1980)......................................................14

*\*Pereira v. Nelson (In re Trace Int'l Holdings)*,
    284 B.R. 32 (Bankr. S.D.N.Y. 2002)..............................................20

*Rampersad v. Deutsche Bank Securities*,
    2004 WL 616132 (S.D.N.Y. Mar. 30, 2004) ................................10

*In re Riverair LLC*,
    Case No. 04-17586-smb (Bankr. S.D.N.Y. Nov. 29, 2004) ..........21

*Rutgerswerke AG and Frendo S.p.A. v. Abex Corp.*,
    2002 WL 1203836 (S.D.N.Y. June 4, 2002) ..................................7

*\*SK Greenwich LLC v. W-D Group (2006) LP*,
    No. 10 Civ. 784(RPP), 2010 WL 4140445 (S.D.N.Y. Oct. 21, 2010)....................28

*Smith v. Washington Post Co.*,
    962 F. Supp. 2d 79 (D.D.C. 2013) ................................................10

*Sterling Natl. Bank v Freidman*,
    202 A.D.3d 495 (1st Dep't 2022) ..................................................26

*Toles v. United States*,
    371 F.2d 784 (10th Cir. 1967) ......................................................16

*U.S. v. All Assets Held at Bank Julius*,
    480 F. Supp. 3d 1 (D.D.C. 2020) ..................................................11

*U.S. v. Sum of Three Hundred None Million Five Hundred Thousand Dollars*,
    85 F. Supp. 3d 111 (D.D.C. 2015) ................................................11

*United States v. Petty Motor Co.*,
    327 U.S. 372 (1946)......................................................................14

*\*Uzlyan v. Solis*,
    706 F. Supp. 2d 44 (D.D.C. 2010) ................................................10

*\*Whitecap (U.S.) Fund I, LP v. Siemens First Capital Commercial Finance LLC*,
    121 A.D.3d 584 (1st Dep't 2014) ............................................3, 29

*Yaist v. United States*,
  656 F.2d 616 (Ct. Cl. 1981) ...................................................................................15

*\*YL Sheffield LLC v. Wells Fargo Bank*,
  2009 WL 6408598 (Sup. Ct. N.Y. Cnty. July 29, 2009) .........................................26

**Statutes**

31 U.S.C. § 3727 ..........................................................................................................16

31 U.S.C. § 3727(a) ......................................................................................................16

31 U.S.C. § 9101 ..........................................................................................................16

49 U.S.C. § 24301(3) ....................................................................................................16

49 U.S.C. § 24301(a)(3) ................................................................................................16

Joseph Story, *BAILMENTS, WITH ILLUSTRATIONS FROM THE CIVIL AND THE FOREIGN
  LAW*, Hilliard and Brown (1832) ................................................................................22

**Other Authorities**

Fed. R. Civ. P. 12(f) ................................................................................................10, 11

Fed. R. Civ. P. 71.1(c)(3) .............................................................................................13

Fed. R. Civ. P. 71.1(g) ..................................................................................................14

Defendant Kookmin Bank Co., Ltd., individually and in its capacity as trustee ("**Trustee**" or "**Kookmin**") of KTB CRE Debt Fund No. 8, a Korean Investment Trust (the "**Trust**"), by its agent on behalf of the Trust in Korea, Daol Fund Management Co. ("**Daol**") and by its agent on behalf of the Trust in the United States, Rexmark Holdings LLC d/b/a Rexmark ("**Rexmark**," and together with Trustee, the Trust, and Daol, "**Lender**"), respectfully requests that the Court deny the motion of Union Station Sole Member LLC ("**USSM**"), which purports also to be filed on behalf of Union Station Investco LLC ("**USI**," and together with USSM, "**Movants**"), to strike (the "**Motion to Strike**," ECF Doc. No. 55) the answer filed on behalf of USI by Neuberger, Quinn, Gielen, Rubin & Gibber, P.A. ("**Neuberger Quinn**") (ECF Doc. No. 36).

## PRELIMINARY STATEMENT

Movants' Motion to Strike rests on an obvious fallacy—namely, that USI and USSM were the "Owners" of the Washington Union Station ("**Union Station**") leasehold until Amtrak commenced this proceeding. In fact, prior to commencement of this proceeding, the Union Station leasehold was owned by USI, and only USI. By contrast, USSM owned *USI*, not the leasehold. This distinction is fundamental, because, as explained below, USI remains a real party in interest to this proceeding, while USSM does not. By virtue of Lender's exercise of its rights under the parties' loan documents, USSM ceased to have any control over USI, and all voting and control rights were vested in Lender. Furthermore, as a result of an uncontested foreclosure of USSM's ownership interest in USI on June 14, 2022, USSM no longer has any stake in USI or in this proceeding.

Lender is the holder of two loans made in 2018—a $330 million mortgage loan made to USI (the "**Mortgage Loan**"), and a $100 million mezzanine loan made to USSM (the "**Mezz Loan**"). The Mortgage Loan is secured by, among other collateral, USI's leasehold interest in

Union Station.  The Mezz Loan is secured by, among other collateral, USSM's ownership interest in USI.

Both loans have been in default since May 2020.  Despite multiple attempts by Lender to enable Movants to cure their defaults, including Lender's agreement to temporarily forbear from exercising its remedies, provided Movants satisfied certain conditions, the loans remained in default when this proceeding was commenced.  Under the Mortgage Loan documents, USI's right to any condemnation award in this proceeding is pledged to Lender as security for the Mortgage Loan (a standard feature of commercial real estate loans), and USI is expressly prohibited from settling or compromising Amtrak's condemnation claim without Lender's prior consent.  USI, which until recent events, was controlled by Ben Ashkenazy ("**Ashkenazy**") and his affiliated companies—highly sophisticated and well counseled parties—certainly understood these terms when they borrowed $430 million in 2018.

Likewise, Ashkenazy understood the terms of the Mezz Loan documents, pursuant to which USSM granted to Lender certain remedies upon an event of default, including the right to exercise voting and control rights over USI.  On May 13, 2022, Lender exercised these rights and replaced USI's then-manager, Ashkenazy, with a new, independent manager, William H. Henrich ("**Henrich**").  Henrich, in turn, retained Neuberger Quinn as USI's counsel in this proceeding, and on May 19, 2022, at Henrich's direction, Neuberger Quinn filed an answer on USI's behalf (the "**Henrich Answer**").  (ECF Doc. No. 36.)  Later the same day, a second answer was filed purportedly on behalf of USI and USSM (the "**Ashkenazy Answer**").  (ECF Doc. No. 38.)  The Ashkenazy Answer was filed by Kasowitz Benson Torres LLP ("**Kasowitz**") and ArentFox Schiff LLP ("**ArentFox**") without Henrich's knowledge or approval.

2

The Henrich Answer is the only valid pleading filed on behalf of USI.  Movants' assertions to the contrary rest on a misreading of the loan documents and on erroneous assertions of law. Lender validly exercised voting rights granted to it by USSM and appointed an independent manager of USI.  Following that appointment, the only person authorized to control USI was Henrich, and Henrich duly exercised that authority to cause USI to file the Henrich Answer.  As Henrich was the only person with authority to direct USI's action following the exercise of the Lender's voting and control rights over USI, the Henrich Answer is the only valid pleading filed on behalf of USI.  Henrich is the only party who could have submitted a proper answer on behalf of USI.  Movants' arguments that Lender's exercise of voting rights was improper because the loan documents provide Lender with additional rights in the event of a condemnation are contradicted by the plain language of those agreements and by settled condemnation law.

First, a purported taking generally does not limit or supersede private contractual rights and obligations.  A condemnation is a proceeding against *property*—not against the parties who hold interests in that property—and the parties may transfer their interests or otherwise proceed under their contractual agreements after a condemnation proceeding is commenced.  Moreover, a condemnation certainly does not limit or supersede the rights and obligations of a party such as USSM, which has never owned any interest in the condemned property.  Movants' Motion to Strike pertains entirely to Lender's exercise of its rights regarding ownership and control of USI, not regarding the property itself.  Movants do not provide any legal support for their extraordinary assertion that a condemnation proceeding bars or unwinds a lender's lawful exercise of its rights to collateral other than the condemned property.

Second, the loan documents here allow Lender to exercise its rights notwithstanding the condemnation proceeding.  Contrary to Movants' unsupported assertions, Sections 5.2.2 in the

Mortgage Loan and Mezz Loan Agreements provide *additional* remedies to Lender in the event of condemnation, not *exclusive* remedies.  Movants cannot point to any language either within Section 5.2.2 or elsewhere in the loan documents stating that Lender's default remedies are automatically nullified upon the filing of a condemnation proceeding and that Lender is thereafter limited to only those remedies set forth in Section 5.2.2.  Such a fanciful reading of the loan documents makes no commercial sense, and no lender would agree to such a drastic curtailment of its rights.

Third, Lender had the right to exercise voting rights and control over USI.  Under established law, once a mezzanine lender exercises its rights under a pledge agreement to appoint a new manager, the pledgor—here, USSM—no longer controls the property owner—USI.  Further, upon a foreclosure under the Uniform Commercial Code ("**UCC**"), the pledgor's ownership rights are terminated, and ownership vests in the purchaser of the pledgor's interests at the foreclosure sale.  Here, Lender purchased USSM's interests in USI at a properly noticed foreclosure sale on June 14, 2022.  Indeed, *Movants did not contest the sale*.  USSM no longer has any legal or beneficial interest in USI, and no stake in this proceeding.

In sum, the Henrich Answer was validly filed on behalf of USI, while the Ashkenazy Answer was not.  Movants' Motion to Strike should be denied in its entirety.

## STATEMENT OF FACTS[1]

### A.    The Mortgage and Mezz Loans

Amtrak commenced this condemnation proceeding to take the leasehold interest in Washington's Union Station.  (Compl., ECF Doc. No. 1.)  At the time of the taking, the leasehold interest was owned by USI.  (Compl. at ¶ 14.)[2]

USI's leasehold interest in Union Station was encumbered by a Leasehold Deed of Trust, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing, dated as of May 8, 2018, in favor of Lender's predecessor ("**Original Mortgage Lender**") (the "**Mortgage**").  (Rebibo Decl., Ex. A.)  Under the Mortgage, USI irrevocably and unconditionally granted and assigned to Lender, among other collateral:

> All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

(*Id.* at 2, 5.)  In addition to the Mortgage, USI executed a Loan Agreement, dated May 8, 2018 (the "**Mortgage Loan Agreement**").  (Rebibo Decl., Ex. B.)

USI was, until June 14, 2022, wholly owned by USSM.  Prior to the foreclosure sale, USSM's ownership interest in USI was encumbered by a pledge securing the $100 million Mezz Loan made by Lender to USSM.  The terms of USSM's pledge of its ownership interest in USI to

---

[1]    The following recitation of facts incorporates information from Amtrak's Complaint ("**Compl.**," ECF Doc. No. 1) and Lender's Answer to Complaint for Condemnation ("**Lender's Answer**," ECF Doc. No. 35), along with facts from the Declaration of Michael Rebibo, dated June 17, 2022 ("**Rebibo Decl.**") and the Declaration of Y. David Scharf, dated June 17, 2022 ("**Scharf Decl.**").

[2]    USI and Lender have challenged Amtrak's authority to take the Union Station leasehold and have disputed that Amtrak has complied with the requirements to quick-take the property.  For purposes of this Opposition, Lender is not further addressing these issues.

Lender are set forth in a Mezzanine Loan Agreement, dated May 8, 2018 (the "**Mezz Loan Agreement**") and a Pledge and Security Agreement, dated May 8, 2018 (the "**Pledge Agreement,**" and together with the Mezz Loan Agreement, the Mortgage Loan Agreement and all other documents executed in connection with the Mortgage Loan and Mezz Loan, the "**Loan Documents**"). (Rebibo Decl., Exs. C, D.)[3] Under the Pledge Agreement, USSM gave Lender a first priority security interest in "all Pledged Company Interests, including, without limitation, the status as a member of Mortgage Borrower [i.e., USI] and all economic, voting and managerial rights and powers of Pledgor [i.e., USSM] in Mortgage Borrower." (Rebibo Decl., Ex. D, Pledge Agreement at 3.) "Pledged Company Interests" is defined as:

> the limited liability company interests of Pledgor in Mortgage Borrower listed on Schedule 1 hereto, together with all limited liability company interest certificates evidencing ownership of such interests and all options or rights of any nature whatsoever which may be issued or granted by Mortgage Borrower to Pledgor while this Agreement is in effect.

(*Id.*)

In the event that USSM defaulted under the Mezz Loan, the Pledge Agreement entitled Lender to, among other remedies, have the Pledged Company Interests—that is, USSM's ownership interests in USI—registered in Lender's name; exercise all voting, managerial, and other rights pertaining to those interests; exercise all voting, managerial, and other powers of ownership pertaining to USI as if Lender were the sole and absolute owner thereof; and serve as the attorney-in-fact for USSM. (Rebibo Decl., Ex. D, Pledge Agreement at §§ 8(a), 9(a), 13.)

Section 8(a) of the Pledge Agreement provides, in relevant part, that:

> If an Event of Default shall occur and be continuing, then all such Pledged Company Interests at Lender's option and in accordance with an exercise of remedies pursuant to the terms of this [Pledge

---

[3]    The Loan Documents are governed by New York law. (*See* Rebibo Decl., Ex. B at § 11.3; Ex. C at § 11.3; Ex. D at § 18(f).)

Agreement], shall be registered in the name of Lender or its nominee (if not already so registered), and Lender or its nominee may thereafter exercise (i) **all voting, managerial, limited liability company and other rights pertaining to the Pledged Company Interests and the business and affairs of [USI]** . . . .

(*Id.* at § 8(a) (emphasis added).)

Section 9(a) of the Pledge Agreement provides, in relevant part, that:

If an Event of Default shall occur and be continuing, **Lender may, in addition to all other rights and remedies granted in this [Pledge Agreement] and in any other instrument or agreement securing, evidencing or relating to the Debt**: (i) exercise all rights and remedies of a secured party under the Code (whether or not said Code is in effect in the jurisdiction where the rights and remedies are asserted) and such additional rights and remedies to which a secured party is entitled under the laws in effect in any jurisdiction where any rights and remedies hereunder may be asserted, including, without limitation, **the right, to the maximum extent permitted by law, to exercise all voting, managerial, consensual and other powers of ownership pertaining to the Collateral** under [USI]'s Operating Agreement **as if Lender were the sole and absolute owner thereof** (and [USSM] agrees to take all such action as may be appropriate to give effect to such right) . . . .

(*Id.* at § 9(a) (emphasis added).)[4]  The rights, powers, privileges, and remedies granted to Lender under the Pledge Agreement are cumulative.  (*Id.* at § 9(c).)

Section 13 of the Pledge Agreement provides, in relevant part, as follows:

**Attorney-in-Fact.**  Without limiting any rights or powers granted by this [Pledge Agreement] to Lender, Lender is hereby appointed, . . . the attorney-in-fact of Pledgor for the purpose of carrying out the provisions of this [Pledge Agreement] and taking any action and executing any instruments which Lender may deem necessary or advisable to accomplish the purposes hereof including, without

---

[4]    Contrary to USSM's arguments (Motion to Strike at 13 n.9), Lender's action is deemed completed upon notice as set forth in section 18(h) of the Pledge Agreement.  Moreover, USSM cites authority that "under New York law . . . a court must interpret a contract so as to give effect to all of its clauses and to avoid an interpretation that leaves part of the contract meaningless." *Rutgerswerke AG and Frendo S.p.A. v. Abex Corp.*, 2002 WL 1203836, at *7 (S.D.N.Y. June 4, 2002).  This once again undercuts USSM's own position that Section 5.2.2 of the Loan Agreements supplants all other remedy provisions—it does not.  All clauses of the Loan Documents, including the Pledge Agreement, must be given effect here.

> limitation: (a) **to ask, demand, collect, sue for, recover,
> compromise, receive and give acquittance and receipts for
> moneys due and to become due under or in respect of any of the
> Collateral** . . . (d) **to register all Pledged Company Interests in
> the name of Lender** or its nominee (if not already so registered) in
> connection with the election of Lender to do so as provided for in
> Section 8 [of this Pledge Agreement]. . . .

(*Id.* at § 13 (emphasis added).)

### B.    The Defaults on the Mortgage Loan and Mezz Loan

In May 2020, USI defaulted under the Mortgage Loan, and USSM defaulted under the
Mezz Loan.  (Rebibo Decl. at ¶ 12.)  The parties agreed to a forbearance period in which Lender
did not take action against USSM and extended millions of dollars in protective advances to
provide USSM an opportunity to bring the Mezz Loan back into good standing.  (*Id.* at ¶ 13.)
USSM was unable to do so, failing to make a payment on the Mezz Loan since May 2020.  (*Id.* at
¶ 18.)  As a result of USSM's failure to cure the defaults and otherwise satisfy the terms of
forbearance, on November 12, 2021, Lender accelerated the Mezz Loan.  (*Id.* at ¶ 14.)  USI
similarly failed to cure its default on the Mortgage Loan.  (*Id.* at ¶ 15.)  As a result of USI's failure
to cure its default, on November 19, 2021, the Original Mortgage Lender noticed a foreclosure
sale under the Mortgage.  (*Id.*)  And on November 22, 2021, Lender noticed a foreclosure sale of
the Mezz Loan to be held on January 4, 2022.  (*Id.*)  Neither USI, USSM, nor Ashkenazy objected
to either of the noticed foreclosure sales.  (*Id.*)

In January 2022, to protect its position, Lender purchased the Mortgage Loan for
approximately $358 million and assumed the rights and obligations of the Original Mortgage
Lender under the Mortgage Loan Agreement.  (*Id.* at ¶ 16.)  Lender thereafter cancelled the
pending foreclosure sales, even though USI and USSM continued in default.  (*Id.* at ¶ 17.)

C.    **Lender's Exercise of its Rights Under the Pledge Agreement**

On May 13, 2022, Lender sent USSM three separate letters exercising its rights under Sections 8(a), 9(a), and 13 of the Pledge Agreement.  (Rebibo Decl., Exs. E-G.)  Specifically, Lender:

- exercised its right to act as USSM's attorney-in-fact;

- exercised the voting rights of USI's sole equity member, USSM;

- amended the Second Amended and Restated Limited Liability Company Agreement of USI (the "**USI Operating Agreement**") to replace the then-manager, Ashkenazy, with a new manager, Henrich of Getzler Henrich & Associates.

(*Id.*)  Henrich, as USI's authorized independent manager, retained Neuberger Quinn as counsel for the condemnation proceeding.  On May 19, 2022, Neuberger Quinn, at the direction of Henrich, filed a notice of appearance on behalf of USI and filed the Henrich Answer.  (ECF Doc. No. 36.)

On June 14, 2022, Lender foreclosed on the Pledged Company Interests.  (Rebibo Decl. at ¶ 24.)  Lender was the highest bidder at the public foreclosure sale.  (*Id.*)  Accordingly, Lender now owns all the right, title, and interest in and to USI.  (*Id.*)  USSM continues to exist, but it now no longer has any legal or beneficial interest in USI and no interest in this proceeding.  No one contested the foreclosure sale.  (*Id.* at ¶ 25.)  Not only was notice provided to USSM, but in Lender's Answer, Lender specifically referenced the impending foreclosure sale.  (Lender's Answer at ¶ 19.)

D.    **Ashkenazy and USSM Obstruct Lender's Proper
Exercise of Rights and Remedies**

Ashkenazy and USSM have refused to acknowledge Henrich as the authorized manager of USI.  (Rebibo Decl. at ¶ 21.)  Without Henrich's knowledge or approval, Ashkenazy improperly retained ArentFox and Kasowitz as counsel in the condemnation proceeding.  (*Id.*)

On May 19, 2022, without Henrich's knowledge or approval and after Neuberger Quinn had filed the Henrich Answer, ArentFox and Kasowitz filed notices of appearance and the Ashkenazy Answer on behalf of USSM and purportedly on behalf of USI. (ECF Doc. No. 38.)

## ARGUMENT

Movants ask this Court to strike the Henrich Answer pursuant to Fed.R.Civ.P. 12(f). That rule permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The proponent of a motion to strike carries a "formidable burden," *see Smith v. Washington Post Co.*, 962 F. Supp. 2d 79, 84 (D.D.C. 2013), and motions to strike are "disfavored." *See, e.g.*, *Logan v. Jones Lang Lasalle Americas, Inc.*, 2019 WL 1960208 *4 (D.D.C. May 2, 2019). As Judge Collyer summarized in analyzing a motion to strike parts of a complaint:

> A court has broad discretion in ruling on a motion to strike; however, striking portions of a pleading is a drastic remedy, and motions to strike are disfavored. Although the Rule does not require the moving party to show that it would be prejudiced should the allegations remain part of the pleading, "courts view motions to strike portions of a complaint with such disfavor that many courts will grant such a motion only if the portions sought to be stricken as immaterial are also prejudicial or scandalous."

*Uzlyan v. Solis*, 706 F. Supp. 2d 44, 51-52 (D.D.C. 2010) (citations omitted).

Movants do not provide much guidance to this Court about how to assess their motion. Movants say that Fed.R.Civ.P. 12(f) can be used to strike a pleading that is a "sham" or is "false" (Motion to Strike at 11), but do not, and cannot, identify any provision of the Henrich Answer that is a sham or false. *Cf. Hatamian v. Advanced Micro Devices, Inc.*, 2015 WL 511175 *2 (N.D. Cal. Feb. 6, 2015) (in cases where courts grant motion to strike, the "question of whether the allegation was fraudulent or a sham was not subject to reasonable dispute" (citing cases)); *Rampersad v. Deutsche Bank Securities*, 2004 WL 616132 *3 (S.D.N.Y. Mar. 30, 2004) (while a court has the

authority to strike allegations as false, a pleading should be stricken "only when it appears beyond peradventure that it is sham and false and that its allegations are devoid of factual basis" (citations omitted)).

Movants claim that courts "routinely grant motions to strike answers filed by purported claimants in connection with Government forfeiture applications for lack of the claimant's standing to contest the forfeiture" (Motion to Strike at 11), but Movants cite cases arising not under Rule 12(f) but under the unique rules applicable to forfeiture claims. *See U.S. v. All Assets Held at Bank Julius*, 480 F. Supp. 3d 1, 10, 12 (D.D.C. 2020) (motion to strike claim in forfeiture action assessed under summary-judgment standard where claimant must establish statutory and constitutional standing at threshold by preponderance of evidence); *U.S. v. Sum of Three Hundred None Million Five Hundred Thousand Dollars*, 85 F. Supp. 3d 111, 115 n.3 (D.D.C. 2015) (striking a claim using the standard applicable to motion for judgment on the pleadings).

Movants also contend that "[c]ourts will also strike an answer where the party filing it lacks standing to participate in the suit or is not the proper party to contest the claims at issue" (Motion to Strike at 11), but Movants fail to offer any cases or other authorities for that proposition.

This is not a typical motion to strike. Movants have not met the usual test of demonstrating that allegations of the Henrich Answer are scandalous or impertinent or devoid of factual basis; indeed, Movants have not argued that there are any such deficiencies in the Henrich Answer. Rather, the issue here is who speaks for USI. In cases in which the issue of competing attorneys arises, courts have reviewed relevant documents or materials external to the pleadings to determine the answer. For example, in *OI European Group B.V. v. Bolivarian Republic of Venezuela,* 2019 WL 2185040 (D.D.C. May 21, 2019), the court had before it one set of lawyers representing Venezuela under Nicolas Maduro and another set of lawyers representing Venezuela under Juan

Guaido.  The court followed the lead of the D.C. Circuit, which had just ruled on this issue, and held that because the United States recognized Guaido as the interim president of Venezuela, "the Court will recognize the Guaido government lawyers as the appropriate representatives of Venezuela." *Id.* at *5.

With that as a guide, Lender submits that when the Court reviews the Loan Documents, the notices exercising Lender's rights under the Pledge Agreement, and the information about the foreclosure on USSM's membership interests in USI—and considers also that Movants have not acted to block or impede the exercise of Lender's rights in any forum—it is clear that Movants have not met their burden of proving that Henrich lacks the authority to defend this case and prosecute the position on behalf of USI.  Moreover, striking the Henrich Answer would be seriously prejudicial to Lender, which has exercised—without challenge from Movants—the rights it has in connection with obligations owed by Movants totaling more than $560 million and must be able to protect the positions it controls.  By contrast, if Movants were ever to challenge Lender's exercise of its rights and were to prevail, they would have a remedy in damages.

Ultimately, Movants have provided no legal authority for their filing of the Ashkenazy Answer on behalf of USI, after having been divested of control over USI weeks earlier.  Instead, Movants raise specious challenges to the validity of Lender's exercise of voting rights to appoint Henrich as USI's independent manager, and thus to submit the Henrich Answer.  Movants assert that (i) the Loan Documents prohibit Lender from exercising its rights under the Pledge Agreement in the event of a condemnation; (ii) the law of condemnation prohibits Lender from exercising rights provided under the Pledge Agreement, even though the Pledge Agreement does not govern any interest in the real property; and (iii) even though USSM's interest in USI has been foreclosed,

12

USSM still should be allowed to represent USI's interests in this action.  Each of these arguments is without merit.

I.    **CONDEMNATION LAW DOES NOT LIMIT OR SUPERSEDE LENDER'S CONTRACTUAL RIGHTS UNDER THE LOAN DOCUMENTS**

In their Motion to Strike the Henrich Answer, Movants contend that the filing of the condemnation proceeding essentially froze Lender's rights under the Loan Documents.  (Motion to Strike at 17.)  But eminent domain does not operate that way.  Condemnation is a proceeding against property, not against persons, and parties remain free to transfer interests or otherwise proceed under their contracts even after the proceeding is filed.  In fact, contrary to Movants' contention that condemnation abrogates contracts, courts in eminent domain proceedings enforce contractual agreements that the parties have made.

A.    **Condemnation is an *In Rem* Proceeding**

Eminent domain is an *in rem* proceeding.  It is brought against the property itself.  *See generally* 6 Nichols on Eminent Domain § 26A.04[1].  Therefore, "while a land owner may be designated as a defendant for the purposes of pleading or standing, no conduct of the owner is at issue in the proceeding."  *Id.*

To ensure that the results of the condemnation bind all persons and entities having rights pertaining to the taken property, the condemning authority identifies as best it can everyone with an interest in the property.  Thus, Fed.R.Civ.P. 71.1(c)(3) states that when the action commences, the "plaintiff need join as defendants only those persons who have or claim an interest in the property and whose names are then known."  The condemnor is required to update that information before any hearing on compensation so that, by the time compensation is determined, the court has before it "all those persons who have or claim an interest and whose names have become known or can be found by a reasonably diligent search of the records . . . ."  *Id.*

Contrary to the suggestion in the Motion to Strike, the identity of defendants entitled to participate in the proceeding is not fixed as of the filing date.  (Motion to Strike at 17-18). Fed.R.Civ.P. 71.1(g) expressly envisions situations where "a defendant dies, becomes incompetent, or transfers an interest," and substitution of a defendant is allowed so that the proper successor party appears in the original defendant's stead.  Likewise, courts recognize and enforce contracts where a party has agreed to allow another party to become the defendant following the transfer of the subject property.  *See, e.g.*, *Constitution Pipeline Co, LLC v. Permanent Easement for 1.80 Acres*, 2021 WL 4624486 (N.D.N.Y. October 7, 2021) (property was transferred during the pendency of the condemnation proceeding and seller agreed that buyer could be named defendant; held that property owner at time of commencement of suit was removed and current property owner substituted in under Fed.R.Civ.P. 71.1(g)).

### B.    Courts Enforce, Rather Than Disregard, Parties' Contractual Agreements

The filing of an eminent domain action affects the taken property, not the rights of parties arising outside the condemnation.  Courts give effect to the parties' private agreements in determining whether an entity is entitled to condemnation proceeds or to even participate in the case.  *See, e.g.*, *Constitution Pipeline Co, LLC*, 2021 WL 4624486.  Thus, if the parties to a lease have determined that upon the filing of a condemnation the parties' lease terminates, courts enforce that agreement.  *See, e.g.*, *United States v. Petty Motor Co.*, 327 U.S. 372, 376 n.5 (1946) (discussing enforceability of lease clauses that state that the lease terminates automatically upon the condemnation; tenant "has no right which persists beyond the taking and can be entitled to nothing"); *Pennsylvania Avenue Dev. Corp. v. One Parcel of Land*, 494 F. Supp. 45, 52 (D.D.C. 1980) (when parties' lease stated that upon termination of the lease "for any reason" the entire interest of the lessee vested in the lessor, court held that lessee was entitled to no share of the condemnation award).  If the parties to a contract agree to the apportionment of an award, courts

14

enforce that private agreement. *See, e.g.*, *Pennsylvania Ave. Dev. Corp v. One Parcel in Land*, 670 F.2d 289, 292 (D.C. Cir. 1981) ("If there is a prior agreement between the parties [lessor and lessee] as to allocation of a condemnation award, that agreement, of course, governs the disposition of the award.").

The exercise of eminent domain power does not create property interests. Rather, courts look to non-condemnation law to determine whether a party has a property interest which has been taken by the exercise of eminent domain. *See, e.g.*, *Yaist v. United States*, 656 F.2d 616 (Ct. Cl. 1981) (purchaser of land under installment-sales contracts had equitable title under state law and therefore was entitled to just compensation for the property's taking).

In asking the Court to disregard the terms of the Loan Agreements and Pledge Agreement, Movants suggest that eminent domain law has a role to play in that analysis. It does not. The filing of the eminent domain action did not purport to and did not modify the parties' agreements nor limit the rights of the parties to those agreements, and it surely did not modify or purport to modify an agreement such as the Pledge Agreement, which involves collateral other than the condemned property. The authorities cited by Movants in their papers do not support the filing's dramatic heading that "Lender's Arguments Violate Longstanding Law Related to Takings." (Motion to Strike at 17.)

Movants cite cases referring to the right of an owner of property to participate in the eminent domain proceeding or in an eventual award. (Motion to Strike at 17.) But none of those cited cases addresses the question before the Court, namely, who speaks for USI, the owner of the leasehold interest? None of Movants' cited cases analyzes the underlying documents to determine whether a mortgagee or lienholder has the right under the parties' documents to act as if it were the leasehold owner. The analysis that the Court should follow is to review the plain language of

the parties' agreements, which inexorably leads to the conclusion that Henrich is USI's authorized independent manager and the Henrich Answer controls.

### C.    The Anti-Assignment Act Does Not Apply

Movants' chief argument is that the Loan Agreements, when implemented, would constitute or lead to a violation of the Anti-Assignment Act ("**Act**"). (Motion to Strike at 19-20.) However, the Act has no bearing whatsoever to this motion for the simple reason that Amtrak's organizing statute expressly exempts Amtrak from the Act.

The Act, codified at 31 U.S.C. § 3727, applies to the "transfer or assignment of any part of a claim against the United States Government or of an interest in the claim; or the authorization to receive payment for any part of the claim." 31 U.S.C. § 3727(a). It has long been recognized that the Act "does not render the assignment void as between the parties." *Toles v. United States*, 371 F.2d 784, 786 (10th Cir. 1967).

While Movant argues in a footnote that Amtrak should be deemed subject to the Act codified in Title 31, Movants ignore Congress's clear statement to the contrary in Amtrak's organizing statute:

> Amtrak . . . is not a department, agency, or instrumentality of the United States Government, **and shall not be subject to title 31**.

49 U.S.C. § 24301(a)(3) (emphasis added); *see also* 31 U.S.C. § 9101 (Amtrak is not identified in the listing of "government corporations" in Title 31); *cf. Harasek v. Nat'l R.R. Pass. Corp.*, 334 F. Supp. 3d 309 (D.D.C. 2018) (unambiguous language of 49 U.S.C. § 24301(3) precludes Amtrak employee from bringing suit under the False Claims Act, also found in Title 31).[5] Thus, not only

---

[5]    Movants rely on the Supreme Court's holding that Amtrak is deemed a government entity in connection with certain constitutional rights and principles, like the separation of powers and the delegation doctrine. (Motion to Strike at 19 n.12 (citing *Dep't of Transportation v. Assoc. of Am. Railroads*, 575 U.S. 43, 53-54 (2015)).) *See also Lebron v. National R.R. Pass. Corp.*, 513 U.S. 374, 394, 399 (1995) (holding that Amtrak is an instrumentality of the United States "for the

does the Act not apply to a claim against Amtrak, but it would not govern the relationship between Lender and USI in any event and would not render void Lender's exercise of its contractual remedies under the Pledge Agreement.

## II.    THE PARTIES' CONTRACTS PROVIDE LENDER WITH THE AUTHORITY TO EXERCISE CONTROL OVER USI

### A.    Lender Validly Exercised Its Rights Under Section 9(a) of the Pledge Agreement

Under section 9(a) of the Pledge Agreement, Lender has the right, upon default of the Mezz Loan, to act "*as if* Lender were the sole and absolute owner" of, among other collateral, ***100% of the ownership interests in USI***.  (*See* Rebibo Decl., Ex. D, Pledge, §9(a) (emphasis added).) Lender validly exercised that right.  On May 13, 2022, Lender notified USSM that it was exercising its rights under Section 9(a) of the Pledge Agreement and automatically became vested with the right to act as owner of USI.

The letter exercising Lender's rights under Section 9(a) of the Pledge Agreement stated in part:

> [Lender] hereby notifies You and confirms that [Lender], pursuant to Section 9(a)(i) of the Pledge Agreement, has exercised its right "to exercise all voting, managerial, consensual and other powers of ownership pertaining to the Collateral under Mortgage Borrower's Operating Agreement as if Lender were the sole and absolute owner thereof[.]"
>
> In accordance with its rights under Section 9(a)(i) of the Pledge Agreement, [Lender] hereby advises You that, effective immediately, it has amended the Second Amended and Restated Limited Liability Company Agreement of USI as in effect on the date hereof ("Operating Agreement") to eliminate the second sentence in Section 9(a) of the Operating Agreement, and to appoint William H. Henrich of Getzler Henrich & Associates as the new manager under the Operating Agreement ("New Manager").

---

purpose of individual rights guaranteed against the Government by the Constitution").  But those cases do not support the conclusion that Congress's declaration that Amtrak "shall not be subject to Title 31" can be disregarded.

> [Lender] hereby (i) notifies Ben Ashkenazy ("Ashkenazy") that you
> are no longer the manager, and accordingly, you are prohibited from
> taking any actions in the capacity as manager on behalf of USI, and
> (ii) demands and directs You to turn over all corporate books and
> records to the New Manager immediately, with copies to Morrison
> Cohen.

(Rebibo Decl, Ex. F).  Included with the letter was an amendment to the Operating Agreement,

described above.

Lender's right under Section 9(a) is independent of any other rights under the Pledge

Agreement and automatically provides Lender with full control rights over USI.  *See In re 2927

Eighth Ave. Corp.*, No. 01 Civ. 8947(BSJ), 2004 WL 1403362, at *6-7 (S.D.N.Y. June 23, 2004)

(finding that pledge agreement provided lender automatic rights to vote pledged shares after giving

notice of default); *see also Beninati v. FDIC*, 55 F. Supp. 2d 141, 149 (E.D.N.Y. 1999) (finding

that lender had right to vote shares after a default under the pledge agreement without notice to or

interference from plaintiff).

In *In re 286 Rider Ave Acquisition, LLC*, No. 21-11298 (LGB) (S.D.N.Y. Oct. 28, 2021),

a pledgor that, like USSM, had defaulted on a senior loan, challenged the lender's exercise of its

rights under a pledge agreement.  The pledgor had executed and delivered to the lender a pledge

of its membership interests in the borrower and an assignment of those membership interests.  The

language of the pledge agreement in *286 Rider Ave* is identical to that in Section 9(a) of the Pledge

Agreement here.  The *286 Rider Ave* Court found that under that pledge agreement, the pledgor

had clearly, conspicuously, and unambiguously divested itself of all control, voting, management,

and other rights upon a default and that the lender had the right to control and manage the borrower

as if the lender were the "absolute owner."  (Scharf Decl., Ex. A, *286 Rider Ave*, Aug. 30, 2021

Hrg. Tr. at 68:1-6).  *See also id.* at 67:22–68:7 (citing *Karmely v. Wertheimer*, No. 11 Cv.

541(RPP), 2012 WL 358314, at *12 (S.D.N.Y. Aug. 21, 2012); N.Y. LLC Law § 402).

**B.    Lender Validly Exercised Its Rights Under Section 8(a) of the Pledge Agreement**

Lender also validly exercised its rights under Section 8(a) of the Pledge Agreement, which states "[i]f an Event of Default shall occur and be continuing, then all such Pledged Company Interests at Lender's option and in accordance with an exercise of remedies pursuant to the terms of this [Pledge Agreement], shall be registered in the name of Lender or its nominee (if not already so registered) . . . ." (*See* Rebibo Decl., Ex. D, Pledge, § 8(a).)  In addition, Lender or its nominee may "thereafter exercise (i) all voting, managerial, limited liability company and other rights pertaining to the Pledged Company Interests and the business and affairs of [USI] . . . as if it were the absolute owner thereof . . . ." (*Id.*)

On May 13, 2022, Lender notified the relevant parties that it was exercising its rights under Section 8(a) of the Pledge.  Lender's notice stated in relevant part:

> [Lender] is exercising its rights pursuant to Section 8(a) of the Pledge, and hereby exercises [Lender]'s option to have all Pledged Company Interests (as defined in the Pledge Agreement) registered in [Lender]'s name. [Lender] hereby directs USI immediately to register all Pledged Company Interests in [Lender]'s name, so that [Lender] is the sole member of USI. This instruction must be complied with by USI with no further instruction from Pledgor under Section 18(h) of the Pledge Agreement.

(Rebibo Decl, Ex. E.)

Section 18(h) of the Pledge Agreement requires that the direction provided by Lender must be followed.  That direction states:

> **Irrevocable Authorization and Instruction to [USI]**. [USSM] hereby authorizes and instructs [USI] and any servicer of the Loan to comply with any instruction received by it from [Lender] in writing that (i) states that an Event of Default has occurred and is continuing and (ii) is otherwise in accordance with the terms of this Agreement, ***without any other or further instructions from [USSM]***, and [USSM] agrees that [USI] and any servicer shall be fully protected in so complying.

(Rebibo Decl., Ex. D, Pledge § 18(h) (emphasis added)).  Movants omit mention of Section 18(h) of the Pledge Agreement in their Motion to Strike.  This section controverts Movants' assertion that USI's register has not been changed to recognize that all ownership interests in USI are now registered in Lender's name.  In fact, these ownership interests are deemed registered in Lender's name under Section 18(h) of the Pledge Agreement.  Regardless, USSM is barred by the contractual doctrine of prevention from using this argument to prevent Lender's exercise of its rights under the Pledge Agreement, to the extent it is even applicable based on Sections 13(d) (*see infra* Section II(C)) and 18(h) of the Pledge Agreement.  Under the prevention doctrine "[a] party that hinders or prevents the fulfillment of a condition to his performance cannot insist that the condition must occur before he becomes obligated to perform."  *See Pereira v. Nelson (In re Trace Int'l Holdings)*, 284 B.R. 32, 37 (Bankr. S.D.N.Y. 2002).

### C.    Lender Validly Exercised Its Rights Under Section 13 of the Pledge Agreement

Under Section 13 of the Pledge Agreement, Lender is entitled to act as attorney-in-fact for USSM following Events of Default.  Lender has the express authority not only to sue, but also to register all ownership interests in USI in connection with Lender's exercise of its rights under Section 8 of the Pledge Agreement.  As such, Lender is authorized to file an answer on behalf of USI and to register the Pledged Company Interests in its name.

Movants assert that Lender has provided no justification for the exercise of its attorney-in-fact rights under the Pledge Agreement.  (*See* Motion to Strike at 15.)  However, Lender has no obligation to do so.  In any event, the reason for Lender's action is obvious: to protect its interest as a secured lender by controlling USI's defense of the condemnation proceeding.  Under the terms of the Mortgage and Mezzanine Loans, Lender's right to the proceeds of the condemnation award is superior to that of Ashkenazy.

USSM attempts to limit the effect of Section 13 of the Pledge Agreement with its misplaced reliance on *JPMCC 2006-CIBIC14 Eads Parkway, LLC v. DBL Axel, LLC*, 977 N.E.2d 354, 362 (Ind. Ct. App. 2012).  *JPMCC* did not involve a pledge or a lender's exercise of rights under a pledge, but instead the interpretation of an attorney-in-fact provision under a mortgage.  The borrower in *JPMCC* sought reimbursement of legal fees incurred in a condemnation action that the borrower settled without the lender's involvement.  The *JPMCC* court reviewed the attorney-in-fact provision to determine whether the lender had a duty to represent the borrower, and held that the lender did not have such a duty.  *Id.*  The court found that the lender could have acted, but was not obligated to do so.  *Id.*  The court thus declined the borrower's request to set off its legal fees against the debt it owed to the lender.  *See JPMCC*, 977 N.E2d at 362.  Here, unlike *JPMCC*, Lender is defending the borrower, USI, and is entitled to do so under the Pledge Agreement and the other Loan Documents without Ashkenazy's interference.

Under the Pledge Agreement, USSM granted Lender the right, upon USSM's default, to register the Pledged Company Interests in the name of Lender or its nominee.  *See* Scharf Decl., Ex. C, *In re Riverair LLC*, Case No. 04-17586-smb (Bankr. S.D.N.Y. Nov. 29, 2004), Feb. 15, 2005 Hrg. Tr. at 25:5-7 (denying former managing members' motion for reconsideration and noting that upon default and upon the acting sole managing member [lender] exercising its rights under the pledge agreement, the lender "acquired all the right to control the destiny of [debtor] as if it was the sole managing member").  Upon the registration of the Pledged Company Interests in the name of Lender, which is deemed completed under section 18(h) of the Pledge Agreement,[6] Lender obtains all of the rights formerly held by USSM, including the right to control USI.  By

---

[6]    Or to the extent Lender's exercise is determined invalid under Sections 8(a) and 9(a) of the Pledge, the registration in the name of Lender was completed upon Lender's valid exercise of authority as attorney-in-fact under Section 13 of the Pledge Agreement on May 18, 2022.

virtue of Lender's exercise of these rights, USSM no longer has any ownership rights over USI. Lender or its nominee—and only Lender or its nominee—has the right to vote, manage, and control USI. *See 893 4th Ave. Lofts LLC v. 5AIF Nutmeg, LLC*, 2021 N.Y. Misc. LEXIS 908, at *4 (N.Y. Sup. Ct. Kings Cnty. 2021); JOSEPH STORY, COMMENTARIES ON THE LAW OF BAILMENTS, WITH ILLUSTRATIONS FROM THE CIVIL AND THE FOREIGN LAW, at 204-05 (Hilliard and Brown, 1832).

Under each section of the Pledge Agreement set out above, Lender validly exercised its rights, assumed voting and management control of USI *as if* it is the owner of USI, and amended the Operating Agreement to replace Ashkenazy with Henrich as manager of USI. Under the rights granted to Lender under the Pledge Agreement as set forth above, the Managing Member has been changed due to USI's and USSM's defaults under the Mortgage and Mezzanine Loans. The court's succinct comment to the pledgor's counsel in *286 Rider Ave* is equally apt here:

> I understand your clients don't want to accept the reality of what happened which is that they decided to issue a pledge to the bank and the bank actually shockingly decided to exercise its rights under the pledge.

*286 Rider Ave*, Oct. 5, 2021 Hrg Tr. at 64:9-12 (attached to the Scharf Declaration as Exhibit B).

### III. NOTHING IN THE LOAN DOCUMENTS PROHIBITS LENDER'S EXERCISE OF ITS RIGHTS UNDER THE PLEDGE AGREEMENT IN THE EVENT OF DEFAULT

#### A. Section 5.2.2 of the Loan Agreements Does Not Limit Lender's Authority Under the Pledge

Movants contend that Lender's exercise of its rights under the Pledge Agreement was invalid under Section 5.2.2 of the Mortgage Loan Agreement and Mezz Loan Agreement (together, the "**Loan Agreements**"). Section 5.2.2 of the Loan Agreements states that Lender is appointed to act, after an Event of Default, as USI's attorney-in-fact, "with exclusive power to collect, receive and retain any Award and to make any compromise or settlement in connection with any Material Condemnation." (Rebibo Decl., Ex. C, Mezz Loan Agreement, § 5.2.2; *id.*, Ex. B, Mortgage Loan

22

Agreement, § 5.2.2 (emphasis added).)  Movants contend that this is Lender's sole and exclusive remedy in the event of a condemnation of the leasehold.  (Motion to Strike at 14.)

However, Movants are wrong.  Nothing in the Loan Documents states, or even suggests, that Lender's exercise of Section 5.2.2 of the Loan Agreements precludes it from exercising any of its other rights under the Loan Documents.  Had the parties intended for Section 5.2.2 of the Loan Agreements to be Lender's sole remedy in the event of a condemnation, they would have said so.  But they did not.  Furthermore, Movants' contention that Amtrak's condemnation declaration nullified all of Lender's rights except for those under Section 5.2.2 is contrary to the authority Movants themselves cite in their brief, which states that "a contract should be construed as to give full meaning and effect ***to all of its provisions***."  *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 157 (2d Cir. 2016) (emphasis added); *see also* Motion to Strike at 15.

Section 5.2.2 of the Loan Agreements is additive to Lender's rights, not restrictive.  Section 5.2.2 of the Mezz Loan Agreement states in full:

> Condemnation. USSM shall provide Lender with copies of any written notice received by Borrower or Mortgage Borrower of any actual or threatened Condemnation by any Governmental Authority of all or any part of the Property and shall deliver to Lender a copy of any and all notices or papers served in connection with such Condemnation or related proceedings promptly upon obtaining knowledge thereof (Lender acknowledging that Borrower shall have complied with this covenant with respect to any Condemnation that is not a Material Condemnation if Borrower delivers or causes Mortgage Borrower to deliver such written notice to Lender by no later than the end of the calendar quarter in which Borrower or Mortgage Borrower first obtained such knowledge). **Borrower may settle and compromise or may permit Mortgage Borrower to settle and compromise any Material Condemnation only with the prior consent of Lender (which consent shall not be unreasonably withheld or delayed) and Lender shall have the opportunity to participate, at Borrower's reasonable cost and expense, in any applicable litigation or proceeding and**

**settlement discussions in respect thereof and Borrower shall from time to time deliver or shall cause Mortgage Borrower from time to time to deliver to Lender all instruments reasonably requested by Lender to permit such participation.** Borrower shall, at its cost and expense, diligently prosecute or cause Mortgage Borrower to diligently prosecute any such litigations or proceedings, and **shall consult with Lender, its attorneys and experts, and cooperate with them in the carrying on or defense of any such litigations or proceedings**. Subject to the rights of Mortgage Lender under the Mortgage Loan Documents, **Lender is hereby irrevocably appointed to act after the occurrence and during the continuance of an Event of Default as Borrower's attorney-in-fact, coupled with an interest, with exclusive power to collect, receive and retain any Award and to make any compromise or settlement in connection with any Material Condemnation.** Notwithstanding any Condemnation, Borrower shall continue to pay the Debt at the time and in the manner provided for in this Agreement, the Note and the other Loan Documents and the Debt shall not be reduced until any Net Liquidation Proceeds After Debt Service shall have been actually received and applied by Lender, after the deduction of expenses of collection, to the reduction or discharge of the Debt. Lender shall not be limited to the interest paid on the Award by any Governmental Authority, but shall be entitled to receive out of the Net Liquidation Proceeds After Debt Service interest at the rate or rates provided herein or in the Note. If any portion of the Property is taken by any Governmental Authority, Borrower shall cause Mortgage Borrower to promptly commence and diligently prosecute to completion the Restoration of the Property and otherwise comply with the provisions of Section 5.3 of the Mortgage Loan Agreement. Subject to the rights of Mortgage Lender under the Mortgage Loan Documents, if the Property is sold, through foreclosure or otherwise, prior to the receipt by Lender of the Award, Lender shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive the Award or a portion thereof sufficient to pay the Debt in full.

(Rebibo Decl., Ex. C, Mezz Loan Agreement, § 5.2.2 (emphasis added).)

Movants do not provide the full text of Section 5.2.2 of the Loan Agreements, despite their complete reliance on this provision to support of their motion. Nowhere in Section 5.2.2 is there any language supporting Movants' erroneous contention that Section 5.2.2 of the Loan Agreements prohibits Lender from exercising its rights under the Pledge Agreement.

24

### B.    Lender's Rights Under the Loan Documents are Cumulative

Section 10.4 of the Loan Agreements removes any doubt that Section 5.2.2 is cumulative

of Lender's other remedies under the Loan Documents.  Section 10.4 of the Loan Agreements

states:

> <u>Remedies Cumulative</u>. The rights, powers and remedies of Lender
> under this Agreement shall be cumulative and not exclusive of any
> other right, power or remedy which Lender may have against
> Borrower pursuant to this Agreement or the other Loan Documents,
> or existing at law or in equity or otherwise. Lender's rights, powers
> and remedies may be pursued singly, concurrently or otherwise, at
> such time and in such order as Lender may determine in Lender's
> sole and absolute discretion. No delay or omission to exercise any
> right, power or remedy accruing upon an Event of Default shall
> impair any such right, power or remedy or shall be construed as a
> waiver thereof, but any such right, power or remedy may be
> exercised from time to time and as often as may be deemed
> expedient. A waiver of one Default or Event of Default shall not be
> construed to be a waiver of any subsequent Default or Event of
> Default or to impair any right, power or remedy consequent thereon.

(Rebibo Decl., Ex. B-C, Loan Agreements, § 10.4.)  Similar language appears in Sections 10.2(a)

and (b) of the Loan Agreements, as well as Section 9(c) of the Pledge Agreement.  Lender's rights

and remedies under the Loan Documents are cumulative, and Lender's entitlement to exercise

them is unaffected by Amtrak's filing of a condemnation declaration.

### IV.    POST-FORECLOSURE, USSM HAS NO INTEREST IN USI OR UNION STATION

USSM's interests in USI have been extinguished by virtue of the June 14, 2022 UCC

foreclosure sale.  "To put it most bluntly, the Mezz Loan II foreclosure means that 100% of the

membership interests in Mezz Borrower I will be offered for sale.  If a sale is successfully closed,

[Mezz Borrower]'s interests will effectively be wiped out because its [interests] will no longer

exist.  The basic point is that if [lender] proceeds with the foreclosure sale, [Mezz Borrower] will

no longer be an active participant in the mezzanine loan structure or have any direct or indirect

ability to impact or affect in any way any of the pending bankruptcy proceedings." *Gramercy Warehouse Funding I LLC v. Colfin JIH Funding LLC*, 2012 WL 75431, at *2 (S.D.N.Y. Jan. 6, 2012). The foreclosure of the Pledged Company Interests has eliminated USSM's interest in USI and its right to participate in these proceedings. "[T]he consequences of [a UCC foreclosure] sale for the LLC entity [with an interest in the property owner], whether undesirable to that entity, do not entitle the LLC entity to any relief." *YL Sheffield LLC v. Wells Fargo Bank*, 2009 WL 6408598, at *2-3 (Sup. Ct. N.Y. Cnty. July 29, 2009). USSM is no longer a proper party to this proceeding.

In an attempt to circumvent these settled legal principles, USSM conflates its status with that of USI, denominating them both as "Owners." However, USSM and USI are distinct legal entities. "A corporation, even when wholly owned by a single individual, has a separate legal existence from its shareholders . . . and courts are loathe to disregard the corporate form for the benefit of those who have chosen that form to conduct business." *Harris v. Stony Clove Lake Acres Inc.*, 202 A.D.2d 745, 747 (3d Dep't 1994) (internal citations omitted) (granting summary judgment in favor of mortgagee and dismissing affirmative defenses asserted by individual who claimed to be "equitable owner" of corporate borrower). USI owned the Union Station leasehold; USSM did not.

USSM's contention that its rights were affected by Amtrak's condemnation because USI and USSM were purportedly "the owners of the leasehold when the condemnation occurred" is simply wrong. (Motion to Strike at 23). USSM was never an owner of the Union Station leasehold. Ownership interests held by a mezzanine borrower, like that held by USSM, are not interests in real property. *See YL Sheffield LLC*, 2009 WL 6408598, at *2-3 (holding that a UCC foreclosure of membership interests in borrower entity was not a foreclosure of an interest in real property). "A membership interest in the limited liability company is personal property." *Sterling*

*Natl. Bank v Freidman*, 202 A.D.3d 495, 496 (1st Dep't 2022), citing N.Y. LLC Law § 601. Moreover, as a result of the foreclosure, USSM no longer has even an indirect interest in the Union Station leasehold because USI is now owned by Lender.  USSM does not have any stake in this proceeding.

All of Movant's remaining arguments that USSM should be allowed to continue to direct USI's actions in this case following the foreclosure of USSM's membership interest in USI amount either to a misapprehension of existing law or USSM's continued confusion of its place as former owner of USI.  For example, USSM's argument that the foreclosure sale violated the Act because it "effectively" transfers the right to litigate this action against Amtrak (Motion to Strike at 23) misapprehends the law.  As addressed *supra*, the Act does not apply to claims against Amtrak, a non-governmental agency.

Finally, Movants posit that even if USSM no longer controls USI, USSM nevertheless has standing to be appear in this proceeding because it is purportedly entitled to collect any condemnation award proceeds left over after the Loans are repaid in full.  However, Movants are wrong.  USSM has no right to any condemnation proceeds.  Instead, USSM is entitled to collect any *foreclosure sale* proceeds left over after the Loans are repaid in full.  (*See* Rebibo Decl., Ex. D, Pledge Agreement § 9(b).)  But there were none.  (*Id.* at ¶ 24.)  The Loans remain unpaid, and USSM's interest has been fully extinguished.

In contrast to USSM, USI is entitled to any proceeds from the condemnation action above the outstanding amounts due under the Loans.  USI continues to be a proper party in this action, and its interests are being defended by Henrich, USI's duly appointed independent manager.  USSM, however, is not a proper party to this proceeding, and should be dismissed.

## V.    MOVANTS' REMAINING ARGUMENTS ARE WITHOUT MERIT

Movants' remaining arguments fall apart upon mild scrutiny. For example, Movants assert that Lender "unreasonably withheld consent" to USI and USSM's attempts to recapitalize in December of 2020 and acted in a "predatory" manner. (Motion to Strike at 7.) However, even if this assertion were true (it is not), it is irrelevant to this proceeding. If Movants believed they had a viable claim against Lender in connection with their December 2020 recapitalization attempt, they have had plenty of time to assert it. But they have not, and their meritless *ad hominem* claim of "predatory" behavior by Lender has no bearing on the only question before the court on this motion, which is who controls USI. Regardless, Lender did not have ownership of the Mortgage Loan until January 6, 2022, when it purchased the senior note, so Lender had no right or ability to require the Original Mortgage Lender to agree to the proposed transaction. (Rebibo Decl. at ¶ 30.)

Similarly meritless is Movants' assertion that Lender is motivated by greed to "fill its pockets" to the detriment of USSM. All commercial parties—including, of course, Movants themselves—are motivated by the desire to obtain a return on their investments. Movants are highly sophisticated, well counseled parties who fully understood the terms of the financial transactions they entered. Lender has done nothing more than exercise its contractual rights to protect its collateral and maximize its odds of recovering the hundreds of millions of dollars it has lent to Movants. *See SK Greenwich LLC v. W-D Group (2006) LP*, No. 10 Civ. 784(RPP), 2010 WL 4140445, at *5 (S.D.N.Y. Oct. 21, 2010) (finding that unambiguous contractual language established event of default and defendant's right to sell plaintiff's interest in property).

Finally, Movants' assertion that Lender "usurp[ed] Owner's rights [] contrary to the loan document" and that they did not "consent[] to or authorize[] the filing of the Neuberger/Investco Answer" ignores the plain terms of the Loan Documents. (Motion to Strike at 2.) By executing the Pledge Agreement and other Loan Documents, USSM consented to every one of the remedies

that Lender has exercised to date. *See Whitecap (U.S.) Fund I, LP v. Siemens First Capital Commercial Finance LLC*, 121 A.D.3d 584, 592 (1st Dep't 2014) (dismissing borrower's complaint against lender and finding that lender properly exercised rights under pledge agreement after default to vote borrower's shares and replace directors); *see also* Scharf Decl., Ex. A, *286 Rider Ave*, Aug. 30, 2021 Hrg Tr. at 67:22–68:7 (denying motion to dismiss Chapter 11 filing brought by borrower's equity).    In their Loan Documents, the parties envisioned exactly this situation—the condemnation of the Union Station leasehold—and they agreed upon their respective rights and obligations in such an event.    Movants' reliance on hyperbole demonstrates that they understand the meaning and import of the Loan Documents they signed, and have no substantive objection to Lender's enforcement of the parties' bargain.

## <u>CONCLUSION</u>

For the foregoing reasons, Lender respectfully requests that the Court denies the Motion to Strike as moot or otherwise denies the motion in its entirety.

| MORRISON COHEN LLP | HOLLAND & KNIGHT LLP |
|---|---|
| */s/ Y. David Scharf* | */s/ Paul J. Kiernan* |
| Y. David Scharf | Paul J. Kiernan |
| Brett Dockwell | Louis J. Rouleau |
| Kristin T. Roy | 800 17th Street N.W. |
| Latisha V. Thompson | Suite 1100 |
| Amber R. Will | Washington, D.C. 20006 |
| Mahnoor Misbah | Phone: (202) 663-7276 |
| *Admitted pro hac vice* | Paul.Kiernan@hklaw.com |
| 909 Third Avenue | |
| New York, New York 10022 | *Attorneys for Defendant Kookmin* |
| (212) 735-8600 | *Bank Co., Ltd.* |