**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

--------------------------------------------------------------------- X

NATIONAL RAILROAD PASSENGER
CORPORATION (AMTRAK),

        Plaintiff,                              No. 1:22-cv-01043(APM)

        v.

SUBLEASE INTEREST PERTAINING TO
DESCRIBED LEASEHOLD INTERESTS
AT WASHINGTON UNION STATION, et al.

        Defendants.

--------------------------------------------------------------------- X

**EMERGENCY MOTION OF DEFENDANT**
**KOOKMIN BANK CO. LTD FOR APPROVAL OF CONTRACT WITH**
**PROPERTY MANAGER AND MEMORANDUM IN SUPPORT**

Defendant Kookmin Bank Co., Ltd., individually ("Kookmin") and in its capacity as trustee ("Trustee") of KTB CRE Debt Fund No. 8, a Korean Investment Trust (the "Trust"), by its agent on behalf of the Trust in Korea, Daol Fund Management Co. ("Daol"), and by its agent on behalf of the Trust in the United States, Rexmark Holdings LLC d/b/a Rexmark ("Rexmark," and together with Kookmin, Trustee, the Trust, and Daol, "Lender"), respectfully moves for approval to have Union Station Investco, LLC ("USI"), the leaseholder at issue in this case, enter into a property-management contract—either with the incumbent manager Jones Lang LaSalle Americas, Inc. ("JLL") or with Cushman & Wakefield ("C&W") if JLL declines to enter into a contract. Because the leasehold interest is currently before the Court and because Lender and USI had previously advised that they would continue JLL as property manager, Lender believes that this motion is the vehicle to move forward on the property-management contract.

## PRELIMINARY STATEMENT

This motion is brought to obtain leave of Court for Lender, through Defendant USI, to enter into a property-management contract for the uninterrupted property management of Union Station.  JLL is currently operating without benefit of a contract with the parties in control of the leasehold position.  Moreover, Defendant Union Station Sole Member LLC ("USSM") and its agents, including Ben Ashkenazy and his companies (collectively, "Ashkenazy"), are actively interfering with Lender's rights and duties regarding the management of Union Station.

Lender and USI committed to Plaintiff National Railroad Passenger Corporation ("Amtrak") to keep JLL as the property manager of Union Station.  However, USI does not have a contract with JLL because JLL's contract to manage Union Station was part of a multi-property agreement entered into with Ashkenazy.  The absence of a separate contract with USI to manage Union Station has sown confusion as to whom JLL should report, such that JLL continues to respond to and interact with Ashkenazy, rather than the current owner and manager of USI.

This situation is untenable and requires urgent relief because Ashkenazy no longer has any stake in Union Station and therefore Ashkenazy's continuing interference is jeopardizing the ordinary and necessary management of the property.  On June 14, 2022, Lender foreclosed on USSM's ownership interest in USI, thereby divesting USSM and Ashkenazy of all ownership and control rights over USI and Union Station.  This foreclosure was not contested in this or any other court.  Lender, through USI, now has control of the possessory interest in the Union Station leasehold and is responsible for discharging the duties under the USI sublease with Union Station Redevelopment Corporation ("USRC"), at least until the Court determines Amtrak's yet-to-be-filed motion for possession.  At this juncture, Lender's ability to manage Union Station is being actively undermined by Ashkenazy and USSM who, having lost their stake in Union Station, now

seek to sabotage Lender's legal and contractual rights, even if it means disrupting the management of the property.

Exacerbating this situation, USSM and Ashkenazy have not paid any of the costs of operating Union Station.  For the past two years, the cost of carrying Union Station has been borne entirely by Lender; USSM and Ashkenazy have not spent a dollar.  Lender is thus being asked to fund Union Station's operations, while being denied transparency into and control over Union Station's management.  To remedy this situation, Lender seeks an order approving the execution of a contract between USI and JLL for management of Union Station.  If JLL declines to contract directly with USI, Lender requests leave to contract with a different property management company, C&W, which is ready, willing, and able to take over management of Union Station.

Ordinarily, Lender would not need court approval to enter such a contract, but Lender and USI previously informed the Court and had assured Amtrak that they would not remove JLL as property manager until further order of the Court.  Given Ashkenazy's refusal to cede control over JLL's work and its active interference with Lender's right to control the management of Union Station, Lender needs to contract directly with JLL, and if JLL is not willing to contract with USI, to replace JLL with C&W.

## FACTUAL BACKGROUND[1]

### A.    Lender's Exercise of Its Rights

In its brief in opposition to the pending motion to strike (ECF Doc. 56), Lender explained how USI and USSM had defaulted under their respective mortgage and mezzanine loans in May 2020 and that Lender, after spending millions of dollars to fund Union Station and giving USSM

---

[1]      The relevant facts rely upon prior filings with this Court, as well as the Declaration of Michael Rebibo, dated June 24, 2022 ("Rebibo Decl."), and the Declaration of Y. David Scharf, dated June 24, 2022 ("Scharf Decl."), submitted herewith with supporting exhibits.

ample time to cure its default, exercised certain rights under the loan documents.  In particular, on May 13, 2022, Lender exercised its right to act as USSM's attorney-in-fact, exercised USSM's voting rights over USI, and replaced USI's then-manager, Ashkenazy, with William Henrich ("Henrich").  (*Id*. at 9).

On June 14, 2022, Lender foreclosed on USSM's ownership interest in USI through a properly noticed UCC foreclosure sale.  (Rebibo Decl. at ¶ 5).  Advance notices of the sale were advertised in the *New York Times*, the *Washington Post*, and various commercial real estate news sources, as well as through emails to 11,082 real estate industry members.  (*Id*., Ex. C).  A total of 134 potentially interested parties signed confidentiality agreements to review data and information relating to the USSM interest.  (*Id*. at ¶ 7).  The auction walked through the noticing and marketing of the foreclosure sale.  (*Id.*, Ex. D).

Lender was the only qualified bidder at the foreclosure sale, submitting a winning bid of $140,535,334.  (*Id*.).  At no time did USSM object to the foreclosure sale.  USSM did not seek to enjoin the foreclosure sale, nor did it challenge the efficacy of the foreclosure sale.  (*Id*. at ¶ 6).  USSM had every opportunity to do so.  Not only was advance notice provided to USSM, but in Lender's Answer, Lender specifically referenced the impending foreclosure sale.  (Lender's Answer, ECF Doc. No. 35 at ¶ 19).  On June 14, 2022, Lender closed on its purchase of the USI membership interests, at which point all of USSM's equity in USI was transferred to Lender's nominee.  (Rebibo Decl. at ¶ 5).  USSM now no longer has any legal or beneficial interest in USI and no interest in Union Station.

On June 15, 2022, Lender informed USSM and Ashkenazy that USSM's ownership interest in USI was disposed of by a public foreclosure sale under Article 9 of the Uniform Commercial Code.  (*Id.*, Ex. E).  Lender informed USRC and Amtrak that USSM's ownership interest in USI

was foreclosed and that Lender was now "the rightful owner of all right, title and interest in and to USI." (*Id.*, Exs. F, G). USRC and Amtrak were instructed to refrain from engaging with the previous owners of USI (USSM and Ashkenazy) and to direct all inquiries relating to the Union Station leasehold to Lender. (*Id.*). Neither USSM, Ashkenazy, USRC, nor Amtrak objected to or challenged Lender's notices. (*Id.* at ¶ 12).

### B.   USSM's and Ashkenazy's Willful Interference with Lender's Management of Union Station

The property management of Union Station is USI's obligation under the sublease with USRC. (*Id.* at ¶ 13). When Ashkenazy was in control of USI, the Ashkenazy Acquisition Corp. ("AAC") had a Master Management Agreement with JLL (the "Master Agreement"). (*Id.* at ¶ 14). AAC served as the "asset manager" for a number of properties in which Ashkenazy had an interest, and the Master Agreement allowed Ashkenazy to retain JLL to perform property-management functions at a number of different Ashkenazy-owned properties around the country, including the leasehold position at Union Station. (*Id.*) There was not standalone contract between USI and JLL for property management, only one that ran through Ashkenazy and to which AAC was a named party and the directive authority.

Pursuant to Lender's proper exercise of its rights under the loan documents, on April 28, 2022, Lender terminated JLL as property manager of USI. (*Id.* at ¶ 15). On May 13, 2022, under the Pledge and Security Agreement, dated as of May 8, 2018, between Lender and USSM, Lender replaced Ashkenazy as manager of USI, replacing him with Henrich. (*Id.* at ¶ 16). USI, through Henrich, planned to execute a new management with C&W to ensure that the property manager took direction from USI and not from AAC. (*Id.* at ¶ 17). Upon learning of USI's plan to replace JLL, Amtrak moved for an order to enjoin any defendant in the condemnation proceeding from terminating JLL as the property manager of Union Station during the pendency of this proceeding.

(Amtrak's Mem. in Support of Emergency Motion for Interim Term of Possession, "Amtrak's Emergency Motion," ECF Doc. No. 41-1, at 2). After further consideration, Lender rescinded its notice to terminate JLL, and USI joined with Lender in agreeing not to take action to replace JLL until further order of the Court. (Rebibo Decl. at ¶ 19). Lender informed the Court that it would not "take action to remove JLL as property manager until such time as the Court rules on the issues of the validity of the taking and possession of the property or until further order of the Court." (Suggestion of Mootness, ECF Doc. 46). On May 25, 2022, Amtrak withdrew its motion after Lender and USI stipulated that they would not replace JLL pending further order of the Court. (Amtrak's Withdrawal of its Emergency Motion for Interim Term of Possession Without Prejudice and Continued Request for Issuance of Scheduling Order on Issues of Possession, ECF Doc. No. 47).

Thereafter, JLL prepared a property-management agreement to enter into with Henrich directly as the newly appointed manager of USI. Henrich, in turn, ceased discussions with C&W. JLL had agreed to work with Henrich—until Ashkenazy interfered. (Rebibo Decl. at ¶ 20).

On June 15, 2022, after foreclosing on USSM's interest in USI, Lender notified JLL that it had obtained ownership and control of USI and requested that JLL execute a new property management agreement for Union Station. (*Id.*, Ex. J). Lender instructed JLL to refrain from any further communications with the previous owners of USI and to direct all inquiries relating to Union Station to Lender. (*Id.*). JLL responded that it would "review internally" and get back to Lender. (*Id.* at ¶ 22). After further inquiry from Lender, JLL stated that it was "still operating under the existing management agreement with Ashkenazy" and that it was "receiving conflicting information, direction and instructions from the parties to the foreclosure proceedings and the eminent domain proceedings." (*Id.* at ¶ 23).

On June 20, 2022, Lender's counsel spoke with JLL.  In an email the following day, Lender's counsel reiterated to JLL that Lender "would like to immediately sign a contract for the same scope of services as you currently provide at the property."  (Scharf Decl. at ¶ 3, Ex. A). Lender's counsel also directed JLL to inform its personnel at Union Station that Lender "will be arriving at 9 am on Monday, June 27 for a full tour of the Station and advise who will be meeting our client at that time." (*Id.*).  JLL did not provide any substantive response to these requests.  (*Id.* at ¶ 4).

On June 22, 2022, Lender's counsel followed up again with JLL.  Lender's counsel told JLL that Lender "would expect there to be some urgency i[n] getting a contract with us as you are currently performing services at a site where the party with whom you are in contract has no ownership interest for the last week." (*Id.* at ¶ 5, Ex. A).  Still, JLL failed to provide a substantive response.  (*Id.* at ¶ 6).

On June 23, 2022, Ashkenazy informed Lender that it has no intention of ceasing its interference with Lender's rights over USI and Union Station.  Ashkenazy's counsel wrote to Lender's counsel, insisting that Lender should cease communications with JLL and that JLL should continue to "take direction from AAC." (*Id.* at ¶ 8, Ex. B).  Ashkenazy's counsel further demanded that Lender continue to pay Union Station's operating expenses through Ashkenazy. (*Id.*).  For the past two years, USSM and Ashkenazy have not funded any of Union Station's operating expenses and have instead relied upon Lender to advance funds for the property's operations, which are substantial.  (Rebibo Decl. at ¶ 25).  The operating expenses funded in May 2022 alone total $2,666,811.06. (*Id.*).  Thus, while actively undermining Lender's rights over USI and Union Station and obstructing Lender's efforts to enter into a contract with JLL, Ashkenazy nevertheless demands that Lender fund the millions of dollars per year that are required to operate

Union Station through Ashkenazy as if the foreclosure had not taken place.  Ashkenazy's blithe assertion that Lender should fund Union Station's operating expenses in this way even as Ashkenazy denies Lender control over the property is not only a breach of Lender's legal and contractual rights, but also commercially unreasonable.

On June 23, 2022, Lender demanded that Ashkenazy cease its interference with Lender's rights.  In a letter from Lender's counsel, Lender informed Ashkenazy that it was "endeavoring to maintain JLL as a manager, but that requires JLL to enter into a contract with Lender since, following the foreclosure, Ashkenazy has no right to manage or retain a manager for the property." (Scharf Decl. at ¶ 9, Ex. C).  Ashkenazy has ignored Lender's demand.  (*Id.* at ¶ 10).

## ARGUMENT

### I. LENDER HAS OWNERSHIP AND CONTROL OVER USI AND THE UNION STATION LEASEHOLD

USSM's interests in USI have been extinguished by virtue of the June 14, 2022 UCC foreclosure sale.  Under governing New York law, this type of foreclosure has the effect of removing the mezzanine borrower from active participation in or an equity position in the entity whose membership interests have been foreclosed upon:  "To put it most bluntly, the Mezz Loan II foreclosure means that 100% of the membership interests in Mezz Borrower I will be offered for sale.  If a sale is successfully closed, [Mezz Borrower]'s interests will effectively be wiped out because its [interests] will no longer exist.  The basic point is that if [lender] proceeds with the foreclosure sale, [Mezz Borrower] will no longer be an active participant in the mezzanine loan structure or have any direct or indirect ability to impact or affect in any way any of the pending bankruptcy proceedings."  *Gramercy Warehouse Funding I LLC v. Colfin JIH Funding LLC*, No. 11 Civ. 9715 (KBF), 2012 WL 75431, at *2 (S.D.N.Y. Jan. 6, 2012).

The June 14, 2022 foreclosure sale extinguished USSM's interest in USI and its right to manage Union Station. "[T]he consequences of [a UCC foreclosure] sale for the LLC entity [with an interest in the property owner], whether undesirable to that entity, do not entitle the LLC entity to any relief." *YL Sheffield LLC v. Wells Fargo Bank*, No. 601782/09, 2009 WL 6408598, at *2-3 (Sup. Ct. N.Y. Cnty. July 29, 2009). The foreclosure sale was noticed and marketed in publications such as the *New York Times*, the *Washington Post*, and various commercial real estate news sources. Over 100 interested parties signed confidentiality agreements to review the data and information relating to USSM's interest. At the auction, Lender was the only qualified bidder, submitting a winning bid of $140,535,334. Accordingly, all of USSM's equity in USI was transferred to Lender's nominee. Lender, not USSM nor Ashkenazy, has ownership and control over USI and the Union Station leasehold.

Given that USSM did not object to or challenge the foreclosure sale before it occurred—which it had every opportunity to do—USSM's sole remedy in this case is money damages, to the extent any harm occurred. USSM has no power to unwind the sale. *See In re Enron Corp.*, No. 01-16034 (AJG), 2005 WL 3873890, at *10, 2005 Bankr. LXIS 3469 (Bankr. S.D.N.Y. June 16, 2005) (rejecting request to unwind sale because the sale of the collateral had already occurred in the case before it and "the aggrieved party's remedy would be an action for damages under section 9-625(b) of the UCC and not an invalidation of the sale"); *see also Atlas MF Mezzanine Borrower, LLC v. Macquarie Tex. Loan Holder LLC*, 174 A.D.3d 150, 163 (1st Dep't 2019) (finding that debtor cannot "after dissolution and conclusion of the [UCC foreclosure] sale, unwind the sale" because the only available remedy is money damages).

## II.     USSM'S AND ASHKENAZY'S WILLFUL MISCONDUCT IS CAUSING LENDER IRREPARABLE HARM

USSM's and Ashkenazy's intentional interference with Lender's right to oversee management of Union Station as owner of USI is causing Lender irreparable harm and is jeopardizing the proper management and operation of Union Station.  It is well settled that irreparable harm may be found in the "denial of a controlling interest in a corporation" as well as "conduct that unnecessarily frustrates efforts to obtain or preserve the right to participate in the management of a company." *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*¸ 407 F. Supp. 2d 483, 496 (S.D.N.Y. 2005), aff'd, 246 Fed. Appx. 73 (2d Cir. 2007).  There is "intrinsic value" in the right to manage a company that cannot be compensated by monetary damages. *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 114 (2d Cir. 2003) (finding that "denial of bargained-for minority rights" constitutes irreparable harm as it changes the "agreed-upon balance of power" in managing the company); *see also Oracle Real Estate Holdings I LLC v. Adrian Holdings Co. I, LLC*, 582 F. Supp. 2d 616, 626 (S.D.N.Y. 2008) (finding irreparable harm where party sought to enforce "a bargained-for right to corporate control [] that is difficult if not impossible to value, which [] could be meaningless or substantially diminished in value by the end of litigation absent injunctive relief").

Lender's irreparable harm fits squarely within this criteria, as the harm stems from Ashkenazy's and USSM's refusal to cede control of JLL's work, which, among other things, has rendered Lender unable to control the management of Union Station.  Lender took over the ownership and control over USI and the Union Station leasehold pursuant to the foreclosure sale.

Lender and USI are trying to comply with the direction agreed to earlier with Amtrak and conveyed to the Court:  keeping JLL as property manager while the case is pending.  Ashkenazy has interfered at every turn, demanding that all funding expenses for the property's operation

continue to run through Ashkenazy.  Lender and USI are entitled to contract directly with JLL, not rely on the obsolete agreement between JLL and AAC, the latter of which no longer has any interest in Union Station.  The letter from Ashkenazy's counsel and JLL's continued silence demonstrates how JLL responds to Ashkenazy's directives.

If JLL continues to follow Ashkenazy's orders, Lender should be allowed to contract with another property manager.  Lender has had discussions with Cushman & Wakefield, which is ready, willing, and able to step in as property manager for Union Station immediately.  (Rebibo Decl. at ¶¶ 29-30).  The risks of changing property management raised by Amtrak in its earlier fiing are unsupported by C&W's expertise.  (Amtrak's Emergency Motion at 4-5).  C&W is the largest provider of property-management services in Washington, D.C., managing over 60 million square feet of retail and mixed-use projects with over 700 management and engineering professionals locally.  (*Id.* at ¶ 30).  This is in addition to an extensive accounting and financial reporting staff centralized in St. Louis, Missouri who would team up with the onsite management team.  (*Id.*)  C&W has prepared property-management contracts to provide a seamless transition from JLL management to C&W management of Union Station.  (*Id.* at ¶ 29).  As part of this arrangement, C&W would retain the existing staff currently working at Union Station to avoid an interruption in service.  (*Id.*)  With C&W's experience working with government agencies, such as the U.S. Department of Transportation and Federal Railroad Administration, in mixed-use projects, the transition to a new property manager would not negatively affect the services provided at Union Station.  (*Id.* at ¶ 30).

## CONCLUSION

For the foregoing reasons, Lender respectfully requests that the Court enter an order approving the execution of a contract between USI and JLL for management of Union Station or,

if JLL does not agree to contract directly with USI, approving the execution of a contract between

USI and C&W for management of Union Station.

MORRISON COHEN LLP

____/s/ Y. David Scharf_____
Y. David Scharf
Brett Dockwell
Kristin T. Roy
Latisha V. Thompson
Amber R. Will
Mahnoor Misbah
*Admitted pro hac vice*
909 Third Avenue
New York, New York 10022
(212) 735-8600

HOLLAND & KNIGHT LLP

____/s/ Paul J. Kiernan_____
Paul J. Kiernan
Louis J. Rouleau
800 17th Street N.W.
Suite 1100
Washington, D.C. 20006
Phone: 202-663-7276
Fax: 202-955-5564
Paul.Kiernan@hklaw.com

*Attorneys for Defendant Kookmin Bank Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 24th day of June 2022, I served a true and correct copy of

the foregoing Emergency Motion and supporting papers on counsel of record via the CM/ECF

filing system.

*/s/ Y. David Scharf*_____
Y. David Scharf