**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK),<br><br>   Plaintiff,<br><br>  v.<br><br>Sublease Interest Obtained Pursuant to an Assignment and Assumption of Leasehold Interest made as of January 25, 2007, with said property interest Pertaining To Described Leasehold Interests at Washington Union Station located at 50 Massachusetts Avenue, NE Washington, D.C. 20002, UNION STATION INVESTCO, LLC, UNION STATION SOLE MEMBER, LLC, KOOKMIN BANK CO., LTD. INDIVIDUALLY AND IN ITS CAPACITY AS TRUSTEE OF KTB CRE DEBT FUND NO. 8, A KOREAN INVESTMENT TRUST, and UNKNOWN OWNERS,<br><br>   Defendants. | Case No. 1:22-cv-01043-APM |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS UNION STATION INVESTCO LLC'S AND UNION STATION SOLE MEMBER LLC'S MOTION TO STRIKE**

| ARENTFOX SCHIFF LLP | KASOWITZ BENSON TORRES LLP |
|---|---|
| James H. Hulme<br>D.C. Bar No. 323014<br>Laurel LaMontagne<br>D.C. Bar No. 1613468<br>1717 K Street, NW<br>Washington, DC 20006<br>Telephone: (202) 857-6000<br>Facsimile: (202) 857-6395 | Henry B. Brownstein<br>D.C. Bar No. 1026042<br>1399 New York Avenue, Suite 201<br>Washington, D.C. 20005<br>Tel.: (202) 760-3400<br>hbrownstein@kasowitz.com<br><br>David E. Ross (*admitted pro hac vice*)<br>David J. Mark (*admitted pro hac vice*)<br>Daniel J. Koevary (*admitted pro hac vice*)<br>1633 Broadway<br>Tel.: (212) 506-1700<br><br>*Attorneys for Defendants Union Station Investco LLC and Union Station Sole Member LLC* |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................. 3

I.     SECTION 5.2.2 SETS OUT THE EXCLUSIVE RIGHTS AND
REMEDIES OF THE PARTIES FOLLOWING A CONDEMNATION ......................... 3

    A.     Owners' Reading of the Contracts Complies with New York Law ....................... 3

    B.     Kookmin Cannot Exercise Rights Under the Pledge Agreement Following the
Condemnation ......................................................................................................... 7

II.    THE ANTI-ASSIGNMENT ACT DOES APPLY TO AMTRAK ................................. 11

III.   OWNERS WILL BE SEVERELY PREJUDICED IF THEY
ARE EXCLUDED FROM THIS LITIGATION ............................................................. 13

IV.   SOLE MEMBER WILL HAVE A VOICE IN THIS CASE
REGARDLESS OF THE RULING ON THE MOTION ................................................ 14

CONCLUSION .......................................................................................................................... 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.H.A. Gen. Constr., Inc. v. N.Y. City Housing Auth.*,
 92 N.Y.2d 20 (1998) ..................................................................................................................10

*Alkaifi v. Celestial Church of Christ Calvary Par.*,
 24 A.D.3d 476 (N.Y. App. Div. 2d Dep't 2005) ......................................................................11

*Alto v. Sun Pharm. Indus., Inc.*,
 No. 1:19-CV-09758-GHW, 2021 WL 4803582 (S.D.N.Y. Oct. 13, 2021) ...............................4

*Beal Sav. Bank v. Sommer*,
 10 Misc. 3d 1062(A), (Sup. Ct. N.Y. Cty. 2005),
 *aff'd*, 29 A.D.3d 388 (1st Dep't 2006),
 *aff'd*, 8 N.Y.3d 318 (2007)..........................................................................................................7

*Constitution Pipeline Co., LLC v. Permanent Easement for 1.80 Acres*,
 No. 3:14-CV-2049 (NAM), 2021 WL 4624486 (N.D.N.Y. Oct. 7, 2021) .................................8

*God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*,
 6 N.Y.3d 371 (2006) ...................................................................................................................5

*\*Harasek v. Nat'l R.R. Passenger Corp.*,
 334 F. Supp. 3d 309 (D.D.C. 2018) ............................................................................12, 13, 14

*\*Int'l Multifoods Corp. v. Com. Union Ins. Co.*,
 309 F.3d 76 (2d Cir. 2002).........................................................................................................6

*\*JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*,
 977 N.E.2d 354 (Ind. Ct. App. 2012).........................................................................................5

*Knick v. Twp. of Scott, Pennsylvania*,
 __ U.S. __, 139 S. Ct. 2162 (2019).............................................................................................8

*Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Cap., Inc.*,
 30 N.Y.3d 572 (2017) .............................................................................................................4, 5

*\*Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*,
 830 F.3d 152 (2d Cir. 2016).......................................................................................................4

*Pennsylvania Avenue Development Corp v. One Parcel in Land*,
 670 F.2d 289 (D.C. Cir. 1981) ...................................................................................................9

\* - cases upon which Owners chiefly rely

*Sabo v. United States*,
   127 Fed. Cl. 606 (Fed. Cl. 2016) ...........................................................................................9, 12

*Toles v. United States*,
   371 F.2d 784 (10th Cir. 1967) ....................................................................................................12

*\*U.S. ex rel. Totten v. Bombardier Corp.*,
   286 F.3d 542 (D.C. Cir. 2002) .....................................................................................11, 12, 13

*United States v. Petty Motor Co.*,
   327 U.S. 372, 376 (1946) .............................................................................................................9

*Uzlyan v. Solis*,
   706 F. Supp. 2d 44 (D.D.C. 2010) ............................................................................................13

**Statutes**

49 U.S.C. § 24301(a)(3) ...........................................................................................................11, 12

**Other Authorities**

Fed. R. Civ. P. 71.1(c) ...................................................................................................................16

Defendants Union Station Investco LLC ("Investco") and Union Station Sole Member LLC ("Sole Member," and together with Investco, "Owners"), respectfully submit this reply memorandum of law in further support of their motion, ECF No. 55 (the "Motion"), to strike the Neuberger/Investco Answer, ECF No. 36, invalidly submitted on Investco's behalf by Neuberger at the behest of Defendant Kookmin.[1]

## PRELIMINARY STATEMENT

Kookmin is wrongfully trying to freeze Owners out of this condemnation proceeding at the start. Relying on a misreading of the relevant authorities and an interpretation of the relevant loan agreements that omits any of Owners' rights in the event of a condemnation, Kookmin wants to deny Owners any voice in this matter, despite Owners' undeniable interest in Union Station at the time of the condemnation, and its continuing ownership interest and financial interest (in the range of hundreds of millions of dollars) in any potential condemnation award. The Court should not countenance this hijacking of Owners' rights.

Far from refuting Owners' interpretation of the relevant contracts and law, Kookmin's Opposition to Owners' Motion, ECF No. 56 ("Opposition") and the subservient me-too brief filed by Neuberger, ECF No. 57 ("Neuberger Brief") confirm that Owners are a major party-in-interest in this case, and that Kasowitz and ArentFox are the properly authorized attorneys for Owners, entitled to represent their clients' rights in this litigation. Rather than respond on the merits to Owners' legal arguments, the Opposition argues tangential and irrelevant points without contesting the critical points of Owners' Motion—that the condemnation provisions of

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in Owners' Opening Brief in Support of the Motion. *See* ECF No. 55-1.

the Loan Agreements govern Owners' rights to participate in and control their own defense in this proceeding. Kookmin's arguments to the contrary are unavailing.

*First*, Kookmin does nothing to contest the clear import of the condemnation-specific provisions of the Loan Agreements. Those provisions provide the exclusive rights and remedies of the parties once a condemnation of the property is effectuated, which occurred here upon the filing of this case. This is evident because the condemnation provisions, Section 5.2.2 in each of the Loan Agreements, displace nearly all of the other terms of the Loan Documents, including even those governing the borrowers' obligations to pay the debt following a condemnation. Kookmin's attempted exercise of rights outside of this provision after the taking was effected had no impact at all on Owners' rights set forth in Section 5.2.2 and was a nullity. And, even if there was some ambiguity to the effectiveness of Kookmin's actions, the general provisions of the contracts cited by Kookmin must give way to the specific provisions upon which Owners rely. Kookmin cannot and does not contest that Section 5.2.2 provides exactly what Owners assert—that Owners have a right, and indeed an obligation, to litigate this case. The most fundamental rules of contractual construction mandate Owners' right to participate in this case.

*Second*, Kookmin is wrong that the Anti-Assignment Act does not apply to Amtrak and that Kookmin can simply ignore its provisions. Precedent in this Circuit makes clear that Amtrak is entitled to the protections of the Act, and Kookmin does not otherwise contest Owners' arguments that its purported "foreclosure sale" was impermissible under the Act and can have no effect here.

*Third*, severe prejudice will befall Owners if they are not permitted to participate here through their designated counsel. Owners have managed Union Station for more than fifteen years, and are the only party who has the experience and expertise to contest Amtrak's fact-

intensive, and historically-grounded condemnation.  By contrast, despite their claims to the contrary, Kookmin—which bought a position in a debt stack—will suffer no prejudice if Owners use their expertise to contest the condemnation.

*Fourth*, even if the Court does not grant the Motion—though it should do so—and finds that Kookmin now "speaks for" Investco, Owners' counsel are entitled to continue to participate here on behalf of Sole Member, which retains an interest, potentially worth hundreds of millions of dollars, in any ultimate just compensation award.

*Finally*, Kookmin's attempt to usurp Owners' rights is not only wrongful—it is fraught with legal peril because excluding Owners would result in unwinding any results of this proceeding should an appellate court later "reinstate" Owners as necessary parties in this litigation.  By contrast, granting the Motion and permitting Owners their rightful seat at the table in this proceeding would not prejudice Kookmin—or anyone else—because they can still participate on their own behalf.

For those reasons and as further described herein, Owners' Motion to Strike the Neuberger/Investco Answer should be granted.

## ARGUMENT

I. **SECTION 5.2.2 SETS OUT THE EXCLUSIVE RIGHTS AND REMEDIES OF THE PARTIES FOLLOWING A CONDEMNATION**

　　A.　**Owners' Reading of the Contracts Complies with New York Law**

In the Opening Brief, Owners first established i) that the Loan Agreements provide for a specific regime of rights and remedies of the parties following a condemnation of Union Station, ii) that even if an Event of Default (as that term is defined in the Loan Documents) is continuing, clear principles of contract law mandate that Kookmin's authority is limited to those condemnation rights, and iii) that, as a result, Kookmin's attempt to squelch Owners' rights and

3

to litigate in their place after this case was filed (and after the taking occurred) is invalid. *See* Opening Brief at 12-17.

While Kookmin spills much ink in its Opposition on irrelevant issues, it responds to Owners' principal contract argument in less than three pages, and cites no precedent that supports its argument. *See* Opposition at 22-25. Even if Kookmin has not conceded the point, its paltry opposition to Owners' clear contract arguments holds no weight.

As stated in Owners' Opening Brief, New York law is clear that "a contract should be construed as to give full meaning and effect to all of its provisions." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.,* 830 F.3d 152, 157 (2d Cir. 2016). And, where a specific provision of a contract appears to be in tension with a more generally applicable one, the more specific provision applies. *Alto v. Sun Pharm. Indus., Inc.*, No. 1:19-CV-09758-GHW, 2021 WL 4803582, at *41 (S.D.N.Y. Oct. 13, 2021) ("Under New York law, 'where there is an inconsistency between a specific provision and a general provision of a contract, the specific provision controls.'" (quoting *Oldcastle Precast, Inc. v. U.S. Fid. & Guar. Co.*, 458 F. Supp. 2d 131, 142 (S.D.N.Y. 2006)) (cleaned up)). Further, "courts should read a contract as a harmonious and integrated whole to determine and give effect to its purpose and intent. . . . Courts may not, through their interpretation of a contract, add or excise terms or distort the meaning of any particular words or phrases . . . ." *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, 30 N.Y.3d 572, 581 (2017) (citations omitted). Owners' reading complies with these clear holdings since it gives effect to the condemnation-specific provisions of the agreements while allowing the more general provisions to govern other non-condemnation circumstances.

Despite parroting at least one of these cases, *see* Opposition at 23, Kookmin proceeds to read the "Condemnation" provision of the Loan Agreements entirely out of both contracts. Kookmin thus spends several pages of its Opposition explaining the rights granted to it in Sections 8, 9, and 13 of the Pledge Agreement. *See* Opposition at 17-22. Among those rights is the ability to act as attorney-in-fact following the occurrence of an Event of Default. Opposition at 20-22. But, Kookmin's reading eliminates entirely Section 5.2.2 of the Loan Agreements which have their own Event of Default provisions, including "attorney in fact" clauses which provide that *following a condemnation* Kookmin has a limited grant of authority to negotiate and approve a condemnation award and to participate in this action on its own behalf. *See* Mortgage Loan Agreement § 5.2.2; Mezzanine Loan Agreement § 5.2.2; *see also JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*, 977 N.E.2d 354, 362 (Ind. Ct. App. 2012) (interpreting an identical grant of authority "merely makes [Lender] the agent in charge of receiving any condemnation proceeds otherwise payable to [Borrower] and gives [Lender] the authority to approve any condemnation settlement award."). Kookmin's stilted construction would eliminate the need for the condemnation provision—an outcome that is absolutely foreclosed by New York law. *Nomura Credit & Capital*, 30 N.Y.3d at 581 ("Courts may not, through their interpretation of a contract, add or excise terms or distort the meaning of any particular words or phrases . . . ."); *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 6 N.Y.3d 371, 374 (2006). ("A contract 'should be read to give effect to all its provisions.'" (first citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995), and then citing *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46 (1956))).

Moreover, Owners' reading of the contracts ensures that all provisions of the contract are "harmonized" and make sense. For example, Section 5.2.2 provides that "[n]otwithstanding the

5

Condemnation," payments on the loan remain due. *See* Mortgage Loan Agreement § 5.2.2; Mezzanine Loan Agreement § 5.2.2.[2] Other provisions of the Loan Documents already provide for loan payments in the normal course. *See* Mortgage Loan Agreement § 2.3; Mezzanine Loan Agreement § 2.3. But, the addition of a provision specific to condemnation was necessary, because the contracts acknowledge that condemnation is the kind of *sui generis* event that modifies all of the arrangements in the Loan Documents and requires specific provisions governing the parties' post-condemnation conduct. It would make no sense to have included such a provision unless—as is clear from these agreements—the parties contemplated that their rights are fundamentally altered in the context of a condemnation. Failing to read the contracts in that manner would render this clause superfluous, a result rejected by New York courts. *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002) (collecting cases).

That is not the only provision of Section 5.2.2 that Kookmin's reading would render unnecessary or superfluous. For example, Kookmin repeatedly references its rights in the normal course when an Event of Default is in effect and continuing. *See* Opposition at 2, 6, 19, 22-25. But, as noted above, Kookmin ignores that Section 5.2.2 includes its own post-condemnation Event of Default provision which grants Kookmin some, *but not all*, of the rights discussed elsewhere. Kookmin's reading would eliminate the need for, and any use of, this specific provision entirely.

Not only that, but Section 5.2.2 also provides specific **rights** to Owners—and, in particular to Sole Member—to ***prosecute*** any litigation relating to a condemnation proceeding,

---

[2] Kookmin's criticism that "Movants do not provide the full text of Section 5.2.2 of the Loan Agreements" in their memorandum of law, *see* Opposition at 24, is not useful and underscores that its Opposition lacks a substantive response to Owners' Motion. Owners cited in their Opening Brief the relevant portions of the provision and in this Reply have highlighted additional portions that disprove Kookmin's arguments.

6

including, in the Mezzanine Loan Agreement, specific rights reserved to Sole Member. *See, e.g.*, Mezzanine Loan Agreement § 5.2.2 ("*[Sole Member] shall, at its cost and expense, diligently prosecute or cause [Investco] to diligently prosecute any such litigations or proceedings*, and shall consult with Lender, its attorneys and experts, and cooperate with them in the carrying on or defense of any such litigations or proceedings." (emphasis added)). Those rights necessarily limit any non-condemnation-specific remedies in other portions of the Loan Documents once a condemnation takes place. *Cf. Beal Sav. Bank v. Sommer*, 10 Misc. 3d 1062(A), at *8 (Sup. Ct. N.Y. Cty. 2005) (holding that contract remedy must be understood in the context of the whole agreement between the parties), *aff'd*, 29 A.D.3d 388 (1st Dep't 2006), *aff'd*, 8 N.Y.3d 318 (2007). This specific grant of authority to Sole Member—and, indeed, much of the Mezzanine Loan Agreement—would be eliminated if Kookmin's reading of the contract prevailed and it were permitted, during a condemnation, to eliminate Sole Member's continuing interest, rights, and obligations.[3] In short, Kookmin's rights under the Loan Documents, even if not limited only to those in Section 5.2.2—which Owners do not concede—must be limited by the specific grants of authority to Owners in those sections. Any other reading does violence to the intent of the parties as objectively expressed in their agreements.

### B. Kookmin Cannot Exercise Rights Under the Pledge Agreement Following the Condemnation

As discussed above, reading Section 5.2.2 of the Loan Agreements as the parties' sole source of rights and remedies following condemnation is the only reading that harmonizes the

---

[3] For the same reason, Kookmin's argument that its remedies are "cumulative" has no bearing here. *See* Opposition at 25. Even if the remedies in other portions of the Loan Documents could be exercised cumulatively with the remedies specific to condemnation, they would still be limited by *the specific rights granted to Sole Member* in the Mezzanine Loan Agreement, including the right to participate in this action and receive any proceeds from the condemnation over the outstanding debt. *See infra* § IV.

provisions of the agreements and gives each provision meaning, as required by New York law. Kookmin's appeal to rights under the Pledge Agreement, which are foreclosed by the condemnation-specific provision in Section 5.2.2 of the Loan Agreements, and purported exercise of them after condemnation, does not control in the condemnation context.

Owners established in their Opening Brief that the rights of the parties vis-à-vis a condemnation are determined when the condemnation is effected. *See* Opening Brief at 17-18. As the Supreme Court has stated, the result of a condemnation proceeding like this one is to ensure payment of "compensation as if it had been 'paid contemporaneously with the taking[.]'" *Knick v. Twp. of Scott, Pennsylvania*, __ U.S. __, 139 S. Ct. 2162, 2171 (2019) (quoting *Jacobs v. United States*, 290 U.S. 13, 17 (1933)). That is only possible if the owners of the interest subject to condemnation (here, Owners) are permitted to participate in and prosecute this case. Kookmin does not respond to this argument, and thus effectively concedes it.

Moreover, the one condemnation case that Kookmin does cite on this point readily is distinguishable from the facts here. In *Constitution Pipeline Co., LLC v. Permanent Easement for 1.80 Acres* (cited at Opposition at 14), the owner of the land subject to condemnation specifically assigned to a second purchaser not only the land itself, but the entire right to litigate the then-pending condemnation action. No. 3:14-CV-2049 (NAM), 2021 WL 4624486, at *1 (N.D.N.Y. Oct. 7, 2021). Specifically, the seller warrantied that the purchaser would "be substituted for Seller as a party in [that] action" and that he would "execute any such documents as are necessary to effectuate said assignment and substitution." *Id.* Even if such an assignment

of both proceeds and litigation capacity were effective, there is no such assignment here or any agreement to "substitute" Kookmin for Owners.[4]

Kookmin may argue, but has not, that the Loan Documents, including the Pledge Agreement, effected such an assignment at the time they were signed or upon an Event of Default. Not so. Neither the Pledge Agreement nor the Loan Agreements effects an assignment of rights. Instead, the assignment, if any exists, is effected by Kookmin's exercise of rights. *See, e.g.*, Pledge Agreement § 9 ("Lender may . . . exercise all rights and remedies . . . ."). But, once again, Kookmin could not exercise rights once the condemnation of Union Station was effected, which occurred upon the filing of this case.

The other cases Kookmin cites in its Opposition similarly are unavailing or support Owners here. For example, *United States v. Petty Motor Co.*, involved a lease agreement that, by its terms, terminated upon condemnation, eliminating all of the leaseholder's rights in the property and any standing it might have had to prosecute the litigation. 327 U.S. 372, 376 (1946). No such provision is present in any of the Loan Documents or the contracts governing the lease of Union Station. On the other hand, the court in *Pennsylvania Avenue Development Corp v. One Parcel in Land* (cited at Opposition at 15), underscored the "elementary principle" of contract interpretation, that the plain, unambiguous meaning of a written agreement controls, including to the parties' pre-condemnation division of responsibility. 670 F.2d 289, 292 (D.C. Cir. 1981) ("If there is a prior agreement between the parties as to allocation of a condemnation

---

[4] As Owners established in their Opening Brief, assignment of litigation proceeds, rather than rights to the claims themselves, are effective. *See Sabo v. United States,* 127 Fed. Cl. 606, 619-20 (Fed. Cl. 2016) (contrasting the right to assign proceeds to a litigation with assignment of claims in the litigation and noting that courts have "distinguished between the assignment of substantive claims and the assignment of any litigation proceeds, holding that the former violates the Antiassignment Act, while the latter does not.").

award, that agreement, of course, governs the disposition of the award."). This is precisely what *Owners, not Kookmin,* are asking the Court to do here by enforcing the clear condemnation-specific terms of Section 5.2.2 in the Loan Agreements.

Kookmin also resorts to refuting straw man arguments Owners never made. For one, Kookmin misapprehends Owners' argument that, even if it could exercise rights under the Pledge Agreement now, it has failed to comply with the Section 13 limitation that all such actions be "necessary or advisable to accomplish the purposes [of the Pledge Agreement]." *See* Pledge Agreement § 13. Kookmin instead minimizes this obligation as one to simply provide a "justification" for any action. But this provision is a substantive limitation on Kookmin's exercise of rights and remedies to which it has not responded, and with which it has not complied. *See* Opening Brief at 15. Kookmin also raises that Owners' arguments pertaining to the registration of membership interests in Investco are foreclosed by the doctrine of "prevention." *See* Opposition at 15. That rule simply states that "a party cannot insist upon a condition precedent, when its non-performance has been caused by himself." *A.H.A. Gen. Constr., Inc. v. N.Y. City Housing Auth.*, 92 N.Y.2d 20, 31 (1998). Here, there was no condition precedent for Owners to perform. The obligation to register the membership interest was never triggered because Kookmin's exercise of rights after the condemnation never was effective.

In sum, Kookmin's arguments relating to the Loan Documents are unavailing. Owners' arguments are the only reading of the contract that complies with New York law and ensures that all provisions have meaning and that none are superfluous. Kookmin's reading would jettison the condemnation-specific provisions of the agreements in favor of a generic grant of rights with no relation to the condemnation for which the agreements provide a specific allocation of rights.

10

## II. THE ANTI-ASSIGNMENT ACT DOES APPLY TO AMTRAK

Owners' Opening Brief also established that Kookmin's unilateral transfer to itself of the rights to Investco through a one-sided nonjudicial foreclosure sale would be impermissible under the Anti-Assignment Act.[5] Kookmin does not seriously contest this argument. Indeed, it largely ignores it. *See* Opposition at 16-17. Instead, Kookmin argues that Amtrak is fully exempt from the protections of the Anti-Assignment Act because of language in Amtrak's organizing statute that it "shall not be subject to title 31." 49 U.S.C. § 24301(a)(3). This argument fails in the face of binding precedent in this Circuit.

In *U.S. ex rel. Totten v. Bombardier Corp.*, the Court of Appeals held that the provision in Amtrak's organizing statute that it "shall not be subject to title 31" only applies to circumstances where Amtrak would be "regulated by, or made answerable under, [Title 31]" or where it would need to "conform its actions to the terms imposed by such statutes." 286 F.3d 542, 547-48 (D.C. Cir. 2002). Examining both the plain text of the statute and the legislative history behind the provision, the Circuit rejected the reading Kookmin asserts here—that "subject to" essentially means "affected by" in any way. *Id.* at 547. Instead, the Circuit ruled that Amtrak is entitled to the "protection" of Title 31, but not to the restrictions therein. *Id.* at 548, 550. This is particularly true under the facts of *Bombardier*, in which former Amtrak employees had filed *qui tam* litigation against an Amtrak contractor under the False Claims Act.

---

[5] The "sale" to Kookmin, which was conducted on a commercially unreasonable one month's notice while this case was pending, *see* Rebibo Decl., ECF No. 56-1, Ex. H, involved it making a credit bid of the amount of the debt and summarily "winning" the "auction." Owners understand the "sale" to have no effect given the pendency of this action, but reserve the right to challenge its commercial unreasonableness if it is not void under the contracts. *See Alkaifi v. Celestial Church of Christ Calvary Par.*, 24 A.D.3d 476, 477 (N.Y. App. Div. 2d Dep't 2005) ("Thus, a court, 'in the exercise of its equitable powers, has the discretion to set aside a judicial sale where fraud, collusion, mistake, or misconduct casts suspicion on the fairness of the sale'") (citations omitted).

*Id.* at 545-46.  In permitting that litigation to move forward, the D.C. Circuit necessarily allowed Amtrak to benefit from Title 31, in the form of recoveries from the False Claims Act claim.

Kookmin misreads the only case it cites in support of its Anti-Assignment Act argument. In *Harasek v. National Railroad Passenger Corp.*, 334 F. Supp. 3d 309 (D.D.C. 2018) (cited at Opposition at 16), the court did not rule that the language in question "preclude[d] [an] Amtrak employee from bringing suit under the False Claims Act." *See* Opposition at 16.  Instead, the court found that Amtrak could not be a ***defendant*** in a False Claims Act case and crystallized the Circuit's holding in *Bombardier*: "the inescapable import of the [Circuit] court's reasoning is that § 24301(a)(3) precludes Amtrak itself from being 'subject to' the [False Claims Act]." *Harasek*, 334 F. Supp. 3d at 313.  Far from preventing the removal of the protections of Title 31, like the Anti-Assignment Act, the "not subject to" language serves only as a shield to prevent claims against Amtrak and does not bar its use to void a transfer like Kookmin's impermissible foreclosure "sale."

Kookmin cannot contest the merits of Owners' argument concerning the Anti-Assignment Act.  Owners were the party with an interest in the leasehold in Union Station prior to the condemnation, and Kookmin purported to transfer that interest to itself through the foreclosure.  Such an assignment of the litigation rights is void under the Anti-Assignment Act. *See Sabo v. United States,* 127 Fed. Cl. At 619-20; *Toles v. United States,* 371 F.2d 784, 785-86 (10th Cir. 1967).  It does not, however, prohibit the parties from contracting for or assigning certain interests in the proceeds that result from this case, which Owners admit occurred in the plain text of Section 5.2.2 of the Loan Agreements.  *See* Opening Brief at 14, 16.  Because Kookmin has failed to contest the Anti-Assignment Act arguments beyond their meritless

12

assertion regarding Amtrak's exemption, the Court should deem Owners' point to have been waived and conceded by Kookmin.[6]

## III. OWNERS WILL BE SEVERELY PREJUDICED IF THEY ARE EXCLUDED FROM THIS LITIGATION

Kookmin correctly focuses in its Opposition on prejudice. *See Uzlyan v. Solis,* 706 F. Supp. 2d 44, 51-52 (D.D.C. 2010) ("[M]any courts will grant such a motion only if the portions sought to be stricken as immaterial are also prejudicial") (cited at Opposition at 10). But Kookmin gets the prejudice in this circumstance exactly backward.

Kookmin's sole argument on the point is that its rights would be prejudiced because its purported exercise of contracts rights—which Owners have shown to be void—will have no effect in this case. *See* Opposition at 12. In short, Kookmin presents no argument that it will be independently prejudiced by the relief sought in the Motion. Even more meaningfully, the Neuberger Brief also makes no attempt at establishing prejudice if it were not permitted to "represent" Investco. Indeed, this makes sense, since the Neuberger version of Investco has to date demonstrated that it has no positions or arguments independent of Kookmin, incorporating Kookmin's Answer and Kookmin's Opposition wholesale. *See* Neuberger/Investco Answer at 15-16; Neuberger Brief at 2. Thus, there can be no argument that Kookmin's positions—or the positions of the Neuberger Investco entity—would be lost or unrepresented here if the

---

[6] Amtrak's Brief in connection with the Motion, ECF No. 58-1 ("Amtrak Br."), also does not change the analysis here. While Amtrak states it is not a government entity for all purposes, *see* Amtrak Br. at 2, it does not contest that the Anti-Assignment Act applies to it, as Kookmin attempts to argue, or that the Act serves to invalidate any alleged transfer here. Indeed, the cases on which Owners rely here recognize the limitations on Amtrak's status as a government entity, but nonetheless support that Amtrak is entitled to the "protection" of Title 31, which includes the Anti-Assignment Act. *See Bombardier*, 286 F.3d at 551; *Harasek*, 334 F. Supp. 3d at 314.

Neuberger/Investco Answer were stricken. Kookmin has no need to have two sets of lawyers making the same argument on behalf of the same ultimate beneficiary.

The prejudice to Owners, however, if they were barred from participating here, would be severe. As discussed in Owners' Opening Brief, Owners, and not Kookmin, are the entity most incentivized to challenge the validity of the condemnation and to obtain a just compensation award, since Owners are the sole beneficiary of the residuum of any condemnation award in excess of the outstanding debt. *See* Opening Brief at 21-22. Moreover, acting through their representatives on the ground, including employees of Ashkenazy Acquisition Corporation, Owners have managed Union Station on a day-to-day basis for more than fifteen years and are the only party positioned to litigate the fact-intensive condemnation questions raised in this case, which will be broader than a typical government condemnation. *Cf. Nat'l R.R. Passenger Corp. (Amtrak) v. 3.44 Acres More or Less of Land & Bldg. located at 900 2nd St. NE, Washington, DC 20002-3557*, 266 F. Supp. 3d 63, 67 (D.D.C. 2017) (noting that "[C]ourts simply do not owe Amtrak's determinations of necessity the same sort of substantive deference that federal agencies and other government entities receive when condemning property."). *See also generally* Press Decl., ECF No. 55-2 (describing Owners' involvement in the management of Union Station). Neither Kookmin nor the recently appointed "manager" of the Neuberger Investco entity possesses similar expertise. The rights of Investco to contest this proceeding thus will be prejudiced if Kookmin and not Owners "speak for Investco."

IV. **SOLE MEMBER WILL HAVE A VOICE IN THIS CASE REGARDLESS OF THE RULING ON THE MOTION**

Finally, Kookmin argues in one paragraph of its Opposition that Sole Member will have no right to continue in this litigation following Kookmin's purported foreclosure sale and takeover of Investco. Opposition at 27. This is wrong. Rather than cite to any relevant

14

provision of the contract, Kookmin relies on its own say-so, and that of its representative, to assert that Sole Member must be entirely excluded from the litigation.

Kookmin ignores that Section 5.2.2 specifically provides Sole Member rights to be exercised upon a condemnation, among which are the right to prosecute this case, and to collect any condemnation above the outstanding debt.  *See* Mezzanine Loan Agreement § 5.2.2.  In particular, Section 5.2.2 of the Mezzanine Loan Agreement is clear that Kookmin's debt is reduced by "Net Liquidation Proceeds After Debt Service" and that the remainder of such proceeds, if any, flow to the only other party to the Loan Agreement: Sole Member.  *Id.*  Kookmin completely ignores this crucial provision which, by its own terms, is not affected by a subsequent foreclosure which could in no way "terminate[]" Sole Member's rights.  *See* Opposition at 4.

Instead, Kookmin cites only to Section 9 of the Pledge Agreement for the proposition that Sole Member only is entitled to excess foreclosure proceeds.  *See* Opposition at 27.  However, just as above, that provision of the Loan Documents must be "harmonized" with the rights granted to Sole Member in Section 5.2.2.  Because the Pledge Agreement makes no specific reference to condemnation proceeds at all, the Court must read the provisions to mean that outside a condemnation, Kookmin's reading may be correct; but once a condemnation is effected, Sole Member retains the rights granted in Section 5.2.2 to an interest in the litigation and any resulting proceeds.

Thus, because Sole Member has a right to protect its ownership interest and its interest in the condemnation award, Sole Member must be permitted to appear and contest this action, regardless of the outcome of the Motion, though it should be granted for all of the foregoing

reasons. *Cf.* Fed. R. Civ. P. 71.1(c)(3) ("[T]he plaintiff must add as defendants all those persons who have or claim an interest [in the property] . . . .").

## **CONCLUSION**

For the foregoing reasons and those set forth in Owners' Opening Brief, the Court should grant Owners' Motion to Strike the Neuberger/Investco Answer and permit Owners to speak for Investco in this proceeding.

Dated: June 24, 2022

KASOWITZ BENSON TORRES LLP

By: /s/ *David E. Ross*
    Henry B. Brownstein
    D.C. Bar No. 1026042
    1399 New York Avenue, Suite 201
    Washington, D.C. 20005
    Tel.: (202) 760-3400
    hbrownstein@kasowitz.com

    David E. Ross (*admitted pro hac vice*)
    David J. Mark (*admitted pro hac vice*)
    Daniel J. Koevary (*admitted pro hac vice*)
    1633 Broadway
    Tel.: (212) 506-1700
    New York, NY 10019
    dross@kasowitz.com
    dmark@kasowitz.com
    dkoevary@kasowitz.com

    *-and-*

    ARENTFOX SCHIFF LLP

    James H. Hulme
    D.C. Bar #323014
    Laurel LaMontagne
    D.C. Bar #1613468
    1717 K Street, NW
    Washington, DC 20006
    Telephone: (202) 857-6000
    Facsimile: (202) 857-6395
    James.Hulme@afslaw.com

    *Attorneys for Defendants Union Station Investco LLC and Union Station Sole Member LLC*