IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK)<br><br>           Plaintiff,<br><br>      v.<br><br>SUBLEASE INTEREST PERTAINING TO DESCRIBED LEASEHOLD INTERESTS AT WASHINGTON UNION STATION, et al.<br><br>           Defendants. | 1:22-cv-01043-APM<br><br>Judge Amit P. Mehta |

## DECLARATION OF MICHAEL REBIBO

1. I am the Founder and Managing Principal of Rexmark Holdings LLC d/b/a Rexmark ("Rexmark"), a real-estate-investment management firm focused on debt and equity investments throughout the United States and Europe. I make this declaration on behalf of Defendant Kookmin Bank Co., Ltd., individually and in its capacity as trustee ("Kookmin" or "Trustee"), of KTB CRE Debt Fund No. 8, a Korean Investment Trust (the "Trust"). The Trust's agent in Korea is Daol Fund Management Co. ("Daol"), and the Trust's agent in United States is Rexmark (together with Trustee, the Trust, and Daol, "Lender").

2. This declaration is submitted in support of Lender's Emergency Motion for Approval of Contract with Property Manager. I am over 18 years of age and have personal knowledge of the facts set forth herein.

**Defendants USI and USSM are Separate Legal Entities**

3. Union Station Investco LLC ("USI") is a Delaware limited liability company that holds the leasehold interest in Washington Union Station ("Union Station"), which is the subject of the instant condemnation proceeding brought by Plaintiff National Railroad Passenger

Corporation ("Amtrak").  USI's manager, prior to the exercise of Lender's rights described below, was Ben Ashkenazy ("Ashkenazy").

4. Union Station Sole Manager LLC ("USSM") is a Delaware limited liability company, which previously held an ownership interest in USI.

**Lender Forecloses on USSM's Ownership Interest in USI**

5. Based on USSM's continuing default under the certain Mezzanine Loan Agreement, dated as of May 8, 2018, between Lender and USSM, USSM's ownership interest in USI was foreclosed on June 14, 2022, pursuant to a properly noticed Uniform Commercial Code ("UCC") foreclosure sale of USSM's membership interest in USI ("Foreclosure Sale").  As of today, USSM has no ownership interest in USI.  Lender was the highest bidder at the Foreclosure, purchasing the membership interest in USI for $140,535,334.53.  A true and correct copy of the Memorandum of Sale, dated June 14, 2022, is attached hereto as Exhibit A.

6. USSM did not contest, in this or any other court, the validity or propriety of the Foreclosure Sale.  Lender provided notice of the Foreclosure Sale.  Lender's Answer in this condemnation proceeding specifically referenced the impending sale. (Lender's Answer, ECF Doc. No. 35 at ¶ 19).  A true and correct copy of the notice of foreclosure is attached hereto as Exhibit B.

7. The Foreclosure Sale was conducted by Cushman & Wakefield, as the marketing and sales agent, in a commercially reasonable manner that resulted in extensive marketing with 134 confidentiality agreements approved leading up to the sale.  Of the parties signing confidentiality agreements, 70 viewed materials on the data site.  A true and correct copy of the Foreclosure Sale Status Report is attached hereto as Exhibit C.

8. At the Foreclosure Sale, Lender was the only qualified bidder.  Pursuant to the Foreclosure Sale, all of USI's membership interests were transferred to Lender's nominee.  A true

and correct copy of the transcript of the Foreclosure Sale is attached hereto as Exhibit D, complete with the exhibits cited therein. The transcript walks through the loan documents leading up to the Foreclosure Sale, how the sale was noticed and marketed, and the bidding process.

9. On June 15, 2022, Lender informed USSM and Ashkenazy that USSM's ownership interest in USI was disposed of by public foreclosure sale under Article 9 of the UCC. A true and correct copy of the notice to Ashkenazy is attached hereto as Exhibit E.

10. Lender subsequently informed Union Station Redevelopment Corporation ("USRC") and Amtrak that USSM's ownership in USI was foreclosed and that Lender's nominee was now "the rightful owner of all right, title and interest in and to USI." True and correct copies of the notices sent to USRC and Amtrak are attached hereto as Exhibit F and G, respectively.

11. In the USRC and Amtrak notices, Lender demanded that USRC and Amtrak cease from engaging with Ashkenazy and direct all inquiries relating to the Union Station leasehold to Lender. *See* Exs. F, G.

12. Lender never received objections or challenges to Lender's notices from USSM, Ashkenazy, USRC, or Amtrak.

**Ashkenazy's Interference with Lender's Rights Regarding Property Management**

13. The property management of Union Station is USI's obligation under its sublease with USRC.

14. When Ashkenazy served as the manager for USI, the Ashkenazy Acquisition Corporation ("AAC") had a Master Management Agreement with Jones Lang Lasalle Americas, Inc. ("JLL") (the "Master Agreement"). AAC served as "asset manager" for a number of properties in which Ashkenazy had an interest, and the Master Agreement allowed Ashkenazy to retain JLL to perform property-management functions at a number of different Ashkenazy-owned properties around the country, including the leasehold position at Union Station. A true and correct

copy of the most recent relevant amendment to that Master Agreement, the Thirteenth Amendment to Master Retail Management Agreement, dated as of November 6, 2014, is attached hereto as Exhibit H.

15. On April 28, 2022, Lender terminated JLL as property manager pursuant to its rights under the loan documents.

16. Pursuant to Lender's proper exercise of its rights under the Pledge and Security Agreement, dated as of May 8, 2018, between Lender and USSM, on May 13, 2022, Lender replaced Ashkenazy as manager of USI. William Henrich was appointed as the new independent manager of USI.

17. USI, through Henrich, intended to engage Cushman & Wakefield ("C&W") with a new property management agreement to ensure that the property manager took direction from USI, not Ashkenazy or AAC. USI, through Henrich, proceeded to work with JLL and C&W on the transition of property management.

18. Upon learning of USI's plan to replace JLL, Amtrak moved for an order to enjoin any defendant in the condemnation proceeding from terminating JLL as the property manager of Union Station during the pendency of the proceeding. (Amtrak's Mem. in Support of Emergency Motion for Interim Term of Possession, ECF Doc. No. 41-1, at 2).

19. Lender subsequently rescinded notice to terminate JLL, and USI joined with Lender in agreeing not to take action to replace or terminate JLL without further order from the Court. (Suggestion of Mootness, ECF Doc. 46). Based on USI's and Lender's agreement, Amtrak withdrew its motion. (Amtrak's Withdrawal of its Emergency Motion for Interim Term of Possession Without Prejudice and Continued Request for Issuance of Scheduling Order on Issues of Possession, ECF Doc. No. 47).

20.     JLL prepared a contract to enter into with Henrich directly as the newly appointed manager of USI.  Henrich ceased discussions with C&W.  A true and correct copy of the proposed contract is attached hereto as Exhibit I.  JLL agreed to work with Henrich as the USI manager—until Ashkenazy objected.

21.     The Foreclosure Sale was held on June 14, 2022.  The next day, Lender notified JLL that it had obtained ownership of the interests in USI, thereby giving control of USI to Lender.  Lender requested that JLL execute a new property-management agreement for Union Station with USI directly.  Lender also told JLL that it should no longer communicate with Ashkenazy or ACC regarding Union Station and instead direct all inquiries to Lender.  A true and correct copy of the notice provided to JLL is attached hereto as Exhibit J.

22.     JLL responded that it would "review internally" and revert back.

23.     Lender reached out again, and JLL stated that it was "still operating under the existing management agreement with Ashkenazy" and that it was "receiving conflicting information, direction and instruction from the parties to the foreclosure proceedings and the eminent domain proceedings."

24.     For its part, Lender sent the information about the Foreclosure Sale to JLL for it to review Lender's lawful purchase of USSM's interest in USI.  JLL has so far declined to enter into a new contractual arrangement with USI or Lender.

25.     For the past two years, USSM and Ashkenazy have not funded any of Union Station's operating expenses.  Lender has advanced funds for the property's operations.  For example, the operating expenses funded by Lender in the month of May 2022 amounted to $2,666,811.06.

26. On June 23, 2022, Lender's counsel received a letter from Kasowitz Benson Torres LLP ("Kasowitz"), lender for USSM, and also purportedly for USI. In the letter (attached to the Declaration of Y. David Scharf, dated June 24, 2022, as Exhibit B), Kasowitz demanded that Lender continue to fund for the property's operations through Ashkenazy as if the foreclosure had not taken place.

27. This demand for payment in Kasowitz's letter crystallizes the fact that AAC directs all of JLL's activities at Union Station—not USI. The letter explicitly references a communication between Rexmark and JLL, showing that JLL and Ashkenazy remain in communication.

28. USSM, Ashkenazy, and AAC continue to interfere with Lender's rights to manage Union Station. After the Foreclosure Sale, USSM's membership interests in USI were transferred to Lender's nominee, and JLL—if JLL wishes to continue serving as property manager for Union Station—needs to sign with the new owner of USI's interests. Neither USSM, Ashkenazy, nor AAC have ownership interests in Union Station anymore. JLL cannot manage Union Station without a contract with the current owner of USI's interests, i.e. Lender. If JLL continues to refuse to cooperate with USI directly, Lender needs to pursue alternative property management arrangements. Lender needs control over Union Station to conduct necessary leasing, continue funding the property's operations, ensure there are no disruptions to the operation of Union Station, and get access to the overall property interest.

29. C&W is ready, willing, and able to step in as property manager for Union Station immediately. C&W has prepared property-management contracts to enter into with USI to provide a seamless transition from JLL management to C&W management. C&W would take over all the existing staff currently working at Union Station so that there would be no interruption in service.

A true and correct copy of a proposal to take over the property management at Union Station is attached hereto as Exhibit K.

30. This type of property management would not be new for C&W. Indeed, C&W is the largest provider of property-management services in Washington, D.C., managing over 60 million square feet of retail and mixed-use projects with over 700 management and engineering professionals locally. Its accounting expertise is extensive, and all accounting and financial reporting for the station would take place in C&W's centralized Client Accounting offices located in St. Louis, Missouri. The onsite management team would work closely with the accounting team assigned to Union Station. C&W also has extensive experience with mixed-use projects, including managing over 10 million square feet of space leased to government agencies such as the U.S. Department of Transportation, Federal Railroad Administration, among others. Ex. K.

31. Given Lender's representations to the Court, Lender respectfully requests permission to terminate JLL's role as property manager and allow USI to contract with C&W instead. I would like to keep Lender's commitment to JLL, but JLL refuses to communicate with me except to say that the purported status quo remains. A transition from JLL to C&W would be smooth as we intend to keep the same personnel at Union Station to avoid any chaos in management.

32. Accordingly, Lender respectfully requests that the Court grant Lender's emergency motion for leave to retain a property manager.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

Executed this 24th day of June, 2022.

_____
Michael Rebibo, Managing Principal
Rexmark Holdings LLC d/b/a Rexmark