IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK)**<br><br>　　PLAINTIFF,<br><br>v.<br><br>**SUBLEASE INTEREST OBTAINED PURSUANT TO AN ASSIGNMENT AND ASSUMPTION OF LEASEHOLD INTEREST, et al.**<br><br>　　DEFENDANTS. | *<br>*　　**CIVIL ACTION NO. 1:22-CV-01043**<br>*<br>*<br>*<br>*<br>* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## JOINT STATUS REPORT

In accordance with the Memorandum Opinion ("Memorandum Opinion") issued by this Court on April 17, 2024, the parties file this Joint Status Report.[1]

In the Memorandum Opinion, the Court required that the Parties file a Joint Status Report by May 1, 2024 that: (1) includes "the agreed-upon and disputed conditions of the transfer of possession"; and (2) "propose[s] a schedule for further proceedings, including determining just compensation." This Joint Status Report addresses both. Nothing contained in this Joint Status Report waives the position(s) of any party or a right to request relief respecting the Memorandum Opinion in this Court or otherwise. The Parties reserve all rights, positions, and arguments with respect to the Memorandum Opinion. Defendants specifically reserve their rights, if any, to appeal, move for relief pursuant to Rules 54(b) or 59(e) of the Federal Rules of Civil Procedure, or to request a stay. Amtrak reserves the right to oppose any such relief and, in particular, opposes any request for relief that would further delay the turnover of possession of the Subject Property

---

[1] Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the Memorandum Opinion.

Interest to Amtrak. The parties understand that the dates set forth herein may be subject to further Court order.

Amtrak and certain representatives of USI, including the representatives of Rexmark who oversee the USI Sublease and the day-to-day operations at Union Station, have spoken several times since April 19, 2024 to discuss the conditions of transfer of possession (e.g., the timing of the transition, the exchange and location of records), and preparation for the day-to-day management of the leasehold estate (e.g., obligations to landlord Union Station Redevelopment Corporation ("USRC"), insurance, bank accounts, ongoing projects and negotiations). Discussions have been preliminary because the Passover holidays and vacations scheduled for the week of April 22nd limited the time available to meet.

A. **Proposed Date for Transfer of Possession**

The parties have not agreed to a date for turnover of possession. The positions of the parties as to the transfer of possession are set forth below.

*Amtrak's Position on the Turnover of Possession Date*

Amtrak has sought the turnover of possession of the Subject Property Interest for over two years. Amtrak does not believe the turnover of possession should be further delayed. Amtrak requests this Court issue an Order setting the turnover of possession of the Subject Property Interest to occur on June 1, 2024. This requested turnover date has been communicated to USI representatives. As set forth below, Lender disagrees with Amtrak's proposed turnover date and seeks to substantially delay the turnover date based on arguments that seek to re-litigate Amtrak's entitlement to possession—an issue this Court carefully considered and ruled upon in its Memorandum Opinion. Lender should not be able to delay the effective date of a transfer of possession by imposing conditions that would deprive Amtrak of possession and control of the

Subject Property Interest.

A June 1, 2024 turnover date is appropriate because: (1) Amtrak has been planning for months for the turnover of possession and is ready and able to take over possession of the Subject Property Interest, as indicated by the action plan and testimony presented by Stephen Gardner at the hearing on September 11, 2023 (September 11, 2023 Hearing Transcript at 95, Joint Ex. 4); (2) Amtrak and numerous other Station stakeholders are harmed by further delay, which impedes Amtrak's ability to make progress on its plans for the Subject Property Interest.  Further delay impedes the planning process not just for Amtrak but for all of the subtenants as well; (3) this Court found that the "Lender ha[d] not demonstrated any undue hardship warranting the denial of immediate possession to Amtrak" and Lender still has not done so; (4) Amtrak's eminent domain powers contemplate quick-takes, where transfers of possession occur quickly; (5) Lender is impermissibly attempting to retain control of the Subject Property Interest by asserting a list of turnover conditions and demands (such as demanding a release for USI) but those demands are not "reasonable conditions under which 'possession of the property is given to Amtrak'" but rather seem to constitute Lender's effort to obtain compensation as a condition for transferring possession—something not contemplated by the statute, which provides that Lender will receive just compensation after a transfer of possession has occurred.

Amtrak disagrees with Lender's position that Amtrak must come to agreement with Lender as to transfer of contracts and leases prior to a turnover of possession. Amtrak has acquired the Subject Property Interest through use of its eminent domain powers; the use of these powers is not contingent upon a prior owner or lender having Amtrak execute contracts or lease assignments. Further, while Amtrak may negotiate with JLL and other contractors and vendors for a contract in its own name, it does not intend to take over any of the USI or Lender's service contracts.  Contrary

to the Lender's assertion, Amtrak has advised Lender of its position that no additional documents, other than the entry of an Order of Possession of this Court, is needed for the turnover of possession. Amtrak is thus ready, willing, and able to take possession of the Subject Property Interest.

The Court should not permit Lender's tactics to delay Amtrak's receipt of possession of property to which it has held title for more than two years.

### *Lender's Position on the Turnover of Possession Date*

Lender has informed Amtrak that a turnover date within 30 days is not realistic. Lender's position is that the quick turnover sought by Amtrak is not possible because, based on the parties' discussions, there is no current infrastructure in place at Amtrak for USI and Rexmark to transition the day-to-day management to Amtrak in such a short period of time and to prepare and execute all the appropriate documentation. There are numerous items that need to be addressed in order to transfer a property interest of this complexity, many stemming from the fact that the transfer of possession of the leasehold interest will trigger termination or modification of contracts and leases between USI and many tenants, vendors, and suppliers, each of which must be dealt with through appropriate contracting instruments, including: (i) handling the assignment of subleases, (ii) dealing with current vendor contracts and obligations, including ongoing commitments, (iii) addressing insurance obligations under the USRC lease and whether Amtrak has obtained insurance, including policies covering losses or liabilities that predate the transfer; (iv) the plan for assumption of current tenant negotiations, obligations, and litigation; and (v) dealing with bank accounts, invoices, accounts receivable, and payable, and proration of payments, expenses and credits. Rexmark is currently responsible for the operating bank account, and it is not feasible or practically possible for the bank accounts, rent direction notices, and contract notices and contracts

be terminated and turned over to Amtrak in a matter of 30 days.

Remark has requested that Amtrak advise it on how it would like to address the foregoing issues. Amtrak has not yet provided a substantive response. Rexmark continues to work in good faith with Amtrak and has been having routine dialogue with Amtrak. Rexmark has an in-person meeting scheduled for May 9, 2024, with Amtrak's head of real estate and general counsel to go over the operations of Union Station. Rexmark asked Amtrak to sign a confidentiality agreement before turning over confidential financial information, which will affect discovery for just compensation.

In addition, because the dispossession of USI and Lender is happening involuntarily, it is only proper that Amtrak agrees to indemnify USI and Lender from the consequences, if any, associated with the termination or modification of leases and contracts triggered by the transfer of possession. For example, should a tenant sue USI for an obligation arising under its lease, Amtrak should indemnify USI and Lender from any exposure; or if a contractor or supplier demands a termination payment, it should be Amtrak's obligation to deal with that. And all of this should be worked through, negotiated, and completed prior to the effective date of a transfer. Lender anticipates that an orderly transfer of possession will take approximately 120 days, and proposes a turnover date of September 2, 2024.

**B.** <u>**Congressional Involvement**</u>

Lender raised with Amtrak and raises with the Court that Congress is making inquiries about the planned transition to Amtrak control of the station. This issue may affect the transition timetable. The parties' positions on this issue are set forth below.

*<u>Lender's Position</u>*

On March 6, 2024, United States Representative and Chairman of the Committee on

Transportation and Infrastructure Sam Graves, along with Member Tom Cole, sent a letter to Peter Buttigieg, United States Secretary for Transportation, in which they called for an in-person hearing to discuss whether Amtrak's takeover plan "may be contrary to law." The letter also asks for the Department of Transportation's plan to maintain the public-private partnership at Union Station. A copy of this letter is attached hereto as **Exhibit A**. To date, it is Lender's understanding that no such briefing has occurred, and that therefore, additional Congressional involvement may be forthcoming, impacting the turnover. In addition, to Lender's knowledge, at the time Mr. Gardner proposed the floor plan at the September 11, 2023 evidentiary hearing, neither the Department of Transportation, Federal Railroad Administration, nor Union Station Redevelopment Corp. had approved Amtrak's plan to reconfigure the use of the station, and, it is believed, Amtrak still lacks approval to date. These issues also impact the realistic timetable for transitioning the leasehold interest.

### *Amtrak's Position*

A letter sent by two members of the House of Representatives to Secretary of Transportation Peter Buttigieg is not evidence and does not relate to the conditions of turnover of possession, which is what the Court required the parties to address.

This Court has found that the Union Station Redevelopment Act of 1981 does not restrict Amtrak use of its eminent domain powers. This Court's Memorandum Opinion was issued after the letter was sent, meaning that the representatives that sent the letter did not have the ability to review the Court's rationale and findings. Nothing in the letter provides support that this Court's findings should be overturned, nor does it displace this Court's constitutional authority to interpret the law. Rather, Congressional representatives merely asked the Secretary of Transportation to provide information. The letter has absolutely no bearing on this case.

Lender also suggests that Congress may at some point take some unspecified action that might in some unspecified way restrict Amtrak's rights to acquire the Subject Property Interest; future hypothetical action should not delay the turnover of possession to Amtrak under the law as it now exists.

C.      **Jones Lang LaSalle (JLL)**

The parties also disagree about the manner and conditions pursuant to which Amtrak may obtain confidential information from JLL, the property manager at the Subject Property Interest. The parties' positions are set forth below.

*Amtrak's Position*

Amtrak wants to speak with and work directly with JLL on management issues concerning the Subject Property Interest. Amtrak's view is that no confidentiality agreement is needed for Amtrak to speak with JLL about a future business relationship that the parties have all agreed should take place. Amtrak also seeks documents from JLL regarding the Subject Property interest before turnover. Specifically, Amtrak is seeking only the books and records relating to the operation of the Subject Property Interest and is not seeking communications between JLL and Lender/USI nor any materials protected by privilege. While Amtrak believes that it is entitled, as the owner of the Subject Property Interest, to these documents, Amtrak is willing to agree that such records be provided subject to the current protective order that was entered by this Court. The use of the existing protective order would give Lender desired protection to designate documents as Confidential without requiring lengthy negotiations over a new confidentiality agreement.

*Lender's Position*

Lender has no objection to Amtrak speaking with JLL about a future business relationship

with Amtrak and has already communicated that to Amtrak. Lender has no problem transitioning JLL's property management to Amtrak once the property is transferred, but many of the issues raised in this status report fall beyond JLL's management rights. All bank accounts, leases, and service contracts are in the name of USI or Rexmark,—not JLL. Each employee at Union Station is hired by Rexmark, not JLL. Until Amtrak understands how the Station is being managed and has a correct understanding as to JLL's role in managing Union Station, it will be difficult to map out a realistic transition process.

      Lender also objects to JLL's disclosure of any confidential information belonging to USI or other Lender parties without a confidentiality agreement in place.  USI and Lender are also concerned about disclosure of information that may be protected by their attorney-client privilege or work-product protection given JLL's role over the last two years as USI's and Lender's agent in connection with this litigation. Amtrak's working relationship with JLL will not commence until after turnover, and Amtrak's discussions with JLL could reveal non-public information concerning USI or Lender that should be kept confidential by Amtrak during the pendency of the turnover.  Moreover, Lender does not agree that Amtrak can request information directly from JLL about the documents in JLL's possession.  This would allow Lender to effectively interfere with JLL's ability to work with USI during the pendency of the turnover and risks disclosure of Lender's confidential and proprietary information.  Instead,  even while Amtrak and JLL have preliminary discussions, Amtrak should direct requests for documentation to Rexmark, who actually oversees the USI Sublease and the day-to-day operations at Union Station. This reasonable effort to safeguard confidential information should not impede Amtrak's planning or access to relevant information because JLL has only played a subsidiary role regarding many of the operations at the Station that will need to be transitioned (i.e. leasing, contracts, insurance,

bank accounts). To be clear, none of the contracts, leases, or bank accounts that are the subject of transition activities are titled in the name of JLL, and Lender will require a mutually agreeable confidentiality agreement before it discloses any confidential or proprietary information.

**D.**      **Walk Through**

Amtrak and USI have agreed to a full day walk-through of the Subject Property Interest on May 9, 2024.  The parties have agreed that the following will be discussed on May 9th:

- A date for transfer of possession to Amtrak;

- Transfer of records, documents, and other materials relating to the Subject Property Interest in USI's possession;

- The process and mechanism for the transfer of retail tenant, special event or other commercial agreements security deposits or advance payments

- Transfer of rent collection and utilities and other expense payment responsibilities;

- Transfer of operation and maintenance responsibilities;

- Identification and transfer of work-in-progress responsibilities;

- The status of retail and office leasing activity;

- Digital and other advertising agreements and revenues;

- Assessment of the physical conditions of space outside of the pre-existing Amtrak sublease;

- Identification of upcoming events, their related fees and the transfer of responsibilities for such events;

- The form of and timing of notices to be sent to tenants, licensees, USRC, vendors, and others regarding the transfer.

While the parties have agreed to discuss these issues, Lender has requested that there be a discussion of additional two issues.  First, Lender wants to discuss Amtrak's proposed plan for management of the Subject Property Interest; Amtrak's position is that Lender is not entitled to such plans as they are unrelated to the conditions of the turnover.  Second, the Lender seeks to have a discussion of releases and/or indemnifications to be provided to the Lender stemming from the involuntary transfer of responsibilities and liabilities. Amtrak disagrees because Lender is not entitled to a release or indemnification under the statute; rather the statute contemplates a method of providing just compensation and Amtrak intends to follow the statutory approach.

E. **Letter to Tenants, Licensees, Vendors and USRC**

The parties agree that a joint letter should be sent to tenants, licensees, vendors and USRC respecting the transfer of possession only after an Order of Possession is entered by this Court, which sets forth the date for turnover. Lender's position is that this communication is without prejudice to any requirements to obtain approvals, consents, amendments, or other documents affecting tenancies or contracts or obligations of the tenant under the USRC lease. Amtrak agrees that the communication should be without prejudice to Lender's rights, but does not agree that approvals, consents, amendments, or other documents affecting tenancies or contracts or obligations of the tenant under the USRC lease are required; Amtrak has acquired the Subject Property Interest by use of its eminent domain powers and not by negotiated agreement.

F. **Further Status Report and Status Conference**

Amtrak and Lender both agree that a further Joint Status Report should be provided to the Court, but disagree as to when.  Amtrak's position is that a further Joint Status Report should be provided to the Court on May 14, 2024, shortly after the May 9, 2024 walk-through.  Amtrak also proposes that the Court set a conference at the Court's convenience but ideally between May 15-

18, 2024 to discuss outstanding transition issues. A conference would allow any remaining disputes related to transfer of possession be considered promptly and before Amtrak's proposed turnover date of June 1, 2024. A short time period for an additional status report is appropriate given the Court's original two week reporting deadline for providing a status report, Amtrak's need for the Subject Property Interest, and that there is no reasonable explanation for additional delay.

Lender proposes that a further Joint Status Report be provided on May 24, 2024, with a conference being set by the Court shortly thereafter, ideally between May 28-30, 2024. Lender believes that the parties will need time to discuss the conditions of the turnover after the Parties' May 9 walk-through. This is particularly true, as despite its request, Lender still has no insight into how leases will be assigned, bank accounts reconciled, ongoing litigation handled, insurance maintained, or a host of other issues that must occur in order for Union Station to operate.

Both parties agree that, if the Court agrees, the conference should be held virtually considering the number of parties and attorneys who are non-residents of this District.

**G.**     **Restrictions on USI during Interim Period**

The Parties recognize that there will be a period of time between the date of the Memorandum Opinion and the turnover of possession to Amtrak (the "Interim Period"). During this Interim Period, the parties agree that USI will continue to manage the day-to-day operations at the Subject Property Interest, and: (1) abide by the terms of its sublease with USRC; (2) follow the terms of its existing retail leases and other commercial agreements with tenants and third parties; (3) pay required operating expenses and other obligations; and (4) provide all necessary services, including repair, maintenance, and other operational services and continue working on existing projects.

The Parties have also agreed that USI during the Interim Period shall not do any of the following without receiving Amtrak's written consent beforehand: (1) negotiate with a third party for any long-term new leases or other commercial agreements; (2) enter into any new leases, amendments or modification to existing leases or other commercial agreements or any amendments and modification of existing commercial agreements that extend beyond the Interim Period (including but not limited to license, service contracts, and agreements for events and event space); or (3) undertake any new activity that affects the station structure at the Subject Property Interest, including renovations, improvements, infrastructure modifications, build-out or non-emergency repairs beyond routine repair and maintenance.

The parties have not, however, agreed to certain restrictions. Since Amtrak is taking the Subject Property Interest subject to existing leases, Amtrak has requested that USI not be allowed to negotiate for any new retail leases or other commercial agreements or any amendments thereof; Lender wants the restrictions to only apply to long-term new leases. In addition, Amtrak has requested that USI not be allowed to modify the terms of any existing retail leases or other commercial agreements; Lender does not agree to this restriction.

**H.**     **Further Proceedings**

Amtrak has agreed to the following schedule for further proceedings; Lender, also agrees to the below schedule, but proposes that in the event a stay issues or if there are further proceedings that affect the turnover of possession or the determination that Amtrak's taking was valid, certain of the dates set forth below may not hold. USSM takes no position on Lender's proposal, but consents to the schedule Amtrak proposed unless otherwise noted. Subject to the forgoing, the parties propose the following discovery schedule, with the parties' areas of disagreement noted below:

1. *Requests for Production of Documents*:  The parties shall serve requests for the production of documents by July 1, 2024.  The Parties shall serve written responses and objections on or before August 1, 2024, and shall complete their production of documents by September 16, 2024, unless extended by mutual agreement or Court order.  Amtrak's position is that the parties should not be allowed to serve more than thirty requests and that the scope of the requests should be limited to issues relating to just compensation; Lender disagrees with these limitations.  USSM disagrees with the limit on the number of requests.

2. *Fact Depositions*:   The parties shall complete fact-witness depositions by October 31, 2024, unless extended by mutual agreement or Court order.

3. *Expert Reports*:   Amtrak shall submit any expert report(s) it intends to rely upon by November 21, 2024.  USI, Lender and USSM shall serve any expert report(s) they intend to rely upon by December 23, 2024.  Rebuttal expert reports, if any, must be served by the parties within the time limits set forth by Rule 26(a)(2)(D)(ii) or January 30, 2025, whichever is later.

4. *Expert Discovery*:   The parties have not agreed to the date for the completion of expert discovery.  Amtrak has proposed that the deadline be February 15, 2025 for such depositions; Lender's and USSM's position is that the deadline should be March 25, 2025.

5. *Trial date*:   The Parties request that a trial date be set, but disagree as to when it should be set.  Amtrak requests that the trial date be set in the early Spring; Lender and USSM request that the date of trial be in May 2025.  The Parties anticipate that this bench trial will last three to five trial days.

6.  *Other parties that may have an interest*.  Under Rule 71.1(c)(3) of the Federal Rules of Civil Procedure, Amtrak must add as defendants all persons who have or claim an interest

in the property interest being condemned that are known or can be found by a reasonably diligent search. Amtrak's position is that there are or may be entities identified in litigation presently pending in the federal and state court of New York that describe persons of entities claiming an interest. Amtrak has requested that Defendants provide it with the name of any person or entity, not a party to the actions, that has or claims an interest in the Subject Property Interest, along with an explanation as to the claimed or actual interest. Lender has not agreed to this request. USSM does not believe that any additional person must be added to this action.

The Parties respectfully submit this report and await further instructions from the Court.

**COUNSEL FOR PLAINTIFF, NATIONAL RAILROAD PASSENGER CORPORATION**

| | |
|---|---|
| */s/ Lindsay Harrison* | */s/ Patricia McHugh Lambert* |
| Lindsay Harrison, DC Bar #977407 | Patricia McHugh Lambert, Federal Bar #MD0008 |
| Jessica Ring Amunson, DC Bar #497223 | Kambon R. Williams, Federal Bar #MD29872 |
| Jenner & Block, LLP | PESSIN KATZ LAW, P.A. |
| 1099 New York Avenue, NW, Suite 900 | 901 Dulaney Valley Road, Suite 500 |
| Washington, D.C. 20001-4412 | Towson, Maryland 21204 |
| Telephone: 202-639-6000 | Telephone: 410-938-8800 |
| Fax: 202-639-6066 | Fax: 667-275-3059 |
| lharrison@jenner.com | plambert@pklaw.com |
| jamunson@jenner.com | kwilliams@pklaw.com |

**COUNSEL FOR DEFENDANT, KOOKMIN BANK CO., LTD.**

| | |
|---|---|
| */s/*           *(with permission)* | */s/*           *(with permission)* |
| Paul J. Kiernan | Y. David Scharf |
| Louis J. Rouleau | Brett Dockwell |
| HOLLAND & KNIGHT, LLP | Kristin T. Roy |
| 800 17th Street, N.W., Suite 1100 | Latisha V. Thompson |
| Washington, D.C. 20006 | Amber R. Will |
| Phone: (202) 663-7276 | Mahnoor Misbah |
| Fax: (202) 955-5564 | *Admitted pro hac vice* |
| Paul.kiernan@hklaw.com | MORRISON COHEN, LLP |
| | 909 Third Avenue |
| | New York, New York 10022 |
| | dscharf@morrisoncohen.com |

**COUNSEL FOR DEFENDANT, UNION STATION INVESTCO, LLC**

*/s/*           *(with permission)*
Thomas M. Wood, IV
Steven J. Willner
NEUBERGER, QUINN, GIELEN,
RUBIN & GIBBER, P.A.
One South Street, 27th Floor
Baltimore, Maryland 21202
Telephone: (410) 332-8542
Fax: (410) 332-8564
tmw@nqgrg.com
sjw@nqgrg.com

15

**COUNSEL FOR DEFENDANT UNION STATION SOLE MEMBER, LLC**

/s/                              *(with permission)*
Henry B. Brownstein, D.C. Bar #1026042
KASOWITZ BENSON TORRES LLP
1399 New York Avenue, Suite 201
Washington, DC 20005
Telephone: (202) 760-3400
hbrownstein@kasowitz.com

David E. Ross (*admitted pro hac vice*)
David J. Mark (*admitted pro hac vice*)
Daniel J. Koevary (*admitted pro hac vice*)
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
dross@kasowitz.com
dmark@kasowitz.com
dkoevary@kasowitz.com

/s/                              *(with permission)*
James H. Hulme, D.C. Bar #323014
Laurel LaMontagne, D.C. Bar #1613468
ARENTFOX SCHIFF LLP
1717 K Street, NW
Washington, DC 20006
Telephone: (202) 857-7000
Fax: (202) 857-6395
james.hulme@afslaw.com