IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK) | * | |
| | * | CIVIL ACTION NO. 1:22-CV-01043 |
| PLAINTIFF, | * | |
| v. | * | |
| SUBLEASE INTEREST OBTAINED PURSUANT TO AN ASSIGNMENT AND ASSUMPTION OF LEASEHOLD INTEREST, et al. | * | |
| | * | |
| DEFENDANTS. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**AMTRAK'S RESPONSE TO LENDER AND UNION STATION INVESTCO, LLC'S
JOINT MOTION FOR STAY PENDING APPEAL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

BACKGROUND ......................................................................................................... 1

ARGUMENT ............................................................................................................. 4

I.  THE ORDER IS NOT APPEALABLE UNDER 28 U.S.C. § 1291 OR § 1292(a)(1). ....................................................................................................... 4

    A.  The Court's Possession Order Is Not a Final Decision Under 28 U.S.C. § 1291. ........................................................................................................ 5

    B.  The Court's Possession Order Is Not Appealable Under 28 U.S.C. § 1292(a)(1). ................................................................................................ 8

II.  MOVANTS HAVE NOT SATISFIED ANY OF THE STAY FACTORS. .................... 10

    A.  Movants Have Not Shown a Strong Likelihood of Success on the Merits. ........................................................................................................ 11

        1.  The Court Correctly Interpreted the Amtrak Statute. ................................ 11

        2.  The Court Did Not Convert Amtrak's Motion for Immediate Possession into a Motion for Summary Judgment. .................................... 15

        3.  The Court Correctly Found that Amtrak Made the Required Showing of Necessity. ........................................................................... 17

        4.  The Court Did Not Incorrectly Rely on Post-Filing Negotiations. ................................................................................................. 19

    B.  Movants Have Not Demonstrated Irreparable Harm. ............................................ 20

    C.  The Public Interest Factors Do Not Favor a Stay. ................................................. 24

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

CASES

*Banks v. Office of Senate Sergeant-At-Arms & Doorkeeper of U.S. Senate*, 471
    F.3d 1341 (D.C. Cir. 2006) ......................................................................6

*Catlin v. United States*, 324 U.S. 229 (1945) ...........................................5, 6

*Connecticut National Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ........11

*Cooper & Lybrand v. Livesay*, 437 U.S. 463 (1978) ..................................10

*East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808 (4th Cir. 2004)................13, 21

*Everett v. US Airways Group, Inc.*, 132 F.3d 770 (D.C. Cir. 1998) .................5

*Keystone Tobacco Co. v. U.S. Tobacco Co.*, 217 F.R.D. 235 (D.D.C. 2003) .............10

*Loughran v. United States*, 317 F.2d 896 (D.C. Cir. 1963) ...........................7

*Mann v. WMATA*, 185 F. Supp. 3d 189 (D.D.C. 2016) ..................................10

*Martimes & Northeast Pipeline, L.L.C. v. Decoulos*, 146 F. App'x 495 (1st Cir.
    2000) ....................................................................................20

*National Railroad Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407
    (1992) ....................................................................................20

*National Railroad Passenger Corp. (Amtrak) v. 3.44 Acres More or Less of Land
    & Bldg. located at 900 2nd Street NE, Washington DC 2002-3557*, 266 F.
    Supp. 3d 63 (D.D.C. 2017) .......................................................12, 18

*Nken v. Holder*, 556 U.S. 418 (2009) ......................................................10

*Pennsylvania v. New Jersey*, 426 U.S. 660 (1976) (per curiam) .....................22

*Polson Logging Co. v. United States*, 149 F.2d 877 (9th Cir. 1945) ................5

*Safari Club International v. Salazar*, 852 F. Supp. 2d 102 (D.D.C. 2012) ............21, 22

*Salazar ex rel. Salazar v. District of Columbia*, 671 F.3d 1258 (D.C. Cir. 2012)................8, 9, 24

*Senate Permanent Subcommittee on Investigations v. Ferrer*, Misc. A. No. 16-
    621, 2016 WL 11681577 (D.D.C. Sept. 30, 2016) ...................................21

*Transcontinental Gas Pipe Line Co. v. Permanent Easements for 2.14 Acres &
    Temporary Easements for 3.59 Acres in Conestoga Twp., Lancaster County,
    Tax Parcel No. 1201606900000*, 907 F.3d 725 (3d Cir. 2018) .......................3

*Transwestern Pipeline Co. v. 17.19 Acres of Prop. Located in Maricopa County*, 550 F.3d 770 (9th Cir. 2008) ............................................................3

*United States v. 58.16 Acres of Land*, 478 F.2d 1055 (7th Cir. 1973) ..............7

*United States v. 6.584 Acres of Land, More or Less, Hidalgo County, Texas*, 533 F. Supp. 3d 482 (S.D. Tex. 2021) ...........................................19

*United States v. 687.30 Acres of Land*, 451 F.2d 667 (8th Cir. 1971) ...............5

*United States v. 8.0 Acres of Land*, 197 F.3d 24 (1st Cir. 1999) ......................5

*United States v. Certain Land in the Borough of Manhattan*, 332 F.2d 679 (2d Cir. 1964) ................................................................................7, 8

*United States v. Kansas City*, 159 F.2d 125 (10th Cir. 1947) .........................5

*United States v. Muniz*, 540 F.3d 310 (5th Cir. 2008) .........................7, 8, 9

*United States v. Richardson*, 204 F.2d 552 (5th Cir. 1953) ...........................5

*In re: Vitamins Antitrust Litigation*, No. 99–197, 2000 WL 673936 (D.D.C. Jan. 27, 2020) ..................................................................................10

*WMATA v. One Parcel of Land*, 514 F.2d 1350 (D.C. Cir. 1975) (per curiam) .........................6, 7

*WMATA v. One Parcel of Land in Montgomery County*, 706 F.2d 1312 (4th Cir. 1983) ...........................................................................14

*Washington Metropolitan Area Transit Commission v. Reliable Limousine Service, LLC*, 776 F.3d 1 (D.C. Cir. 2015) ....................................8

*Wisconsin Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985) ........................22

## STATUTES

28 U.S.C. § 1292(a)(1) ......................................................................8

28 U.S.C. § 1292(b) .......................................................................10

40 U.S.C. § 3114(a)(1)-(5) ...............................................................12

40 U.S.C. § 3114(b)(1) ................................................................3, 13

40 U.S.C. § 3114(b)(2) ...................................................................13

40 U.S.C. § 3114(b)(3) ...................................................................13

40 U.S.C. § 3114(c)(3) ...................................................................14

40 U.S.C. § 3114(d) ....................................................................................................13

40 U.S.C. § 3115(a) ....................................................................................................14

49 U.S.C. § 24101 .......................................................................................................24

49 U.S.C. § 24311(a)(1) ..............................................................................................13

49 U.S.C. § 24311(a)(1)(A) ..................................................................................2, 3, 11

49 U.S.C. § 24311(a)(1)(B) .........................................................................................11

49 U.S.C. § 24311(a)(2) .........................................................................................2, 3, 9

49 U.S.C. § 24311(b)(1) ..............................................................................................13

49 U.S.C. § 24311(b)(1)(A)-(E) .............................................................................. 12-13

49 U.S.C. § 24311(b)(2) ...........................................................................................9, 13

49 U.S.C. § 24311(b)(2)(A) ........................................1, 4, 9, 11, 13, 14, 15, 20, 21, 23

49 U.S.C. § 24311(b)(3) ...........................................................................................6, 9

49 U.S.C. § 24311(b)(4) ..............................................................................................14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 71.1(e)(3) ............................................................................................15

The National Railroad Passenger Corporation ("Amtrak") opposes Lender and Union Station Investco LLC's ("USI" or "Movants") Joint Motion for Stay Pending Appeal, ECF No. 116.[1] This Court's Order Granting Amtrak's Motion for Immediate Possession, ECF No. 111 (May 24, 2024) ("Possession Order" or "Order") is not appealable because it is an interim order that USI can only appeal following final judgment in this matter. Even if the Order were appealable, Movants cannot satisfy any of the stay factors. Movants cannot demonstrate likelihood of success on the merits because this Court's Memorandum Opinion, ECF No. 106 (Apr. 17, 2024) ("Op.") correctly rejected Movants' reading of the Amtrak condemnation statute as a matter of law. Movants also have not demonstrated irreparable harm nor shown that the public interest favors granting a stay. And Movants have waived much of what they now argue because they failed to introduce evidence into the record, are now contradicting prior positions, and agreed to the terms by which possession would be transferred without raising the issues they now claim would justify a stay. The transition to Amtrak's possession, set to be completed on July 15, 2024, should proceed without interruption, and the motion for stay pending appeal should be denied.

## BACKGROUND

On April 14, 2022, Amtrak filed this suit to condemn USI's sublease property interest in Washington Union Station ("Subject Property Interest") under the authority granted to Amtrak by Congress in 49 U.S.C. § 24311 ("Amtrak Statute"). As required, Amtrak filed a Declaration of Taking and deposited with the Court its estimate of just compensation ($250 million). Pursuant to 49 U.S.C. § 24311, on that day, title to the property interest vested in Amtrak, and the Court was empowered to then decide the "time by which, and the terms under which, possession of the property" would be "given to Amtrak." 49 U.S.C. § 24311(b)(2)(A).

---

[1] Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the Memorandum Opinion issued on April 17, 2024.

On July 8, 2022, Amtrak filed a Motion for Immediate Possession of the Subject Property Interest. *See* ECF No. 72 (July 8, 2022). On January 18, 2023, this Court held a hearing on the motion but did not rule, instead giving the parties another 30 days to reach a negotiated resolution. ECF No. 85. After those negotiations failed, the Court held another status conference at which it granted "limited discovery" to address two topics: whether the taking was "necessary for intercity rail passenger transportation," 49 U.S.C. § 24311(a)(1)(A), and whether it had been the case that Amtrak "cannot acquire the interest in the property by contract" or "agree with the owner on the purchase price for the interest," *id.* § 24311(a)(2). *See* ECF No. 94. Neither Lender nor USI argued that discovery on any other topic was needed for the Court to resolve Amtrak's motion for possession. *See id.* The parties proceeded to negotiate the scope of discovery, which was reflected in a Joint Status Report submitted on April 6, 2023. *See* ECF No. 95.

Movants then issued document requests and interrogatories to Amtrak, and Amtrak produced thousands of pages of documents and provided discovery responses. Movants also deposed four Amtrak executives on 30(b)(6) topics, including (1) Chief Executive Officer Stephen Gardner, (2) Treasurer Nathan MacIver, (3) Executive Vice President, Strategy & Planning Dennis Newman, and (4) Senior Director, Coordination and Special Projects Gretchen Kostura.

Neither Lender nor USI filed a motion to compel more discovery or argued that more discovery was needed. Indeed, they said the opposite. After the close of discovery, the Parties submitted a Joint Status Report in which Lender and USI stated:

> [B]ased on the discovery already conducted and the scope of the issues before the Court on Amtrak's Motion for Immediate Possession, it is unlikely that there are material issues of fact on which the Court will need to hear live testimony and make credibility findings. While the parties may disagree about the legal import of the facts, Lender and USI submit that the facts regarding approvals, negotiation, funding, and operations at Union Station are not likely to be genuinely disputed.

ECF No. 98 ¶ 9.

On September 11, 2023, the Court held an evidentiary hearing at which various witnesses, including Amtrak's Chief Executive Officer, testified. Movants presented their own witnesses and exhibits as well. The parties then submitted their proposed findings of fact and conclusions of law.

On April 17, 2024, this Court issued its Memorandum Opinion finding that "Amtrak has met its burden of proof to exercise its 'quick take' authority," but the Court "with[held] entering an order conferring immediate possession of the leasehold interest until Amtrak, in consultation with the relevant interested parties, presents the court with an acceptable plan for the orderly transition of Union Station's operations and management." Op. 3. The Court reached that conclusion by drawing on the similarly worded Declaration of Takings Act ("DTA"), which sets forth the general federal power of eminent domain, under which possession is immediately transferred pursuant to "quick-take" authority if specified statutory requirements are met. 40 U.S.C. § 3114(b)(1). As the Court explained, "Given the parallel statutory text, § 24311(b) should likewise be interpreted to vest immediate possession in Amtrak when it fulfills the quick-take provision's procedural requirements." Op. 30; *see generally Transwestern Pipeline Co. v. 17.19 Acres of Prop. Located in Maricopa Cnty.*, 550 F.3d 770, 774 (9th Cir. 2008); *Transcon. Gas Pipe Line Co. v. Permanent Easements for 2.14 Acres & Temp. Easements for 3.59 Acres in Conestoga Twp., Lancaster Cnty., Tax Parcel No. 1201606900000*, 907 F.3d 725, 734 (3d Cir. 2018). The Court further concluded that Amtrak had made the "two showings" on which the Court had granted discovery, namely that the taking is "necessary for intercity rail passenger transportation," and that Amtrak "cannot acquire the interest in the property by contract" or "agree with the owner on the purchase price for the interest." 49 U.S.C. § 24311(a)(1)(A), (a)(2); *see* Op. 37-38, 43-45. The Memorandum Opinion emphasized that further proceedings remained to determine "the time by which, and the terms under which, possession of the property is given to Amtrak." Op. 8-9 (quoting

49 U.S.C. § 24311(b)(2)(A)). It thus withheld a final order of possession and ordered the parties to meet and confer to negotiate the conditions by which possession would be transferred. Op. 47.

The parties then filed a series of joint status reports to determine an orderly transition process and to agree upon a schedule to govern further proceedings in this Court. Amtrak and USI agreed to a July 15, 2024 transition date and also to numerous matters relating to the transfer of possession, including how the parties would notify existing retail tenants and licensees about the transfer of possession. *See* ECF No. 109, at 2. The parties agreed to a discovery schedule for further proceedings, which the Court adopted. *See* ECF Nos. 107, 108. Movants never requested to include summary judgment in the proposed schedule. *See id.*

In light of the parties' stipulated agreement on "the time by which, and the terms under which, possession of the property [would be] given to Amtrak," 49 U.S.C. § 24311(b)(2)(A), the Court formally granted Amtrak's motion for immediate possession on May 24, 2024. Although the Court's Memorandum Opinion and Order decided Amtrak's motion for immediate possession, and the parties have agreed to a July 15, 2024 transition date, the matter of just compensation remains disputed and open.  Trial is set for May 6, 2025, after which the Court will issue a final judgment.[2]

## ARGUMENT

## I.   THE ORDER IS NOT APPEALABLE UNDER 28 U.S.C. § 1291 OR § 1292(a)(1).

The Court should deny a stay pending appeal because this Court's order granting Amtrak's Motion for Immediate Possession is not appealable at all. Appellate "jurisdiction to review judgments of the district court is limited to 'appeals from all *final* decisions,' 28 U.S.C. § 1291,

---

[2] The Court initially set trial for April 7, 2025, but the Court granted the parties' joint request to move the trial date to May 6, 2025. *See* Minute Order (May 28, 2024).

and to interlocutory appeals that fall within the narrow exceptions defined by 28 U.S.C. § 1292." *Everett v. US Airways Grp., Inc.*, 132 F.3d 770, 772 (D.C. Cir. 1998). This appeal is neither.

### A.     The Court's Possession Order Is Not a Final Decision Under 28 U.S.C. § 1291.

The Court's Possession Order is not a final judgment. As the Supreme Court has explained, "ordinarily in condemnation proceedings appellate review may be had only upon an order or judgment disposing of the whole case, and adjudicating all rights, including ownership and just compensation, as well as the right to take the property." *Catlin v. United States*, 324 U.S. 229, 233 (1945); *see also* Mem. 30 (conceding that "*Catlin* stands for the proposition that ordinarily in condemnation cases only a final order disposing of the whole case, including compensation, is appealable"). A final decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin*, 324 U.S. at 233; *see also id.* at 243 (concluding that the right to appeal can "be exercised when and only when final judgment, disposing of the cause in its entirety, has been rendered").[3]

Under *Catlin*, the Order is not a final decision. The plain language of the Memorandum Opinion makes clear that the district court has not "end[ed] the litigation on the merits." *Id.* at 233. To the contrary, the Court characterized Amtrak's motion as a "motion under § 24311 for

---

[3] The circuit courts agree that *Catlin* prohibits this kind of piecemeal appeal. *See, e.g.*, *United States v. 687.30 Acres of Land*, 451 F.2d 667, 669 (8th Cir. 1971) ("Under the standards stated in *Catlin*, it is clear that no final judgment has been entered in this case and that no appeal lies from the orders appealed from" because the "court's determination that the Government has the right to possession under its declaration of taking and its deposit of the estimated value of the land for the purpose claimed does not dispose of the litigation" as "[s]erious title controversies and the issue of just compensation remain for adjudication"); *United States v. Richardson*, 204 F.2d 552, 555-56 (5th Cir. 1953) (holding that a "condemnation proceeding is not reviewable until after final judgment disposing of the whole case and adjudicating all rights, including ownership and just compensation as well as the right to take property"); *Polson Logging Co. v. United States*, 149 F.2d 877, 878 (9th Cir. 1945) ("In any event, under the *Catlin* case upon the decision of the question of damages and the judgment finally disposing of the condemnation proceeding, appellant may then appeal and present here all the matters decided adversely to it in which it claims the district court is in error."); *United States v. Kansas City*, 159 F.2d 125, 129 (10th Cir. 1947) ("It is only when the judgment disposes of the case in its entirety that an appeal will lie; and an order entered upon a declaration of taking and a subsequent refusal to vacate such order in a condemnation proceeding are not appealable orders."); *United States v. 8.0 Acres of Land*, 197 F.3d 24, 32-33 (1st Cir. 1999) (final judgment occurs only when, *inter alia*, the district court "conclusively … establishes the just compensation for th[e] land").

immediate possession *before a final adjudication of the merits*." Op. 29 (emphasis added). It described the quick-take process as "permit[ting] Amtrak to take immediate possession of the condemned property before the court determines the amount of just compensation *and enters final judgment*." Op. 2. And it expressly required the parties to "propose[] a schedule for further proceedings, including determining just compensation." Op. 47.[4] The Court has made an initial determination that Amtrak is entitled to exercise its quick-take authority, but there is much left "to do." *Catlin*, 324 U.S. at 233. The Court's Possession Order therefore does not qualify as a final appealable order.

All of this is consistent with the Amtrak Statute, which makes clear that a "judgment" is only rendered once the court has ruled on just compensation. *See, e.g.*, 49 U.S.C. § 24311(b)(3) ("After a hearing, the court shall make a finding on the amount that is just compensation for the interest in the property and enter *judgment* awarding that amount and interest on it." (emphasis added)). The D.C. Circuit in particular has construed the final judgment rule "strictly" and "repeatedly not[ed] that a district court's decision is ordinarily not final until it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Banks v. Off. of Senate Sergeant-At-Arms & Doorkeeper of U.S. Senate*, 471 F.3d 1341, 1345 (D.C. Cir. 2006) (internal quotation marks and citations omitted).

To avoid this rule, USI invokes the narrow exception applied by the D.C. Circuit in *WMATA v. One Parcel of Land*, 514 F.2d 1350 (D.C. Cir. 1975) (per curiam), but that exception does not apply here. In *WMATA*, the Court held that an "order of possession is final and subject to review if it operates to defeat the right of the property owner to challenge the validity of the taking

---

[4] It is true that the Memorandum Opinion refers to "withhold[ing] a final order of immediate possession," Memorandum Opinion at 47, but that language plainly refers to the Court's decision to delay issuing the Possession Order until the parties agreed on the conditions for transfer pursuant to 49 U.S.C. § 24311(b)(2)(A). *Cf.* Op. at 3 (referring only to "withhold[ing] entering an order conferring immediate possession of the leasehold interest").

in the condemnation proceeding." *Id.* at 1351. There, the transit authority sought to condemn a property interest that would have given it the right to drill eight borings in a particular parcel for a 30-day period to determine the property's potential suitability for a future rail line. *Id.* at 1351-52. The D.C. Circuit held that the district court's possession order was appealable only because delaying appellate review would effectively deprive the property owner of the opportunity to challenge the 30-day short-term taking at issue there. *Id.* at 1352 ("Had this court not stayed that order Metro would long since have taken possession and completed its borings, thereby defeating any remedy the Cemetery may have."). But there is no temporary taking here, and Movants can appeal once final judgment has been entered. Nor, in any case, has the district court "defeat[ed] the right of the property owner to challenge the validity of the taking in the condemnation proceeding": discovery and additional proceedings remain to resolve that question before the Court enters a final judgment.[5] *Id.* at 1351.

The out-of-circuit cases on which *WMATA* relied to craft this narrow exception to *Catlin* all were concerned about movants losing their remedy if appeal were not advanced early. In *United States v. 58.16 Acres of Land*, 478 F.2d 1055, 1060-61 (7th Cir. 1973), the court of appeals permitted an immediate appeal in an unusual situation where the district court had wrongly concluded that it "could not entertain the challenge to the taking" on the basis that the condemnation was not judicially reviewable.[6] And in *United States v. Certain Land in the Borough*

---

[5] The *WMATA* decision followed the same principle set forth by the D.C. Circuit in *Loughran v. United States*, 317 F.2d 896 (D.C. Cir. 1963), wherein the D.C. Circuit stayed a possession order and permitted an expedited appeal from an interlocutory order transferring the title of property that had been selected as the International Monetary Fund ("IMF") headquarters. It did so only because the IMF's absolute immunity from suit meant that the property owners "would be left with no means by which to defeat, or to test, the validity of the transfer of the title." *Id.* at 898-99; *see also Muniz*, 540 F.3d at 313 (recognizing that *Loughran* was "not endors[ing] a broad exception to *Catlin*"). No such immunity is at play here.

[6] *58.16 Acres of Land* is further distinguishable because the Seventh Circuit treated the interlocutory appeal as a writ of mandamus. 478 F.2d at 1061. But "[h]ere, the [Movants] do not bring an action in mandamus nor can one credibly be claimed." *Muniz*, 540 F.3d at 313.

*of Manhattan*, 332 F.2d 679, 680 (2d Cir. 1964), once again, the appellate court believed that "occupants' rights would be rendered moot and beyond the power of any court to rectify if they could not be heard at once and before they have been dispossessed."[7] That does not apply here: this Court expressly distinguished *Certain Land* in concluding that Lender and USI had not established undue hardship. Op. 46. Movants "will have an adequate opportunity for appellate review, including an opportunity to challenge the propriety of the taking, after the district court renders final judgment." *Muniz*, 540 F.3d at 314. The Court's Order therefore cannot be appealed under 28 U.S.C. § 1291.

**B.      The Court's Possession Order Is Not Appealable Under 28 U.S.C. § 1292(a)(1).**

Movants alternatively argue that 28 U.S.C. §1292(a)(1) provides a basis for appellate jurisdiction, mischaracterizing the Order as an "[i]nterlocutory order[] . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). That argument is contrary to the Court's Memorandum Opinion, to the text and structure of the Amtrak Statute, and to the Supreme Court's decision in *Catlin*.

As the D.C. Circuit has explained, the "exception provided by § 1292(a)(1) is a limited one, and the Supreme Court has 'construed [it] narrowly.'" *Salazar ex rel. Salazar v. District of Columbia*, 671 F.3d 1258, 1261 (D.C. Cir. 2012) (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981); *see also Wash. Metro. Area Transit. Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 9 (D.C. Cir. 2015) (noting this Circuit "construe[s] this exception narrowly, lest we turn the barrier against piecemeal appeals into Swiss cheese" (internal quotation marks omitted)).

---

[7] *Certain Land* is further distinguishable because the court effectively treated the interlocutory appeal as covered by the collateral order doctrine. The appeal was taken from an order denying appellant's application to modify a "previous order with respect to the terms and conditions of the government's taking possession," and was held to be "separable from, yet collateral to, the rights asserted in the main condemnation action." 332 F.3d at 680.

The Court's Order does not fall within this "limited" exception because it merely sets "the time by which, and the terms under which, possession of the property is given to Amtrak." 49 U.S.C. § 24311(b)(2)(A). It does not "clearly grant[] or deny[] a specific request for injunctive relief," *Salazar*, 671 F.3d at 1261 (quotation marks omitted)—something this Court recognized when it rejected USI's argument that the standard for injunctions applied to Amtrak's possession motion. *See* Mem. 28-30. For the same reasons, the Court's Order is not appealable as an injunction.

A contrary ruling would defy Congress's careful construction of the Amtrak Statute. As Congress designed it, the statute itself—not the Court's order—vests title to the Subject Property Interest with Amtrak. *See* 49 U.S.C. § 24311(b)(2). The Court then exercises discretion to determine only the "time" and "terms" for Amtrak's interim possession of the Subject Property Interest. *Id.* § 24311(b)(2)(A). But everything in the case, including possession, remains temporary pending the determination of just compensation. Only then can the Court "enter judgment."[8] *Id.* § 24311(b)(3). This structure is fundamentally inconsistent with Movants' theory that they can attain an interlocutory appeal of the Court's Possession Order.

Finally, were Movants correct that possession orders qualify as appealable injunctions under § 1292(a)(1), *Catlin* and its progeny necessarily would have all been decided the other way. *See Muniz*, 540 F.3d at 314-15 (rejecting appellate jurisdiction to appeal condemnation possession order under § 1292(a)(1) because "[i]f we accepted the Landowners' argument, then any possession order would vest this court with immediate appellate jurisdiction in every eminent

---

[8] Nor can the Court's order be appealed for having the "practical effect" of granting injunctive relief. *Salazar*, 671 F.3d at 1262. Such an order must "affect predominantly all of the merits," *id.* (alteration and quotation marks omitted), but just compensation remains undecided. Accordingly, USI must demonstrate that the order "might have a 'serious, perhaps irreparable, consequence,'" "and that the order can be 'effectively challenged' only by immediate appeal." *Id.* (quoting *Carson*, 450 U.S. at 84). But for the reasons stated above, it is not true that this determination can be "effectively challenged" only by immediate appeal. And as discussed below, USI has not shown, and cannot show, irreparable harm.

domain proceeding. Such a scenario would be contrary to *Catlin*."). Under *Catlin*, this Court's Possession Order is not appealable under either 28 U.S.C. § 1291 or § 1292(a)(1).

Accordingly, Movants cannot even get out of the gate, as the Order they seek to stay pending appeal is not appealable at all.[9]

## II.   MOVANTS HAVE NOT SATISFIED ANY OF THE STAY FACTORS.

Even if this Order were appealable, Movants are not entitled to a stay. A "stay pending appeal is an 'extraordinary remedy.'" *Mann v. WMATA*, 185 F. Supp. 3d 189, 194 (D.D.C. 2016) (quoting *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985)). It is an "intrusion into the ordinary processes of administration and judicial review," and thus "is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quotation marks omitted). This Court considers four factors in assessing whether to grant a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quotation marks omitted). The first two factors are the "most critical." *Id.* Here, *none* of the four factors is satisfied.

---

[9] Movants did not seek leave to appeal under Federal Rules of Appellate Procedure 5, and for the same reasons set forth herein, such leave should not be granted. In particular, Movants do not present the sort of "exceptional" circumstances needed to justify interlocutory review. *Cooper & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (quotation marks omitted). The Order does not involve a controlling question of law on which there is substantial ground for difference of opinion, and an immediate appeal would delay rather than advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *In re: Vitamins Antitrust Litig.*, No. 99–197, 2000 WL 673936, at *3 (D.D.C. Jan. 27, 2020) (no certification of interlocutory appeal where movants offered no authority demonstrating substantial ground for difference of opinion other than their disagreement with court's decision); *Keystone Tobacco Co. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 239 (D.D.C. 2003) (finding that possible impact on case strategy is "too intangible a repercussion on the progress of a case to justify certification of an interlocutory appeal").

**A.** **Movants Have Not Shown a Strong Likelihood of Success on the Merits.**

**1. The Court Correctly Interpreted the Amtrak Statute.**

Movants argue that they have a strong likelihood of success on the merits because this Court misinterpreted the Amtrak Statute in various respects. This Court has already rejected those arguments and should do so again.[10]

*First*, Movants argue that the only way Amtrak can condemn property at Washington Union Station is under § 24311(a)(1)(B), which would require a request from the Secretary of Transportation. Mem. 7. The Court correctly rejected this argument, *see* Op. 32-33, 36, which misreads the plain text of the statute. Section 24311(a)(1) permits Amtrak to use its eminent domain powers when "necessary for intercity rail passenger transportation . . . *or*" when the Secretary makes a request in connection with the Secretary's duty to build an "intermodal transportation terminal" at Union Station. 49 U.S.C. § 24311(a)(1)(A), (B) (emphasis added). The use of the disjunctive "or" makes clear that Amtrak is permitted to act under either subsection with respect to Union Station. That conclusion is further supported by the fact that subpart (A) carves out exceptions restricting Amtrak's authority (e.g., property of a rail carrier), but does not carve out property at Union Station.

Movants argue that the Court's reasoning violates the rule of construction favoring the specific over the general, Mem. 8, but that rule does not permit courts to contravene the plain text of the statute itself. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[C]anons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others.

---

[10] Success on appeal is especially unlikely here because even if the Court's order were appealable, it would be reviewed only for an abuse of discretion. *See* 49 U.S.C. § 24311(b)(2)(A) (providing that "the court *may decide* the time by which, and the terms under which, possession of the property is given to Amtrak" (emphasis added)).

We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (internal citations omitted)).

Subpart (B) unambiguously creates a second and alternative basis for an eminent domain action at Washington Union Station where a property interest at the Station devoted solely to intermodal transportation usage could be acquired by Amtrak even if it is not necessary for intercity rail passenger transportation. Case law in this District is consistent with that reading. *See Nat'l R.R. Passenger Corp. (Amtrak) v. 3.44 Acres More or Less of Land & Bldg. located at 900 2nd Street NE, Washington DC 2002-3557*, 266 F. Supp. 3d 63, 64-66 (D.D.C. 2017) (relying on subpart (A) to approve a taking of land in connection with Union Station's Master Plan). And, in any case, this Court made a finding that the Secretary of Transportation, as a member of Amtrak's Board of Directors, had approved the action. Movants cannot establish a strong likelihood of success on the merits where the consequence of being right on their legal theory has no practical effect.

*Second*, Movants argue that this Court "committed reversible error when it determined that the Amtrak Statute provided Amtrak with quick-take authority akin to that afforded to the U.S. Government under the DTA, 40 U.S.C. § 3114(b)(1)." Mem. 8; *see also* Mem. 2. But the Court's reasoning was entirely correct. *See* Op. 28-30. Movants' latest round of distinctions between Amtrak and the federal government do not alter in any way what the statutory language says. It is irrelevant that Amtrak is not part of the U.S. Government; what matters is what powers Congress gave to Amtrak. Here, Congress gave Amtrak quick-take authority that mirrors the DTA in material ways. The substantive requirements to initiate a condemnation action under the DTA and 49 U.S.C. § 24311(b) are the same. *Compare* 40 U.S.C. § 3114(a)(1)-(5), *with* 49 U.S.C.

§ 24311(b)(1)(A)-(E). Thereafter, upon filing the Declaration of Taking and depositing the estimated just compensation amount into the court's registry, both statutes provide (1) that title to the interest specified in the declaration vests immediately in the condemning body (40 U.S.C. § 3114(b)(1); 49 U.S.C. § 24311(b)(2)); (2) the interest is condemned and taken for the condemning body's use (40 U.S.C. § 3114(b)(2); 49 U.S.C. § 24311(b)(1)); (3) the right to just compensation for the interest vests in the persons entitled to the compensation (40 U.S.C. § 3114(b)(3); 49 U.S.C. § 24311(b)(1)) and (4) the court is empowered to determine the time by which, and the terms under which, possession is transferred (40 U.S.C. § 3114(d); 49 U.S.C. § 24311(b)(2)(A)). Given these similarities, the Court correctly interpreted the Amtrak Statute to confer quick-take authority, just as the DTA does. This inference is especially sound given that Congress did not include analogous quick-take language in other eminent domain statutes like the Natural Gas Act. *See E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 822 (4th Cir. 2004).

In response, Movants identify two purportedly "critical differences," Mem. 9, between the DTA and the Amtrak Statute: (1) the DTA says that the "land is condemned and taken for the use of the Government," 40 U.S.C. § 3114(b)(2), whereas the Amtrak Statute does not include similar language and includes conditions that must be satisfied; and (2) the DTA recognizes that when the U.S. Government exercises its quick-take authority, it "irrevocably commits to pay the full amount of the just compensation eventually awarded," Mem. 9 (citing 40 U.S.C. § 3115(a)), whereas Amtrak may only take property if the "financial resources are available," 49 U.S.C. § 24311(a)(1). Neither distinction is remotely "critical" when it comes to Amtrak's quick-take authority.

With respect to the first argument regarding § 3114(b)(2), Movants have not made this argument previously and it is thus waived. But there is nothing surprising about the omission: Amtrak is not part of the federal government, so this language would make no sense to include in

the Amtrak Statute. Congress nonetheless vested immediate title in Amtrak and provided for the Court to set the time and terms under which possession would be transferred, demonstrating a clear intent to provide for quick take by Amtrak.[11] *Id.* § 24311(b)(2)(A).

With respect to the second argument, Movants have not identified a meaningful difference between the DTA and the Amtrak Statute as to how possession transfers. Just like the federal government, Amtrak must pay just compensation. Just like the federal government, Amtrak must deposit its estimate of just compensation with the Court before possession or title is turned over. Movants argue that while the federal government will have the resources for the taking, whatever the cost, Amtrak may not. But the DTA also includes a provision cautioning that the federal government should not file a condemnation action unless it is believed that the "ultimate award probably will be within any limits Congress prescribes on the price to be paid." 40 U.S.C. § 3115(a). And both statutes provide for any shortfall in the deposited amount to be redressed via a deficiency judgment. *Compare* 49 U.S.C. § 24311(b)(4) ("If the [compensation] award is more than the amount received, the court shall enter judgment against Amtrak for the deficiency."), *with* 40 U.S.C. § 3114(c)(3) (providing that a "[d]eficiency judgment" is to be rendered against the government if the award amount is more than the deposited amount). Thus, Amtrak is legally bound to pay the full amount of just compensation, just as the federal government is.

Moreover, USI has not identified any evidence that Amtrak lacks the resources to pay just compensation for the Subject Property Interest, while Amtrak submitted ample record evidence that it can. *See, e.g.*, Joint Exhibit 3 (including pre-programming authority letter from the FRA

---

[11] Movants also make no argument that Congress lacks authority to grant quick-take possession powers to non-U.S. Government entities, and any such argument is therefore waived, but in any event would be wrong. *See WMATA v. One Parcel of Land in Montgomery Cnty.*, 706 F.2d 1312, 1319-21 (4th Cir. 1983) (holding that WMATA's quick-take power is constitutional because "[n]otwithstanding WMATA's inability to pledge the public credit, we think that constitutionally adequate just compensation is guaranteed" since "WMATA has the ability to be sued" and "[w]hen this is combined with the admitted and uncontestable fact that WMATA owns very substantial assets, we think that just compensation is, to a virtual certainty, guaranteed").

stating that "Amtrak has determined there are enough unprogrammed grant funds available in the Agreement and uncommitted program income to cover the cost of the acquisition"). In any event, Movants waived any argument that Amtrak lacks available financial resources by not asserting it in their answer. *See* Fed. R. Civ. P. 71.1(e)(3). Accordingly, Movants have no chance of success on this argument.

### 2. The Court Did Not Convert Amtrak's Motion for Immediate Possession into a Motion for Summary Judgment.

Movants next incorrectly argue that the Court "wrongfully convert[ed] Amtrak's motion for immediate possession into a motion for summary judgment." Mem. 3. The Court did no such thing.

As an initial matter, Movants' argument rests on a situation they have created. There is no summary judgment briefing in the current schedule because Movants never proposed it; had they done so, Amtrak would have agreed to dates. At this stage of the proceedings, all the Court has decided—as required by statute—are the "time by which, and the terms under which, possession of the property is given to Amtrak." 49 U.S.C. § 24311(b)(2)(A). Movants remain free to challenge the Court's preliminary determinations as to the validity of Amtrak's taking at trial.

Moreover, Movants' assertion that had they "been provided a fair opportunity to engage in fulsome discovery, they could have better contested the issues decided" by the Order also rings hollow. Mem. 14. Movants were already granted leave to take discovery into the precise issues of necessity and negotiations that they complain were decided without sufficient discovery. With respect to necessity, they interposed document requests and, following Amtrak's production, never sought to compel anything more. They also deposed four Amtrak witnesses, including Amtrak's CEO, on Rule 30(b)(6) topics that covered the waterfront on issues related to necessity. Again, following those depositions, Movants never moved to compel anything more. With respect to

negotiations, Movants deposed the individuals who were involved, cross-examined those witnesses at the evidentiary hearing, and presented their own testimony as well. Once again, they did not compel anything more.

The subject matters Movants now claim they wanted discovery into were available to them previously. *Cf.* Mem. 13 (listing potential categories of discovery). Movants do not explain why they did not ask for this discovery before. Perhaps it is because, when discovery on the topics of necessity and negotiations ended, Movants told the Court the issues could be decided as a matter of law. ECF No. 98 ¶ 9 ("While the parties may disagree about the legal import of the facts, Lender and USI submit that the facts regarding approvals, negotiation, funding, and operations at Union Station are not likely to be genuinely disputed.").

For this same reason, additional discovery would not have yielded any different outcome, even if Movants had sought that discovery. For example, Movants argue that with additional discovery, they would have shown that Amtrak was contemplating condemnation as early as November 2021. But even if that were true, it is not legally significant. *See* Op. 44 (finding no good faith requirement in the Amtrak Statute). Amtrak showed that it could not "agree with the owner on the purchase price for the interest"—which is all the Amtrak Statute requires. *See* Op. 43-45.

Movants also suggest they would have "probe[d] Amtrak's pretextual reliance on its redevelopment plans," Mem. 13, but this inquiry is not relevant either; the Court did not rely on Amtrak's redevelopment plans in finding that Amtrak demonstrated sufficient necessity under the relevant standard. Instead, it found "little doubt" that "'Amtrak's past and planned uses for [Union Station] bear an indisputable link with its transportation goals." Op. 38-39 (quoting *3.44 Acres*, 266 F. Supp. 3d at 72) (alteration in original)). It also found, based on Movants' own concession,

that Movants did not "genuinely dispute that there is a 'significant relationship' between the [Subject Property Interest] and Amtrak's provision of intercity rail passenger transportation." Op. 39. Although Movants tried to argue that Amtrak must show it could not accomplish its objectives through actions short of a complete condemnation of the Subject Property Interest, the Court disagreed with them as a matter of law, and no discovery about Amtrak's redevelopment plans could change that.

Movants also suggest they would have taken discovery into whether the Secretary of Transportation endorsed this taking and into the Department of Transportation's assessment of the taking and redevelopment plans. Mem. 13. But again, this would not affect the legal analysis or the Court's legal conclusion that Amtrak could acquire the Subject Property Interest *without* a request from the Secretary of Transportation. *See* Op. 32-33.

In sum, Movants had ample opportunity to take discovery on the questions of necessity and negotiations and admitted that the Court's decision would rest of questions of law rather than disputes of fact. In any event, the Court has not entered any judgment yet, including summary judgment. Movants thus cannot demonstrate any likelihood of success on this issue.

### 3. The Court Correctly Found that Amtrak Made the Required Showing of Necessity.

Movants next argue that the "Court was simply wrong" in concluding that Amtrak had shown that condemnation of the Subject Property Interest was "'necessary for intercity rail transportation.'" Mem. 14 (quoting 49 U.S.C. § 24311(a)(1)(A). Movants recognize that to qualify as "necessary," the taking must only have a "'significant relationship' with Amtrak's provision of intercity rail passenger transportation." Mem. 15 (quoting *3.44 Acres*, 266 F. Supp. 3d at 69). Nonetheless, Movants attempt to smuggle in a higher standard, seeking to apply something approaching an "absolutely essential" standard to necessity. But that is not what the statute

requires. The relevant question, as this Court concluded, is whether the taking has "some direct nexus to Amtrak's goals." Op. 37 (quoting *3.44 Acres*, 266 F. Supp. 3d at 69); *see also 3.44 Acres*, 266 F. Supp. 3d at 69-70 (explaining that this standard is "more lenient than absolute, last-resort need," and Amtrak need not establish that taking the property is "indispensable" (internal quotation marks omitted)). And as the Court previously recognized, Movants already effectively conceded that there is in fact a "significant relationship" between the Subject Property Interest and Amtrak's provision of intercity passenger rail transportation. Op. 39 (citing Evid. Hr'g Tr. at 203:11-15). That is all that is needed.

Movants also argue that the "Court's analysis of necessity failed to account for how the USRA and similar statutes affected the standard for necessity of Amtrak's taking." Mem. 15 (citing Union Station Redevelopment Act of 1981, Pub. L. No. 97-125, § 2(7), 95 Stat. 1667). Contrary to this assertion, the "successful transformation, and the intent behind the USRA" do not "call into question Amtrak's entire theory of necessity here." Mem. 17. As the Court correctly concluded, Amtrak showed a direct nexus between the Subject Property Interest and Amtrak's goals. Op. 38-39. Although Movants object that Amtrak's purported plan to "revert" portions of Union Station to a waiting area "runs contrary to the precise intent of the USRA and similar government directives," Mem. 18 (emphasis omitted), this Court carefully considered how the USRA interacted with the Amtrak Statute throughout its opinion, correctly rejecting Movants' position given that the USRA does not "speak[], even indirectly, to Amtrak's power of eminent domain." Op. 35; *see also* Op. 33-36. "Amtrak's exercise of eminent domain, both as a matter of law and in its execution, is thus entirely consistent with the broad grant of authority statutorily vested in the Secretary of Transportation under the USRA." Op. 36.

**4.      The Court Did Not Incorrectly Rely on Post-Filing Negotiations.**

Finally, Movants argue that the court erred in relying on post-filing negotiations to find Amtrak negotiated in good faith. Mem. 20. According to Movants, nothing in the Amtrak Statute includes language suggesting post-filing negotiations would satisfy this requirement. Mem. 20. But the Court found that Amtrak and Movants could not agree on the purchase price for the Subject Property Interest even *before* Amtrak filed this case. Op. 43-45.

The Court also already correctly rejected Movants' argument about post-filing negotiations. *See id.*; *see also United States v. 6.584 Acres of Land, More or Less, Hidalgo Cnty., Tex.*, 533 F. Supp. 3d 482, 499-500 (S.D. Tex. 2021) (concluding that it was "sufficient that negotiations proceed far enough to indicate that an agreement is impossible, and where it is apparent that the parties cannot agree on the amount to be paid, a formal effort to agree is not necessary" (quotation marks omitted)).

Nothing in the text of the statute supports a distinction between pre-filing and post-filing negotiations. The statute says only that Amtrak must show that it cannot "acquire the interest in the property by contract" *or* "agree with the owner on the purchase price for the interest." 49 U.S.C. § 24311(a)(2). Movants do not dispute that there was no agreement as to the purchase price. Nor have they offered a scintilla of evidence that with additional negotiations the owners of the Subject Property Interest would have agreed to Amtrak's price. Even in their stay motion, Movants continue to take issue with Amtrak's valuation of the Subject Property Interest, which provides ongoing support for the fact that the parties could not agree on the purchase price and negotiations were futile. That is all Amtrak needs to establish under 49 U.S.C. § 24311(a)(2)(B). In any case, as the Court found, the parties engaged in extensive negotiations after suit was filed. And Movants cannot import a "good-faith" standard that appears nowhere in the Amtrak Statute. *Cf. Nat'l R.R.*

*Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 423 (1992) (no good-faith requirement in predecessor statute to § 24311); *see also, e.g.*, *Mars. & Ne. Pipeline, L.L.C. v. Decoulos*, 146 F. App'x 495, 498 (1st Cir. 2000) (no "good faith negotiation" obligation associated with "unable to agree" language in Natural Gas Act (internal quotation marks omitted)). But even if a good-faith requirement did exist, Amtrak met it here, as the Court found. *See* Op. 43-45.

### B.  Movants Have Not Demonstrated Irreparable Harm.

Movants cannot establish irreparable harm for purposes of a stay because the things they claim will irreparably harm them are things they could have, but did not, ask this Court to consider as part of determining the "time by which, and the terms under which, possession of the property is given to Amtrak." 49 U.S.C. § 24311(b)(2)(A). Such litigation choices impose only self-inflicted consequences which do not qualify as irreparable harm. Moreover, this Court already determined that Movants will not suffer "undue hardship" from the transfer of possession. *See* Op. 45-46. Movants failed to present *any* evidence at the evidentiary hearing of undue hardship and present no evidence in support of their stay motion. This Court's findings of no "undue hardship" apply equally to Movants' irreparable harm claims, which should be rejected.

Movants argue that, absent a stay, the status quo will be "drastically altered," Mem. 24, but their arguments as to that are either legally incorrect or purely speculative.

*First*, Movants argue that the "loss of their real property interests alone constitutes irreparable harm," particularly because Washington Union Station is a historic landmark. Mem. 24-25. But as the Court correctly held, "loss of property rights, without more, is insufficient to establish 'undue hardship.' After all, the end result of a condemnation is the taking of a property interest." Op. 46. Yet such transfers generally are not appealable at all, much less stayed. *See supra* 8-14. Moreover, to the extent Lender claims financial harm, monetary loss is by definition

reparable: it is remedied through just compensation, and "Lender will have every opportunity to prove the value of the leasehold interest." Op. 46; *see also E. Tenn. Nat. Gas Co.*, 361 F.3d at 829 ("[I]n view of the liability of all property to condemnation for the common good, loss to the owner of nontransferable values deriving from his unique need for property or idiosyncratic attachment to it . . . is properly treated as part of the burden of common citizenship" (quotation marks omitted)).

*Second*, Movants argue that irreparable harm will result from a change to the "carefully-crafted ownership structure of Union Station," and hazard that "Amtrak will make large-scale (and potentially irreversible) alterations to the [Subject Property] Interest." Mem. 25, 27. But Movants have never asked the Court to set as a "term[] under which possession of the property [would be] given to Amtrak," 49 U.S.C. § 24311(b)(2)(A), that Amtrak agree not to make any alterations to the ownership structure or to the physical space subject to the Subject Property Interest until a final ruling. Having forfeited their right to request that Amtrak adhere to the status quo, Movants cannot now complain that any departure from the status quo would cause irreparable harm. *See Senate Permanent Subcommittee on Investigations v. Ferrer*, Misc. A. No. 16-621, 2016 WL 11681577, at *5 (D.D.C. Sept. 30, 2016) ("It is well-settled that a party requesting the extraordinary equitable relief of a stay pending appeal 'does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted.'" (quoting *Safari Club Int'l v. Salazar*, 852 F. Supp. 2d 102, 123 (D.D.C. 2012)). Movants' "own litigation choices do not warrant a stay of this Court's Order." *Id.*

In any case, Amtrak hereby represents to the Court that it will not significantly modify the sublease or terminate it in favor of a new sublease before final judgment. *See* Mem. 26. Amtrak also has no plans to make any immediate permanent or irreversible alterations to the Station, as confirmed by the fact that no witness testified about irreversible alterations at the evidentiary

hearing. USI's speculative concerns unsupported by any evidence cannot ground a claim of irreparable harm. *See Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (stating that a claim of irreparable injury must be "both certain and great; it must be actual and not theoretical").

*Third*, Movants argue that they will suffer irreparable harm because USI "exists solely to manage and operate the Leasehold Interest at Union Station," and "if the Order goes forward . . . there will be no business for USI to conduct at all." Mem. 26. But, as noted, Movants did not present any evidence of irreparable harm to USI at the hearing. They did not argue that USI would cease to exist; they have attached no declarations to that effect in their stay motion; and in any case Movants will receive the $250 million in funds that have already been deposited with the Court. Movants make no showing as to why USI will cease to exist based on the transfer of possession when USI stands to receive just compensation in this case. If Movants choose to dissolve USI as the holding company for the Subject Property Interest or because USI was created as a single purpose entity to hold the Subject Property Interest, that decision could not justify a stay because that alleged harm, too, would be self-inflicted. *See Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (per curiam) (holding that litigant cannot "be heard to complain about damage inflicted by its own hand"); *Safari Club*, 852 F. Supp. 2d at 123 (no irreparable harm when plaintiffs could avoid harm).

*Fourth*, Movants argue that their "relationships with third parties [like subtenants] will be irreparably harmed" if Amtrak makes changes to the Subject Property Interest. Mem. 26. But Movants have agreed to ensure that all subtenants are given advance notice, explicitly agreeing with Amtrak as to the form and content of the joint notice to be sent all subtenants, and again did not make any requests to the Court as part of the Court's responsibility to set the "terms under which possession of the property [would be] given to Amtrak" that the Court take any other action

with respect to subtenants. 49 U.S.C. § 24311(b)(2)(A), Having failed to make such a request, Movants cannot now claim they are irreparably harmed by the very terms they agreed to with respect to subtenants. They also do not specify how their relationships will be *irreparably* harmed; to the extent that they will lose rent revenue from those subtenants, that is the paradigmatic reparable harm that cannot justify a stay.

Moreover, Amtrak will be injured if a stay is issued. Movants are incorrect that the only harm to Amtrak is "delay," though that is a serious harm in itself. Rather, Amtrak's ability to improve rail service is hindered by the continued sublease property interest that Movants have in Union Station. The Court correctly concluded that Amtrak "wishes to condemn the USI Sublease to expand and improve its delivery of rail passenger services at Union Station, consistent with its statutory mandates." Op. 38 (citing 49 U.S.C. § 24101(c)(3), (10), (12)). As the Court explained, an "increased footprint would enable Amtrak to make immediate changes to enhance the customer experience, such as by placing ambassadors throughout the facility, increasing signage, expanding ticketing operations, and beefing up security." *Id*. Moreover, crediting Amtrak's CEO, the Court found that "*immediate* possession would allow Amtrak to accelerate work on important capital projects, such as the Concourse Modernization Project and the Subbasement Project," and "Amtrak's ownership also would displace a landlord whose primary commercial interests are misaligned with Amtrak's core mission as a transportation provider." *Id.* As the Court concluded, "[h]ere, Lender has had notice of the condemnation of the [Subject Property Interest] for over two years," and yet "has not established a hardship would warrant denying Amtrak immediate possession." Op. 46. Movants failed to identify any harm, other than potential monetary loss (which would be redressed through just compensation), if possession is transferred to Amtrak.

As the Court further explained, "When courts have found undue hardship, it has been under circumstances where expulsion from condemned property within a short timeframe would not be feasible." *Id.* (citing *United States v. 6,576.27 Acres of Land, More or Less, in McLean Cnty.*, 77 F. Supp. 244 (D.N.D. 1948); *Certain Land in Borough of Manhattan*, 332 F.2d at 682). That is not the case here. Any harm to Movants is reparable through the payment of just compensation.

Finally, claims of irreparable harm ring particularly hollow where Movants never raised their supposed hardship concerns with Amtrak in negotiating the Possession Order and then waited nearly two weeks before filing their notice of appeal and stay motion. *Cf. Salazar*, 671 F.3d at 1266 (recognizing that a "period of delay may indicate an absence of the kind of irreparable harm required to support a preliminary injunction" (citations and internal quotation marks omitted)).

### C.      The Public Interest Factors Do Not Favor a Stay.

The public interest does not favor a stay. Amtrak is the only party to this proceeding operating pursuant to a statutory mandate to serve the public interest. 49 U.S.C. § 24101. Movants argue that the public interest favors continuity and avoiding interruptions. But this Court has already accounted for that concern by delaying the issuance of the Order until the parties worked out an "orderly transition," which they have done. Op. 3. Movants also note that Amtrak will use its possession to oust subtenants and make changes, but Movants never requested that the Court preclude Amtrak from making changes as part of setting the terms for possession. Moreover, any changes made by Amtrak are geared to *improving* existing conditions at Washington Union Station for the public, as Amtrak has amply explained. Movants also remarkably argue that a stay is warranted because of the "Government's involvement here." Mem. 23. But the relevant regulatory agencies have approved this transaction, Op. 25, 27, 32, and as Movants acknowledge, the

"Government is not a party to this action," and it has not sought a stay. Movants cannot assert an interest on the Government's behalf based on a letter from selected members of Congress.

Immediate possession of Union Station will allow Amtrak to begin work on a series of improvements that will benefit the public. Amtrak knows the Station well and has operated intercity passenger rail service at Union Station since Amtrak began operations in 1971. And Amtrak has already deposited $250 million dollars with the Court, so if possession needs to be reversed, those funds can be used to reimburse Movants for any damages. Any harm Movants might experience is monetary in nature, while awarding Amtrak possession avoids potentially irreparable harm from an unstable management situation during the pendency of this case. Without possession, Amtrak will face delays in various projects, a lack of control over the use of the Station, and the prospect that areas that Amtrak needs will be leased to others.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the joint motion for stay pending appeal should be denied.

Dated: June 20, 2024                              Respectfully submitted,


                                                  **COUNSEL FOR PLAINTIFF NATIONAL RAILROAD
                                                  PASSENGER CORPORATION**


                                                  */s/* Lindsay C. Harrison
                                                  Lindsay C. Harrison, DC Bar #977407
                                                  Jessica Ring Amunson, DC Bar #497223
                                                  JENNER & BLOCK, LLP
                                                  1099 New York Avenue, NW, Suite 900
                                                  Washington, D.C. 20001-4412
                                                  Telephone: 202-639-6000
                                                  Fax: 202-639-6066
                                                  lharrison@jenner.com
                                                  jamunson@jenner.com


                                                  */s/* Patricia McHugh Lambert
                                                  Patricia McHugh Lambert, US DC Bar ID MD0008
                                                  Kambon R. Williams, US DC Bar ID MD29872
                                                  PESSIN KATZ LAW, P.A.
                                                  901 Dulaney Valley Road, Suite 500
                                                  Towson, MD  21204
                                                  Telephone: 410-938-8800
                                                  Fax: 410-832-5650
                                                  plambert@pklaw.com
                                                  kwilliams@pklaw.com