IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------------------------- X

NATIONAL RAILROAD PASSENGER
CORPORATION (AMTRAK),

      Plaintiff,                                                No. 1:22-cv-01043 (APM)

      v.

SUBLEASE INTEREST PERTAINING TO
DESCRIBED LEASEHOLD INTERESTS
AT WASHINGTON UNION STATION, et al.

      Defendants.

-------------------------------------------------------------------- X

## LENDER AND USI'S REPLY IN FURTHER SUPPORT
## OF MOTION FOR STAY PENDING APPEAL

      In opposing the Motion for Stay, Amtrak represents that it will not make permanent or irreversible changes to the Leasehold Interest and will not modify or terminate USI's sublease during the pendency of the case. Amtrak's proposal in its opposition validates Lender and USI's position that immediate possession is not necessary at all. When Amtrak first filed for immediate possession in May 2022, Amtrak claimed possession was critical in the name of public safety and orderly operations. In its second motion in July 2022, it claimed possession was necessary for critical construction projects that would alleviate congestion and ensure public safety. At the evidentiary hearing in September 2023, Amtrak claimed immediate possession was necessary to create waiting areas and add more signage. As Your Honor previously commented, "Amtrak's need clearly wasn't immediate when they filed [the motion] because it's been 19 months since then . . . , so I take that with a grain of salt." (ECF Doc. No. 105 at 60:21-25.)

      Amtrak's purported immediate need has consistently become less and less immediate and barely resembles a need at this point. The evidence at the hearing demonstrated that the

Subbasement Project was progressing as planned and the Concourse Modernization Project was years from construction—not due to any fault of Lender or USI. Amtrak changed focus, turning instead to its purported immediate need to improve support services for its customers by displacing existing commercial tenants. Now, Amtrak backtracks, promising that no immediate changes will be made to the Leasehold Interest. Amtrak's expedient maneuvering undercuts its claimed basis for immediate possession. Its hollow promises also are not in line with the facts on the ground. Amtrak recently directed an immediate change to occur on day one of possession to transform one of the largest revenue sources for the station into a waiting area. Amtrak's shifting narrative only further supports the need for a stay as the balance of the equities squarely falls in Lender and USI's favor. If Amtrak's representation to the Court that it will make no immediate changes is taken as true, then Amtrak will suffer no harm whatsoever if possession is stayed pending appeal.

Recent government action also confirms that the public interest continues to weigh heavily in favor of a stay pending appeal. Just yesterday, Representative James Comer, Chairman of the Committee on Oversight and Accountability, sent a letter to Secretary of Transportation Pete Buttigieg, expressing the Committee's concern that Amtrak is using eminent domain "not out of necessity, but apparently out of mere convenience." (Declaration of Amber Will, dated June 27, 2024 ("Will Decl.), Ex. A.) Rep. Comer also observed that "[t]he complete overhaul of Union Station planned by Amtrak appears to be in direct conflict with existing law," and requested that the Department of Transportation (DOT) provide documents and communications to the Committee concerning its planned renovations at Union Station and its use of eminent domain, among other things. (*Id.*) Given this recent indication that the government is continuing to scrutinize Amtrak's actions here, this Court should stay the Order pending appeal to allow the D.C. Circuit to review the serious questions of law presented here.

For these reasons, and those covered in Lender and USI's motion for stay (*see* ECF Doc. No. 116-1), this Court should grant Lender and USI's motion for a stay pending appeal. Amtrak raises many arguments in response, but none of them overcome the fact that the serious and novel questions presented by Lender and USI's appeal should be reviewed by the D.C. Circuit before the Leasehold Interest is transferred to Amtrak. This is particularly true given that the balance of harms is entirely in Lender and USI's favor. Whereas a transfer of possession would irreparably damage USI and Lender's business relationships at Union Station (among other harms) and be contrary to the public interest, a stay would do no harm at all to Amtrak—as Amtrak now effectively concedes. This Court should stay the Order pending appeal.

## ARGUMENT

Amtrak's response sets forth many legal and factual arguments. None of them are meritorious, and this Court should stay the Order pending appeal for all the reasons discussed in Lender and USI's moving brief. (*See* ECF Doc. No. 116-1.) Lender and USI will only address the following five points: (1) Amtrak concededly has no need for immediate possession; (2) this Court applied the wrong standard of necessity and misapplied the standard it purported to apply; (3) Amtrak inconsistently construes this Court's immediate possession order; (4) Amtrak's repeated accusations that Lender and USI waived their rights are unsupported, particularly with respect to the parties' discovery; and (5) Lender and USI will face irreparable harm even if Amtrak's new promises (which contradict what it previously told the Court and are not in line with the facts on the ground currently) are taken at face value.

**I.     AMTRAK HAS NO NEED FOR IMMEDIATE POSSESSION**

Amtrak's response makes one thing crystal clear: Amtrak has no need for immediate possession of the leasehold. Amtrak's Chief Executive Officer previously told this Court that

Amtrak needed immediate possession because "[e]very day we wait, we're postponing the opportunity to improve the facility." (ECF Doc. No. 100 at 22.) This Court relied on that testimony in finding that "immediate possession would allow Amtrak to accelerate work on important capital projects," facilitating "Amtrak's redesign of the terminal" by allowing it to commandeer "more space" from existing commercial tenants. (ECF Doc. No. 106 at 38.) The Court also relied on Amtrak's schematics, which showed the repurposing of vital retail and food and beverage space to Amtrak-support functions. (*Id.* at 21.) Yet having got what it wanted, Amtrak now applies the brakes in an unsuccessful attempt to minimize what change in possession means. Instead of accelerating work, Amtrak avers that it "has *no plans* to make any immediate permanent or irreversible alterations to the Station." (ECF Doc. No. 117 at 21-22 (emphasis added).) And in response to Lender's and USI's concerns that Amtrak will renegotiate or do away with USI's sublease, Amtrak represents that it "will not significantly modify the sublease or terminate it in favor of a new sublease." (*Id.*) In short, Amtrak now disclaims the interests it previously argued required immediate possession.

Amtrak has just taken this position in an attempt to fend off Lender and USI's motion for a stay. In recent testimony before Congress, Amtrak CEO Stephen Gardner disclaimed the very redevelopment plans Amtrak presented to this Court in support of its motion for immediate possession. Rather than redeveloping the Leasehold Interest to greatly shrink the commercial footprint as Amtrak told this Court, Mr. Gardner testified that now, Amtrak's intention was to "enhance and maintain the retail" and "create a lively mixed-use environment." (*See* Amtrak and Intercity Passenger Rail Oversight: Promoting Performance, Safety, and Accountability Hearing (June 12, 2024, 1:08:26-1:10:20), https://transportation.house.gov/calendar/eventsingle.aspx?EventID=407522.)) This testimony

4

contradicts the very rationale that Gardner presented to this Court as justification for its immediate possession and taking of the Leasehold Interest. (*Compare id. with* ECF Doc. No. 106 at 22 ¶ 41.) This is not the first time that Amtrak has changed its rationale for its immediate possession and taking of the Leasehold Interest. In its original Complaint and motion for immediate possession, Amtrak relied upon its need to complete the Subbasement and Concourse Modernization Projects. (ECF Doc. Nos. 1, 72-1.) Once evidence showed that these projects were years-old and either held up by Amtrak's own inaction or progressing as planned, however, Amtrak pivoted to the immediate need for redevelopment it now promises to delay.

Amtrak's about-face highlights that Amtrak's interest in acquiring the Leasehold Interest has never been about serving intercity passenger rail transportation but rather about having full control of the station with no oversight and usurping Congressional intention established in the USRA, which Gardner openly stated Amtrak did not consider when deciding to file the eminent-domain action. (Will Decl., Ex. B at 118:22-119:10.) But the fact that Amtrak would financially benefit from the taking does not make the taking "necessary for intercity rail passenger transportation." 49 U.S.C. § 24311(a)(1)(A); *see Nat'l R.R. Passenger Corp. (Amtrak) v. 3.44 Acres More or Less of Land & Bldg. located at 900 2nd St. NE, Washington, DC 20002-3557*, 266 F. Supp. 3d 63, 72 (D.D.C. 2017) ("Taking a commercial building with no physical connection to Amtrak's rail system and selling it for a profit might enable Amtrak to lower its ticket prices" but that is not a "necessary" taking as required by the statute). Having disclaimed essentially all of the interests it previously asserted required immediate possession, Amtrak has gutted the rationale for the Court's order, underscoring Lender and USI's likelihood of success on appeal. And

because Amtrak no longer asserts any need for immediate possession, it has effectively conceded that a stay of that order is appropriate.[1]

## II. THE COURT APPLIED THE WRONG STANDARD OF NECESSITY IN ITS ORDER

Even in the absence of Amtrak's concession, Lender and USI are also likely to succeed on appeal because this Court applied the wrong necessity standard and misapplied the "significant relationship" standard it purported to apply. Amtrak had the burden to show that the property interest at issue is "necessary for intercity rail passenger transportation." 49 U.S.C. § 24311(a)(1)(A). The plain meaning of necessary is "[i]ndispensable, vital, essential; requisite." Oxford English Dictionary, https://www.oed.com/dictionary/necessary_adj. Amtrak has never contended that the leasehold is "essential" for intercity rail passenger transportation. Nor could it. Amtrak has maintained rail services out of Union Station for decades under the existing lease structure, and nothing has prevented its planned development projects from moving forward under that structure. (*See, e.g.*, ECF Doc. No. 106 at 16 (¶ 23), 18-23 (¶¶ 29-48).) Nothing in the governance structure has changed to make Amtrak suddenly require possession of the leasehold interest. Amtrak does not meaningfully dispute that it cannot show that the leasehold is "essential" to its provision of intercity rail transportation.

Amtrak argues instead that this "higher standard" does not apply. (ECF Doc. No. 117 at 17.) Amtrak presses the lesser standard of showing a "significant relationship" between the property interest at issue and Amtrak's provision of intercity rail passenger transportation. (*Id.*)

---

[1] To the extent Amtrak contends immediate possession remains necessary for it to "plac[e] ambassadors throughout the facility, increase[e] signage, expand[] ticketing operations, and beef[] up security," (ECF Doc. No. 117 at 23 (quoting ECF Doc. No. 106 at 38)), those activities alone cannot support the Court's order. As this Court found, Amtrak never discussed *any* of those proposed changes with USI (ECF Doc. No. 106 at 22 (¶ 43)), and Amtrak therefore cannot show that immediate possession is necessary to make those changes.

And this Court purported to apply that same standard. (ECF Doc. No. 106 at 37-38.) But Amtrak did not satisfy its burden under this lesser standard either.

As an initial matter, while the Court cited a statement from Lender's counsel as demonstrating that Lender did not "genuinely dispute that there is a 'significant relationship' between the USI Sublease and Amtrak's provision of intercity rail passenger transportation," (ECF Doc. No. 106 at 39), the Court misunderstood counsel's argument. Counsel stated that "I think we can probably all agree that *the station as a property* is necessary for passenger rail." (*Id.* (emphasis added).) Counsel was referring to the fee simple interest in the building itself; after all, Union Station houses the train tracks and concourse that are directly related to the provision of rail services. Whether there is a "significant relationship" between the *Leasehold Interest* and the provision of intercity rail passenger transportation is an entirely different issue. In the very next sentence, counsel explained exactly that: "But the inquiry is whether Amtrak's acquisition of the lease position, which the United States directed be awarded to USI's predecessor, is necessary." (*Id.*) And the Court itself recognized the distinction between the fee simple interest in the building itself and the Leasehold Interest in holding that the latter is not property of a "government authority," even though the former plainly is. (ECF Doc. No. 106 at 31-32.)

Lender and USI's have thus always contested whether the *Leasehold Interest* is necessary for intercity rail passenger transportation, and Amtrak has not met its burden to demonstrate a significant relationship between the Leasehold Interest and that provision of services. This Court did not find that condemnation was necessary or even "superior" to continued operations under the existing lease structure as a "means of achieving [Amtrak's] ends." (*Id.* at 41.) A finding that condemnation of the property interest at issue is, at best, an equally efficient means of achieving

7

Amtrak's ends and, at worst, an inferior means of doing so, is nowhere near the finding of "necessity" that the statute requires.

This Court's holding also collapses the distinction between Sections 24311(a)(1)(A) and (B). Under Section 24311(a)(1)(B), the Secretary of Transportation need not show that the property interest is "necessary for intercity rail passenger transportation," because that is a taking by the federal government under its plenary powers. By contrast, under Section 24311(a)(1)(A), Amtrak must show necessity because it is a taking by a private party granted only limited eminent-domain powers. By watering down the necessity standard, this Court improperly equated a taking by Amtrak with a taking by the federal government. Because Amtrak never met its burden of showing necessity under Section 24311(a)(1)(A), this Court should stay the Order pending appeal.

## III. AMTRAK CONSTRUES THE ORDER INCONSISTENTLY

Amtrak has no satisfactory response to Lender' and USI's argument that this Court's order deprived them of due process by finally resolving the possession question. At times, Amtrak appears to agree that the Court's order finally resolved the issue of possession, leaving only just compensation to be decided. (*See, e.g.*, ECF Doc. No. 117 at 4.) At other times, Amtrak contends that some unidentified and unspecified "discovery and additional proceedings remain" on "the validity of the taking" itself. (ECF Doc. No. 117 at 7; *see also id.* at 15 ("Movants remain free to challenge the Court's preliminary determinations as to the validity of Amtrak's taking at trial.").)

But Amtrak cannot have it both ways. Either this Court made the requisite statutory findings of necessity and good-faith negotiation and finally resolved the question of immediate possession without full discovery or this Court did not make the requisite statutory findings and therefore lacked the power to grant immediate possession in the first place.[2] Both cannot be true,

---

[2] To the extent that Amtrak is suggesting this Court could grant possession based on Amtrak's likelihood of success on the merits on necessity and good-faith negotiation while leaving a final merits determination for future

8

and Amtrak cannot evade appellate review by suggesting that further discovery could be had on the precise statutory issues the Court must decide to grant possession.

### IV.  AMTRAK ACCUSES LENDER AND USI OF WAIVER WITHOUT JUSTIFICATION

A persistent theme of Amtrak's response is to accuse Lender and USI of waiver without adequate explanation or record support.  As just one example, Amtrak asserts in its response that Lender and USI could have moved to compel additional discovery but failed to do so. (ECF Doc. No. 117 at 15-16.)

But this misrepresents the record before this Court. After Amtrak moved for immediate possession, Lender sought discovery from Amtrak, including 17 document requests and 12 interrogatories.  (ECF Doc. No. 83-8.)  This discovery sought broad categories of documents dating back as far as January 1, 2012, and concerned all of the various needs for the Leasehold Interest asserted by Amtrak in its Complaint.  (*Id.*)  Amtrak refused this discovery in its entirety. (ECF Doc. No. 83-9.)

On March 23, 2023, after Lender and USI opposed Amtrak's motion, the parties appeared before this Court.  At that appearance, Amtrak's counsel asserted that it envisioned there being limited discovery on the issues, akin to how a court might order limited discovery in connection with a preliminary injunction motion. (ECF Doc. No. 94 at 6:3-6.)  This Court agreed, pressing Lender's counsel on what limited discovery could look like, "recognizing I'm not going to grant you the full-blown discovery that you otherwise are seeking."  (*Id.* at 13:23-14:2.)  Following additional discussions, this Court emphasized that:

---

proceedings, that is effectively a preliminary injunction.  And in that case, this Court needed to also assess the other preliminary injunction factors, including irreparable harm to Amtrak, the balance of the equities, and the public interest, which it did not do.  Regardless, Lender and USI would be able to appeal the Order on the basis that it operates as a preliminary injunction.

> I do not envision this phase of discovery to be expansive and extensive. I think it needs to be limited. I think it needs to be limited because that's how the statute contemplates this phase of the proceeding, in my view.

(*Id.* at 19:16-20.)  Ultimately, this Court not only ordered that document discovery should be limited in time and scope (*id.* at 19:21-20:12), but also (at Amtrak's request) specifically limited the parties to one Rule 30(b)(6) deposition, no requests for admission, and five interrogatories. (*Id.* at 22:12-23:20.)  In light of these directives, Lender altered its prior document requests by limiting the time and scope of its requests to target discovery for immediate necessity.  (*Compare* ECF Doc. No. 83-8 *with* Will Decl., Ex. C.)

Given this record, Amtrak's insistence that Lender and USI waived any discovery is plainly incorrect.  This Court limited discovery over Lender and USI's objections.  This Court's apparent decision to resolve the merits of Amtrak's taking without fair notice and full discovery provides additional grounds to stay the Order pending appeal.

V.  **AMTRAK'S CONCESSIONS DO NOT CHANGE THE FACT THAT LENDER AND USI FACE IRREPARABLE HARM**

Although Amtrak promises in its brief not to make irreversible changes to the Leasehold Interest or the USI sublease, that promise is sharply contrasted against Amtrak's recent instruction that all events planned for the Main and East Halls post-July 15, 2024 will not be approved.  Events in these venues bring in millions of dollars each year and are planned years in advance.  In exchange for gutting this revenue, Amtrak intends to put in a waiting area for its customers.  But even if Amtrak's representations to the Court are given weight, these statements cannot blunt the irreparable harm faced by Lender and USI from the Order.  Putting aside the fact that Amtrak's tepid assurances are not legally binding or enforceable, the Order threatens Lender and USI with other irreparable harms not remedied by Amtrak's concessions.

10

As Lender and USI identified in their moving papers, the transfer of possession threatens the very existence of USI's business and its business relationships with third parties. USI exists solely to manage the Leasehold Interest, and its transfer to Amtrak's possession will do away with that business purpose and threaten USI's continued existence. This a clear irreparable harm unaffected by Amtrak's response. *See Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*, 992 F.2d 430, 436 (2d Cir. 1993) (finding irreparable harm where harm "threaten[ed] [a business's] continued existence"). Likewise, Amtrak's concessions are noticeably vague on whether it still plans to oust commercial tenants at the Leasehold Interest to reclaim space for its own use.[3] This is critical, because by taking any action to reclaim space at Union Station, Amtrak will negatively affect the market perception of doing business at Union Station and will damage Lender and USI's business relationships, goodwill, and reputation with their subtenants. This also constitutes irreparable harm. *See Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012); *Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 404 (2d Cir. 2004). And finally, there is the unavoidable reality that, regardless of what actions Amtrak may take, Lender and USI's loss of the Leasehold Interest is an irreparable loss of a landmark property. *See Patriot-BSP City Ctr. II v. U.S. Bank Nat'l Ass'n*, 715 F. Supp. 2d 91, 95-69 (D.D.C. 2010).

All told, Amtrak's response does not change the fact that Lender and USI face irreparable harm from the Order. Because this harm is imminent, actual, and substantial, this Court should stay the Order pending appeal.

---

[3] Amtrak's promise to not "make any immediate permanent or irreversible alterations to the Station" (ECF Doc. No. 117 at 21-22) appears to be purposefully vague and conclusory, meant to convince this Court that no irreparable harm will befall Lender and USI. But Amtrak's lack of specificity in the face of the numerous and varied irreparable harms identified by Lender and USI in their moving papers underscores that Amtrak's promise is merely strategic, and cannot ameliorate the irreparable harm faced by Lender and USI.

**CONCLUSION**

For all of the foregoing reasons, this Court should stay the Order pending appeal before the transfer of possession on July 15, 2024. If the Court is unable to rule on this motion in a timely manner, Lender and USI respectfully request a temporary stay to allow them sufficient time to file and brief a motion for stay in the D.C. Circuit.


| | |
|---|---|
| /s/ Y. David Scharf | /s/ Steven J. Willner |
| Y. David Scharf | Thomas M. Wood IV |
| Brett Dockwell | Steven J. Willner |
| Kristin T. Roy | NEUBERGER, QUINN, GIELEN RUBIN & |
| Latisha V. Thompson | GIBBER, P.A. |
| Amber R. Will | One South Street, 27th Floor |
| Mahnoor Misbah | Baltimore, Maryland 21202 |
| *Admitted pro hac vice* | (410) 332-8541 |
| MORRISON COHEN LLP | tmw@nqgrg.com |
| 909 Third Avenue | sjw@nqgrg.com |
| New York, New York 10022 | |
| (212) 735-6600 | *Attorney for Defendant Union Station* |
| ydscharf@morrisoncohen.com | *Investco, LLC* |

Paul J. Kiernan
Louis J. Rouleau
HOLLAND & KNIGHT LLP
800 17th Street N.W.
Suite 1100
Washington, D.C. 20006
Phone: 202-663-7276
Paul.Kiernan@hklaw.com

*Attorneys for Defendant Kookmin Bank Co., Ltd.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this the 27th day of June, 2024, I served a true and correct copy of the foregoing Opposition and supporting papers on counsel of record via the CM/ECF filing system.

                                                       */s/ Y. David Scharf*
                                                         Y. David Scharf