IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------------------- X

NATIONAL RAILROAD PASSENGER
CORPORATION (AMTRAK),

      Plaintiff,                                             No. 1:22-cv-01043 (APM)

      v.

SUBLEASE INTEREST PERTAINING TO
DESCRIBED LEASEHOLD INTERESTS
AT WASHINGTON UNION STATION, et al.

      Defendants.

---------------------------------------------------------------- X

**DEFENDANTS' MOTION IN LIMINE REGARDING
PAYMENT OF DEPOSITED FUNDS**

      Defendants Union Station Investco, LLC ("USI") and Kookmin Bank Co., Ltd. in its capacity as trustee of KTB CRE Debt Fund No. 8, a Korean Investment Trust and its agent on behalf of the Trust in Korea, Daol Fund Management Co, as well as its agent on behalf of the Trust in the United States, Rexmark Holdings, LLC ("Lender," collectively "Defendants") respectfully move for entry of an order in limine that if Lender moves for payment of funds deposited in this case and, as a result, receives funds deposited in this case, such actions do not amount to a waiver or release of Defendants' pleaded objections and defenses to Amtrak's exercise of eminent domain.

      This motion is prompted by the revelation that in the condemnation case that Amtrak had before Judge Cooper involving property near Union Station, Amtrak argued at the dispositive-motions stage that a lender's and owner's requests for disbursal of the deposit triggered a waiver as a matter of law of the owner's defense that the taking was unauthorized. Although Judge Cooper did not endorse Amtrak's argument and instead ruled on the merits, Defendants here request a

ruling in anticipation of Lender moving to be paid from the deposit and Amtrak asserting the same waiver argument regarding Defendants' pleaded defenses and objections.

Pursuant to Local Rule 7(m), counsel contacted counsel for Amtrak and defendant USSM. Amtrak advises that it opposes this motion. USSM is not taking a position on this motion.

## I.   BACKGROUND

When this eminent-domain action was filed, Amtrak filed a declaration of taking and made a deposit in the Registry of the Court of $250 Million. Lender was the holder of the documents evidencing a loan in the original principal amount of $330 Million made to USI and secured by USI's entire interest in the Subject Property Interest.[1] Because of its status as a lienholder, Lender was named in the Complaint in Condemnation.

In their answers, both USI and Lender pleaded that Amtrak was not authorized under the law to take the Subject Property Interest and that Amtrak had not satisfied the statutory prerequisites to take the Subject Property Interest. As this Court stated in its most recent order on the subject, the Court has not yet ruled on the validity of the pleaded defenses. (Memorandum Opinion and Order, DE #123 at 10, July 15, 2024).

The Court granted Amtrak's Motion for Immediate Possession, and Amtrak assumed possession of the Subject Property Interest as of July 29, 2024. Defendants have appealed the possession order and that appeal is pending in the D.C. Circuit, but being held in abeyance. Lender intends to seek payment of the funds on deposit because Amtrak's assumption of possession effectively neutralizes Lender's lien on the Subject Property Interest.

---

[1] Lender was also the lender pursuant to that certain Mezzanine Loan Agreement entered into with Union Station Sole Member, LLC, evidencing a loan in the original principal amount of $100 Million, secured by USSM's equity interests in USI. Lender subsequently foreclosed on that equity interest and now controls USI.

II.   ARGUMENT

    A.   **Receipt Of The Deposited Funds Does Not Constitute Waiver**

Under 49 U.S.C. §24311(b)(4), the Court is empowered to order immediate payment of any part of the deposit made by Amtrak. This provision is consistent with Fed. R. Civ. P. 71.1(j), under which the court is empowered to enter orders regarding the deposit in connection with a federal condemnation. Distribution of the deposit is a preliminary allocation—meaning that if an owner or lienholder receives less than it is later determined to be entitled to, the owner or lienholder is entitled to a judgment for the additional sum. Fed. R. Civ. P. 71.1(j)(2). By contrast, if an owner or lienholder is ultimately entitled to less than the distributed deposit, the condemnor receives a judgment against that payee for the excess. *Id.*

Neither the Amtrak taking statute nor Rule 71.1 provides that a request for payment of funds or the receipt of the funds constitutes a waiver of defenses to the taking. In condemnation cases, courts routinely rule on the merits of pleaded defenses after a defendant has withdrawn funds. *See, e.g., Washington Metro. Area Transit Auth. v. 6,627 Square Feet of Land*, 2022 WL 2438549 **3, 7-8 (D.D.C., July 5, 2022) (defendants withdrew deposit before they even filed answers; court ruled on condemnor's motion for judgment on the pleadings, finding that WMATA was legally authorized to exercise eminent domain over defendants' property); *cf. National Railroad Passenger Corp. v. 3.44 Acres More or Less of Land and Building Located at 900 2nd Street, NE*, 266 F.Supp. 3d 63 (D.D.C. 2017) (court ruled on merits of cross-motions for partial summary judgment regarding Amtrak's authority; owner and lender had earlier filed motions to withdraw deposit). (*900 2nd Street* is discussed in more detail below.) The underlying presumption is that a defendant can access deposited funds without waiving its defenses to the taking itself, as

3

the Court appeared to recognize in its recent order denying Defendants' motion for a stay pending appeal:

> Lender's claim that its very existence will be threatened by even a temporary loss of control is simply untrue. Today, Lender can ask the court to release up to $250 million that Amtrak has deposited in the court registry. 49 U.S.C. § 24311(b)(4) ("On application of a party, the court may order immediate payment of any part of the amount deposited in the court for the compensation to be awarded."). Lender may not be able to manage Union Station in the near term, but it easily can avoid going out of business by requesting immediate payment under § 24311(b)(4).[2]

Dkt. 123 at 18. Amtrak likewise appears to have acknowledged in this case that Defendants may access the funds without waiving any defenses. In its reply to its motion to dismiss the appeal in the D.C. Circuit, Amtrak cited the above passage, adding that "the $250 million [is] *already available* to [Defendants]." ECF No. 2065582 at 4 (emphasis added). That concession by Amtrak— made in the context of a stay pending appeal and with the underlying defenses yet to be adjudicated—did not indicate that Defendants' defenses would be waived by accessing the "already available" deposit.

     Rule 71.1 underscores that removal of a deposit does not trigger waiver of defenses to the taking. First, the Rule does not expressly require waiver of defenses for payment out of the deposit. By contrast, Rule 71.1(e)(3) expressly warns that a defendant "waives all objections and defenses not stated in its answer. No other pleading or motion asserting an additional objection or defense is allowed." The drafters of Rule 71.1 knew how to warn a defendant about waiver and how to set forth the consequences of a defendant's actions under the Rule, but the drafters did not include any warning about waiver of pleaded defenses in the context of distribution of the deposit.

---

[2] In its opinion and in this quote, the Court used "Lender" to refer collectively to both USI and Lender. The papers filed in connection with stay motion referred only to USI's management of Union Station and existence, not Lender's.

Second, Rule 71.1(j)(2) encourages the court and attorneys to "expedite the proceedings so as to distribute the deposit and to determine and pay just compensation." That language on its face distinguishes between the just compensation to be determined at trial and distribution of the deposit. The language of Rule 71.1(j)(2) would not make sense if the distribution of the deposit were deemed part of the "determine and pay just compensation" process. The language would also not make sense if the efforts to expedite the distribution of the deposit masked a requirement that a defendant waive defenses to the taking as the price for accessing the deposit. That construction of the rule would obviously lead to injustice and duress on defendants or lienholders who cannot afford to await final judgment on compensation before accessing funds regarding current debts and obligations.

Because neither the statute nor the rule requires that a defendant or lienholder waive its right to contest the legality of Amtrak's taking as a consequence of asking for disbursal from the deposit, Lender should be able to move for disbursal and receive funds from the deposit without risk to the Defendants' pleaded defenses and objections. But because Amtrak has taken a contrary position elsewhere, it is prudent for the Defendants to seek guidance from the Court before proceeding.

### B. The Contrary Arguments By Amtrak Are Unavailing

In *900 2nd Street*, Amtrak filed a declaration of taking and a deposit of $35 Million. (Case No. 1-15-cv-01088, Dkt #s 1, 3, 7). Lienholder Capital One did not file an answer but filed an unopposed motion to withdraw from the deposit the amount of its debt. (Dkt # 22). Owner Fluorine LLC filed an answer and a motion for judgment on the pleadings and a motion for disbursal from the deposited funds. (Dkt #s 13, 26, 28). In response to Fluorine's motion to withdraw funds, Amtrak argued that Fluorine's motion to withdraw funds and its failure to oppose Capital One's

5

request to withdraw funds "vitiate the position Fluorine has taken in its Motion for Partial Judgment on the Pleadings that the condemnation is unlawful." (Dkt #30, at 2). *See also id.* ("Both Fluorine's and Capital One's pleadings waive or prevent any ability of either Defendant to challenge the taking as a matter of law.") The Court granted Fluorine's motion to withdraw its motion for disbursement of funds and further ordered that "Amtrak may at the summary judgment stage, if it so chooses, renew its argument that the mere filing of the motion to withdraw funds effected a waiver of Flourine's right to challenge the taking." (Minute Order entered January 5, 2016).

In the cross-motions for partial summary judgment, Amtrak renewed its argument that the filing of motions by Capital One and by Fluorine seeking disbursement of funds—even though those motions were withdrawn without money actually being disbursed—equated to a waiver of Fluorine's defense that the taking by Amtrak was not authorized. (Dkt # 93-3, at 23-24). Judge Cooper ultimately resolved the dispositive motions on the merits, without discussing Amtrak's waiver argument. *National R.R. Pass. Corp. v. 3.44 Acres More or Less of Land, etc.*, 266 F. Supp. 3d 63 (D.D.C. 2017).

To the extent Amtrak raises the same arguments here in response to the Lender's motion for disbursal of funds, those arguments should be rejected for several reasons.

First, Judge Cooper did not rule in Amtrak's favor on the issue of waiver, which means that *900 2nd Street* does not serve as a precedent for waiver here.

Second, the materials Amtrak relied on for its waiver argument in *900 2nd Street* did not rest on the terms of the Amtrak statute or Rule 71.1 but rather on situations under different statutes and in different factual settings. For example, Amtrak cited cases in which state law provided that

6

receipt of funds waived defenses to the taking.[3] Amtrak also cited cases in which the party seeking payment of compensation had conceded elsewhere that the taking was lawful and valid.[4] Amtrak further cited cases in which an award of compensation at the end of the valuation process was taken by a party who then tried to pursue an appeal challenging the authority to take.[5] Amtrak also cited cases in which the party who received the award did not challenge the condemnor's right to condemn at all.[6] The facts in all of these cases are not close to the situation here of a non-government condemnor, acting under a statute granting limited eminent-domain power, that has made a deposit where pleaded defenses and objections remain unresolved.

The argument that Amtrak advanced in *900 2nd Street* was not supported in the relevant law. Looking ahead to trial or summary judgment in this case, Defendants submit that the evidence

---

[3] *See, e.g., Smart v. Texas Power & Light Co.*, 525 F.2d 1209, 1210 (5th Cir. 1976) (Texas law includes an "irrebuttable presumption of legal consent to the taking of a condemnee's property on withdrawal of the deposited funds"). *Smart* relied entirely upon *State v. Jackson*, 388 S.W. 2d 294 (Tex. 1965), in which a property owner was awarded compensation at the end of the valuation process and took the compensation, only to have the condemnor appeal. The *Jackson* court held that the conclusion of a second valuation process, in which the condemnor prevailed, was too late for the owner to first raise an objection that the taking was not authorized. *See also* Uniform Law Commissioners' Model Eminent Domain Code § 606 (1974)(defendant who withdraws money "waives all objections and defenses to the action and to the taking of his property, except for any claim to greater compensation").

[4] *See, e.g.*, *Great Falls Manufacturing Co. v. Garland*, 124 U.S. 581 (1888) (owner initiated suit in Court of Claims asserting that it was entitled to more compensation for taken property; owner barred from challenging statute establishing process for compensation).

[5] *See, e.g., Wilson v. Union Electric Light & Power Co.*, 59 F.2d 580, 581 (8th Cir. 1932) (owners withdrew final judgment amount as determined by appointed commissioner). *Cf. Winslow v. Baltimore & Ohio RR Co.*, 208 U.S. 59 (1908) (owner accepted award of just compensation for property taken but also "appealed" to require condemnor to take additional property; appeal dismissed).

[6] *See, e.g., Shapiro v. Maryland Nat'l Capital Park & Planning Comm'n*, 235 Md. 420, 201 A.2d 804, 806 (1964); *United States v. Nudelman*, 104 F.2d 549 (7th Cir. 1939) (owner of multiple parcels condemned for a single project consented to taking of several of the parcels and drew down deposited funds and never filed a demurrer or motion to dismiss regarding condemnor's authority).

and argument that waiver applies to defeat Defendants' objections and defenses should be excluded because the waiver "defense" does not apply when a lienholder accesses the deposited funds as allowed by Amtrak's taking statute and Rule 71.1. As a matter of proof, evidence that Lender moved for disbursal of funds or received funds from the deposit should be inadmissible in connection with trial or summary judgment.[7]

### C. General Waiver Principles Do Not Require A Contrary Result

General waiver principles do not require a different result here. As a general proposition, under doctrines such as estoppel by judgment, a litigant cannot both accept the benefit of a judgment and simultaneously challenge the awarding of that judgment. But here, there is no judgment to accept nor did Defendants invoke the authority of the eminent-domain statute to achieve a benefit. Rather, Defendants were involuntarily brought into court, had title taken as a matter of statute, and had their lien nullified as a matter of law. All those things happened to Defendants' interests by operation of the statute not because Defendants acquiesced in any of them happening.

To the contrary, since day one, Defendants have contested the legality of Amtrak's actions. They have argued that Amtrak did not have the authority to take the Subject Property Interest and was acting outside the scope of its limited eminent-domain authority. Defendants have invested and are still investing substantial time, money, and effort to challenge the taking and to vindicate the position that the property should be restored to USI. Amtrak is fully aware of the nature of

---

[7] Although the procedural rules make no provision for motions in limine, such procedural devices are used by trial courts every day in service of Rule 1's paramount command: the just, speedy, and inexpensive resolution of disputes. They also aid courts in administering proceedings fairly, to the end of ascertaining the truth and securing a just determination. *Feighan v. Resource Systems Group, Inc.*, 2023 WL 4623123 (D.D.C., July 19, 2023) (citing *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) and Fed. R. Evid. 102).

Defendants' challenges to the taking and would not be prejudiced or surprised by the continued assertion of those defenses following the withdrawal of funds. Continuing to follow this case's current path of resolving defenses on the merits does not prejudice Amtrak either. Amtrak long ago paid the deposit into the Registry; the distribution to Lender does not affect Amtrak's title or possessory rights.[8]

Amtrak has been placed into possession of the Subject Property Interest before the defendants' challenges to the taking have been resolved and while the order granting possession is on appeal. As has been noted elsewhere, the situation here is unique: this is the first case in which Amtrak has been placed into possession over the owner's objections while challenges to Amtrak's authority are unresolved. In fairness, Lender should be allowed to access the deposited sum now without waiving its long-standing opposition to Amtrak's right to take the property. The involuntary transfer of title and the involuntary transfer of possession have combined to effectively nullify Lender's lien. Within the terms of the Amtrak statute, Lender has a "vested right to the money." 49 U.S.C. §24311(b)(2) ("When the declaration is filed and the deposit is made…the right to the money vests in the person entitled to the money.") Lender's vested right to the money should not be conditioned on the surrender of Lender's objection that this entire taking is improper. Moreover, now that everyone is aware that in the *900 2nd Street* case Amtrak argued that even filing a motion for the money constitutes a waiver, it is only fair to have clarity from the Court about whether the assertion of waiver based on the filing of the motion or withdrawal of the deposit will be allowed—which Defendants submit it should not be.

---

[8] If the taking were undone, it would follow that any funds paid out would have to be returned, subject to payment to the appropriate parties of compensation for deprivation of the property in the interim. *Cf.* Rule 71.1 (if the compensation finally awarded to an entity is less than has been paid out of the deposit, the condemnor is entitled to a judgment for the difference).

9

**D.     At A Minimum, USI's Defenses Remain.**

Finally, even if Lender's receipt of the money were somehow deemed to waive Lender's defenses to the taking, that receipt should not be deemed to waive USI's defenses to the taking. As the owner of the property interest, USI has distinct interests from Lender. Even under statutory regimes where receipt of deposited funds waives the recipient's rights, the payment to the lienholder does not waive the rights of the property owner. *See Los Angeles County Metro. Trans. Authority v. Alameda Produce Market, LLC*, 52 Cal. 4th 1100, 264 P. 3d 579 (2011) ("lender's withdrawal of a portion of the deposit" does not constitute "a waiver of the property owner's claims and defenses").

### III. CONCLUSION

Defendants request entry of an order declaring that if Lender moves for distribution of the deposited funds and if funds are distributed to Lender, those actions do not constitute a waiver of USI's or Lender's pleaded defenses and objections to Amtrak's authority to exercise eminent domain in this case, and that the Court will resolve those defenses and objections on the merits at trial or through resolution of dispositive motions.

| | |
|---|---|
| MORRISON COHEN LLP<br>Y. David Scharf<br>Kristin T. Roy<br>Latisha V. Thompson<br>Amber R. Will<br>Mahnoor Misbah<br>*Admitted pro hac vice*<br>909 Third Avenue<br>New York, New York 10022<br>(212) 735-8600<br><br>HOLLAND & KNIGHT LLP<br>Paul J. Kiernan<br>Louis J. Rouleau<br>800 17th Street N.W.<br>Suite 1100<br>Washington, D.C. 20006<br>Phone: 202-663-7276<br>Paul.Kiernan@hklaw.com<br><br>*Attorneys for Lender* | NEUBERGER, QUINN, GIELEN,<br>RUBIN & GIBBER, P.A.<br>Thomas M. Wood, IV<br>Steven J. Willner<br>One South Street, 27th Floor<br>Baltimore, Maryland 21202<br>Telephone: (410) 332-8542<br>Fax: (410) 332-8564<br>tmw@nqgrg.com<br>sjw@nqgrg.com<br><br>*Attorneys for USI* |

## CERTIFICATE OF SERVICE

I hereby certify on this 14th of August, 2024, I served a true and correct copy of the foregoing Defendants' Motion In Limine Regarding Payment Of Deposited Funds on Counsel Of Record by filing on the Court's ECF System.

/s/ Paul J. Kiernan  
Paul J. Kiernan
