**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK) | * | |
| | * | CIVIL ACTION NO. 1:22-CV-01043-APM |
| PLAINTIFF, | * | |
| | * | |
| v. | * | |
| | * | |
| SUBLEASE INTEREST OBTAINED PURSUANT TO AN ASSIGNMENT AND ASSUMPTION OF LEASEHOLD INTEREST, et al. | * | |
| | * | |
| DEFENDANTS. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE REGARDING PAYMENT OF DEPOSITED FUNDS

It is a longstanding principle of eminent domain law that when a property owner agrees to accept just compensation for its property, the owner waives its ability to argue that the taking is unlawful. The Amtrak Statute, like the Declaration of Taking Act ("DTA"), allows the condemnee to withdraw the amount deposited for just compensation while the condemnation case is still pending. But in accepting the funds deposited as just compensation, the condemnee loses the ability to challenge the lawfulness of the taking going forward, and the case proceeds to the just compensation phase.

In their Motion in Limine Regarding Payment of Deposited Funds, ECF No. 125 ("Motion" or "Mot."), Defendants Union Station Investco, LLC ("USI") and Kookmin Bank Co., Ltd. ("Kookmin") (collectively, "Defendants"),[1] seek to evade this longstanding precedent. They seek

---

[1] For brevity, Amtrak refers to "Kookmin" rather than citing its full name, as stated in Defendants' motion, as "Kookmin Bank Co., Ltd. in its capacity as trustee of KTB CRE Debt Fund No. 8, a Korean Investment Trust and its

relief that no court has ever granted in a condemnation case by having this Court make an evidentiary ruling on whether a hypothetical future motion to withdraw just compensation would bar their ability to raise defenses and objections.

The Motion should be denied. If USI or Kookmin chooses to receive immediate disbursement of their just compensation, that is certainly their prerogative under 49 U.S.C. § 24311(b)(4) ("the Amtrak Statute"). But receipt of those funds would waive their ability to continue to contest the lawfulness of the taking. The law requires waiver in these circumstances for good reason. Amtrak, under the Amtrak Statute, and the federal government, under the DTA, deposit just compensation in escrow where the money is assured to be available to the condemnee. But if Kookmin or USI withdraws their estimated just compensation, there is no security for Amtrak or the Court; that money may be spent, and neither the Court nor Amtrak has any assurance that it could or would be repaid in the future if Kookmin or USI were permitted to continue to contest the lawfulness of the taking and ultimately prevail. Accepting the funds means accepting them permanently—and not continuing to contest the lawfulness of the taking but rather proceeding directly to a determination of just compensation, which Defendants would continue to have a right to contest. Moreover, Defendants cannot evade this rule by suggesting that the money would only go to Kookmin and not USI; the two share the same basic interest in the funds because any amounts going to Kookmin reduce the debt USI owes it, and the equitable principles underlying the waiver rule apply with equal force to both parties.

Separately, the Court should not order the release of just compensation funds yet because multiple defendants presently claim entitlement to those funds. Litigation in the Southern District of New York remains pending to determine, among other things, the rights of Ashkenazy and

---

agent on behalf of the Trust in Korea, Daol Fund Management Co., as well as its agent on behalf of the Trust in the United States, Rexmark Holdings, LLC."

Kookmin. Kookmin and USI do not specify in their Motion who would be receiving funds and in what amount, whether Union Station Sole Member, LLC ("USSM") would have objections to the disbursement, or what protections, if any, Amtrak and other parties would have subsequent to any disbursement if, for example, USSM were found to have some right with respect to the funds. For these reasons too, the Motion should be denied.

## I.     BACKGROUND

This eminent domain action was filed by Amtrak almost two and a half years ago. ECF No. 1. Simultaneously with the filing of this action, Amtrak deposited a quarter of a billion dollars, $250,000,000.00, in the Court's registry in accordance with Amtrak's "quick take" condemnation statute, 49 U.S.C. § 24311. *See* ECF No. 3. In response, all three Defendants, including USI, Kookmin, and USSM, filed answers that claimed an interest in the deposited funds. *See* ECF No. 35 at 29–32; ECF No. 36 at 15; ECF No. 38 at 2, 5–7.

In August 2022, Kookmin initiated a declaratory judgment action in the Southern District of New York, seeking a declaration that Kookmin is the sole owner of USI and is "entitled" to act as USSM's "attorney-in-fact with exclusive power" to enter into any "compromise or settlement" in this condemnation case and collect any condemnation award. Compl. ¶ 141, *Daol Rexmark Union Station LLC v. Union Station Sole Member, LLC*, No. 22-cv-06649 (S.D.N.Y. Aug. 4, 2022), ECF No. 1. That action arises out of two loans held by Kookmin: a mortgage loan made to USI and secured by USI's leasehold management and possession rights in Union Station (the "Mortgage Loan"), and a mezzanine loan to USSM secured by USSM's 100% ownership interest in USI (the "Mezz Loan").[2] *See id.* ¶¶ 18–27. Kookmin alleges that all of USSM's rights with

---

[2] In a related action, Kookmin is seeking to recover the amounts due under these loans and damages for breach of contract from Ben Ashkenazy, who guaranteed the two loans. *See Kookmin Bank Co. Ltd. v. Ashkenazy*, No. 22-cv-05802 (S.D.N.Y.).

respect to USI were extinguished in June 2022, after Kookmin exercised its rights on an event of default to foreclose on the Mezz Loan and purchased 100% of the USI Equity at the foreclosure sale. *Id.* ¶¶ 47–50, 70–78; *see also* Pls.' Mem. of Law in Support of Mot. for Summ. J. at 1–4, *Daol Rexmark Union Station LLC,* No. 22-cv-06649 (S.D.N.Y. May 2, 2024), ECF No. 142. USSM contends that the foreclosure sale was invalid, as title to the leasehold interest in Union Station vested in Amtrak immediately upon the filing of Amtrak's Complaint and Declaration of Taking in April of 2022, and because the contract language provides USSM with certain rights and limits certain lender's rights following a condemnation. *See* Def.'s Mem. of Law in Opp. to Pl.'s Mot. for Summ. J. at 7–13, *Daol Rexmark Union Station LLC*, No. 22-cv-06649 (S.D.N.Y. May 30, 2024), ECF No. 166. Kookmin moved for summary judgment in May of this year, *see* ECF No. 141, and the court has not yet issued a decision. Thus all of the key legal issues in that matter remain unresolved.

On May 24, 2024, this Court granted Amtrak's motion for possession of the Subject Property Interest. ECF No. 111. After stay motions were denied both by this Court and the Court of Appeals for the D.C. Circuit, possession transferred to Amtrak on July 29, 2024 pursuant to the Court's order of July 15, 2024. ECF No. 123.

## II.   ARGUMENT

Defendants cannot contest the taking's lawfulness if they withdraw the funds Amtrak deposited with the Court as compensation. That principle is black letter law as explained by the Supreme Court, the D.C. Circuit, and numerous other federal and state courts. That principle applies regardless of whether the condemnor is the government or a private company endowed with condemnation authority. And it applies whether the withdrawal of compensation takes place before or after a final judgment. Once the money is withdrawn, there is no guarantee it can or will

be returned. To ensure finality, courts therefore hold that withdrawing compensation waives the party's ability to contest the taking going forward. This Court should not be the first to hold otherwise.

Defendants wrongly claim that this Court has already decided that the waiver doctrine does not apply. Mot. at 3. This is false. Rather, in addressing the issue of hardship, this Court recognized simply that: "Today, [Kookmin] can ask the court to release up to $250 million that Amtrak has deposited in the court registry." ECF No. 123 at 18. This statement is accurate. Amtrak does not contest that a party may ask the Court for immediate payment of just compensation. But neither this Court nor Amtrak has ever suggested or agreed that a party who receives such payment may continue to contest the taking. For the reasons set forth below, they may not.

### A. A Century of Law Establishes When Defendants Withdraw Deposited Just Compensation Funds, They Waive Their Right to Challenge the Lawfulness of the Taking.

It is well established that a condemnee cannot access just compensation funds while challenging a taking. The Supreme Court established this rule over a century ago in *Winslow v. Baltimore & Ohio Railroad Co.*, 208 U.S. 59 (1908), when it ruled against owners of a lot who were attempting to challenge a condemnation of the land needed for the rail approach to Washington Union Station after they had already accepted funds for the land taken. *Id.* at 62. The Court upheld the fundamental principle that "accepting the sum awarded" results in "los[ing] the right" to challenge a taking. *Id.* A party who "wish[es] to have the condemnation stand" while also "receiv[ing] its fruits" may not contest the lawfulness of the condemnation. *Id.* at 62–63.

The D.C. Circuit has followed *Winslow*'s rule, affirming that "[t]here is no doubt that a party whose land has been condemned vacates his appeal from the judgment of condemnation by

accepting payment of the amount awarded to him." *Macfarland v. Poulos*, 32 App. D.C. 558, 561 (D.C. Cir. 1909).

Without exception, other Circuits have followed the same rule. *See White Oak Coal Co. v. United States*, 15 F.2d 474, 478 (4th Cir. 1926) (citing the "well-established rule[]" that "acceptance of the amount awarded for property taken for public use ordinarily constitutes a waiver of objections to its taking"); *Smart v. Texas Power and Light Co.*, 525 F.2d 1209, 1210 (5th Cir. 1976) (per curiam) (ruling that the "irrebuttable presumption of legal consent to the taking of a condemnee's property on withdrawal of the deposited funds is not unconstitutional" in a quick take condemnation under Texas law by a utility company); *see also United States v. McIntosh*, 2 F. Supp. 244, 254 (E.D. Va. 1932) ("In the law of eminent domain, it is thoroughly well established that the property owner who has accepted compensation for his property taken in condemnation proceedings cannot thereafter question the validity or constitutionality of the act or the regularity of the procedure by which the property was taken."); *City of Garland v. Burnett*, No. 04-CV-1378, 2005 WL 491521, at *6 (N.D. Tex. Mar. 2, 2005) (granting summary judgment in favor of the condemnor and explaining that after receiving the award, condemnees "willingly relinquished their ability" to challenge the taking).

Similarly, state laws also generally do not permit owners to enjoy the benefit of the deposit of compensation while simultaneously challenging the taking of their property by eminent domain. State courts are clear that "accept[ing] compensation awarded for lands taken for public use waives all other remedies, except a claim for greater compensation or damages." *Utah Dep't of Transp. v. Walter M. Ogden & Sons, Inc.*, 805 P.2d 173, 174 (Utah 1990) (collecting cases); *Twp. of Piscataway v. S. Washington Ave., LLC*, 947 A.2d 663, 670 (N.J. Super. Ct. App. Div. 2008) (barring condemnees from challenging the condemnation because they had "accepted the benefit

of the condemnation judgment by withdrawing the $4.3 million deposit"); *Williams v. City of La Grange*, 98 S.E.2d 617, 621–22 (Ga. 1957) (finding waiver); *see also Henry v. United States*, 46 F.2d 640, 642 (3d Cir. 1931) (collecting state cases where property owner is estopped from raising the question as to the validity of taking after receiving award).

That both federal and state law apply the waiver doctrine makes good sense. Eminent domain law prioritizes the "necessity and expediency" surrounding the taking of property, *see 2,953.15 Acres of Land, More or Less v. United States*, 350 F.2d 356, 359 (5th Cir. 1965), as well as a "just and equitable outcome," 40 U.S.C. § 3114(d)(2). A defendants' acceptance of compensation while continuing its legal challenge runs counter to the deep-rooted precedent that a party "should not be permitted to accept the fruits of a proceeding, and at the same time question the regularity thereof for his own further self-aggrandizement." *Chicago Great W. R.R. Co. v. Kemper*, 166 S.W. 291, 294 (Mo. 1914).

Defendants' have-one's-cake-and-eat-it-too approach also conflicts with the general principle that in a condemnation proceeding, an "owner is to receive no more than indemnity for his loss." *United States v. Miller*, 317 U.S. 369, 375 (1943). Allowing Defendants to access funds while challenging the taking would grant them "more than indemnity" because Defendants could theoretically succeed in challenging the taking; they will, in effect, have received an interest-free loan—and one there is no guarantee they can repay. If receiving the money requires a waiver of defenses to the taking, the risk that a defendant cannot repay the funds matters less; repayment would only be necessary if deposited amount exceeds the final judgment as to just compensation. But if a defendant prevails in its challenge to the taking after accepting disbursement of compensation, the purposes of eminent domain law are frustrated. This possibility explains why courts have held that accessing the funds is "concession by [condemnees] that the plaintiff is

entitled to take the property under the proceedings, upon the payment of full and adequate compensation." *Kemper*, 166 S.W. at 294.

Defendants muster very little to support their contrary view of the law.  They suggest that courts "routinely rule on the merits of pleaded defenses after a defendant has withdrawn funds," Mot. at 3, but they cite just two cases, neither of which supports their position. In *Washington Metro. Area Transit Auth. v. 6,627 Square Feet of Land,* Nos. 21-1753, 21-1757, 2022 WL 2438549 (D.D.C. July 5, 2022) ("*WMATA*"), the defendants asserted no substantive defenses or objections to the taking in their answers.  *Id.* at *7 (noting "the lack of substantive defenses or objections to the takings set forth in defendants' Answer"). Defendant Northeast Iron Works Land Partnership then moved "with Consent" to release the funds on deposit, specifically noting that the withdrawal was "without prejudice" and indicated that the condemnee "ha[d] no objection to WMATA taking the Property as a proper exercise of its eminent domain authority for legitimate public purpose" but that the condemnee reserved the right to seek additional compensation. *See* Exhibit 1 at 1, 3, 6. The Consent Motion also described additional protections to WMATA, including indemnification and potential reimbursement guarantees. *Id.* at 4. And the disbursement order approved these stipulated terms. *See* Exhibit 2 at 2–3. Defendant 2510 Bladensburg Road, L.L.C.'s Motion to release funds likewise was with the consent of the condemnor under similar terms, which were also approved by the trial court. *See* Exhibits 3 and 4. Because the disbursement was consented to and without prejudice, the waiver doctrine did not come into play and was never discussed in the opinion. And because the *WMATA* defendants had asserted no defenses to the taking, there was no need to analyze whether such defenses were waived by disbursement of the funds. *WMATA* therefore has no relevance here—and certainly cannot overcome a century of precedent consistently finding that the waiver doctrine applies, unless itself waived via consent.

The only other case Defendants cite is *Nat'l Railroad Passenger Corp. (Amtrak) v. 3.44 Acres More or Less Land and Building Located at 900 2nd Street, NE,* 266 F. Supp. 3d 63 (D.D.C. 2017), but Judge Cooper did not address the issue of waiver in that case. The defendants in *900 2nd Street* moved for disbursement of funds, but later withdrew that motion, and also failed to oppose a similar request to withdraw funds made by another party. There was therefore no need to address waiver. Amtrak thus agrees that the case "does not serve as a precedent" on the issue of waiver. Mot. at 6. It certainly does not suggest a departure from the longstanding precedent finding waiver whenever a party accepts a disbursement of compensation for a taking.

The fact that *WMATA* and *900 2nd Street* are the best and only cases Defendants can muster reflects that a century of precedent uniformly calls for application of the waiver rule where a defendant receives a disbursement of just compensation funds. Defendants attempt to distinguish all of these cases, Mot. at 7, but they cannot deny the uniform outcome in them all: accepting the amounts deposited for just compensation waives the defendant's ability to challenge the lawfulness of the taking. This Court should not depart from that precedent here.

**B.  The Same Waiver Rule Applies to a Taking Under the Amtrak Statute and Under the DTA.**

Defendants' Motion seeks to evade the waiver rule by arguing it does not apply here for various reasons, none of which pass scrutiny.

**1.  The Waiver Doctrine Applies to the Amtrak Statute Just as It Does to the DTA.**

Defendants argue that precedent regarding the waiver doctrine arises from takings by the government under the DTA, not Amtrak under the Amtrak Statute. But the provision of the Amtrak Statute that Defendants seek to invoke is materially identical to an analogous DTA provision to which the waiver rule consistently applies.

The Amtrak Statute permits the court, "[o]n application of a party" to "order immediate payment of any part of the amount deposited in the court for the compensation to be awarded." 49 U.S.C. § 24311(b)(4). Likewise, the DTA provides that "[o]n application of the parties in interest, the court may order that any part of the money deposited in the court be paid immediately for or on account of the compensation to be awarded in the proceeding." 40 U.S.C. § 3114(c)(2). Both statutes make clear that the only money allowed to be paid is for "the compensation to be awarded." Thus, immediate payment of those funds is, effectively, an advance payment of just compensation.

For this reason, it is well established that under this provision of the DTA, a property owner waives its right to challenge a taking once any of the money deposited for just compensation has been disbursed. *See supra* 6; *see also, e.g.*, *United States v. Certain Parcels of Land in City of Cleveland*, 149 F. Supp. 696, 700 (N.D. Ohio 1957) ("The checks for rental which Mrs. Hecht received pursuant to the orders of the Court . . . estop her and her husband from questioning the validity of the original decree [on the Declaration of Taking]. One may not receive money under the order of the Court and later question the validity of the order under which it was paid."). By the statute's very structure, payments from deposited funds cannot be made where the applicant for those funds is contesting the legitimacy of the taking and denying, by virtue of that challenge, a right to compensation. The courts have so held despite the fact that the DTA—like the Amtrak Statute—does not *itself* specify that withdrawing funds constitutes a waiver.

Amtrak's statutory text so closely mirrors the DTA's text on this issue that the two statutes must be construed similarly. Indeed, "it is . . . the most rudimentary rule of statutory construction . . . that courts do not interpret statutes in isolation, but in the context of the *corpus juris* of which they are a part." *Med. Imaging & Tech. All. v. Libr. of Cong.*, 103 F. 4th 830, 837 (D.C. Cir. 2024) (quoting *Branch v. Smith*, 538 U.S. 254, 281 (2003) (plurality opinion).

**2.  The Waiver Doctrine Applies Even if the Condemnor Is a Nongovernmental Actor.**

Defendants next ask this Court to rule that the waiver doctrine does not apply to takings by Amtrak because it is a "non-government condemnor." Mot. at 7. The case law makes no such distinction, and neither should this Court.

From as early as the 1800s to the present, courts have consistently applied the waiver doctrine to cases involving private entities, including utility and railroad companies, who sought to exercise delegated eminent domain powers. *See, e.g.*, *Sw. Bell Tel. Co. v. Brassell*, 427 S.W.2d 709, 711 (Tex. Ct. App. 1968) (applying the waiver doctrine in a taking by a telephone company); *Chicago Great Western R.R. Co. v. Kemper*, 166 S.W. 291, 294 (Mo. 1914) (applying the waiver doctrine in a taking by a railroad); *Test v. Larsh*, 76 Ind. 452, 461–62  (1881) (mill); *Burns v. Milwaukee & Mississippi R.R. Co.*, 9 Wis. 450, 457 (1859) (railroad); *Hitchcock v. Danbury & Norwalk R.R. Co.*, 25 Conn. 516, 518–19 (1857) (same). As these cases suggest, the interest in finality once a party has accepted compensation is equally strong whether the condemnor is the government or a private entity.

Indeed, in *Winslow* itself, the Supreme Court applied the waiver doctrine to a railroad condemnor with limited eminent domain powers. 208 U.S. at 61–62. When the non-government railroad company condemned the property abutting roads in D.C., the condemnee's access of the funds waived their right contest the condemnation. *Id.* at 62. Likewise, in *Wilson v. Union Electric Light & Power Co.*, 59 F.2d 580 (8th Cir. 1932), the fact that the condemnor was "a corporation organized and existing under the laws of the state of Missouri" that had been "clothed with the right" to institute eminent domain proceedings made no difference: the Court found that the condemned party could not accept payment of compensation without waiving its ability to contest the taking. *Id.* at 581, 583. So too, here.

11

### 3.   The Waiver Doctrine Applies Regardless of When Disbursement Is Sought.

Defendants contend that the waiver rule only applies when just compensation is paid at the end of a condemnation case. That is incorrect. A party that receives immediate payment of compensation during a condemnation case waives its ability to challenge the taking, just like a party that receives payment later in a case. "The true principle should be and is that a litigant shall not be heard to impugn the validity of a proceeding, of which, to a substantial degree, he has voluntarily accepted the benefits, no matter in what stage of maturity the proceeding may be." *See Wilson*, 59 F.2d at 583; *see also Smart v. Texas Power and Light Co.,* 525 F.2d 1209, 1210 (5th Cir. 1976) (explaining that under *State v. Jackson*, 388 S.W.2d 924 (Tex. 1965), "withdrawal by a condemnee of the money paid into the court on quick taking forecloses a legal challenge to the validity of the taking and limits further litigation to the amount of the award"). Thus, the waiver doctrine applies when a defendant withdraws just compensation no matter when the money is withdrawn.

Indeed, the principles underlying the waiver doctrine apply with greater force when just compensation is paid earlier in the proceeding. Disbursing the money before final judgment is more fraught with uncertainty than doing so after final judgment. And greater efficiencies can be achieved when the waiver rule is applied sooner rather than later. The equitable principles underlying the waiver doctrine therefore counsel in favor of applying the doctrine regardless of whether compensation is paid immediately or after a final judgment.

This does not change just because a defendant asserts that it is unable "to await final judgment." Mot. at 5. In *Smart*, the landowner asserted an argument similar to that made by Defendants here, namely that "the only way he could receive a return on his investment, i.e., just compensation under the Fifth Amendment, pending litigation and in light of the immediate use of

his land, is by taking down the initial award." 525 F.2d at 1211. However, the court rejected this argument; just compensation was assured by an award of interest from the date of the taking, and the doctrine was constitutional as "[e]ven when a condemnee accepts the award and is foreclosed from challenging the validity of the condemnation, he may pursue his due process right to receive just compensation." *Id.*; *see* 49 U.S.C. § 24311(b)(3) (setting interest "from the date of taking to the date of payment"). The waiver rule is therefore unaffected by the financial circumstances of a defendant—particularly where these Defendants have been offered numerous opportunities to demonstrate undue hardship from a transfer of possession and have never even tried to meet that burden. *See* ECF No. 123 at 19 (finding that Kookmin and USI did not "show[] that temporary loss of the Leasehold Interest would cause [them] significant hardship").

### C.  Rule 71.1 Supports Applying the Waiver Doctrine in this Case.

USI and Kookmin argue that the Court should not apply the waiver doctrine because Rule 71.1 of the Federal Rules of Civil Procedure does not state "that a request for payment of funds or the receipt of funds constitutes a waiver of defenses to the taking." Mot. at 3. But that argument fails, as demonstrated by all the cases applying the waiver rule since the adoption of Rule 71.1 and its predecessor, Rule 71A. *See, e.g.*, *Smart*, 525 F.2d at 1211–12; *City of Garland v. Burnett*, No. 04-CV-1378, 2005 WL 491521, at *6 (N.D. Tex. Mar. 2, 2005); *Certain Parcels of Land in City of Cleveland*, 149 F. Supp. at 700. By comparison, Defendants do not—and cannot—cite a single case where a court found Rule 71.1 overrides the waiver doctrine. Neither Rule 71.1 nor its predecessor Rule 71A overruled substantive law when enacted, and do not do so here either.

The text of Rule 71.1 in fact supports application of the waiver doctrine upon a mid-case distribution of the plaintiff's deposit. The first sentence of Rule 71.1(j)(2) states: "After a deposit, the court and attorneys must expedite the proceedings so as to distribute the deposit and to determine and pay compensation." The Rule therefore contemplates expedited proceedings in

which the deposit is distributed and the court "determine[s] and pay[s] compensation." The Rule does *not* contemplate that after the deposit is distributed, the court must then determine the lawfulness of the taking before determining and paying compensation.  That the Rule skips from distributing the deposit to determining and paying compensation in fact presumes no further challenge to the lawfulness of the taking after the deposit is distributed. Proceeding with discovery and summary judgment briefing on the lawfulness of the taking is inconsistent with the Rule's requirement that the court and parties "expedite the proceedings" and "determine and pay compensation" after distributing the deposit. Application of the waiver doctrine, on the other hand, *does* ensure expedited resolution. By its plain text, Rule 71.1 is therefore consistent with the waiver rule.[3]

History too supports that Rule 71.1 is consistent with the waiver doctrine. The commentators to the Federal Rules of Civil Procedure noted when commenting upon the predecessor to Rule 71.1(j): "Whatever the substantive law is concerning the necessity of making a deposit will continue to govern." Advisory Committee on Rules for Civil Procedure, *Report of Proposed Rule to Govern Condemnation Cases in the District Courts of the United States*, 30 (1948). The substantive law concerning deposits at the time was *Winslow, supra* 5, and its progeny. Those cases did not require that the legislative enactment granting eminent domain authority specifically mention the waiver doctrine for it to be applied. To the contrary, in *Winslow,* the

---

[3] Rule 71.1(j)(2)'s command that the court and attorneys "must expedite the proceedings so as to distribute the deposit and to determine and pay compensation" is also inconsistent with Defendants raising this issue on the procedural posture of a motion in limine. Motions *in limine* are a means for arguing why "evidence should or should not, *for evidentiary reasons,* be introduced at trial." *See Williams v. Johnson*, 747 F. Supp. 2d 10, 18 (D.D.C. 2010) (emphasis in original). But if the Court were truly to rule only on what evidence should, for evidentiary reasons, be introduced at trial, that would provide Defendants no assurance that they had not waived their defenses. What Defendants really seek is an advance advisory opinion on the legal effects of their receiving disbursement of compensation funds.  That is why their proposed order would smuggle in a non-evidentiary ruling that "An assertion of waiver or estoppel to assert defenses may not be premised on a defendant moving for the withdrawal of funds from the deposit or actually withdrawing funds from the deposit." *See* Proposed Order. Such a ruling cannot be made via a motion in limine, which is intended to cover the admissibility of evidence at trial.

railroad company, a non-governmental entity, condemned the portion of the property abutting roads mentioned in two Acts of Congress approved February 12, 1901, 31 Stat. 774, and an Act approved February 28, 1903, 32 Stat. 912. *Winslow*, 208 U.S. at 60. Neither enactment mentioned the waiver doctrine. Nevertheless, the Supreme Court found that acceptance of funds was a waiver of the right to pursue an appeal on the issue of the right to take. *Id.* at 62–63.

And it is not just *Winslow* that applies the waiver doctrine despite the absence of waiver language in Rule 71.1 or its predecessor. Indeed, for the cases cited *supra* 13, the court applied the waiver doctrine even though there was no specific provision for waiver in Rule 71.1 or in the specific legislative grant of eminent domain power at issue in the various cases. Meanwhile, where a court has deviated from the waiver rule, it has done so only due to express statutory abrogation of that rule. *See, e.g.*, *Vallario v. State Roads Comm'n*, 426 A.2d 1384, 1385–86 (Md. 1981) (discussing Maryland statute which "states plainly" that the condemnee could withdraw initial deposit in quick take proceeding without waiving its challenge to the taking). Thus, Rule 71.1 was adopted against the backdrop of the waiver doctrine—and the fact that the Rule does not mention that doctrine merely proves that the Rules Committee was not seeking to alter it by means of silence.[4]

### D. Defendants Cannot Manipulate the Waiver Doctrine by Having Only the Lender Move for Funds and Arguing that USI Has Not Waived.

Defendants' attempt to have the Lender access the funds while USI states it has not waived its defenses cannot stand. Such a split position manipulates the waiver doctrine to preserve Defendants' chances of improperly accessing the compensation. Both USI and Kookmin claim the

---

[4] Defendants cannot rely on Rule 71.1(e)(3) either. That rule provides that parties waive objections and defenses not stated in the answer because waiver of such defenses is a *departure* from the rule otherwise in place, which permits amended answers in the typical federal case. *See generally* Fed. R. Civ. Proc. 15. There was no need to specify in Rule 71.1(j) that waiver results from accepting disbursement of funds because that rule had been in place long before Rule 71.1 was adopted, the Rules Committee stated no intention to depart from it, and indeed specified that existing substantive law would continue to govern deposits under Rule 71.1(j). *See supra* 13–15.

same interest in and entitlement to the funds—and if Kookmin receives them, USI benefits just the same by reducing the size of its debt to Kookmin.[5] That is of course why USI consents to and joins in the motion.

The factual record, and Defendants' own allegations, show that USI and Kookmin share the same interests. USI is no longer a subsidiary of USSM; instead, it is now a subsidiary of another entity, Daol Rexmark Union Station LLC. *See* Sept. 11, 2023 Evidentiary Hr'g Tr. ("Hr'g Tr.") 271:4–10. Kookmin, USI, and Daol Rexmark are all controlled by the same company, namely Rexmark Holdings LLC d/b/a Rexmark, and managed by the same person, namely Michael Rebibo. *See* ECF No. 73-1; *see also* Hr'g Tr. 271:4–10. Rebibo is "one of the managing members of [Daol Rexmark] so [he] effectively manage[s] that entity." *Id.* He also controls and manages USI; he has affirmed that after the eminent domain action was filed, Rexmark and Rebibo "replaced Ashkenazy as manager of USI with William Henrich." ECF No. 69-1 ¶ 7. Moreover, Lender has acquired USSM's ownership interest in USI, ECF No. 83-10 ¶ 41, and Lender claims that "all of USSM's rights, interest and title in and to USI have been extinguished by the foreclosure sale and that Lender has the exclusive authority to act as attorney-in-fact for USSM pursuant to the loan documents." *Id.* ¶ 44.

All of the principles animating the waiver doctrine apply equally to all of the parties, regardless of whether USI, Kookmin, or both withdraw the funds. *See Tigner v. City of Angleton*, 949 S.W.2d 887, 891 (Tex. Ct. App. 1997) (concluding that half owner who joined in motion to withdraw award, but did not withdraw their portion, could no longer contest condemnation when

---

[5] In the Motion, Kookmin indicates that it is seeking to receive the deposited funds "because Amtrak's assumption of possession effectively neutralizes Kookmin's lien on the Subject Property Interest." Mot. at 2. However, this Court has recognized that Amtrak has had full title to the Subject Property Interest since the funds were deposited. ECF No. 106 at 2. Kookmin's entitlement to just compensation does not vary depending on who possesses that Interest, and Kookmin makes no argument to the contrary.

the other half owner withdrew the other portion of the award); *Kaneb Servs., Inc. v. Fed. Sav. and Loan Ins. Corp.*, 650 F.2d 78, 81 & n.1 (5th Cir. 1901) ("It is recognized that under the doctrine of equitable estoppel a party with full knowledge of the facts, which accepts the benefits of a transaction, contract, statute, regulation, or order may not subsequently take an inconsistent position to avoid the corresponding obligations or effects.").

Defendants' contrary argument relies on a single state law case inapplicable here. *See L.A. Cty. Metro. Trans. Auth. v. Alameda Produce Mkt., LLC*, 264 P.3d 579 (Cal. 2011). In *Alameda Produce,* the court interpreted the waiver effects of receiving deposited money under a California statute. The relevant statute specified that "receipt of [deposited] money shall constitute a waiver by operation of law of all claims and defenses in favor of the person receiving such payment except for greater compensation." *Id.* at 581. In *Alameda Produce*, the lender took "receipt of" the deposited funds, while the owner did not receive funds. *Id.* The city transit authority argued that the owner nonetheless waived its defenses because it did not object to the lender's application to withdraw the funds. *Id.* at 582. The appellate court disagreed in light of the statutory language it was required to interpret, which specifically required "receipt of" money. Rather than applying equitable principles as in the federal eminent domain context, the California court was limited to the statutory text. *Id.* at 583. That statute and statutory scheme do not apply here; rather, the waiver rule in the federal condemnation context is an equitable principle that would be undone if parties could evade the rule in the manner Kookmin and USI seek here. *See supra* 7.

Where receipt of the funds will benefit both the lender and the owner, the withdrawal from one party is enough to trigger a waiver for both. USI and Kookmin share the same financial interests, so the application of the waiver doctrine for one would apply to all. *Cf. United States v. 99.66 Acres of Land*, 970 F.2d 651, 658–60 (9th Cir. 1992) (finding that lender who was not named

as a defendant could be ordered to return an overpayment when the lender, by agreement with the property owner, received and benefitted from a signification portion of the deposit distributed to the owner); *Sunbelt Props. v. State*, No. 08-02-00322-CV, 2003 WL 756718, at *4 (Tex. Ct. App. Mar. 6, 2003) ("Sunbelt may have only been directly paid [a portion] of the award, but it received the benefit of the entire award since it discharged Sunbelt's mortgage debt and extinguished the interest of the mortgagees in the property.").

The Court should not allow USI and Kookmin to evade the longstanding equitable rule applied across federal courts.

### E. Defendants' Motion Is Premature Because No Court Has Yet Determined Which Party Is Entitled to Just Compensation.

Finally, Defendants' Motion should be denied because it is premature. No court has yet determined which party is entitled to the just compensation funds. Absent a resolution on this critical question, the Court should not yet award just compensation.

Defendants are embroiled in ongoing litigation that will help determine which parties are entitled to the funds. *See supra* 3–4. That litigation remains pending. If Kookmin or USI were to access the funds, they could spend the money immediately, raising a whole host of potential issues if the litigation in New York determines the wrong party accessed the funds. Defendants do not contemplate these complicated issues and provide no assurance to this Court or to Amtrak that this money would be repaid, or how.

If Defendants wish to access the funds, they should first resolve which party or parties are entitled to them. They may do so by settling (or winning) their litigation in New York, or by moving for an expedited resolution under Rule 71.1(j)(2). But they may not jump ahead by taking the money before it has been determined that they alone are entitled to it.

III.     CONCLUSION

Defendants may not obtain the deposited funds while at the same time contesting the lawfulness of the condemnation itself. For the reasons set forth above, Defendants' Motion in Limine should be denied.

Respectfully submitted,

COUNSEL FOR PLAINTIFF NATIONAL RAILROAD
PASSENGER CORPORATION

/s/Patricia McHugh Lambert
Patricia McHugh Lambert, US DC Bar ID MD0008
Kambon R. Williams, US DC Bar ID MD29872
PESSIN KATZ LAW, P.A.
901 Dulaney Valley Road, Suite 500
Towson, MD  21204
Telephone: 410-938-8800
Fax: 410-832-5650
plambert@pklaw.com
kwilliams@pklaw.com

/s/Lindsay C. Harrison
Lindsay C. Harrison, DC Bar #977407
Jessica Ring Amunson, DC Bar #497223
JENNER & BLOCK, LLP
1099 New York Avenue, NW, Suite 900
Washington, D.C. 20001-4412
Telephone: 202-639-6000
Fax: 202-639-6066
lharrison@jenner.com
jamunson@jenner.com