# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

NATIONAL RAILROAD PASSENGER
CORPORATION (AMTRAK),

Plaintiff,

v.

SUBLEASE INTEREST OBTAINED
PURSUANT TO AN ASSIGNMENT
AND ASSUMPTION OF LEASEHOLD
INTEREST, *et al.*,

Defendants.

Civil Docket No. 1:22-cv-01043-APM

## NON-PARTY UNITED STATES DEPARTMENT OF TRANSPORTATION'S OPPOSITION TO LENDER'S MOTION TO COMPEL AND CROSS-MOTION FOR PROTECTIVE ORDER

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................... 1

BACKGROUND .......................................................................................... 2

A.    Procedural History .......................................................................... 2

B.    Lender's Subpoena to DOT ............................................................ 4

LEGAL STANDARD .................................................................................. 6

ARGUMENT ............................................................................................... 7

I.    THE REQUESTED TESTIMONY IS IRRELEVANT ....................... 7

II.    THE SUBPOENA IMPOSES AN UNDUE BURDEN ON DOT .................... 11

A.    The Requested Information Can be Obtained From Amtrak .............. 12

B.    The Subpoena Imposes Significant Burdens on DOT ......................... 14

C.    The Subpoena Is Not Proportional to the Needs of the Case .............. 15

III.    IN THE ALTERNATIVE, THE COURT SHOULD PRESCIBE A LESS
       BURDENSOME METHOD OF DISCOVERY ................................. 16

CONCLUSION ........................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*\*Amtrak v. Sublease,*
   No. 22-cv-1043, 2024 WL 2161814 (D.D.C. Apr. 17, 2024) ............................ *passim*

*\*BuzzFeed, Inc. v. DOJ.,*
   318 F. Supp. 3d 347 (D.D.C. 2018) ......................................................... 6, 7, 11, 17

*Diamond Servs. Mgmt. Co., LLC v. Knobbe, Martens, Olson & Bear, LLP,*
   339 F.R.D. 334 (D.D.C. 2021) ......................................................................... 12, 16

*Gomez v. City of Nashua,*
   126 F.R.D. 432 (D.N.H. 1989) ............................................................................... 12

*In re Motion to Compel Compliance with Subpoena Directed to Dep't of Veterans,*
   *Affs.*, 257 F.R.D. 12 (D.D.C. 2009) ......................................................................... 7

*Moore v. Armour Pharm. Co.,*
   927 F.2d 1194 (11th Cir. 1991) ............................................................................. 14

*US Dominion Inc. v. My Pillow Inc.,*
   No. 1:21-cv-445, 2024 WL 2880425 (D.D.C. June 7, 2024) ...................................... 9

*\*Watts v. SEC,*
   482 F.3d 501 (D.C. Cir. 2007) ...................................................................... 6, 7, 17

**Statutes**

49 U.S.C. § 24311 ...................................................................................................... 2

**Rules**

Fed. R. Civ. P. 26(b) ..................................................................... 7, 8, 12, 16, 17

Fed. R. Civ. P. 30(b)(6) .......................................................................................... 14

**Regulations**

49 C.F.R. § 9.1 *et seq.* ............................................................................................... 5

**Other Authorities**

8A Charles Alan Wright et al., Federal Practice and Procedure
   § 2103 (3d ed. 2024) ............................................................................................ 14

## INTRODUCTION

The Department of Transportation would have no objection to providing information to the parties in this matter if that information were relevant to the Court's resolution of their dispute and not unduly burdensome to provide. But the wide-ranging subpoena for a 30(b)(6) deposition that Kookmin Bank (Lender) served on DOT seeks testimony about topics that simply have no bearing on Amtrak's statutory authority to acquire the Union Station leasehold interest and the value of that interest—the issues before the Court. As this Court recognized in its memorandum opinion granting Amtrak's motion to take possession of the leasehold interest, Amtrak relied on its *own* statutory authority to acquire that property interest. Thus, whether DOT "approved" of or "authorized" Amtrak's action is irrelevant.

In any event, the parties and the Court already have extensive information about DOT's involvement in this matter. As the Court recognized in its memorandum opinion, DOT, through the Federal Railroad Administration, approved Amtrak's pre-programming authority request for up to $66 million to acquire the Union Station leasehold interest. And the Secretary of Transportation's representative on Amtrak's Board of Directors also voted in favor of Amtrak's acquisition of the leasehold interest. These actions speak for themselves and reflect DOT's position with respect to the acquisition.

Lender nevertheless seeks the most burdensome form of discovery—a Rule 30(b)(6) deposition of a government agency—on seven wide-ranging topics,

including communications between DOT and Amtrak from years ago. But Lender has not explained why it cannot obtain such communications from Amtrak itself through normal party discovery. Nor has Lender explained why it needs a 30(b)(6) deposition as opposed to less burdensome forms of a discovery, such as an agency declaration. Indeed, DOT offered to provide a declaration addressing the topics listed in the subpoena before Lender filed the instant motion, but Lender proceeded with its filing. The Court should deny Lender's motion to compel and grant DOT's cross-motion for a protective order.

## BACKGROUND

### A.    Procedural History

The Court is familiar with the factual background of this case. *See Amtrak v. Sublease*, No. 22-cv-1043, 2024 WL 2161814, at *2–6 (D.D.C. Apr. 17, 2024). Amtrak filed this action in April 2022 and moved for immediate possession of the Union Station property interest in July 2022. *Id.* at *5–6. After a period of discovery on the possession issue, the Court held an evidentiary hearing in September 2023 at which several witnesses testified. *Id.* at *6.

In April 2024, the Court granted Amtrak's motion for immediate possession. *See id.* at *23. In doing so, the Court recognized that Amtrak had the power to take the subject leasehold interest using its own eminent domain authority under 49 U.S.C. § 24311(a)(1). That statute provides that "Amtrak may acquire by eminent domain . . . interests in property—"

> (A)    necessary for intercity rail passenger transportation, except property of a rail carrier, a State, a political subdivision of a State, or a governmental authority; or
>
> (B)    requested by the Secretary of Transportation in carrying out the Secretary's duty to design and build an intermodal transportation terminal at Union Station in the District of Columbia if the Secretary assures Amtrak that the Secretary will reimburse Amtrak.

Specifically, the Court held that Amtrak had the power to take the leasehold interest under subsection 24311(a)(1)(A), which (unlike subsection 24311(a)(2)(B)) does not require a "request" or other involvement by DOT.  2024 WL 2161814, at *15–16.

The Court expressly rejected Lender's argument that the taking needed to be "initiated by the Secretary of Transportation."  *Id.* at *15.  The Court held (correctly) that Lender's reading "ignores that § 24311 uses the disjunctive 'or' to separate the two grounds on which Amtrak can exercise eminent domain," and that "nothing about the text or structure of § 24311(a)(1) suggests that Congress meant (a)(1)(B) to restrict Amtrak's general eminent domain authority granted under (a)(1)(A) as to Union Station."  *Id.* at *16.

The Court then went on to hold that nothing in the Union Station Redevelopment Act of 1981 limited Amtrak's eminent domain authority in the manner suggested by Lender.  *Id.* at *16–17.  Although Lender had argued that allowing Amtrak to operate Union Station would subvert the intent of Congress, the Court held (again, correctly) that "Lender points to no text in the USRA that speaks, even indirectly, to Amtrak's power of eminent domain."  *Id.* at *17.  The Court then observed that Amtrak's taking did not undermine the Secretary of

Transportation's authority to develop and manage Union Station because the Secretary "has given his approval for Amtrak's taking of the USI Sublease," through the Federal Railroad Administration's approval of $66 million in pre-programming authority for Amtrak to acquire the sublease and the fact that the Secretary's representative on Amtrak's board voted in favor of the condemnation. *Id.*

After granting Amtrak's motion for immediate possession, the Court entered a scheduling order under which all fact discovery was to be completed by October 31, 2024. The parties then engaged in several months of further discovery in which DOT was not involved. ECF No. 108. The record in this case reflects that the discovery has been extensive, including the production of thousands of documents, depositions of Amtrak's party representatives, and a number of third-party document and deposition subpoenas. *See* ECF No. 140 at 1–10 (describing third-party discovery of Cushman & Wakefield, John Farrell, Eastdil, SL Green, Wells Fargo, Jones Lang Lasalle, KPMG, Houlihan Lokey, and USRC).

On October 15, 2024, Lender moved to extend the fact discovery deadline to address several outstanding issues, including pursuing discovery from certain non-parties. ECF No. 129. Lender did not suggest at that time that it needed discovery from DOT or that it intended to notice a 30(b)(6) deposition of the agency. *See id.*

## B.    Lender's Subpoena to DOT

It was not until after the Court extended the fact discovery deadline to November 29 that Lender first sent a letter to DOT about a potential 30(b)(6) deposition. *See* Mot. to Compel ("Mot.") Ex. A (Lender Oct. 18 letter), ECF No.

4

143-2.  That letter, however, did not comply with DOT's *Touhy* regulations governing requests for testimony.  *See* 49 C.F.R. § 9.1 *et seq.*  Among other things, Lender's letter did not include a summary of the information sought, an explanation of the relevance of that information to these proceedings, or a certification that the requested information was not available from other sources.  DOT informed Lender that it would take no further action on its request until it provided a response in compliance with DOT's regulations.  *See* Mot. Ex. B (DOT Nov. 8 Letter), ECF No. 143-3.

Lender sent a second letter on November 13.  *See* Mot. Ex. C (Lender Nov. 13 Letter), ECF No. 143-4.  Although that letter provided some additional information about *what* testimony Lender was seeking, it did not explain *why* that information was relevant to any party's claim or defense in this proceeding or why that information was unavailable from other sources.  *See id.*  Specifically, Lender stated that it was seeking a 30(b)(6) deposition to ask DOT "what transpired" during various meetings between DOT and Amtrak in November and December 2021.  *Id.* at 2–3.  Lender also attached a subpoena for a 30(b)(6) deposition that requested testimony on seven broad topics, "including oral communications," that DOT employees may have had with Amtrak, USRC, and Members of Congress over a two-year period.  *See* Declaration of Rebecca Reyes-Alicea Ex. A (Subpoena).  But Lender never explained the purported connection between the information it was seeking and any legal issue in this case.

On November 19, DOT, through counsel, informed Lender by letter that it had declined to authorize the requested testimony at this time based on the information Lender had provided.  Mot. Ex. E (DOJ Nov. 19 Letter), ECF No. 143-5. DOT explained that Lender had not explained why the requested testimony was relevant and that compliance with the subpoena would subject DOT to an undue burden.  *Id.* at 1–2.  DOT noted, however, that it was willing to work with Lender to provide some alternative form of discovery that would satisfy Lender, such as a declaration or interrogatory responses.  *Id.* at 3.  Counsel for DOT reiterated its offer to provide a declaration in a meet-and-confer with Lender's counsel on December 4, 2024.  *See* ECF No. 142 at 2.  Lender, however, instead filed a motion to compel.

## LEGAL STANDARD

A subpoena served on a non-party government agency under Rule 45 "must properly accommodate the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations."  *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007).  The Court "must first consider whether the discovery sought is relevant to a party's claim or defense in the underlying litigation, as defined in Rule 26(b)(1)."  *BuzzFeed, Inc. v. DOJ*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018) (Mehta, J.).  Next, the court "must assess any objections to the subpoena under the standards supplied by Rule 45, which 'requires that district courts quash subpoenas that call for privileged matter or would cause an undue

burden.'" *Id.* (quoting *Watts*, 482 F.3d at 508). The undue burden standard "requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties." *Watts*, 482 F.3d at 509. A court's obligation to avoid imposing an undue burden is "particularly acute" when a third-party subpoena is directed toward a government agency. *In re Motion to Compel Compliance with Subpoena Directed to Dep't of Veterans Affs.*, 257 F.R.D. 12, 18 (D.D.C. 2009).

In addition, under Rule 26(c), the Court may issue a protective order to "protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see also Watts*, 482 F.3d at 507 ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery."). This discretion includes orders forbidding the requested discovery altogether or "prescribing a discovery method other than the one selected by the party seeking discovery." Fed. R. Civ. P 26(c)(1)(C).

## ARGUMENT

### I.    THE REQUESTED TESTIMONY IS IRRELEVANT

The Court's resolution of Lender's motion should begin and end with the relevance inquiry. Lender has simply never explained how the testimony it seeks is "relevant to any party's claim or defense" in this matter. Fed. R. Civ. P. 26(b)(1). Lender said nothing at all about the relevance of the requested testimony when it first reached out to DOT about a deposition on October 18. *See* ECF No. 143-2. Nor did it explain how the requested testimony was relevant in its November 13 follow-up letter, even after DOT specifically requested that Lender explain the relevance so that DOT could consider the request under its *Touhy* regulations. *See* Mot. Ex.

C. Instead, Lender simply described the information it was seeking, without ever providing that explanation. *See id.*

After DOT denied Lender's request for testimony on relevance (and other) grounds, Lender still did not explain how the requested testimony was relevant. Mot. Ex. E, ECF No. 143-6. Lender noted that Union Station is "a major asset owned by the United States" and that the Court will need to decide whether Amtrak properly exercised its eminent domain authority. *Id.* But Lender nowhere explained *why* the subpoenaed testimony is relevant to that legal question. *See id.* Lender noted that the Court "has ventured some thoughts about what DOT did or did not do," *id.* at 1—presumably a reference to the Court's statement that the Secretary of Transportation "has given his approval for Amtrak's taking of the USI Sublease." 2024 WL 2161814, at *17. But the Court's opinion is clear that the Secretary's approval was not *required* for Amtrak to exercise its eminent domain authority. Rather, the Court held correctly that Amtrak was relying on its own eminent domain power under Section 24311(a)(1)(A), and thus "Amtrak can take the USI sublease without a 'request' from the Secretary of Transportation." *Id.* at *15.

Because Amtrak is relying on its own statutory authority here, it is simply irrelevant whether DOT itself approved or authorized Amtrak's exercise of its eminent domain authority. *See* Reyes-Alicea Decl. Ex. A, Subpoena Topics 1–3 (requesting testimony on whether DOT approved the taking). If DOT had approved the taking, that would not affect the analysis of whether Amtrak properly exercised

its authority under Section 24311(a)(1)(A).  Alternatively, if DOT had *not* approved
of the taking, that would similarly have no bearing on the statutory analysis.  Thus,
as Amtrak itself has explained, "the issue of discovery from DOT is a sideshow," as
"[t]he question of whether Amtrak has statutory authority to take the Subject
Property Interest is a question of law, and [Lender] ha[s] not shown that fact
testimony from the DOT would bear on any issue to be tried."  ECF No. 141 at 9; *see
also US Dominion Inc. v. My Pillow Inc.*, No. 1:21-cv-445, 2024 WL 2880425, at *4–
6 (D.D.C. June 7, 2024) (denying motion to compel deposition testimony due to
irrelevance).

　　In any event, the parties and the Court already have access to the documents
reflecting DOT's actions with respect to Amtrak's exercise of its eminent domain
authority.  As the Court noted in its memorandum opinion, the Federal Railroad
Administration approved Amtrak's pre-programming authority request for up to
$66 million to acquire the leasehold interest.[1]  2024 WL 2161814, at *17 (citing Pl.'s
Ex. 1, at 4).  The Secretary's representative on Amtrak's Board of Directors also cast
one of the votes in the unanimous Board decision in favor of Amtrak's acquisition of
the leasehold interest.  *Id.*  Moreover, the declaration filed herewith explains that,
while DOT approved Amtrak's pre-programming authority request, it never
directed Amtrak to exercise its eminent domain authority.  Reyes-Alicea Decl. ¶ 11.

　　In addition to seeking testimony about DOT's "approval" of the acquisition,

---

[1] As explained in the attached declaration, requests for "pre-programming
authority" involve Amtrak seeking the Federal Railroad Administration's approval
to use future grant funds to help fund a project.  *See* Reyes-Alicea Decl. ¶ 6.

Lender has also sought communications "in which DOT advised USRC or Amtrak or Congress that DOT would pay for costs or just-compensation awards or breach-of-lease damages that might flow from transferring ownership of the Subject Property Interest from USI to Amtrak." *See* Subpoena Topic 4. But Lender has likewise never explained how such information would bear on any of the legal issues in this case. Moreover, as the attached declaration explains, DOT has not advised anyone that it would pay Amtrak's costs for just-compensation awards or breach-of-lease damages. Reyes-Alicia Decl. ¶ 16.

Lender has also sought communications "in which DOT set forth its conditions for approving, authorizing, or directing Amtrak's acquisition of the Subject Property Interest." *See* Subpoena Topic 5. Again, Lender has never explained why any of this would be relevant to a legal issue in this case. In any event, the conditions that DOT imposed are set forth in the Federal Railroad Administration's March 11, 2022 letter approving Amtrak's request for pre-programming authority, which has already been produced to the parties and was cited in this Court's memorandum opinion. *See* Reyes-Alicia Decl. ¶ 17 & Ex. B; 2024 WL 2161814, at *17 (citing Pl.'s Ex. 1, at 4). Thus, any 30(b)(6) deposition testimony on this topic would be cumulative of documents to which Lender already has access. *See Buzzfeed*, 318 F. Supp. 3d at 359 ("Because the target of the subpoenas here are federal government agencies and officials, the court must also consider the cumulative effect of allowing some form of discovery.)

Finally, Lender suggests (for the first time in its motion) that the requested testimony may be relevant to the question whether the taking was "necessary for intercity passenger rail." Mot. 5–6. According to Lender, this is because the testimony may show that Amtrak "sought to acquire the interest not because controlling the leasehold interest was necessary for intercity passenger rail," but because of economic opportunism—*i.e.*, to "renegotiate the lease to the advantage of DOT and Amtrak." *Id.* But the Court has already held that "any opportunism on Amtrak's part is not a reason to reject the necessity of the taking." 2024 WL 2161814, at *20. As the Court explained, "[t]he mere consideration of economic factors cannot defeat an otherwise valid taking," and so "[t]he fact that Amtrak saw USI's financial distress as a 'unique opportunity' to acquire the leasehold interest does not undermine its necessity." *Id.* Accordingly, Lender's speculation of "opportunism" by Amtrak cannot justify the wide-ranging discovery of DOT that Lender seeks.

## II.    THE SUBPOENA IMPOSES AN UNDUE BURDEN ON DOT

Lender's motion to compel alternatively should be denied because the subpoena imposes an undue burden on DOT. Rule 26(b) requires district courts to consider a number of factors potentially relevant to the question of undue burden, including (1) whether the discovery sought is "unreasonably cumulative or duplicative," (2) whether the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive," and (3) whether the discovery sought is "proportional to the needs of the case," taking into account "the importance of the issues at stake in the action, the amount in controversy, the

11

parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b). Each of these factors weighs against Lender.

### A. The Requested Information Can be Obtained From Amtrak

"Where potentially important legal rights are implicated by a subpoena and alternative sources are more convenient or less burdensome, those alternatives should be explored first." *Diamond Servs. Mgmt. Co., LLC v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 339 (D.D.C. 2021). "Courts generally refuse to compel the deposition of a government witness if the [requesting party] may obtain discovery by an alternative and less burdensome method to the government." *Gomez v. City of Nashua*, 126 F.R.D. 432, 436 (D.N.H. 1989).

Lender has not explained why the information it seeks cannot be obtained from other, less burdensome sources, such as Amtrak or USRC. For example, the subpoena seeks testimony about various communications between DOT and Amtrak, but Lender has not explained why such communications are not obtainable from Amtrak itself. *See, e.g.*, Subpoena Topics 2, 4–6. Indeed, Lender has attached to its motion numerous communications between DOT and Amtrak, suggesting that it has already sought (and received) this information from Amtrak. *See, e.g.*, ECF No. 143-4, Exs. A-G (emails between Amtrak and DOT). If Lender believes that Amtrak has improperly "withheld" information from it, as Lender has suggested, *see* Mot. 6, Lender should have conferred with Amtrak about that issue, not sought a 30(b)(6) deposition from a non-party government agency.

Similarly, Lender seeks testimony about communications between DOT and USRC, but has not explained why those communications are not obtainable from USRC. *See* Subpoena Topics 1, 4–6. Lender had not yet taken the deposition of USRC when it filed its motion to compel, suggesting that it had not yet exhausted this alternative source of discovery before seeking a deposition of a federal agency. *See* ECF No. 140 at 10.[2]

Finally, Lender seeks the information provided to DOT's representative on Amtrak's Board in connection with the March 2022 meeting regarding Amtrak's exercise of its eminent domain authority. *See* Subpoena Topic 7. While DOT's representative, like Amtrak's other Board members, was provided with a "board package" in advance of the meeting, all of the materials in the package were prepared by Amtrak. Reyes-Alicea Decl. ¶ 19. Again, Lender should seek those materials (if it hasn't already) from Amtrak. There is no reason to seek a 30(b)(6) deposition of a federal agency to obtain information that is readily available from a party to the litigation.[3]

---

[2] Aside from communications between DOT and Amtrak (or USRC), Lender also seeks testimony about what transpired on a "proposed call" between the Deputy Secretary and Ben Ashkenazy, the then-principal of USI. *See* Mot. Ex. C. at 2. But no such call between the Deputy Secretary and Mr. Ashkenazy took place. *See* Reyes-Alicea Decl. ¶ 20.

[3] Lender also seeks to know whether the Federal Railroad Administration responded to a request from the Staff Director of the House's Subcommittee on Railroads for the Administration's position on the taking. *See* Mot. Ex. C at 2. The Federal Railroad Administration did not respond to the request. *See* Reyes-Alicea Decl. ¶ 21.

**B.    The Subpoena Imposes Significant Burdens on DOT**

Lender likewise has not explained why it requires the most burdensome and intrusive form of discovery—a 30(b)(6) deposition—to obtain the information that it seeks.  "The burdens faced by the responding party [served with a 30(b)(6) notice] are considerably more challenging than with an ordinary deposition."  8A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2103 (3d ed. 2024). Because the witness must "testify about information known or reasonably available to" the entire agency, Fed. R. Civ. P. 30(b)(6), employees must spend significant time and resources preparing the witness to address the noticed topics.  This obligation can be especially burdensome where, as here, "the events in question occurred long ago, or when there have been significant changes in . . . personnel." *Id.*  For federal agencies in particular, every day that employees "spend giving deposition testimony" or preparing a witness for such testimony "is a day they are kept from" from performing the functions vital to the mission and mandates of their agency.  *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197–98 (11th Cir. 1991).

Here, as the attached declaration explains, compliance with the subpoena would impose significant burdens on DOT.  Reyes-Alicea Decl. ¶ 22.  Because the subpoena seeks testimony on seven broad topics, including "oral communications" that occurred over a two-year period, there is no one agency employee who has knowledge of all of the topics on which Lender seeks testimony.  *Id.* ¶ 23.  The DOT employee with primary day-to-day responsibility for this issue has since retired.  *Id.*

Accordingly, to prepare adequately for a 30(b)(6) deposition, other DOT employees who are not as familiar with this matter would need to try and

14

reconstruct the "agency's" knowledge through documents and employee interviews and then educate a witness who likely would not already have personal knowledge about many of the topics. *Id.* This process is incredibly time intensive and would keep the involved employees from their mission-critical responsibilities. *Id.*

Moreover, because Lender seeks testimony specifically about oral communications involving the Deputy Secretary of Transportation, adequate preparation of the witness would necessarily require the involvement of the Deputy Secretary herself. *Id.* ¶ 24. Even if the Deputy Secretary could recall details from oral conversations that occurred three years ago, the Deputy Secretary has other important responsibilities as the number two official at DOT and Chief Operating Officer responsible for supporting the Secretary of Transportation. *Id.* Thus, participating in the preparation of a 30(b)(6) deponent would seriously interfere with her statutory duties. *Id.*

## C.    The Subpoena Is Not Proportional to the Needs of the Case

Finally, a 30(b)(6) deposition is not "proportional to the needs of the case" in light of the significant discovery that Lender has already obtained, the burdens of a 30(b)(6) deposition described above, and the availability of less burdensome alternatives. Fed. R. Civ. P. 26(b)(1); *see also Diamond Servs.*, 339 F.3d at 340 ("slim chance of a likely benefit'" to movant weighed against motion to compel).

As noted above, Lender has already sought and received substantial discovery from Amtrak and other nongovernmental third parties. The only information that Lender contends is "uniquely within the government's possession" is whether DOT "authorized, approved of, or directed Amtrak's efforts to take

possession of Washington Union Station." Mot. 7. But, as explained, DOT's "approval" of Amtrak's efforts is irrelevant to the statutory question, and, in any event, DOT has now provided a declaration stating that it never advised that it "'approved, authorized, or directed' the replacement of USI as the sublessee or installation of Amtrak as owner of the sublease." Reyes-Alicea Decl. ¶ 15. DOT has also described the significant burdens that a 30(b)(6) deposition would entail. And, as described in further detail below, there are less burdensome alternatives, such as an agency declaration. Accordingly, a 30(b)(6) deposition would not be proportional to the needs of the case and therefore alternatively should be precluded on that basis.

## III.   IN THE ALTERNATIVE, THE COURT SHOULD PRESCIBE A LESS BURDENSOME METHOD OF DISCOVERY

The Court should deny Lender's motion outright for the foregoing reasons. In the alternative, if the Court considers the subpoenaed information relevant, the Court should prescribe a less burdensome alternative method of discovery, such as a declaration or interrogatory responses. *See* Fed. R. Civ. P 26(c)(1)(C) (court may issue protective order "prescribing a discovery method other than the one selected by the party seeking discovery").

This Court has previously found an agency declaration an appropriate substitute for a 30(b)(6) deposition of an agency. *See Buzzfeed*, 318 F. Supp. 3d at 355, 365. In *Buzzfeed*, the requester originally served a subpoena for a 30(b)(6) deposition on the Department of Justice, seeking testimony on numerous topics. *Id.* at 353–54. At a conference on the requester's motion to compel, the Court urged the

16

requester to narrow its subpoena by withdrawing a number of topics and agreeing to accept a declaration in lieu of deposition testimony on the remaining topics. *Id.* at 355. The Court ultimately granted the requester's motion to compel, as narrowed and subject to a protective order, directing DOJ to produce a declaration that was responsive to three of the requester's topics. *Id.* at 365.

A declaration would be an appropriate and less burdensome alternative means of discovery in this case as well, should the Court conclude that Lender's subpoena seeks relevant, non-cumulative information not already addressed in the declaration submitted herewith. Such a declaration provides Lender with the information it seeks while respecting the Government's "serious and legitimate concern that its employee resources not be commandeered into service by private litigants." *Buzzfeed*, 318 F. Supp. 3d at 359 (quoting *Watts*, 482 F.3d at 509). Other forms of written discovery—such as interrogatories—likewise are an appropriate and less burdensome alternative. The Court accordingly should protect DOT from Lender's requested 30(b)(6) deposition.

## CONCLUSION

The Court should deny Lender's motion to compel and grant DOT's cross-motion for a protective order.

Dated:  December 20, 2024          Respectfully submitted,

                                   BRIAN M. BOYNTON
                                   Principal Deputy Assistant Attorney General

                                   JACQUELINE COLEMAN SNEAD
                                   Assistant Director

                                   /s/ John Robinson
                                   JOHN ROBINSON (Bar. No. 1044072)
                                   Trial Attorney
                                   U.S. Department of Justice
                                   Civil Division, Federal Programs Branch
                                   1100 L. Street, NW
                                   Washington D.C. 20005
                                   (202) 616-8489
                                   john.j.robinson@usdoj.gov

                                   *Counsel for U.S. Department of
                                   Transportation*

18