IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK),<br><br>Plaintiff,<br><br>v.<br><br>SUBLEASE INTEREST OBTAINED PURSUANT TO AN ASSIGNMENT AND ASSUMPTION OF LEASEHOLD INTEREST, *et al.*,<br><br>Defendants. | Civil Docket No. 1:22-cv-01043-APM |

**DECLARATION OF REBECCA REYES-ALICEA**

I, Rebecca Reyes-Alicea, declare and state as follows:

1. I am the Director, Amtrak & Northeast Corridor Program Delivery in the Office of Railroad Development at the Federal Railroad Administration (FRA). FRA is an operating administration of the Department of Transportation (DOT). I have held this position since 2022 and been employed at FRA since 2010.

2. My duties as Director of the Office of Amtrak & Northeast Corridor Program Delivery (Office) include directing and administering the following functions: 1) overseeing capital planning for the Northeast Corridor (NEC) and Amtrak, including long-range NEC planning, NEC Project Inventory development, Amtrak asset performance and planning, and providing relevant input into applicable FRA funding programs; 2) overseeing Amtrak service performance, including oversight of Amtrak's use of directed grant funds for operating and debt; 3) overseeing delivery and management of NEC infrastructure and capital programs and projects, which includes Washington Union Station program; 4) overseeing Amtrak capital program; and 5) serving and/or supporting USDOT involvement in Boards and Commissions pertinent to Amtrak and the NEC. My previous positions at FRA also included responsibilities regarding Amtrak and the Northeast Corridor.

3. The information set forth in this declaration is based upon my personal knowledge, my review of documents kept by FRA in the ordinary course of business, and information provided to me by other FRA or DOT employees in the course of

performing my official duties, or otherwise obtained in the course of performing my official duties.

4.  I have reviewed the subpoena that Kookmin Bank ("Defendant") has issued to DOT requesting the designation of a witness pursuant to Federal Rule of Civil Procedure 30(b)(6) to testify about certain communications between DOT and Union Station Redevelopment Corporation (USRC), Amtrak, and Congress in connection with Amtrak's acquisition of the Union Station Investco, LLC (USI) sublease through eminent domain. I am submitting this declaration in support of DOT's opposition to Defendant's motion to compel a 30(b)(6) deposition of DOT and DOT's cross-motion for a protective order.

**A.   Background**

5.  The FRA provides federal funding to Amtrak through directed grants and serves as safety regulator of Amtrak's operations. In addition, the Secretary of Transportation is a member of the Amtrak board of directors. *See* 49 U.S.C. § 24302(a)(1)(A).

6.  When Amtrak provides FRA with information regarding projects that may be funded by a directed FRA grant to Amtrak, it does so through a process known as "programming." When Amtrak uses its non-grant funding for a project, and then later wants to replace such funding and utilize, i.e., "program," directed grant funding for that project, Amtrak must obtain FRA's prior approval for the future use of replacement grant funding. This is called "pre-programming authority."

7. In late November 2021, the USRC notified FRA by email that USI's senior lender had scheduled a foreclosure on USI's sublease at Union Station for January 6, 2022.

8. Following notice of the foreclosure of USI's sublease by USI's senior lender, Amtrak made two attempts to purchase the sublease. First, in December 2021, Amtrak offered to purchase the sublease from USI's senior lender, which rejected the offer. Second, Amtrak sought to participate in the senior lender's foreclosure sale, which was cancelled after USI's junior lender acquired the senior lender debt in January 2022 and took control of the Union Station sublease. To fund the purchase, Amtrak had requested, and FRA approved, pre-programming authority for up to $550 million.

9. In February 2022, Amtrak requested new pre-programming authority from FRA to utilize up to $66 million in annual grant funds for the acquisition of USI's sublease at Union Station. In its request, Amtrak noted that it would seek to acquire the USI sublease from USI or USI's lender through a negotiated deal or participation in a foreclosure sale. Otherwise, Amtrak would condemn the USI sublease through eminent domain and pay just compensation.

10. In March 2022, FRA approved Amtrak's pre-programming request for up to $66 million for the acquisition costs of the USI sublease, conditioned upon Amtrak's agreement to renegotiate the sublease with terms that better supported the operations and capital improvements necessary for a multi-use, multimodal station.

11. Although FRA approved Amtrak's pre-programming request, FRA did not direct Amtrak to acquire the USI sublease or otherwise direct Amtrak to utilize a specific mechanism to further Amtrak's decision to acquire the USI sublease.

12. Before Amtrak's March 2022 board meeting, board members (including the Secretary of Transportation's designee, *see* ¶ 5, *supra*) received briefing materials on Amtrak's proposal to acquire the USI sublease. At that meeting, Amtrak presented three acquisition options: (1) a negotiated deal; (2) purchasing the sublease in a foreclosure sale ; or (3) exercising its statutory eminent domain authority under 49 U.S.C. § 24311(a)(1)(A). The Board voted unanimously to authorize Amtrak to acquire the USI sublease through either of these means.

**B.   Defendant's Subpoena**

13. On November 13, 2024, Defendant sent a subpoena to DOT seeking 30(b)(6) testimony on seven topics. A true and correct copy of the subpoena is attached as Exhibit A.

14. After considering that request under its *Touhy* regulations, DOT, on November 19, denied Defendant's request for a number of reasons, including that Defendant had not explained how the requested testimony was relevant and that the subpoena would impose an undue burden on the agency. DOT offered, however, to provide a declaration or some other form of written discovery addressing the topics in the subpoena.

15. Topics 1–3 of the subpoena request testimony about communications in which DOT advised USRC, Amtrak, or Congress that it "approved, authorized, or

directed" the replacement of USI as the sublessee or installation of Amtrak as the owner of the sublease.  As explained above, DOT never advised that it "approved, authorized, or directed" the replacement of USI as the sublessee or installation of Amtrak as the owner of the sublease.  DOT had an approval role only with respect to Amtrak's pre-programming requests and the Amtrak board vote.

16. Topic 4 of the subpoena requests testimony about communications in which DOT advised USRC, Amtrak, or Congress that DOT "would pay for costs or just-compensation awards or breach-of-lease damages that might flow from transferring ownership of the Subject Property Interest from USI to Amtrak."  DOT never advised USRC, Amtrak, or Congress that DOT would pay for costs or just compensation awards or breach-of-lease damages that might flow from Amtrak's acquisition of USI's sublease at Union Station.  Rather, as noted above, in March 2022, FRA approved Amtrak's pre-programming request to use up to $66 million in annual grant funds for the costs of the acquisition of the USI sublease.

17. Topic 5 of the subpoena requests testimony about communications in which DOT "set forth its conditions for approving, authorizing, or directing Amtrak's acquisition of the Subject Property Interest."  DOT's conditions for approving Amtrak's pre-programming request are included in FRA's March 2022 approval letter, attached hereto as Exhibit B, in which FRA conditioned its approval of the pre-programing request upon Amtrak's agreement to renegotiate the sublease with terms that better support the operations and capital improvements necessary for a multi-use, multimodal station.

18. Topic 6 of the subpoena seeks communications "made to DOT by USRC or Amtrak sharing information or opinions about the value of the Subject Property Interest or of Union Station." While there were communications that USRC and Amtrak made to DOT and FRA sharing information or opinions about the value of the Subject Property Interest or of Union Station, I understand that Defendant had the opportunity to seek discovery from USRC and Amtrak.

19. Topic 7 of the subpoena seeks information "provided to or by DOT's representative on the Amtrak Board of Directors in connection with the discussion and vote at the Board's March 22, 2022 meeting." While the Secretary of Transportation's designee on the Amtrak Board of Directors received board materials in connection with the discussion and vote at the board's March 22, 2022, meeting regarding Amtrak's exercise of eminent domain over the USI sublease, all of those materials were prepared by Amtrak, and I understand that Defendant had the opportunity to seek discovery from Amtrak. DOT's representative did not provide information to the Board in connection with the discussion and vote.

20. In a November 13 letter to DOT, Defendant also states that it would like to understand what transpired on a proposed call between the Deputy Secretary of Transportation, Polly Trottenberg, and Ben Ashkenazi, then-principal of USI, in late 2021. No such call between the Deputy Secretary and Mr. Ashkenazi took place.

21. Defendant also states in its November 13 letter to DOT that it would like to know whether the FRA responded to a request from the Staff Director of the

House's Subcommittee on Railroads regarding the Administration's position on Amtrak's taking. FRA did not respond to the request.

### C. Defendant's Subpoena Would Impose Significant Burdens on DOT

22. Defendant's request to produce a 30(b)(6) witness to address the foregoing topics is unduly burdensome.

23. There is no DOT employee with knowledge of all of these topics. The FRA employee who primarily worked on issues related to Union Station during the relevant time, the Chief, Passenger Rail Policy and Oversight of the Office of Railroad Policy and Development, has since retired. To prepare for a 30(b)(6) deposition, other DOT employees would need to educate a witness who would not already have personal knowledge about many of the topics. This process would be incredibly time intensive and would keep the involved employees from their mission-critical responsibilities.

24. Defendant seeks testimony on "what transpired" during calls between DOT Deputy Secretary Polly Trottenberg and Amtrak management on November 30, 2021. Even if the Deputy Secretary could recall details from those three-year old calls, adequately preparing a witness to address this topic would necessarily require substantial involvement of the Deputy Secretary herself, which would seriously interfere with her daily responsibilities as the number two official at DOT and Chief Operating Officer responsible for supporting the Secretary of Transportation's leadership, strategic vision, and management of DOT.

25.     Defendant similarly seeks testimony about what transpired during various meetings that occurred three years ago, in December 2021. Requiring DOT to produce a witness to testify about these meetings would be burdensome for DOT and duplicative, as Defendant already has documents and email communications reflecting what happened in these meetings.

I declare under penalty of perjury that the foregoing is true and correct.

_____
REBECCA REYES-ALICEA
DIRECTOR, AMTRAK & NORTHEAST CORRIDOR
PROGRAM DELIVERY