IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------------- X

NATIONAL RAILROAD PASSENGER
CORPORATION (AMTRAK),

      Plaintiff,                                                       No. 1:22-cv-01043(APM)

      v.

SUBLEASE INTEREST PERTAINING TO
DESCRIBED LEASEHOLD INTERESTS
AT WASHINGTON UNION STATION, et al.

      Defendants.

------------------------------------------------------------------- X

**JOINT CONSOLIDATED REPLY TO USSM'S OPPOSITION TO MOTION TO DISMISS AND MOTION FOR ENTRY OF CONSENT ORDER**

Plaintiff National Railroad Passenger Corporation ("Amtrak"), Defendant Kookmin Bank Co., Ltd., individually ("Kookmin") and in its capacity as trustee ("Trustee") of KTB CRE Debt Fund No. 8, a Korean Investment Trust (the "Trust"), by its agent on behalf of the Trust in Korea, Daol Fund Management Co. ("Daol"), and by its agent on behalf of the Trust in United States, Rexmark Holdings LLC d/b/a Rexmark ("Rexmark," and together with Kookmin, Trustee, the Trust, and Daol, "Lender"), and Defendant Union Station Investco, LLC ("USI") file this joint reply to the opposition of Union Station Sole Member ("USSM") to the Motion to Dismiss (DE # 168) and Motion for Entry of Consent Order (DE # 167).

First, USSM's Opposition does not respond to the central fact undergirding the Motion to Dismiss, namely, that as of the date of taking, USSM held no legal or equitable interest in the Subject Property Interest and USSM was not deprived of any property by the filing of the eminent-domain action. USSM relies on inapposite cases in which a party who is not the fee owner is allowed to participate in a condemnation action, but USSM fails to explain that in each one of

1

those cases, the party held a legally recognized interest in the taken property, such as a tenancy whose term extended beyond the date of taking. At no point in time did USSM hold such an interest. On April 14, 2022, USSM's only position was as the member of USI—and that property interest was not taken by the condemnation. USI is the entity that held sole legal title to the property taken by Amtrak, and Lender held the recorded first lien on the Subject Property Interest, which lien was also taken by operation of Amtrak's condemnation. Thus, the just compensation payable by Amtrak flows first to the priority lien holder (i.e. Lender) and then to USI, the holder of the legal title at the time of taking. USSM is not in line for payment of just compensation and is properly dismissed from the case.

Second, by operation of contracts whose unambiguous terms USSM has not contested, USSM surrendered any right it might have had to control the litigation or the settlement of the condemnation action on behalf of USI. Under Section 5.2.2 of both the Mortgage and Mezzanine Loan Agreements, during an Event of Default, Lender has the "exclusive power to collect, receive and retain any [Condemnation] Award and to make any compromise or settlement in connection with any Material Condemnation." It is undisputed that since May 2020—two years before the filing of this action—the parties have been operating under an Event of Default because USI and USSM separately defaulted on the payment of their respective loans. Given the state of default, Lender also holds a power of attorney to act for the defaulted borrower, USI. The Mortgage and Mezzanine Loan Agreements do not provide for USSM's seat at the negotiation table under the circumstances here. From the date of taking, Lender is the entity with the sole power to engage in settlement negotiations during any material condemnation that occurs during an Event of Default, and USSM cannot block Lender's ability to do so under the Loan Agreements. The plain language of both of the agreements provide Lender—not USSM or even USI—the exclusive right to make

#13583907v4\029938\0002

any compromise or settlement in a material condemnation action (as this is) because both USI and USSM have defaulted under the respective loans. The pendency of the New York litigation is no reason to delay entry of the Consent Order and the settlement of the case.

Moreover, under the terms of the preliminary injunction entered by the New York court, USSM is prevented from holding itself out as the owner or in control of USI, exercising any contractual or legal right of USI, and impeding the collection or transfer of any assets that are owed to USI. USSM's Opposition is in clear violation of the New York preliminary injunction.

Third, there is nothing unfair or improper about the negotiation and implementation of the settlement agreement and the entry of the requested Consent Order. Sophisticated parties had an arm's-length negotiation about the resolution of the case. As USSM itself notes, the settlement figure lies between one party's stated estimate of the property's value (approximately $250 Million) and the other party's estimate of the property value (approximately $700 Million). The settlement comes near the conclusion of discovery and before trial. USSM has not produced any evidence or argument that would undermine a freely negotiated settlement reached by knowledgeable parties facing an upcoming trial. USSM's grievances with Lender, the subject of two separate lawsuits, are beyond the purview of this *in rem* proceeding which relates to the sublease alone. USSM's effort to delay or torpedo the settlement should be flatly rejected.

    **1. USSM Should Be Dismissed Because It Has No Recognized Interest in the Subject Property Interest or the Just Compensation.**

On April 14, 2022, when Amtrak filed this action, the Subject Property Interest (the sublease position under the USRC-USI lease at Washington Union Station) was solely owned by USI and was subject to a priority lien held by Lender. USSM was not in this chain of title, and USSM's Opposition does not demonstrate or even claim that USSM was in the chain of title. By operation of law, the just compensation associated with taking the Subject Property Interest flows

3

first to the holder of the lien (Lender) and thereafter to the owner of the property interest (USI). USSM is not in this chain of distribution.

USSM cites cases for the proposition that the owner at the time of condemnation receives the just compensation because that is the time that title to the property is purchased by the condemnor. *See, e.g.*, *Danforth v. U.S.*, 308 U.S. 271, 284 (1939); *Knick v. Twp. of Scott*, 588 U.S. 180, 190 (2019); *Jacobs v. United States*, 290 U.S. 13, 17 (1933)); *Barron v. United States*, 174 Fed. Cl. 114, 121 (2024).  Lender and Amtrak agree. *See also Mountain Valley Pipeline, LLC v. Easements to Construct, Operate, and Maintain a Natural Gas Pipeline Over Tracts of Land in Giles Cty.*, No. 7:17-cv-00492, 2020 WL 2840165, at *4 (W.D. Va. June 1, 2020) (dismissing party who was not owner at time of taking). Amtrak's condemnation statute likewise describes the just compensation as being payable to the persons entitled to it as of the date of taking when title transfers. 49 U.S.C. § 24311(b)(2).

But unlike USSM's cited cases, this case does not present a situation where there are other parties who held a legally recognized estate or interest in the taken property. There are no co-owners of the Subject Property Interest. The tenants (sub-subtenants) who held leases in the station did not have any property interest taken because Amtrak expressly acquired the Subject Property Interest subject to the lease obligations; Amtrak acquired the sub-landlord's position without taking the subtenants' property.

USSM's position as of the date of taking was wholly different from the cases cited in its Opposition in which parties who had legally recognized interests in taken property were allowed to participate in the litigation and just compensation. *See, e.g.*, *State, by Comm'r of Transp. v. Jan-Mar, Inc.*, 210 N.J. Super. 236, 245 (Law Div. 1985) (gas-station tenant whose lease included unexercised option to purchase property from landlord allowed to participate in condemnation

action; had party held only option not part of a lease, party could not have participated); *issue mooted on appeal following settlement*, 236 N.J. Super 28 (App. Div. 1989); *DOT v. McMeans*, 294 Ga. 436, 438 (Ga. 2014) (where individual owned property and corporation wholly owned by individual operated business on property pursuant to lease, corporate tenant allowed to submit claim for business losses in condemnation); *Transcontinental Gas Pipeline Corp. v. Calco Enters.*, 132 N.C. App. 237, 243 (1999) (tenant with unwritten month-to-month tenancy had standing to object to condemnation). USSM miscites *Shavers v. Duval County*, 73 So. 2d 684, 687 (Fla. 1954) as standing for a much broader and inapposite proposition than warranted here. (Opposition at p. 6 ("Were Amtrak correct that only the legal title owners of the condemned property could be parties to a condemnation action, Lender would not be permitted to be a party here [because] "[A] mortgagee of lands sought to be condemned cannot be held to be an 'owner.'")). In fact, *Shavers* turned on unique statutory provisions and case law concerning certain types of mortgage instruments and focused on whether attorneys' fees were awardable. The case has no relevance here.

USSM also relies on inapposite shareholder cases in an unsuccessful effort to bolster its standing. *Jacobucci v. District Court of County of Jefferson*, 541 P.2d 667 (Colo. 1975), dealt with the unique structure known as a "mutual ditch company," created under Colorado statute to serve as an efficient method for owners of water rights to access their water interests. The unique purpose and statutory structure of a mutual ditch company warranted treatment different than accorded corporations organized under general corporate law, *see id.* at 672-73, leading to the holding that in a city's condemnation of the underlying water rights, the shareholders were the real parties in interest and were therefore appropriate parties to the condemnation. *Id.* The situation in that case has no parallel to the present situation. *See also Mesa Cty. Land Conservancy, Inc. v.*

5

*Allen*, 318 P.3d 46, 55 (Colo. 2012) ("It is well-settled in Colorado that mutual ditch company shares are 'unlike ownership of stock in other corporate entities'" (citing, *inter alia*, *Jacobucci*, 541 P.2d at 672).

Likewise, USSM's citation to *Rambo v. U.S.*, 117 F.2d 792 (5th Cir. 1941), does not advance USSM's position. In that case, the receiver of a defunct corporation concluded a condemnation action in which the shareholders were fully apprised and to some extent participated. When the shareholders thereafter sought to intervene to set aside the condemnation results on the basis that they were the "true owners" and had not been represented at the condemnation proceeding, the court denied the requested intervention. The Fifth Circuit upheld the decision as within the trial court's discretion but ultimately declined to reach the merits of whether the shareholders actually possessed any ownership interest. *Id.* at 794.

By far, the more apposite case is *Port of Grays Harbor v. Bankr. Est. of Roderick Timber Co.*, 73 Wash. App. 334, 340 (1994), which made clear that stockholders of a corporation "have no interest in the property being condemned, and are not necessary parties to a condemnation action," even if they may be entitled to receive funds after creditors of the corporation were paid. Investors' "interest in any condemnation award is nebulous and collateral" and a court must dismiss these investors from a condemnation case. *Id.* USSM argues that the court found the shareholders had an interest that was represented by the bankruptcy trustee. *See* Opp. 6. That is incorrect and ignores the court's clear holding that the shareholder's "interest in any condemnation award is nebulous and collateral at best." *Port of Grays Harbor*, 73 Wash. App. at 340.[1] It also

---

[1] USSM is also wrong to assert that *Port of Grays Harbor* was later limited to a ruling about attorneys' fees. In *Public Utility District No. 1 of Okanogan County v. State*, 182 Wash. 2d 519 (2015), the Washington Supreme Court simply clarified that *Port of Grays Harbor* did not "question[] the scope of a condemnor's authority." *Id.* at 531. It also made clear that the adjacent landowner in the case "does not seek to assert a property interest *or* to claim entitlement to fees," *id.*, making clear that it viewed *Port of*

ignores blackletter law in this country that, whether a condemnee is bankrupt or not, "[a] stockholder of the condemnee has no interest in the property being condemned and is not a property party to the action." 2 *Nichols on Eminent Domain* § 5.06 (2025).

Furthermore, USSM does not dispute *any* of the key facts to which its corporate designee testified, including that USSM was a member of USI at the time this action was filed but did *not* have an interest in the USI leasehold itself. Nor does USSM have any answer for Delaware law, which applies here and holds that limited liability company membership interests are not real property—they are *per se* personal property, and thus "[a] member has no interest in specific limited liability company property." 6 Del. Code § 18-701. Thus whatever membership interest USSM held in USI on the date of the taking, it did not possess an interest in the USI leasehold.

Finally, USSM does not dispute the fundamental rule that when a party lacks a compensable interest in the property taken, dismissal from the action is required. *United States v. 6.321 Acres of Land*, 479 F.2d 404, 405–06 (1st Cir. 1973) (affirming dismissal of the City of Boston as a defendant in condemnation action, where the interests the City advanced for staying in were frustration of a purported contract and expectation of tax revenue, because "it failed to establish ownership of a compensable interest in the property taken")

In sum, USSM has not established a predicate to ignore the fundamental rule that only those entities that had a legally recognized property interest in the taken property as of the date of taking are proper parties to the condemnation and entitled to just compensation. Because USSM did not have such an interest, it is properly dismissed from the case under Rule 71.1(i)(2).

---

*Grays Harbor* as a case about *both* who can assert a property interest *and* who can seek attorneys' fees, not just the latter.

**2. USSM Cannot Delay or Torpedo the Settlement.**

USSM seeks to impede the settlement by inserting itself into the settlement process and by attacking the ability of Lender and USI to settle the case. USSM's dismissal from the case would moot that challenge. But even assuming that USSM remained a party to the case, settlement as negotiated and implemented would still be appropriate because USSM contracted away whatever authority it had to control settlement of a condemnation action during an event of default. As there is no dispute that USSM defaulted on the Mezzanine Loan and USI defaulted on the Mortgage Loan for failure to pay approximately two years prior to the filing of the condemnation action, Lender has the exclusive authority to control settlement here.

Under Section 5.2.2 of both the Mortgage and Mezzanine Loan Agreements, during an Event of Default (which USSM admits occurred)[2], Lender has the "exclusive power to collect, receive and retain any [Condemnation] Award and to make any compromise or settlement in connection with any Material Condemnation." Lender also holds a power of attorney to act for the defaulted borrower, USI. The Southern District of New York recognized the validity of Lender's control over the process and of USI when it entered a preliminary injunction more than two years ago to prohibit USSM from asserting control over assets of USI or from purporting to act on behalf of USSM. Specifically, USSM is enjoined from "(1) holding itself out as the owner or in control of [USI]; (2) exercising or purporting to exercise any contractual or other legal right of USI . . . ; and (4) impeding the collection or transfer of any assets to USI that are owed to it."[3]

---

[2] In the pending summary judgment motion in front of the Southern District of New York, USSM admitted the material undisputed facts that USI defaulted on the $330 Million Mortgage Loan and USSM defaulted on the $100 Million Mezzanine Loan for failure to pay the amounts due and owing. *Daol Rexmark Union Station LLC et al. v. Union Station Sole Member, LLC*, 1:22-cv-06649-GHW (S.D.N.Y.), Def.'s 56.1 Counterstatement of Undisputed Facts, DE # 168 at ¶¶ 23-24.

[3] *Daol Rexmark Union Station LLC et al. v. Union Station Sole Member, LLC*, 1:22-cv-06649-GHW (S.D.N.Y.), Preliminary Injunction Order, DE # 39.

By arguing that it should be allowed to speak on behalf of USI regarding settlement and by seeking to strip Lender of its authority to settle this condemnation action, USSM's Opposition violates the terms of that injunction and is inconsistent with the controlling documents. USSM also cannot impede the collection of assets that are owed to USI, which includes the just compensation in the condemnation here.

In its Opposition, USSM also relies extensively on a passing comment by Judge Gregory Woods in the action pending before the Southern District of New York. (Opposition at pp. 1, 14.) Contrary to USSM's assertion, the New York court did not say it was "unlikely to award Lender a 'windfall'." (Opposition at p. 1.) Rather, Judge Woods encouraged the parties to discuss settlement and referenced that the possibility for Lender to "retain[] the full condemnation proceeds is I'll call it a windfall . . . ." (DE # 174-4 at 33:18-20.) However, the Court explicitly said it was not taking a position on that at that time (*id.* at 33:16-17), which was well before the completion of discovery. With the benefit of a full record, Lender has since moved for summary judgment on the declaratory judgment claim to recognize the mezzanine foreclosure sale and declare that USSM no longer has any right, title, or control over USI. If the Court in New York determines that the foreclosure sale was allowed under the Mezzanine Loan Agreement, there is no notion of a windfall—the outcome will be precisely one for which the parties bargained. This position is further confirmed by USSM's corporate representative, who confirmed during a deposition in this case that the foreclosure sale on the Mezzanine Loan was held in June 2022, regarded the interest of USI, and that the interest in USI was subsequently transferred to another entity (i.e. Daol Rexmark Union Station LLC).[4]

---

[4] *See* Tr. of Joe Press Deposition, DE # 168-3 at 248:3-20.

USSM asks the Court in the alternative to delay entering final judgment in this case for an indefinite period of time until the New York litigation is concluded. That request should be denied. There is nothing that could occur in the New York litigation which would have the effect of vesting USSM with a legally recognized interest in the Subject Property Interest as of the date of taking, and therefore no outcome would give USSM proper standing to participate in, much less control, this condemnation action. There is also no outcome in the New York litigation that could undo the underlying Events of Default that gave rise to the power of attorney and Lender's exclusive right to settle a material condemnation action. The plain language of the contractual agreements between USI and Lender and USSM and Lender provide explicit rights for Lender to be the entity in control of any settlement in a material condemnation during an Event of Default. If USSM had been current on its loan obligations, Lender would not have the exclusive right to control the settlement discussions. USSM's absence at the settlement table is a product of its own doing. USSM and Ashkenazy are among the most sophisticated business owners in the country and they understood full well the import of the contracts they signed in connection with borrowing money. USSM should not be allowed to avoid those terms now. For over two years, this case has proceeded notwithstanding the pendency of the New York case, and there is no just reason to delay now the resolution of this action. Moreover, there is no scenario under which USSM would be paid any of the monies from this settlement because USSM and USI's debts to Lender are substantially in excess of the settlement amount.

USSM asserts that it has separate "business losses" from losing the opportunity to manage Union Station. But USSM has no legal or equitable interest that was taken by Amtrak and no basis to assert a claim for such business losses in this case. Indeed, even if USSM had an ownership interest in the taken property, an owner is not entitled to recover business losses or consequential

10

damages that may occur, including frustration of plans or contracts tied to the property taken. *See United States v. Gen. Motors Corp.*, 323 U.S. 373, 379(1945) ("compensation for that [fee] interest does not include future loss of profits, the expense of moving removable fixtures and personal property from the premises, the loss of good-will which inheres in the location of the land, or other like consequential losses").

Because USSM has never held a compensable property interest in the Subject Property Interest, it is not entitled to participate in this case further.[5]

### 3. Even If USSM Used to Have an Interest, the Court Would Have to Substitute the Present Owner.

In its Motion, Amtrak argued, as alternative relief, that the Court could remove USSM by substitution under the provisions of Rule 71.1(g). Mot. 9 n. 6. USSM has by written admission admitted that its membership interest was foreclosed upon and transferred to another entity. Mot. Ex. 3 at pp. 9–11. That entity, which is controlled by the Lender, can be substituted for USSM in this proceeding if the Court wanted to make the owner of the membership interest of USI a party.

Although never mentioning Rule 71.1(g), USSM appears to argue that if it had property rights in USI at the time of taking that it cannot face substitution as a party. USSM makes no real argument in support, but cites *Danforth*, 308 U.S. at 284 and *Barron*, 174 Fed. Cl. at 121. Neither of those cases, however, dealt with a post-filing transfer of a property interest or the provisions of Rule 71.1(g). But clearly substitutions are allowed. *See, e.g. Midship Pipeline Co., LLC v. Tract No. CN-0004.000*, 2023 U.S. Dist. LEXIS 56394 (W.D. Okla. Mar. 31, 2023)(substitution of successor trustee); *United States v. 0.17 Acres of Land,* No. 7:09-CV-09, 2019 U.S. Dist. LEXIS 242727 (S.D. Tex. Sep. 16, 2019)(substitution due to death); *Constitution Pipeline Co., LLC v.*

---

[5] USSM claims that because it "through ACC, operated Union Station" and that somehow allows it to participate in this proceeding as a party. Response 8. However, a contract to do things at a property is not the same as having a property interest.

*Permanent Easement for 1.80 Acres*, 2021 U.S. Dist. LEXIS 193693 (N.D.N.Y. Oct. 7, 2021) (substitution due to transfer of interest and rights). Of course, the determination as to whether subsequential owners of property interest are entitled to be substituted is fact dependent. *See Mt. Valley Pipeline, LLC v. Easements to Construct, Operate & Maintain a Nat. Gas Pipeline Over Tracts of Land in Giles Cty.*, No. 17-cv-00492, 2020 WL 2840165, at *3 (W.D. Va. June 1, 2020). But here, USSM recognizes that its rights were transferred upon foreclosure and its Response makes no argument to the contrary. Thus, even if USSM had a compensable interest, this Court should remove USSM by substitution.

### 4. Entry of the Consent Order is Appropriate

In a final effort to frustrate the settlement, USSM makes the assertion that the settlement is somehow unfair or even suspect because of the amount of agreed-upon compensation and the resolution of the underlying dispute short of trial.[6] But the settlement itself belies that argument.

This has been a hotly contested lawsuit between these undersigned parties for almost three years. The upcoming trial would have resolved not only questions of value of the Subject Property Interest but the propriety and legality of the taking itself, with Lender and USI arguing that the taking should be vacated. There are risks to both parties associated with the timing of concluding this litigation. There is a significant range of outcomes regarding valuation, with potential swings

---

[6] USSM feebly attempts to frame the issue as one where Lender has been plotting to "steal the equity" in the Subject Property Interest for years. (Opposition at p. 1.) Many of the accusations USSM makes are misleading and false. Contrary to USSM's argument, Lender was never the entity that blocked the investment of new capital into Union Station prior to the condemnation. (*Compare* Opposition at p. 9 *with Daol Rexmark Union Station LLC et al. v. Union Station Sole Member, LLC*, 1:22-cv-06649-GHW (S.D.N.Y.), Def.'s 56.1 Counterstatement of Undisputed Facts, DE # 168 at ¶ 249 (conceding that the transaction did not close because USI did not obtain consent of the Original Mortgage Lender (i.e. not Lender) to proceed).) USSM has presented no evidence to justify holding Lender accountable for actions of the Original Mortgage Lender. Regardless, USSM's Opposition avoids the critical fact that at all times since May 2020—before USSM entered into this transaction with the sovereign wealth fund—both USSM and USI were in default on their respective loan obligations. Such Events of Default gave Lender (and at the time, Original Mortgage Lender) rights pursuant to the contractual agreements. USSM's pleas for equity should be rejected.

of hundreds of millions of dollars riding on the evidentiary presentation. There is a pending appeal, a FOIA action, and other disputes between these parties that would be addressed by settlement. The parties are sophisticated businesspeople, represented by counsel, who are presumed to be knowledgeable of their potential risks and rewards of pursuing litigation versus a negotiated settlement.[7] There is no basis for USSM to argue that the timing or the outcome of the settlement can be challenged by an entity that does not have a basis to participate in the settlement decision or participate in the proceeds.

    Since USSM is not a "necessary party" and all "necessary parties" have agreed to the Consent Order, then this Court has the authority, including under Rule 71.1, to enter the Consent Order and resolve the entirety of the instant case.

---

[7] Moreover, USSM notes in its Opposition that had Amtrak presented a "more reasonable valuation of the property when this action was filed, when USSM controlled USI, it is highly possible that litigation could have been avoided entirely." (Opposition at p. 9 n.7.) Presumably, USSM finds the proposed settlement amount to a be a "more reasonable valuation" that USSM wishes it had been able to accept. However, USSM has presented no evidence—and Lender knows of none—that would give USSM the contractual or legal right to negotiate a settlement after the Events of Default that occurred here. The Mortgage and Mezzanine Loan Agreements provide Lender that exclusive right.

## CONCLUSION

For the foregoing reasons, Lender, USI, and Amtrak respectfully request the Court to dismiss USSM from this litigation and enter the proposed Consent Order.


**COUNSEL FOR PLAINTIFF, NATIONAL RAILROAD PASSENGER CORPORATION**

*/s/ Lindsay Harrison (with permission)*
Lindsay Harrison, DC Bar #977407
Jessica Ring Amunson, DC Bar #497223
Jenner & Block, LLP
1099 New York Avenue, NW, Suite 900
Washington, D.C. 20001-4412
Telephone: 202-639-6000
Fax: 202-639-6066
lharrison@jenner.com
jamunson@jenner.com

*/s/ Patricia McHugh Lambert (with permission)*
Patricia McHugh Lambert, Federal Bar #MD0008
Kambon R. Williams, Federal Bar #MD29872
PESSIN KATZ LAW, P.A.
901 Dulaney Valley Road, Suite 500
Towson, Maryland 21204
Telephone: 410-938-8800
Fax: 667-275-3059
plambert@pklaw.com
kwilliams@pklaw.com


**COUNSEL FOR DEFENDANT, KOOKMIN BANK CO., LTD.**

*/s/ Paul J. Kiernan (with permission)*
Paul J. Kiernan
Louis J. Rouleau
HOLLAND & KNIGHT, LLP
800 17th Street, N.W., Suite 1100
Washington, D.C. 20006
Phone: (202) 663-7276
Fax: (202) 955-5564
Paul.kiernan@hklaw.com

*/s/ Y. David Scharf*
Y. David Scharf
Kristin T. Roy
Latisha V. Thompson
Amber R. Will
Mahnoor Misbah
*Admitted pro hac vice*
MORRISON COHEN, LLP
909 Third Avenue
New York, New York 10022
ydscharf@morrisoncohen.com

**COUNSEL FOR DEFENDANT, UNION STATION INVESTCO, LLC**

/s/   *Steven J. Willner (with permission)*
Thomas M. Wood, IV
Steven J. Willner
NEUBERGER, QUINN, GIELEN,
RUBIN & GIBBER, P.A.
One South Street, 27th Floor
Baltimore, Maryland 21202
Telephone: (410) 332-8542
Fax: (410) 332-8564
sjw@nqgrg.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2025, a copy of the Joint Consolidated Reply was served on all counsel of record by filing on the Court's ECF System.

/s/ Paul J. Kiernan
Paul J. Kiernan