**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK),<br><br>   Plaintiff,<br><br>   v.<br><br>SUBLEASE INTEREST OBTAINED PURSUANT TO AN ASSIGNMENT AND ASSUMPTION OF LEASEHOLD INTEREST MADE AS OF JANUARY 25, 2007, WITH SAID PROPERTY INTEREST PERTAINING TO DESCRIBED LEASEHOLD INTERESTS AT WASHINGTON UNION STATION, et al.,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 22-cv-1043 (APM) |

**MEMORANDUM OPINION & ORDER**

Plaintiff National Railroad Passenger Corporation ("Amtrak") filed this condemnation action to take a ground lease that gave its lessee the right to operate the District of Columbia's historic railway terminal, Union Station ("Leasehold Interest"). When Amtrak filed suit, it named as Defendants three parties: (1) the lessee to the Leasehold Interest, Union Station Investco, LLC ("USI"); (2) the lessee's parent company, Union Station Sole Member, LLC ("USSM"); and (3) Kookmin Bank Co., Ltd., as trustee of KTB CRE Debt Fund No. 8, a Korean investment trust ("Kookmin"), which held an interest in the Leasehold Interest as a secured lender. *See* Compl., ECF No. 1. Eventually, this court held that Amtrak had lawfully exercised its "quick take" statutory authority and granted Amtrak immediate possession of the Leasehold Interest, *see generally* Mem. Op., ECF No. 106 [hereinafter Takings Op.], and ordered that the funds

deposited by Amtrak as just compensation be released to Kookmin, which had foreclosed on USSM's ownership interest in USI by that time, *see* Order, ECF No. 156.

Now before the court is Amtrak's Motion to Dismiss USSM As a Defendant and Request for Expedited Treatment, ECF No. 168.  Amtrak and the other defendants, Kookmin and USI (collectively, "Lender"), have reached a settlement and seek entry of a final judgment disposing of this matter.[1]  To that end, Amtrak, with Lender unopposed, requests that USSM be dismissed from this case.  USSM opposes the motion.  *See* Def. USSM's Consolidated Opp'n to Mot. to Dismiss & Mot. for Entry of a Consent Order, ECF No. 174 [hereinafter USSM's Opp'n].

For the reasons that follow, the court finds that USSM has no legal or equitable interest in the Leasehold Interest entitling it to just compensation and thus dismisses it from the case.  The court, however, will defer entry of the consent order pending further discussions with Amtrak and Lender as to its form and substance.

## I.

Federal Rule of Civil Procedure 71.1 governs federal eminent domain proceedings.  When an action commences pursuant to this Rule, "the plaintiff need join as defendants only those persons who have or claim an interest *in the property* and whose names are then known."  Fed. R. Civ. P. 71.1(c)(3) (emphasis added); *see also* 49 U.S.C. § 24311(a) ("Amtrak may acquire by eminent domain . . . *interests in property*[.]" (emphasis added)).  This Rule is based on the blackletter principle that "when a parcel of land is taken by eminent domain, every person having an estate or interest at law or in equity in the land taken is entitled to share in the award."  *Swanson v. United States*, 156 F.2d 442, 445 (9th Cir. 1946).  Rule 71.1 also provides that "[t]he court may at any time dismiss a defendant who was unnecessarily or improperly joined."  Fed. R. Civ. P.

---

[1] *See* Joint Mot. for Entry of a Consent Order for Final Judg. and Request for Expedited Consideration, ECF No 167.

71.1(i)(3).  The original advisory notes to Rule 71.1 state that, "[i]n line with Rule 21, the court may at any time drop a defendant who has been unnecessarily or improperly joined *as where it develops that he has no interest*."  *Id.* advisory committee's note to original report (emphasis added); *see also EQT Gathering LLC v. A Tract of Prop. Situated in Knott Cnty.,* No. 12-cv-58, 2012 WL 3644968, at \*4 (E.D. Ky. 2012) (finding that a plaintiff cannot invoke Rule 41(a)(1)(A)(i) to dismiss individual defendants from a condemnation action but that a court may dismiss defendants "who no longer have an interest in the property to be condemned" under Rule 71.1(i)(2)).

Put succinctly, "[i]t is one of the functions of a condemnation suit to determine as between the defendants, who is the owner of the property and therefore entitled to the compensation for its taking."  *United States v. 88.28 Acres of Land, More or Less, Situated in Porter Cnty.*, 608 F.2d 708, 714 (7th Cir. 1979) (internal quotation marks omitted).  A claimant's interest should be determined prior to the ascertainment of just compensation.  *See United States v. Atomic Fuel Coal Co.*, 383 F.2d 1, 3 (4th Cir. 1967); *Washington Metro. Area Transit Auth. v. One Parcel of Land in Prince George's Cnty.*, 197 F. Supp. 2d 339, 342 (D. Md. 2002) (citing *Atomic Fuel Co.*, 338 F.2d at 3) ("[C]ourts should resolve the issue of competing claims as a preliminary matter, prior to granting just compensation.").  Generally, "[e]ach claimant bears the burden of establishing his or her right to the property in question."  *One Parcel of Land in Prince George's Cnty.*, 197 F. Supp. 2d at 342 (citing *United States v. Lee*, 360 F.2d 449, 452 (5th Cir. 1966) and *United States v. Certain Land in the Village of Highgate Springs*, 413 F.2d 128, 128 (2d Cir. 1969)).

**II.**

The court here must determine whether USSM has either a legal or equitable interest in the condemned property, namely, USI's Leasehold Interest in Union Station.[2]  *See 88.28 Acres of Land*, 608 F.2d at 715 (finding error where a lower court dismissed a defendant from the suit without first determining if they had an interest in the condemned land); *see also* Takings Op., Findings of Fact, ¶¶ 10, 18.  Whether USSM possesses such interest is measured at the time of the taking.  *See Danforth v. United States*, 308 U.S. 271, 284 (1939) ("For the reason that compensation is due at the time of taking, the owner at that time, not the owner at an earlier or later date, receives the payment.").  Under Amtrak's condemnation statute, "title to the [taken] property" "vests in Amtrak" at the time it files a declaration of taking and makes a deposit of just compensation with the court.  49 U.S.C. § 24311(b)(1)–(2).  Amtrak did so in this case on April 14, 2022.  *See* Decl. of Taking, ECF No. 4 (filed Apr. 14, 2022); Minute Entry, Deposit of Funds in the Amount of $250,000,000, Apr. 14, 2022.  So, to remain a defendant in this matter, USSM must show that it had either a legal or equitable interest in the Leasehold Interest as of April 14, 2022.

**A.     USSM's Claimed Interest in the Leasehold Interest**

The following facts are not in dispute.  As of April 14, 2022, USI owned the Leasehold Interest.  *See* Takings Op., Findings of Fact, ¶¶ 10, 18.  USI is a Delaware-incorporated LLC, and

---

[2] As discussed in the court's previous opinion, the United States owns Union Station. *See* Takings Op., ECF No. 106, Findings of Fact, ¶ 6.  The United States, acting through the Federal Railroad Administration, entered into a lease agreement with Union Station Redevelopment Corporation ("USRC") that "conveyed right, title, and interest in Union Station" to USRC.  *Id.* ¶ 8.  That "lease provides that USRC would enter into a firm business arrangement with a developer preselected by the Secretary to redevelop Union Station." *Id.* (internal quotation marks omitted).  Consistent with that term, USRC then entered into a sublease arrangement with a private developer that later assigned the sublease to USI in 2007 through an "Assignment and Assumption of Leasehold Interest." *Id.* ¶¶ 9–10.  That is the property that Amtrak has condemned.  *Id.* ¶¶ 10, 18.

USSM at the time was its sole member.[3]  *See id.* ¶¶ 3–4.  USSM is "a holding company, with no material assets other than its equity interest in USI."  Status Update, ECF No. 180, Ex. A, ECF No. 180-1 [hereinafter S.D.N.Y. Decision], at 3.  Thus, as of April 14, 2022, USSM had no property right in the Leasehold Interest separate and apart from its status as the sole member of USI.  Amtrak's Mot. to Dismiss USSM, ECF No. 168, Ex. 1, ECF No. 168-3, at 189:2–190:4 (USSM's corporate representative confirming this structure, agreeing that USSM had a membership interest in USI, not an interest in the property itself); *see also* USSM's Answer, ECF No. 38, ¶ 12 ("[USI] is the owner of the Subject Property interest and [USSM] is the sole member of [USI].").

USSM claims that the "the source of" its property interest, and reason it can remain in this action, "is [its] complete ownership of the equity interest in USI" at the time of the taking. Hr'g Tr., Feb. 27, 2025, ECF No. 177 [hereinafter Tr.], at 5:6-7.  But Delaware law confers no such property interest on USSM.  *See Phillips v. Washington Legal Found.*, 524 U.S. 156, 164 (1998) ("[T]he existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law." (internal quotation marks omitted)).  Delaware's Limited Liability Company Act provides that "[a] limited liability company interest is personal property.  A member has *no interest* in specific limited liability company property."  6 Del. Code § 18-701 (emphasis added); *see also Jordan v. Mirra*, No. 14-cv-1485, 2022 WL 610713, at *8 (D. Del. Feb. 22, 2022) ("Delaware courts have long recognized that a shareholder's equitable interest 'in the profits and in the distribution of assets on liquidation' does not grant them any 'interest [in] any specific assets of the corporation.'" (quoting *Buechner v.*

_____

[3] USI is presently owned by Kookmin and managed by entities affiliated with Kookmin.  *See* Takings Op., Findings of Fact, ¶¶ 15–16.  This is why USSM seeks to remain in this case—USI, the owner of the Leasehold Interest, is no longer under its control.

*Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 686 (Del. 1959))).  Delaware law thus

confers no legal or equitable interest in the Leasehold Interest to USSM by virtue of its status as

the sole member of USI at the time of the taking.[4]  *See also* 2 Julius Sackman et al., *Nichols on*

*Eminent Domain* § 5.06[2] (Matthew Bender ed., 3d ed. 2024) ("A stockholder of the condemnee

has no interest in the property being condemned and is not a proper party to the action.").  USSM

offers no different understanding of Delaware law.  Tr. at 5:9–6:4 (agreeing that Delaware law

provides that a sole member of an LLC does not have a legal interest in the LLC's property).

      USSM primarily looks to non-Delaware authority to make the case that it has a cognizable

property interest.  It cites two cases—one from Colorado and one from the Fifth Circuit—to argue

that "shareholders of the entities that own the property at the time of taking have a protectable

interest in the condemnation or in any *in rem* proceeding about the subsidiary owner's property."

USSM's Opp'n at 6.  But those case are inapposite.  The first, *Jacobucci v. District Court In & For*

*Jefferson Cty.*, concerns a unique Colorado corporate entity, a "mutual ditch company," where

ownership of "shares of stock . . . represent a *definite* and *specific* water right, as well as a

corresponding interest in the ditch, canal, reservoir, and other works by which the water right is

utilized."  541 P.2d 667, 672 (Colo. 1975) (emphasis added).  Colorado law thus granted the

stockholders in *Jacobucci* a legal interest in the property subject to the taking.  *See also Se. Colo.*

*Water Conservancy Dist. v. Fort Lyon Canal Co.*, 720 P.2d 133, 141 (Colo. 1986) ("[I]t is clear

that stock ownership in a mutual ditch company constitutes ownership of a real property interest

in water rights rather than a personal property interest in corporate stock.").  The owners of a

---

[4] If D.C. law has any bearing on the question, it is to the same effect.  *See Martin v. Santorini Capital, LLC*, 236 A.3d 386, 396–97 (D.C. 2020) (finding that owner and sole member of multiple LLCs was not the real party in interest in a lawsuit as he "lack[ed] a legal interest in the ownership rights" in "real properties . . . owned by the LLCs").

limited liability company, under Delaware law, do not have a similar interest in the company's property.

The second case, *Rambo v. United States*, involved stockholders of a defunct corporation claiming fee-simple title to the subject property. 117 F.2d 792, 793 (5th Cir. 1941). According to the stockholders who sought to intervene, "the corporation's charter had been forfeited." *Id.* As a result "they, as stockholders, became the owners of the assets of the corporation" and thus "they had acquired fee-simple title to the lands under . . . a decree of 'strict foreclosure' in the state court." *Id.* The *Rambo* court did not reach the merits of this contention. Instead, it rested its decision "upon the proposition that the order denying appellants the right to intervene and dismissing their petition was within the sound discretion of the trial court." *Id.* at 794. *Rambo* therefore offers no support for USSM's position.

Unable to locate a legal or equitable interest in either statute or case law, USSM asks for special treatment. It asserts that the court should recognize a property interest in the Leasehold Interest because USI is a "single purpose entity with a single owner." Tr. at 52:12-14. "[T]he way in which everybody deals with an LLC," USSM says, gives it a definitive property interest in the Leasehold Interest. Tr. at 8:16-17; *see also id.* at 6:20-25 (USSM noting that "[t]he right of the sole shareholder to control, receive any funds that are received by the entity[,] to make the decisions for the entity, to control how it operates, to take out borrowings on its behalf, all of those things go with—in a limited liability company format, the sole control").

But how "everybody deals with an LLC" is no basis to disregard the corporate form USSM selected. Generally, "Delaware law 'tends to accord dignity to legal entities except in cases in which the traditional law of piercing the corporate veil is met.'" *Crystallex Int'l Corp. v. Petroleos De Venezuela, S.A.*, 879 F.3d 79, 86 (3d Cir. 2018) (quoting *Hart Holding Co. v. Drexel Burnham*

*Lambert Inc.*, C.A. No. 11514, 1992 WL 127567, at n.11 (Del. Ch. 1992)).  This includes, for example, where the subsidiary is a mere "alter ego" of the parent corporation, *see id.*, or where there is fraud or illegality, *see, e.g., Martin v. D.B. Martin Co.*, 88 A. 612, 614 (Del. Ch. 1913).[5] USSM carefully avoids asserting either of these two scenarios.  By seeking the protections of the corporate form, USSM must abide by the attendant separation from the company's property. *Cf. Textainer Equip. Mgmt. Ltd. v. United States*, 115 Fed. Cl. 708, 716 (2014) (finding corporate parent lacked standing to bring claims for just compensation where no evidence was presented to demonstrate that it, as sole stockholder, was corporate subsidiary's alter ego).

### B.    USSM Fails to Identify Any Other Property Interest Entitling it to Just Compensation

USSM's other arguments likewise fall flat.  It argues that it need not be a "legal owner[] of condemned property to participate" in this action, as "parties whose connection to the condemned property is a contract or use of the land absent ownership are routinely permitted to join."  USSM's Opp'n at 7 (citing cases).  But each of its cited cases involve a property interest such as a lease or tenancy in the condemned property itself.  *See Dep't of Transp. v. McMeans*, 754 S.E. 2d 61, 63 (Ga. 2014) (corporate tenant with lease on subject property allowed to submit claim for business losses in condemnation); *Transcon. Gas Pipe Line Corp. v. Calco Enterprises*, 511 S.E.2d 671, 676 (N.C. Ct. App. 1999) (month-to-month tenancy holder had standing to challenge condemnation proceeding); *State, by Com'r of Transp. v. Jan-Mar Inc.*, 509 A.2d 310, 313–15 (N.J. Super. Ct. Law. Div. 1985) (finding that leasehold tenant with unexercised option to renew lease could participate in condemnation proceeding and present evidence of value of that option);

---

[5] Again, D.C. law is similar on this front.  To disregard the corporate form, there must be "unity of ownership and interest" between the various entities and either "use of the corporate form to perpetrate fraud or wrong, or other considerations of justice and equity justify it." *Estate of Raleigh v. Mitchell*, 947 A.2d 464, 470 (D.C. 2008) (internal quotation marks omitted).  Cases implicating federal interests are to similar effect. *See Labadie Coal Co. v. Black*, 672 F.2d 92, 96 (D.C. Cir. 1982).

*see also United States v. Detroit Int'l Bridge Co.*, 7 F.3d 497, 500–01 (6th Cir. 1993) (in Rule 24 intervention motion in eminent domain proceeding, allowing adjacent landowners to intervene as proposed settlement agreement provided for the future condemnation of the landowners' property). USSM has asserted no similar property interest in the Leasehold Interest.

USSM also points to the fact that Ashkenazy Acquisition Corporation ("AAC"), USSM's owner, operated Union Station and managed the station by contracting with other entities. *Id.* at 8–9. That AAC, itself a separate entity, had contracts regarding use of Union Station does not mean that USSM had a legal or equitable interest in the Leasehold Interest. *Cf. United States v. General Motors Corp.*, 323 U.S. 373, 378 (1945) ("[W]hether the sovereign substitutes itself as occupant in place of the former owner, or destroys all his existing rights in the subject matter, the Fifth Amendment concerns itself solely with the 'property', *i.e.*, with the owner's relation as such to the physical thing and not with other collateral incidents which may be incident to his ownership.").

Lastly, USSM urges that it has an equitable interest because it is entitled to the proceeds from any condemnation in excess of outstanding amounts due to Kookmin. Tr. at 11:11-19. That right, it claims, stems from the structure of USI's senior mortgage loan and USSM's mezzanine loan, both held by Kookmin. USSM's Opp'n at 8. But these positions have now been rejected by the Southern District of New York, in a parallel matter that squarely put at issue the rightful ownership of USI, which had been cast into doubt by Kookmin's foreclosure of the mezzanine loan. *See generally* S.D.N.Y. Decision; *see also* Takings Op., Findings of Fact, ¶¶ 12–17 (discussing the various loans at issue and the foreclosure proceedings). On summary judgment, the court in New York declared that: "(1) [Kookmin] is entitled under Section 5.2.2 of the Mezzanine Loan Agreement to act as USSM's attorney-in-fact with exclusive power to collect,

9

receive, and retain any condemnation award and with exclusive power to make a compromise or settlement in connection with the Condemnation Action," *i.e.,* this action; "and (2) all of USSM's right, title and interest in and to USI have been extinguished by the foreclosure sale, and following the foreclosure sale [a Kookmin entity] became the sole owner of USI." *Id.* at 57. USSM concedes that the New York court's adverse determination means that, absent a reversal on appeal, it has no right to the condemnation proceeds. *See* Tr. at 22:13–23:3 (USSM counsel agreeing that it would be "done here" if the court in New York "finds that, by reason of the foreclosure and the effect of the language, that USSM has no rights whatsoever in the condemnation"). It therefore has no legal or equitable interest in the Leasehold Interest that would allow it to remain a party to this case.

***

A condemnation proceeding is an action *in rem*, involving the taking of the property itself. *See A.W. Duckett & Co. v. United States*, 266 U.S. 149, 151 (1924). USSM does not assert an identifiable property interest in the Leasehold Interest at the time of the taking entitling it to just compensation. USSM is therefore dismissed as a defendant in this action.

Dated: March 5, 2025

Amit P. Mehta
United States District Court Judge