IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK), | * | |
| | * | CIVIL ACTION NO. 1:22-CV-01043 |
| PLAINTIFF, | * | |
| v. | * | |
| SUBLEASE INTEREST OBTAINED PURSUANT TO AN ASSIGNMENT AND ASSUMPTION OF LEASEHOLD INTEREST, *et al.* | * | |
| | * | |
| DEFENDANTS. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DECLARATION OF LOUIS WOLFOWITZ**

I, Louis Wolfowitz, pursuant to 28 U.S.C. 1746, hereby declare as follows:

1. At all times relevant to this Declaration, I was the Vice President of Real Estate and Commercial Development at Amtrak. I served in that role from March 2023 until May 2025. During my employment with Amtrak, I had certain responsibilities relating to Washington Union Station including involvement with the above captioned litigation. I am personally familiar with the facts set forth in this declaration.

2. I am providing this declaration to the Court to respond to what Mr. Michael Rebibo said in his two recent declarations about Amtrak representatives and me directly. His recall of events and conversations, as well as their import, are fundamentally different than mine.

3. I never told Michal Rebibo (or anyone associated with him) that Amtrak would pay or otherwise be responsible for any liabilities and/or obligations that USI or Rexmark incurred before the transfer of possession to Amtrak on July 29, 2024 (the "Possession Date"). I never suggested that Amtrak would be willing to pay those pre-Possession Date liabilities or obligations. And I never heard anyone at Amtrak indicate or suggest that Amtrak would pay

such liabilities or obligations. To the contrary, whenever Mr. Rebibo requested that Amtrak take on these obligations/liabilities, I told him that Amtrak would not do so.

4. Similarly, I never told Mr. Rebibo (or anyone associated with him) that Amtrak would waive its right to pursue tenants or licensees who did not pay *Amtrak* monies owed under their leases after possession transferred to Amtrak. I never told Mr. Rebibo (or anyone associated with him) that Amtrak would give any type of credit to tenants or licensees who erroneously sent payments to USI and/or Rexmark for the post-Possession Date period. And to be clear, I never suggested any of this to Mr. Rebibo. Nor did I ever hear of anyone at Amtrak indicating or suggesting this to Mr. Rebibo (or anyone associated with him).

5. In fact, I made clear to Mr. Rebibo, repeatedly, that what we would be resolving would only the dispute between Amtrak and USI/Rexmark—and that his other disputes such as with vendors/tenants/licensees or Ben Ashkenazy would not be impacted by the settlement. There is simply no way that Mr. Rebibo should have understood otherwise from all our conversations relating to settlement.

6. This, of course, did not mean that Mr. Rebibo stopped trying to raise the point. In fact, even as late as the morning of February 5, 2025, Mr. Rebibo was trying to get Amtrak to agree to protect USI/Rexmark for its pre-Possession Date obligations to vendors and to protect, by indemnification of otherwise, USI/Rexmark for monies that they had been paid by tenants and licenses post-Possession Date. In a conversation on that date, I made clear that Amtrak would not be doing that and that the settlement did not require us to do it either.

7. In various one on one conversations, Mr. Rebibo attempted to get me to agree to contractual terms for the settlement. I repeatedly had to tell him that Amtrak's in-house counsel Christopher Flack and the litigation team were in charge of drafting settlement terms and that the

attorneys needed to talk directly. Because I felt that Mr. Rebibo was trying to get me to agree to things that I would not and could not agree to, I was clear that everything would be in writing and that Amtrak's attorneys would document settlement terms.

8. I also want to make clear that I wouldn't advise that Amtrak take on the kind of obligations Mr. Rebibo is suggesting Amtrak did. I am an experienced real estate professional. I would not have agreed to pay or indemnify USI/Rexmark for vendor liabilities when, as Mr. Rebibo has made clear, the amount of such obligations were unclear. Nor would I agree to waive Amtrak's rights as to tenant payments or to indemnifying USI/Rexmark for erroneously retaining payments made to them, particularly when, as Mr. Rebibo has indicated, the amount that USI/Rexmark erroneously received was never disclosed to me

9. I want to be clear. While I cannot remember the exact words that I used when speaking with Mr. Rebibo on these issues, it was something close to "your liabilities are your liabilities and ours are ours" and "what's yours is yours." If Mr. Rebibo is suggesting that I said anything to the contrary, he is simply wrong.

I declare under penalty of perjury, on this 23th day of June, 2025, that the foregoing is true and correct, to the best of my knowledge, information and belief.

*Louis Wolfowitz* (signature)

Louis Wolfowitz