IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL RAILROAD PASSENGER
CORPORATION (AMTRAK),

    *Plaintiff,*

v.

SUBLEASE INTEREST PERTAINING TO
DESCRIBED LEASEHOLD INTERESTS AT
WASHINGTON UNION STATION, et al.,

    *Defendants.*

Case No. 22-cv-1043 (APM)

**NON-PARTY MOTION REQUESTING ORDER DIRECTING THE PARTIES TO FILE PUBLIC VERSIONS OF FILINGS CONCERNING CROSS-MOTIONS TO ENFORCE SETTLEMENT AGREEMENT**

**BACKGROUND**

For years Chipotle Mexican Grill ("Chipotle"), which owns and operates Mexican-inspired fast-casual restaurants in the United States, leased two properties (Sites #1318 and #2479) at Union Station from Union Station Investco, LLC ("Investco") under a series of lease agreements (the "Leases"). In August 2022, Rexmark Holdings LLC d/b/a Rexmark ("Rexmark")[1] took control of Investco. *See Daol Rexmark Union Station v. USSM*, No. 22-cv-6649 (Mar. 3, 2025, S.D.N.Y.), ECF No. 187.

On or around July 29, 2024, Rexmark and the National Railroad Passenger Corporation ("Amtrak") sent Chipotle a letter informing Chipotle that Amtrak had taken possession of Investco's leasehold at Union Station pursuant to a judgment in this case. *See* Exhibit A. That letter provided: "From the date of this letter forward, the addressee of this letter [Chipotle] should

---

[1] Rexmark is Defendant Kookmin Bank Co., LTD.'s agent in the United States. *See* ECF No. 167-1 at 1.

1

be dealing with Amtrak with respect to all issues relating to your lease/license at Washington Union Station." Ex. A at 1.  On or around the same day, Amtrak sent Chipotle a letter explaining that "By recent order of the Court, possession of the sublease interests was transferred to Amtrak as of July 29, 2024.  As a result, Amtrak is now your new landlord at [Union Station]."  *See* Exhibit B at 1 (together with Ex. A, the "Notices").

On or around July 18, 2024, Chipotle sent two payments to Investco for August 2024 rent (one for each of its restaurants at Union Station).  Those payments were made prior to the Notices.  It is Chipotle's understanding that Investco and Rexmark retained those payments, totaling $60,294.06, and did not transmit the funds to Amtrak.

After receipt of the Notices, Chipotle inadvertently directed its Union Station rent and utilities payments for September 2024 through February 2025 to Investco and Rexmark, instead of directing those payments to Amtrak.  Those payments totaled $383,067.07 (the "Misdirected Funds").  Investco and Rexmark apparently accepted these Misdirected Funds, which together with the August 2024 rent totaled $443,361.13.  The Misdirected Funds were sent after Invesco and Rexmark were no longer the landlord under the Leases, and thus Investco and Rexmark were not entitled to accept any rental or other payments from Chipotle.  Yet neither Investco nor Rexmark forwarded the Misdirected Funds to Amtrak or advised Chipotle that the payments should be directed to Amtrak.  Chipotle only became aware of the issue after it was contacted by Amtrak about overdue and outstanding payments, which it promptly paid to Amtrak.

On or around April 14, 2025, Chipotle sent a letter to Investco requesting return of the Misdirected Funds.  *See* Exhibit C.  Chipotle did not receive a response.

Chipotle sent another letter on July 15, 2025, again requesting the return of the Misdirected Funds.  *See* Exhibit D.[2]

In response to Chipotle's July 15 letter, counsel for Investco told counsel for Chipotle during a telephone call that Investco believes Amtrak allowed Investco to retain the rent payments it erroneously received from Chipotle as part of the settlement in this case.  *See* ECF No. 194-2 (Settlement Agreement).  Chipotle has also learned Parties in this case filed under seal cross-motions addressing the issue of misdirected rent funds.  *See* ECF Nos. 194–97 ("the Cross-Motions to Enforce").  The Cross-Motions to Enforce have been fully briefed since June 17, 2025.  The Court has yet to adjudicate the Cross-Motions to Enforce as well as the associated motions seeking to seal them.

## LEGAL STANDARD

There is a "strong presumption in favor of public access to judicial proceedings." *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991).  This presumption is grounded in the First Amendment.  *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980). "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press–Enterprise Co. v. Super. Ct. of Cal.*, 464 U.S. 501, 510 (1984).  This presumption of public access extends to motions filed with the Court.  *See United States v. Jackson*, 2021 WL 1026127, at *4 (D.D.C. Mar. 17, 2021) ("Documents and other materials filed in court 'intended to influence the court' are judicial records.") (quoting *In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, 964 F.3d 1121, 1128 (D.C. Cir. 2020)).

---

[2] Chipotle included with its July 15 letter three exhibits which correspond to Exhibits A–C hereto.  To avoid the filing of duplicate exhibits, those exhibits are omitted from Exhibit D.

In *Hubbard*, the D.C. Circuit articulated a series of factors for district courts to weigh when determining whether and to what extent a party's interest in privacy or confidentiality of its processes outweighs this presumption of public access. 650 F.2d at 317–22. These factors include: (1) the need for public access to the documents at issue; (2) the extent to which the public had access to the documents prior to the sealing order; (3) the fact that a party has objected to disclosure and the identity of that party; (4) the strength of the property and privacy interests involved; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced. *See id.*

In keeping with the Supreme Court's guidance that sealing be "narrowly tailored" to the property and privacy interests at stake, *Press–Enterprise*, 464 U.S. at 510, courts customarily require that redacted versions of sealed documents be filed publicly. *See Vanda Pharms., Inc. v. Food & Drug Admin.*, 539 F. Supp. 3d 44, 58 (D.D.C. 2021).

**ARGUMENT**

Chipotle (along with an unknown number of similarly situated Union Station tenants) has a strong interest the Cross-Motions to Enforce. Chipotle has paid *both* Parties (nearly $900,000 in combined, double-rent payments), yet only *one* of the Parties is entitled to the rent. For almost six months, Chipotle has sought the return of the rent it paid to Rexmark, and it has now learned that Rexmark and Amtrak are disputing which of them may keep Chipotle's rent payments. But that is all Chipotle knows because the parties have filed their substantive briefing and attachments, as well as their sealing motions, entirely under seal.

Based on the *Hubbard* factors Chipotle can assess, complete sealing of the Cross-Motions to Enforce appears unwarranted. The first *Hubbard* factor, "the need for public access to the documents at issue," strongly weighs in favor of disclosure. Litigation concerning the ownership

4

and control of Union Station—now controlled by Amtrak, a quasi-public corporation—is a matter of public interest. The outcome directly affects not only the management of one of the nation's most prominent transportation hubs, but also the rights of numerous tenants who operated retail and restaurant establishments at Union Station. The practical need for public access is illustrated by Chipotle's current situation: it has paid rent to both Investco and Amtrak, each of which (apparently) claim entitlement to the funds. Chipotle and the public should be permitted to see the arguments made to this Court about the retention of rent payments made by Chipotle and other Union Station tenants. This factor therefore weighs strongly in favor of disclosure.

The second factor, "the extent to which the public had access to the documents prior to the sealing order," is difficult to analyze given that Chipotle does not know what is under seal.

The third and fourth factors—"the fact that a party has objected to disclosure and the identity of that party" and "the strength of the property and privacy interests involved"—also favor disclosure here because any truly confidential information can be redacted in public versions of the Parties' submissions.

The fifth factor, "the possibility of prejudice to those opposing disclosure" also weighs in favor of disclosure. Tailored redactions would allow the Parties to maintain protection over any truly confidential information. See *Vanda Pharms.*, 539 F. Supp. 3d at 58.

The sixth factor, "the purposes for which the documents were introduced," likewise weighs in favor of disclosure. The briefing at issue—based on the limited information available on the public docket—appears to directly concern the enforcement of the Parties' settlement agreement, and apparently also the issue of entitlement to misdirected rent payments—which directly impacts Chipotle, as well as other nonparties.

## CONCLUSION

Chipotle respectfully requests that the Court direct the Parties to file within a reason time public versions of all filings related to the Cross-Motions to Enforce (ECF Nos. 194–97). Those documents include Defendants' Motion for Leave to File Document Under Seal (ECF No. 194), Defendants' Motion to Enforce Settlement Agreement (ECF No. 194-1), the Settlement Agreement (ECF No. 194-2), the Declaration of Michael Rebibo (ECF No. 194-3), Plaintiffs' Motion for Leave to File Document Under Seal (ECF No. 195), Plaintiff's Motion to Enforce Settlement Agreement (ECF No. 195-1), the Declaration of Christopher J. Flack (ECF No. 195-2), Exhibits 1-8 (ECF Nos. 195-3–195-10), Plaintiff's Motion for Leave to File Document Under Seal (ECF No. 196), Plaintiff's Response to Defendants' Motion to Enforce Settlement Agreement (ECF No. 196-1), Defendants' Motion for Leave to File Document Under Seal (ECF No. 197), Defendant's Opposition to Plaintiff's Motion to Enforce Settlement (ECF No. 197-1), the Declaration of Paul J. Kiernan (ECF No. 197-2), and the Supplemental Declaration of Michael Rebibo (ECF No. 197-3).

Respectfully submitted,

*/s/ Scott E. Gant*
Scott E. Gant (D.C. Bar No. 455392)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC  20005
Telephone: (202) 237-2727
sgant@bsfllp.com

*Attorney for Chipotle Mexican Grill, Inc.*