# EXHIBIT A

UNION STATION INVESTCO, LLC
c/o Rexmark
295 Madison Avenue, Suite 1200
New York, NY 10017

NATIONAL RAILROAD PASSENGER CORPORATION
1801 Market St, 8th Floor, Real Estate
Philadelphia, PA 19123

July 29, 2024

**Chipotle Mexican Grill of Colorado, LLC**
**Chipotle Mexican Grill**
**11 W Nationwide Blvd #250**
**Columbus, OH 43215**

Re: Introduction of New Landlord at Washington Union Station

Dear Tenant/Licensee:

As you may be aware, National Railroad Passenger Corporation ("Amtrak") filed a legal action on April 14, 2022 entitled National Railroad Passenger Corporation v. Sublease Interest Obtained Pursuant to an Assignment and Assumption of Leasehold Interest made as of January 25, 2007, with said property interest pertaining to Described Leasehold Interests at Washington Union Station, et al. United States District Court for the District of Columbia Case No. 1:22-cv-01043. Recently, the United States District Court for the District of Columbia ordered possession of the Union Station Investco, LLC ("USI") sublease interest in Washington Union Station ("Sublease Interest") to be turned over to Amtrak. In light of this Order, a copy of which is enclosed, USI will no longer be in possession of the Sublease Interest and/or your landlord/licensor. From the date of this letter forward, the addressee of this letter ("You") should be dealing with Amtrak with respect to all issues relating to your lease/license at Washington Union Station ("WUS").

By separate letter, Amtrak will be following up with You as to the particulars regarding the management and operation of WUS, and matters relating to Your lease/license including Your payment of rent.

Sincerely,

Union Station Investco, LLC                    National Railroad Passenger Corporation

By: _____            By: _____
    Name: Michael Rebibo                        Name: Louis Wolfowitz
    Title: Authorized Signatory                  Title: Vice President – Real Estate and
                                                 Commercial Development

Attachment

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK) | * | |
| | * | CIVIL ACTION NO. 1:22-CV-01043 |
| PLAINTIFF, | * | |
| | * | |
| v. | * | |
| | * | |
| SUBLEASE INTEREST OBTAINED PURSUANT TO AN ASSIGNMENT AND ASSUMPTION OF LEASEHOLD INTEREST, et al. | * | |
| | * | |
| DEFENDANTS. | * | |

*       *       *       *       *       *       *       *       *       *       *       *       *

## ORDER GRANTING MOTION FOR IMMEDIATE POSSESSION

For the reasons set forth in the Court's Memorandum Opinion dated April 17, 2024[1], the Court GRANTS the Motion for Immediate Possession filed by Plaintiff National Railroad Passenger Corporation ("Amtrak").

The Court directs Union Station Investco, LLC to turn over to Amtrak possession of the Subject Property Interest consistent with following terms and conditions:

1.    Transfer of Possession:  Possession of the Subject Property Interest is transferred to Amtrak as of 12:01 a.m. on July 15, 2024, which shall be hereinafter referred to as the "Possession Date." This transfer of possession includes the transfer of rights of USI (or any other Defendant) in and to any subleases, leases and licenses, and all rents, other payments and security deposits relating thereto from the date of the Possession Date.

2.    Future Obligations and Future Liabilities:  Beginning on the Possession Date,

---

[1] Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the Memorandum Opinion dated April 17, 2024.

Amtrak will be solely responsible for the performance of future obligations (i.e. obligations that accrue on or after the Possession Date, which shall hereinafter referred to as "Future Obligations") or liabilities arising after the Possession Date ("Future Liabilities") that USI would otherwise have had: (1) in connection with the Subject Property Interest; and (2) any sublease, lease, or license for a portion of the station that is a part of the Subject Property Interest and for which Amtrak is being granted possession.

1.      Jones Lang LaSalle:  Prior to the Possession Date, Amtrak may contact Jones Lang LaSalle (JLL) concerning a future business relationship relating to the Subject Property Interest.

2.      Transfer of records, documents, and other materials relating to the operation of the Subject Property Interest in USI's possession, custody or control: Information, records, documents, and other materials will be provided by Lender and USI to Amtrak as set forth below.  The information transferred will receive the same confidentiality protections as those set forth in the previously entered protective order, with the understanding that Amtrak may also use the information received for transition purposes and/or operational purposes with respect to the Subject Property Interest.

3.      Timing for the production of documents:  On May 9, 2024, Amtrak provided to USI and Lender a document itemizing the documents, reports, spreadsheets, contracts, and other materials that Amtrak would like to receive from USI and Lender in connection with this transition efforts. USI and Lender shall create and furnish a data room to be available to Amtrak with the requested documents.  Consistent with the previously entered protective order and the prior paragraph, Amtrak shall have the right to download and use documents from the data room. USI and Lender shall begin producing documents immediately following entry of this Order. Leases and licenses, and their modifications and amendments, as well as the last known   contact

information (person, address, email address, and, if available phone number) for all lessees and licenses, and the service contracts for the Subject Property Interest shall be produced by May 28, 2024. All other documents in the Lender's or USI's possession, custody or control that are reasonably accessible to Lender and USI shall be produced by June 14, 2024.

1.     Security deposits, advance payments, and rents: Lender and USI shall provide to Amtrak information regarding security deposits held, advance payments received, accounts relating to rent payments, and similar information, subject to confidentiality protections, by May 28, 2024.

2.     Special Events: Lender and USI shall provide to Amtrak by May 28, 2024 a list of all upcoming special events to be held at the Station, and all related agreements and documents (including event contracts). Lender and USI shall not schedule or contract for special events that will take place after the Possession Date unless Amtrak specifically consents in writing to the event schedule and terms.

3.     Transfer of rent collection and utilities and other expense payment responsibilities: Rent, utilities and expense payments for the period after the Possession Date shall be the responsibility of Amtrak. Lender and USI shall provide to Amtrak a list of such obligations on or before May 28, 2024, with all documents related thereto to be produced by June 14, 2024.

4.     Transfer of operation and maintenance responsibilities: As of the Possession Date, all current and future operation and maintenance responsibilities of the Subject Property Interest shall be transferred to Amtrak. Lender and USI shall provide to Amtrak all information in their possession, custody and control and reasonably accessible regarding current operation and maintenance responsibilities pertaining to the Subject Property Interest by May 28, 2024, with documents related thereto being produced by June 14, 2024.

1.      Identification and transfer of work-in-progress responsibilities:  Lender and USI shall provide to Amtrak by May 28, 2024 a list of all capital work-in-progress responsibilities, with all documents related thereto being produced by June 14, 2024.   Beginning May 14, 2024, Lender and USI shall not start any new capital work in the Subject Property Interest unless Amtrak specifically consents in writing to the work.

2.      Status of retail and office leasing activity:  Lender and USI shall provide to Amtrak a list of and information about the current status of retail and office leasing activity (including current draft leases exchanged with prospective tenants) by May 28, 2024.  Lender and USI shall be bound by the restrictions on future leasing activities as described below. Separately, there are three current lawsuits involving previous Station tenants or arising from occupancy agreements. Lender and USI shall coordinate with Amtrak about these lawsuits.

3.      Digital and other advertising agreements and revenues:  Lender and USI shall provide to Amtrak all reasonably accessible information and documents in their possession, custody and control regarding digital and other advertising agreements and revenues by June 14, 2024.

4.      Assessment of the physical conditions of space outside of the pre-existing Amtrak sublease:  Lender and USI provided a walk-through of most of the space covered by the Subject Property Interest and outside of the pre-existing Amtrak sublease; Lender shall provide all reasonably accessible documents and information to Amtrak regarding the physical condition and operational requirements of the space covered by the Subject Property Interest Amtrak in their possession, custody and control by June 14, 2024.

5.      Letter to Tenants and Licensees:  On the Possession Date, Amtrak, USI and Lender shall send a joint letter to tenants and licensees using the template of Exhibit A. The parties shall

make immediate preparations so that the letter can be sent to the appropriate contact address for tenants and licensees on the Possession Date.

1.      Restrictions on USI during the Interim Period-Operations:  From the date of this Order until the Possession Date (the "Interim Period"), USI shall continue to manage the day-to-day operations at the Subject Property Interest, and: (1) abide by the terms of the sublease with USRC; (2) follow the terms of its existing retail leases and other commercial agreements with tenants and third parties; (3) pay required operating expenses and other obligations; and (4) provide all necessary services, including repair, maintenance, and other operational services and continue working on existing projects.

2.      Restrictions on USI during the Interim Period—Leasing and Other Activities: During the Interim Period, USI shall not do any of the following without Amtrak's prior written consent: (1) negotiate with a third party for any long-term new leases or other commercial agreements; (2) enter into any new leases, amendments or modification to existing leases or other commercial agreements or any amendments and modification of existing commercial agreements that extend beyond the Interim Period (including but not limited to license, service contracts, and agreements for events and event space); or (3) undertake any new activity that affects the station structure at the Subject Property interest, including renovations, improvements, infrastructure modifications, build-out or non-emergency repairs beyond routine repair and maintenance.

3.      Restrictions on USI during the Interim Period—Negotiations:   USI shall not negotiate any new retail leases, licenses or other commercial agreements or any amendments thereof, except as follows: (1) USI can undertake efforts as to collection of existing Account Receivables and enforce its existing rights and obligations under the retail leases and licenses; (2) USI is not restricted from ordinary lease administration activities, including collection of rent and

payment of expenses; (3) USI can undertake or continue leasing activity to which Amtrak has given its prior written consent; and (4) USI shall not enter into any licenses or other commercial agreements that would encumber Amtrak after the Possession Date, unless Amtrak specifically consents in writing to the contract and its contract and its terms.  Subsection 4 of this paragraph shall not apply to leases, licenses or other commercial agreements where an amendment or modification relates only to a period of time before the Possession Date (*i.e.* commercial agreements that may be cancelled on 30 days written notice).

So ORDERED this ____ day of May, 2024.

Amit Mehta

Digitally signed by Amit Mehta
Date: 2024.05.23 22:11:16 -04'00'

_____

The Honorable Amit P. Mehta
United States District Court Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ——————————————————————— ) | |
| **NATIONAL RAILROAD PASSENGER** ) | |
| **CORPORATION (AMTRAK),** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 22-cv-1043 (APM)** |
| ) | |
| **SUBLEASE INTEREST OBTAINED** ) | |
| **PURSUANT TO AN ASSIGNMENT AND** ) | |
| **ASSUMPTION OF LEASEHOLD INTEREST** ) | |
| **MADE AS OF JANUARY 25, 2007, WITH** ) | |
| **SAID PROPERTY INTEREST** ) | |
| **PERTAINING TO DESCRIBED LEASEHOLD** ) | |
| **INTERESTS AT WASHINGTON UNION** ) | |
| **STATION, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ——————————————————————— ) | |

## ORDER

Following a period of discovery and an evidentiary hearing, the court issued a Memorandum Opinion on April 17, 2024, which found that Plaintiff Amtrak had carried its burden of establishing entitlement to immediate possession of Lender's leasehold interest in Union Station under 49 U.S.C. § 24311(a)(1)(A) and (b). Mem. Op., ECF No. 106.[1] The court ordered the parties to negotiate the conditions under which the leasehold interest would be transferred to Amtrak, *id.* at 47, and on May 24, 2024, the court entered an Order granting Amtrak's Motion for Immediate Possession, consistent with the parties' agreed upon terms. ECF No. 111. The Order provided that possession of the leasehold interest would transfer at 12:01 a.m. on July 15, 2024. *Id.* at 1.

---

[1] The court uses the term "Lender" in the same way as in the Memorandum Opinion. Memo. Op. at 10.

Twelve days later on June 5, 2024, Lender noticed an appeal of the Order, ECF No. 114, and, on the next day, filed a 31-page motion to stay the Order pending appeal, ECF No. 116 ("Motion"). Lender did not move to expedite briefing on the Motion. The parties therefore completed briefing according to the standard deadlines, and the Motion became ripe on June 27, 2024. ECF No. 121. Lender did not ask for an expedited decision or to stay the Order pending the Motion's disposition. Instead, eight days after filing the Motion (which included July 4th), Lender filed an Emergency Motion for a Stay Pending Appeal in the D.C. Circuit. Appellants' Emergency Mot. for a Stay Pending Appeal, No. 24-7089 (July 5, 2024). In that motion, it noted only that the "district court had not acted on Leaseholders' stay motion," without advising the Circuit that the motion had been ripe for a mere eight days without any request for expedition. *Id.* at 10.

Lender asserts that this court made multiple errors, both legal and factual. Some legal arguments Lender makes for the first time. *Compare* Mot. at 9 (asserting that Amtrak lacks quick-take authority under § 24311 because, unlike the federal condemnation statute, it lacks the statutory text "the land is condemned and taken for the use of" Amtrak) *with* Mem. Op. at 30 (noting Lender "had not made that argument"); *compare* Lender's Reply in Further Support of Mot., ECF No. 121, at 6 (claiming that "necessary" under § 24321(a)(1)(A) means "indispensable; vital, essential; requisite") *with* Lender's Proposed Findings of Fact and Conclusions of Law, ECF No. 99, ¶ 85 (citing the "significant relationship" test and not making a plain statutory text argument); *see also* Mot. at 10 (arguing that Amtrak lacks quick-take authority under § 24311 because the statute only permits a taking if "financial resources are available"); *id.* at 18 (maintaining that the "necessity" inquiry required the court to "consider the [Union Station Redevelopment Act] and related government directives").

Other arguments are based on incomplete facts. Lender asserts that the court silently converted Amtrak's motion for immediate possession into one for summary judgment, when it did

no such thing. *Id.* at 10–14. Lender also contends that the court denied it discovery on issues relevant to immediate possession, but it never sought any discovery on those topics. *Id.* at 13–14. And it complains that Amtrak late-disclosed Plaintiff's Exhibit 10[2] and that the court's reliance on it was "plain error," *id.* at 18, even though Lender never objected to the exhibit when Amtrak introduced it as demonstrative evidence and *Lender*, not Amtrak, moved it into evidence, *see* Hr'g Tr., Sept. 11, 2023, at 47, 163.

All of that said, Lender's Motion deserves the court's thorough consideration, and the D.C. Circuit would benefit from a written decision. This court is unable to do that, however, in time to allow for unhurried appellate review before July 15, 2024. Accordingly, the court hereby amends the Order to extend the date of transfer to 12:01 a.m. on July 29, 2024. The court will issue a written opinion as expeditiously as its docket permits.

Dated: July 9, 2024

_____
Amit P. Mehta
United States District Court Judge

---

[2] Lender's Motion incorrectly identifies the exhibit in question as "Exhibit 11."