**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK),**<br><br>*Plaintiff*<br><br>v.<br><br>**SUBLEASE INTEREST PERTAINING TO DESCRIBED LEASEHOLD INTERESTS AT WASHINGTON UNION STATION, et al.,**<br><br>*Defendants* |

Case No. 1:22-cv-01043 (APM)

**MOTION TO RECONSIDER THE LIMITED UNSEALING OF
THE SETTLEMENT AGREEMENT**

On October 14, 2025, this court ordered that Union Station Investco, LLC ("*USI*") and Amtrak unseal certain portions of their docket filings: ECF Nos. 188, 194, 195, 196, and 197. (ECF No. 204.) However, the unsealing of the Settlement Agreement itself was limited in so far as "[o]nly those clauses of the Settlement Agreement that are cited in the parties' later filings need be disclosed." *Id*. at *4. New Tradition Outdoor, LLC ("*New Tradition*") respectfully requests that this court reconsider the scope of its prior order and order the Parties to either (i) unseal the Settlement Agreement in its entirety or (ii) unseal any paragraph in the Settlement Agreement that would impact the recovery of any misdirected payments to USI, including any "wrong pockets" provisions, any releases made by the parties thereto, and paragraphs 2.4 and 4.2.4. Each of those provisions having been raised by USI as a basis to not return New Tradition's inadvertently misdirected payments.

Pursuant to the court's inherent power to reconsider an order "as justice requires," *Capitol Sprinkler Inspection, Inc. v. Guest Services, Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (citation

omitted), and pursuant to the permissive rules regarding non-party intervention for the purpose of unsealing judicial records, *see Vanda Pharmaceuticals, Inc. v. U.S. Food and Drug Administration*, 529 F. Supp. 3d 44 (D. D.C. May 6, 2021), New Tradition requests that this court reconsider the scope of its prior unsealing order as to the Settlement Agreement.  While Chipotle's motion (ECF No. 200) explains the predicament faced by the former tenants and licensees of USI, New Tradition has additional color to add around how the secrecy of the Settlement Agreement is being used against third parties to deprive them of their inadvertently misdirected payments.  The additional facts, described below, illustrate how a limited unsealing of the Settlement Agreement may continue an injustice and deprive the former tenants and licensees of their inadvertently directed funds.

The crux of the issue is that, similar to the circumstances described in Chipotle's motion, New Tradition licensed space in Union Station from USI in the form of a network of digital advertising screens that New Tradition is permitted to operate and commercialize.  Similar to Chipotle, New Tradition also inadvertently continued to make license fee payments to USI after this court transferred the "rights of USI . . . to any subleases, leases and licenses, and all rents, other payments and security deposits" to Amtrak, effective on July 29, 2024.  (ECF No. 111 ¶1; ECF No. 122.)  The amount of New Tradition's inadvertently misdirected payments totals $1.125 million.  After discovering the issue, New Tradition kindly asked USI to return the funds.

However, USI has repeatedly refused, claiming that the confidential Settlement Agreement entered in this very case permits USI to keep all misdirected payments.  USI and its outside counsel have variously referenced a "wrong pockets" provision, releases by Amtrak, and paragraphs 2.4 and 4.2.4 of that agreement as the basis for its position.  To illustrate, on March 25, 2025, after a call between Rexmark and New Tradition principals, general counsel for New Tradition wrote to

Micheal Rebibo of Rexmark to follow up on how he was "going to send across the language from the Rexmark/Amtrak agreement that provides for a 'wrong pockets' provision." *See* Exhibit 1. Four minutes later, outside counsel for USI wrote back to explain how:

> In response to your inquiry about monies alleged to be owing to you from Union Station Investco, LLC, please be advised that USI is not liable to you for the money you are claiming. Amtrak is in control of Union Station, not USI. Pursuant to Paragraphs 2.4 and 4.2.4 of the Agreement of Settlement dated as of February 5, 2025, Amtrak expressly agreed to release and discharge Union Station Investco from any and all claims arising out of or associated with claims for monies paid by third parties as rent pursuant to subleases or monies owed to third parties associated with operation of Union Station.

*Id*. That state of affairs has continued since. On August 27, 2025, our office wrote to outside counsel for USI to demand the return of New Tradition's misdirected funds. *See* Exhibit 2. Moments after transmittal of our demand letter, outside counsel for USI responded that "[i]t remains the position of Union Station Investco LLC that this is a matter to be addressed with Amtrak which, as we understand it, improperly charged New Tradition a second time for these rents." *See* Exhibit 3.

That state of affairs is precisely why New Tradition respectfully requests that this court reconsider its limited unsealing of that Settlement Agreement. As this court pointed out, it is only the second and third *Hubbard* factors that favor sealing because the Settlement Agreement was not previously public and the Lender Defendants objected to disclosure. (ECF No. 204 at *3.) Those second and third *Hubbard* factors respectively being: (2) the extent of previous public access to the documents; and (3) the fact that someone has objected to disclosure and the identity of that person. *See generally United States v. Hubbard*, 650 F.2d 293, 316-22 (D.C. Cir. 1980).

While there is no serious dispute that the Settlement Agreement was not previously public, the mere fact that the Lender Defendants (including USI) have objected to the unsealing of that agreement has been given too much weight.

*First*, Amtrak itself has not taken the position that the Settlement Agreement should remain sealed.  Amtrak explained how "[d]isclosure of the Settlement Agreement would make clear that Rexmark's position about its terms is incorrect" and, "[w]ithout access to the Settlement Agreement, tenants have no real way to know that Rexmark's representations to them are inaccurate."  (ECF No. 203 at *1-2.)  The only remaining objecting party is the Lender Defendants, including USI.  (ECF No. 202.)

*Second*, USI's objection to unsealing is overwhelmingly self-serving.  USI has used the confidentiality of the Settlement Agreement in an opportunistic manner—on the one hand, arguing to New Tradition that provisions in that agreement explain why USI may keep the misdirected funds while, on the other hand, taking a different position with this very court that "[t]he terms and negotiations of the settlement will not impact whether Chipotle is entitled to repayment of rental payments and from whom."  (ECF No. 202 at *4.)  It is unclear what other arguments USI has made to its other former tenants and licensees who are similarly situated.  This is a characteristic which Amtrak emphasized when it described USI's gamesmanship as using confidentiality as "a shield against its own liability" while using confidentiality as "a sword against Amtrak vis a vis its tenants."  (ECF No. 203 at *1.)

*Third*, justice is not furthered by the Settlement Agreement remaining mostly sealed.  A previously sealed record "may be maintained only 'if the district court, after considering the relevant facts and circumstances of the particular case, and after weighing the interests advanced by the parties in light of the public interest and the duty of the courts, *concludes that justice so requires.*'"  *MetLife, Inc. v. Financial Stability Oversight Council*, 865 F.3d 661, 665-6 (D.C. Cir. 2017) (citation omitted, emphasis added).  It is unclear how justice is furthered by a court allowing a party to cherry-pick contractual terms, and when and to whom those terms should apply, *all*

*without disclosing what those terms are*.  To be clear, there is no *publicly known* legal or equitable basis for USI to retain the inadvertently misdirected funds.  *See Credit Lyonnais-New York v. Washington Strategic Consulting Group, Inc.*, 886 F. Supp. 92, 93 (D. D.C. May 12, 1995) (returning misdirected funds after considering equitable causes of action).  That precedent is clear. Instead, USI is using the secrecy around the Settlement Agreement to assert a private edict on what the law is or should be.

* * *

For those reasons, New Tradition respectfully requests that this court reconsider its prior order and direct the Parties to either (i) unseal the Settlement Agreement in its entirety, (ii) unseal any paragraph in that Settlement Agreement that would impact the recovery of any misdirected payments to USI, including any "wrong pockets" provisions, any releases by the parties thereto, and paragraphs 2.4 and 4.2.4, or (iii) provide any other relief which this court deems just and equitable.

Dated: October 17, 2025                    Respectfully submitted,


                                           */s/ Michele H. Dinterman*
                                           Michele Hayes Dinterman (ID No. 19767)
                                           NILES, BARTON & WILMER, LLP
                                           111 South Calvert Street, Suite 1400
                                           Baltimore, Maryland 21202
                                           Tel: 410-783-6300
                                           Email: 410-783-6363
                                           *Counsel for New Tradition Outdoor, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of October, 2025, I caused true and correct copies of the foregoing to be served via PACER/ECF on all counsel of record.

*/s/ Michele H. Dinterman*
Michele Hayes Dinterman (ID No. 19767)