UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK), )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SUBLEASE INTEREST OBTAINED PURSUANT TO AN ASSIGNMENT AND ASSUMPTION OF LEASEHOLD INTEREST MADE AS OF JANUARY 25, 2007, WITH SAID PROPERTY INTEREST PERTAINING TO DESCRIBED LEASEHOLD INTERESTS AT WASHINGTON UNION STATION, et al., )<br>)<br>Defendants. ) | Case No. 22-cv-01043 (APM) |

## **ORDER**

The parties have asked the court to decide whether Plaintiff National Railroad Passenger Corporation ("Amtrak") has violated the Settlement Agreement by seeking rents anew from Union Station tenants who previously made rent payments to Defendants instead of Amtrak between the Possession Date of July 15, 2024, *see* Order, ECF No. 111, and the final Settlement date of February 5, 2025. *See* Defs.' Mot. to Enforce Settlement Agreement, ECF No. 211 [hereinafter Defs.' Mot.]; Pl.'s Mot. to Enforce Settlement Agreement, ECF No. 213 [hereinafter Pl.'s Mot.]. These demands, Defendants say, conflict with the Settlement Agreement because they have caused tenants who paid such rents to seek their return from Defendants. As explained below, the court concludes that Amtrak has not breached the Agreement.

The construction of a settlement agreement is "construed under 'general principles of contract law.'" *Dyer v. Bilaal*, 983 A.2d 349, 354 (D.C. 2009) (citation omitted). The District of Columbia "adheres to an 'objective' law of contracts, meaning 'the written language embodying the terms of an agreement will govern the rights and liabilities of the parties [regardless] of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress, or mutual mistake.'" *Id.* at 354–55 (alteration in original) (citation omitted). When the agreement is "facially unambiguous, [the court] must rely solely upon its language as providing the best objective manifestation of the parties' intent." *Bolling Fed. Credit Union v. Cumis Ins.*, 475 A.2d 382, 385 (D.C. 1984). To determine if there is ambiguity, the court must "examine the document on its face, giving the language used its plain meaning." *Dyer*, 983 A.2d at 355 (internal quotation marks and citation omitted). Only when "the contract has more than one reasonable interpretation and therefore is ambiguous" may the court consider extrinsic evidence to determine what a "reasonable person in the position of the parties would have thought the disputed language meant." *Id.* (internal quotation marks and citation omitted).

The parties agree that Paragraph 2.4 of the Settlement Agreement titled "Specific Released Claims" controls the question at hand. *See* Defs.' Mot. at 1–3; *id.*, Ex. A, ECF No. 211-1 [hereinafter Settlement Agreement]; Pl.'s Mot. at 7. That Paragraph provides in relevant part:

> Specific Released Claims shall include any claim arising from or relating in any way to: (1) the Condemnation Action, including any claims relating to filing of the Condemnation Action, the taking of legal title to and possession of the Subject Property Interest, any defenses filed to any claim relating to the taking, claims for just compensation for the Subject Property Interest, ***claims related to possession or turnover of possession***, as well as claims for costs, expenses and/or attorney fees; (2) claims that Amtrak and Lender may have against each other where such claims relate to the Condemnation Action or the Subject Property Interest, ***including***

2

>> ***but not limited to claims for monies paid by third parties as rent pursuant to subleases or monies owed to third parties associated with operation of Union Station or the Subject Property Interest***; [and] (5) the management and operation of the Subject Property Interest.

Settlement Agreement ¶ 2.4 (emphases added).  According to Defendants, the bolded, italicized text "makes clear that the claims, obligations, or disputes being released included those arising out of and during possession [of Union Station] by the respective parties" and that "the parties expressly intended to cover payments involving third parties under the umbrella of the settlement." Defs.' Mot. at 3 (citing second bolded, italicized text).  Paragraph 2.4 must be construed broadly, Defendants contend, to include the release of rent-related claims even against third parties.  *Id.*

The court does not agree.  The subject of the parties' dispute is expressly captured by Paragraph 2.4.  The second bolded, italicized text above covers "claims for monies paid by third parties as rent pursuant to subleases."  Settlement Agreement ¶ 2.4(2).  Defendants read those words to mean Amtrak agreed to waive such claims even against *third-party rent payors.*  But that understanding overlooks earlier text in the same subparagraph that expressly limits the release to "claims that Amtrak and Lender may have against *each other*."  *Id.* (emphasis added).  Thus, the parties in Paragraph 2.4(2) released third-party, rent-related claims only as to one another, not third parties.  The Agreement's text is unambiguous.

Defendants assert that Amtrak's demand for mispaid rents has boomeranged back onto them as demands for the return of rents and thereby has allowed Amtrak to "do indirectly what it agreed not to do directly." Defs.' Mot. at 3.  The plain text of the Agreement does not, however, constrain Amtrak as Defendants suggest.  Paragraph 2.4 does not speak to what Amtrak may do to recover rents mispaid after the Possession Date directly from those rent payors.  The fact that Amtrak's demands have resulted in corresponding calls by tenants for the return of "monies paid

3

. . . as rent" to Defendants does not convert an act that falls outside the scope of Paragraph 2.4 into one barred by it. The Agreement's plain text controls.

Defendants also ask, "Why would 'monies paid by third parties pursuant to subleases' and 'monies owed to third parties associated with operation of Union Station,' even be included in a section about claims being mutually released between Lender and Amtrak if not for the purpose of each party releasing *the other* from any obligations associated with those sums?" Defs.' Opp'n to Pl.'s Mot., ECF No. 215, at 4 (emphasis added). But to ask that question is to answer it. Each side agreed in Paragraph 2.4 that it would not hold "*the other*" liable for claims arising from a sublease or contract with a third party. For instance, Amtrak cannot sue Defendants for the mispaid rents; likewise, Defendants cannot hold Amtrak responsible for unpaid sums to third-party vendors. But again, the relevant text says nothing about what each side may do vis-à-vis a third party.

Finally, because the text of the Settlement Agreement is unambiguous, the court does not consider the parties' evidence about their negotiations. *See Dyer*, 983 A.2d at 359 ("[T]he objective law of contracts requires us to avoid considering extrinsic evidence in the absence of ambiguity.").

For the foregoing reasons, the court grants Amtrak's Motion to Enforce Settlement Agreement, ECF No. 213, and denies Defendants' corresponding motion, ECF No. 211. Plaintiff's Motion for Leave to File Declarations, ECF No. 198, is denied as moot.

Dated: February 24, 2026

Amit P. Mehta
United States District Judge

4