**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK), Plaintiff, v. SUBLEASE INTEREST OBTAINED PURSUANT TO AN ASSIGNMENT AND ASSUMPTION OF LEASEHOLD INTEREST MADE AS OF JANUARY 25, 2007, *et al.*, Defendants. | Case No. 22-cv-01043 (APM) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF AMTRAK'S
MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES**

On February 24, 2026, this Court granted Amtrak's Motion to Enforce Settlement Agreement and held that Amtrak had not breached the parties' Settlement Agreement by seeking to recover rents from Union Station tenants who had mispaid rent to Defendants following the Possession Date. *See* Order, ECF No. 217. Having prevailed, Amtrak is entitled under Section 5.7 of the Settlement Agreement to "reasonable attorney fees, costs and expenses incurred in pursuing the Enforcement Action." Amtrak therefore moves the Court to award Amtrak its fees and costs totaling $109,289.60, reflecting the reasonable and necessary work performed by counsel to vindicate Amtrak's contractual rights.

**BACKGROUND**

The parties entered into the Settlement Agreement following years of litigation over Amtrak's condemnation of the leasehold interest in Washington Union Station. Section 5.7 of the Settlement Agreement expressly addresses the parties' rights to enforce the Agreement:

1

> If one Party has materially breached any provision of this Agreement, then any other Party may, after fifteen (15) days written notice to the breaching party, institute suit to enforce this Agreement in the United States District Court of the District of Columbia, which shall be agreed by the parties to have sole jurisdiction over the dispute. Said lawsuit shall be referred to as 'the Enforcement Action.' The Enforcement Action shall be for the enforcement of this Agreement only and not for any other claims. The prevailing party in the Enforcement Action shall be entitled to reasonable attorney fees, costs and expenses incurred in pursuing the Enforcement Action.

*See* ECF No. 211, Flack Decl., Ex. 2 (Settlement Agreement); *see also* ECF No. 195-4.

A dispute arose regarding whether Amtrak's post-settlement demands upon tenants for rents mispaid to Defendants during the period between the Possession Date (July 15, 2024) and the final Settlement date (February 5, 2025) violated the Settlement Agreement. Defendants filed a Motion to Enforce Settlement Agreement, ECF No. 211, arguing that Amtrak's conduct breached the Agreement. Amtrak filed a cross-Motion to Enforce Settlement Agreement, ECF No. 213, arguing that its conduct was consistent with the Agreement and that Defendants' interpretation was contrary to the Agreement's plain text.

On February 24, 2026, the Court issued its Order granting Amtrak's motion and denied Defendants' motion. The Court held that Paragraph 2.4(2) of the Settlement Agreement released only claims between Amtrak and Defendants regarding third-party rent payments, and "does not speak to what Amtrak may do to recover rents mispaid after the Possession Date directly from those rent payors." Order at 3. Amtrak is thus the prevailing party in this Enforcement Action.

## **ARGUMENT**

I.    **AMTRAK IS ENTITLED TO ATTORNEYS' FEES AND COSTS AS THE PREVAILING PARTY IN THE ENFORCEMENT ACTION.**

Section 5.7 of the Settlement Agreement provides that "[t]he prevailing party in the Enforcement Action shall be entitled to reasonable attorney fees, costs and expenses incurred in pursuing the Enforcement Action." The use of the mandatory term "shall" establishes that an award

of fees is not discretionary but is compulsory upon a finding that one party has prevailed. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 35 (1998) (recognizing that "shall" is "mandatory" and "normally creates an obligation impervious to judicial discretion"). This is consistent with the well-established principle that parties may contractually agree to fee-shifting, and courts routinely enforce such provisions. *See, e.g.*, *Travelers Cas. & Sur. Co. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 448 (2007); *see also Klayman v. Judicial Watch, Inc.*, No 06-cv-670 (CKK/GMH), 2022 WL 22263805, at *6 (D.D.C. Oct. 25, 2022) ("Where, as here, a contract contains a fee-shifting provision, courts interpret the terms consistent with traditional principles of contractual interpretation.").

Amtrak is unquestionably the prevailing party here. The Court granted Amtrak's Motion to Enforce Settlement Agreement in its entirety and denied Defendants' cross-motion. Amtrak obtained a judicial declaration that its conduct was consistent with the Settlement Agreement—precisely the relief it sought. *Cf. Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res*., 532 U.S. 598, 603 (2001) (explaining that a "prevailing party" under federal civil rights statutes is "one who has been awarded some relief by the court"). Amtrak is therefore entitled to fees as a matter of contract law.

## II.      THE FEES AND COSTS SOUGHT ARE REASONABLE.

Where, as here, a contractual fee-shifting provision entitles a prevailing party to "reasonable attorney fees," courts assess reasonableness by examining both the rates charged and the hours expended. *See Klayman*, 2022 WL 22263805, at *7 (explaining that "[r]easonable rates… are those 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'" (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995))). One well-established method for demonstrating that rates meet this standard is to show the fees actually charged to and paid by the client—which

courts in this Circuit have recognized as "prima facie reasonable." *Griffin v. Washington Convention Ctr.*, 172 F. Supp. 2d 193, 197 (D.D.C. 2001); *see also Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 735 F. App'x 733, 735 (D.C. Cir. 2018) ("[A]n attorney's usual billing rate is presumptively the reasonable rate."); *Klayman*, 2022 WL 22263805, at *20 (recommending that fees be awarded "at the hourly rates Defendants actually billed to and received from their clients" because "there is no better indication of what the market will bear than what the lawyer in fact charges for his services and what his clients pay" (quoting *Griffin*, 172 F. Supp. 2d at 197)). Indeed, there is "considerable precedent holding that 'negotiation and payment of fees by sophisticated clients are solid evidence of their reasonableness.'" *United States Equal Emp. Opportunity Comm'n v. George Washington Univ.*, No. 17-cv-1978, 2020 WL 3489478, at *12 (D.D.C. June 26, 2020) (citation omitted).

### A. Counsel's Hourly Rates Are Reasonable.

Amtrak retained Jenner & Block, a preeminent national law firm with a long-established practice in complex commercial litigation and appellate matters, and Pessin Katz Law, P.A., a law firm with particular expertise in condemnation law, as counsel in this Enforcement Action and the underlying condemnation litigation. The rates set forth in the Harrison Declaration are the rates actually charged to and paid by Amtrak for this matter. The rates were negotiated and accepted by Amtrak—a sophisticated institutional client—in the ordinary course of the attorney-client relationship, which itself is "solid evidence of their reasonableness." *United States Equal Emp. Opportunity Comm'n*, 2020 WL 3489478, at *12. And, as detailed in the Declaration of Lindsay C. Harrison, Amtrak received a substantial discount from Jenner & Block's market rates. The Jenner & Block attorneys who worked on this matter charged the following rates: partners at $837 to $1,350 per hour, associates at $539 per hour, and paralegals at $429 to $465 per hour. Likewise, as detailed in the Declaration of Patricia McHugh Lambert, Ms. Lambert was the only Pessin Katz

attorney who worked on this matter, and she charged $412.50 per hour. That rate is the actual rate that Amtrak negotiated and paid and is reasonable in light of the market where she practices.

### B.   The Hours Expended Were Reasonable and Necessary.

Amtrak's counsel at Jenner & Block expended a total of 90.2 hours on this Enforcement Action, resulting in fees of $90,704.10. As detailed in Exhibit A to the Harrison Declaration, these hours reflect work reasonably necessary to litigate and prevail on Amtrak's motion, including: researching the applicable contract interpretation principles and fee-shifting law; analyzing the Settlement Agreement and the parties' competing interpretations of Paragraph 2.4; drafting and revising Amtrak's Motion to Enforce Settlement Agreement and accompanying brief; reviewing and responding to Defendants' competing motion and opposition; and preparing reply papers. The work was appropriately divided among partners with supervisory and drafting responsibilities, an associate providing research and drafting support, and paralegals handling citation and record work.[1]

The staffing of this matter was lean and efficient. The senior partner with primary responsibility for the matter (Lindsay C. Harrison) led the team, with targeted assistance from colleagues with specific expertise. Amtrak's counsel exercised billing judgment throughout, and the time records reflect only those hours that are reasonably compensable in connection with the Enforcement Action.

Amtrak's counsel at Pessin Katz expended a total of 44.5 hours on this Enforcement Action, resulting in fees of $18,356.25, plus $229.25 in costs for the transcript of the May 27, 2025 hearing, for a Pessin Katz total of $18,585.50. As detailed in Exhibit A to the Lambert Declaration,

---

[1] Amtrak reserves the right to seek fees in connection with the litigation of this fee petition, as well as any appeal of the Enforcement Action, but does not include those fees and costs in connection with this initial motion since the time spent pursuing the fees and litigating the appeal will continue to accrue.

that time reflects Ms. Lambert's work as co-counsel with substantial experience litigation condemnation issues and her knowledge of the detailed factual situation at the Station vis a vis various tenants, where Ms. Lambert has been assisting Amtrak.  Her work on the Enforcement Action included compiling and advising about the challenges facing Amtrak on the ground at the station in dealing with tenants due to the dispute underlying the Enforcement Action, preparing for and attending the May 27, 2025 hearing, assisting with the briefing and declarations, and analyzing the Court's February 24, 2026 Order. Ms. Lambert exercised billing judgment throughout, and the time records reflect only those hours reasonably compensable in connection with the Enforcement Action.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Amtrak's Motion for Attorneys' Fees, Costs, and Expenses and enter an award in Amtrak's favor in the total amount of $109,289.60.

Dated: May 4, 2026                             Respectfully submitted,

COUNSEL FOR PLAINTIFF NATIONAL
RAILROAD PASSENGER CORPORATION


*/s/ Lindsay Harrison*
Lindsay C. Harrison, DC Bar #977407
Jessica Ring Amunson, DC Bar #497223
JENNER & BLOCK, LLP
1099 New York Avenue, NW, Suite 900
Washington, D.C. 20001-4412
Telephone: 202-639-6000
Fax: 202-639-6066
lharrison@jenner.com
jamunson@jenner.com


*/s/ Patricia McHugh Lambert*
Patricia McHugh Lambert, US DC Bar ID MD0008
Kambon R. Williams, US DC Bar ID MD29872
PESSIN KATZ LAW, P.A.
901 Dulaney Valley Road, Suite 500

Towson, MD 21204
Telephone: 410-938-8800
Fax: 410-832-5650
plambert@pklaw.com
kwilliams@pklaw.com